UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                                    :
RALPH S. JANVEY, IN HIS CAPACITY AS                 :
COURT-APPOINTED RECEIVER FOR THE                    :
STANFORD RECEIVERSHIP ESTATE,                       :
AND THE OFFICIAL STANFORD                           :
INVESTORS COMMITTEE,                                :
                                                    :
                   Plaintiffs,                      :   Case Nos. 3:12-cv-00644-N
                                                    :              3:13-cv-00477-N
             - against -                            :
                                                    :
PROSKAUER ROSE LLP, CHADBOURNE                      :
& PARKE LLP, AND THOMAS V.                          :
SJOBLOM,                                            :
                                                    :
                   Defendants.                      :
                                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

---

### REPLY OF DEFENDANTS PROSKAUER ROSE LLP AND THOMAS V. SJOBLOM IN SUPPORT OF CROSS-MOTION TO COMPEL DISCOVERY

---

Fletcher L. Yarbrough
Bruce W. Collins
Neil R. Burger
CARRINGTON, COLEMAN, SLOMAN &
    BLUMENTHAL, L.L.P.
901 Main Street, Suite 5500
Dallas, Texas 75202
Telephone:  (214) 855-3000
Facsimile:  (214) 855-1333
E-mail:  bcollins@ccsb.com

James P. Rouhandeh*
Daniel J. Schwartz*
Jonathan K. Chang*
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone:  (212) 450-4000
Facsimile:  (212) 701-5800
E-mail:  rouhandeh@davispolk.com
*admitted *pro hac vice*

*Attorneys for Defendant*
*Proskauer Rose LLP*

Defendants Proskauer Rose LLP ("Proskauer") and Thomas V. Sjoblom submit this reply in support of their cross-motion for leave to compel discovery into the scope, frequency, and nature of the interactions among Stanford Receiver Ralph S. Janvey, his counsel Hohmann, Taube & Summers, LLP ("Hohmann Taube"), Neligan Foley LLP ("Neligan Foley") and other counsel for the Official Stanford Investors Committee (the "Investors Committee").

The premise of defendants' motion is very basic and goes to the fundamental fairness of these proceedings.  The limited discovery defendants seek addresses a threshold issue that must be resolved before this Court can decide whether to permit Neligan Foley to represent the Receiver:  whether any confidential government information within the meaning of Texas Disciplinary Rule 1.10(c) and ABA Model Rule 1.11(c) has been (or will be) improperly shared with the Receiver, his counsel and/or counsel for his co-plaintiffs.  Under Texas law, defendants are entitled to discover whether confidential government information about *them* has actually been shared with, or should be imputed to, their adversaries and their adversaries' counsel.  This limited discovery should proceed *now*—before the Court rules on the Receiver's motion to substitute counsel, and before any additional significant proceedings concerning the merits of these actions take place.  Allowing discovery on this one, narrow issue to go forward is the only way to ensure that Hohmann Taube—the conflicted counsel who have asked to withdraw—are not replaced by other counsel with an actual or imputed conflict arising from improper access to the *same* confidential government information that has necessitated Hohmann Taube's withdrawal.  The limited discovery defendants seek, moreover, is the only way to ensure that the Receiver and the Investors Committee do not gain an unfair advantage in litigating this case.  And an order of this Court is necessary to permit this limited discovery to proceed now because the Court has previously stayed *all proceedings* in both of the instant actions.

In their opposition, plaintiffs do not meaningfully address, let alone contest, these points. They cite no contrary case law or provide any other basis for denying defendants' cross-motion. Nor do they dispute the underlying facts giving rise to defendants' motion. Instead, plaintiffs obfuscate the issues with baseless and confusing arguments, and accuse defendants of impugning their integrity.  (Opp. at 2.)[1]  But that assertion is backwards.  Defendants have *not* moved to disqualify Neligan Foley or other counsel for the Investors Committee for violating any applicable rules of professional conduct.  Rather, defendants have taken the cautious approach of seeking discovery first, to determine whether there is a valid factual basis before making such a motion.  What defendants already know about the situation, however, is very troubling, and suggests that there is, at a minimum, substantial risk that improperly obtained confidential government and/or privileged information may have been or may in the future be shared with plaintiffs and their counsel.  Defendants thus require the limited relief they seek through this motion to protect their rights to fair proceedings.

## ARGUMENT

### I.   Defendants Are Entitled to Discover Whether Confidential Government Information About Them Was Improperly Shared with Their Adversaries or Their Adversaries' Counsel

Where, as here, there is a substantial risk that confidential information may improperly have been shared with a party's adversaries, their counsel, or co-counsel in violation of applicable ethics rules, Texas law permits the party to obtain limited discovery into the nature and scope of the improper information sharing.  *See In re Am. Home Prods. Corp.*, 985 S.W.2d 68, 81 (Tex. 1998) ("A party seeking disqualification is entitled to determine, however, whether

---

[1] Citations in the format "Opp. at [x]" refer to the Receiver's Reply in Support of Motion to Substitute Counsel and Response to Proskauer Rose and Thomas Sjoblom's Cross-Motion to Compel Discovery, filed August 30, 2013. Citations in the format "Defs. Br. at [x]" refer to the Brief of Defendants Proskauer Rose LLP and Thomas V. Sjoblom in Opposition to Plaintiff's Joint Motion to Substitute Counsel and Cross-Motion to Compel Discovery, filed August 16, 2013.

co-counsel have jointly prepared the case for trial or whether they have had substantive discussions regarding the case, but without inquiring into the substance of the work that has been done or of discussions between co-counsel."); *accord* Defs. Br. at 10-11.  That is all defendants seek here.

The basic facts on which defendants have premised their motion are all undisputed.

- the Receiver's lawyers at Hohmann Taube hired Kevin Edmundson—the lead attorney for the Securities and Exchange Commission (the "SEC") in its investigation of the Ponzi scheme perpetrated by R. Alan Stanford—to be their partner;

- Edmundson has special knowledge of SEC strategy concerning its investigation and subsequent litigation, and had unique interactions with defendants that form the basis of plaintiffs' complaint in these actions;

- Hohmann Taube did not screen Edmundson from these matters, copied him on correspondence related to these matters and added him to the trial team; therefore, any information in Edmundson's possession gets imputed to Hohmann Taube as a whole; and

- after denying there was any ethical issue, Plaintiffs ultimately determined to dismiss Hohmann Taube as their counsel and to retain Neligan Foley.

(Defs. Br. at 1-3.)

These facts create a substantial risk that confidential and/or privileged government information in Edmundson's possession has been or may be shared with counsel for the Investors Committee, including Neligan Foley, the Receiver's proposed replacement counsel.  Defendants surely are entitled to infer that any information possessed by Hohmann Taube about the SEC's Stanford investigation has been shared with the Receiver, Hohmann Taube's client.  The Receiver, in turn, routinely shares information with the Investors Committee and its counsel. (*See* Defs. Br. at 7.)  Indeed, this Court's Order creating the Investors Committee *required* the Receiver and Investors Committee "to establish a written protocol governing cooperation, information sharing, and confidentiality," so as to give the committee "reasonable access to all

3

non-privileged documents, books, records and other information currently in the Receiver's

possession or under his control."  Order ¶ 5, *SEC v. Stanford Int'l Bank*, No. 3:09-cv-298-N

(N.D. Tex. Aug. 10, 2010) [Dkt. # 1149].  There is thus every reason to believe that any

confidential government information in Edmundson's possession has been shared, or in the

future may be shared—either directly or indirectly—with counsel for the Investors Committee.

This belief was strongly reinforced when Neligan Foley refused to confirm otherwise during the

meet-and-confer correspondence that preceded this cross-motion.  App. at 11-13.

Plaintiffs make three arguments in response:  (1) Edmundson did not actually violate any

ethical rules because he did not work on the same "matter" as these actions while at the SEC; (2)

discovery should be denied because defendants have not identified any examples of confidential

information in Edmundson's possession; and (3) the Receiver—through a purported agreement

with the SEC that is not in the record and which defendants have never seen—already has access

to any information that Edmundson might have.  None of these arguments has any merit.

## A.    Edmundson Has Confidential Government Information Regarding Defendants and Was Ethically Barred from Representing the Receiver

As a former government attorney, Edmundson may not represent a private party in

connection with the same matter that he worked on while a government lawyer.  Tex.

Disciplinary Rules of Prof'l Conduct R. 1.10 (2005); *accord* ABA Model Rules of Prof'l

Conduct R. 1.11 (1983).  When Proskauer alerted Hohmann Taube that Edmundson's

representation of the Receiver in these cases violates ethical rules, Hohmann Taube responded,

contrary to unambiguous case law, that in their view, the lawsuits against Proskauer and Sjoblom

were not the same "matter" as the SEC investigation of Stanford because Proskauer and Sjoblom

were not targets of the SEC investigation.  App. at  3.  Plaintiffs' opposition repeats this

incredible argument, which is not supported by any authority.  *See* Opp. at 5 n.1.  To the

contrary, Texas law and the ABA have made clear that the plaintiffs' interpretation is wrong. Specifically, in determining whether a former government lawyer is working on the same "matter" in private practice as he or she worked on while employed by the government, the Texas Court of Appeals has explained that the term "matter" includes any "similar, particular transaction involving a specific party or parties" and is not limited to a specific case or proceeding. *In re de Brittingham*, 319 S.W.3d 95, 98-99 (Tex. App.—San Antonio 2010, orig. proceeding). Rather, a "matter" includes cases "arising out of the same . . . proceeding." *Id.* at 99. Similarly, ABA Formal Opinion No. 342 also does not limit a "matter" to a specific case or proceeding; rather, a former government lawyer will be deemed to work on the same "matter" in private practice so long as the two cases involve "a discrete and isolatable transaction or set of transactions between identifiable parties." ABA Formal Op. No. 342 at 6.

Although plaintiffs are aware of this authority, their opposition persists in offering an unsupported narrow interpretation of the scope of the ethics rules, by asserting that Edmundson does not possess confidential information about defendants because Edmundson was "involved in the SEC's investigation of Stanford—not of Proskauer and not of Sjoblom" (Opp. at 5). Such an interpretation is contrary to logic and not supported by case law or the plain text of the rules. Rule 1.10(c) prohibits representation of a private client by "a lawyer having information the lawyer knows or should know is confidential information *about a person or legal entity* acquired when the lawyer was a public officer or employee." Tex. Disciplinary Rules of Prof'l Conduct R. 1.10(c) (2005); *accord* ABA Model Rules of Prof'l Conduct R. 1.11(c) (1983) (emphasis added). The rule plainly encompasses *any* confidential information acquired during government service and is not, as plaintiffs suggest, limited to confidential information about targets of

investigations.[2]  As described in defendants' cross-motion, Edmundson possesses confidential government information regarding Proskauer and Sjoblom because he was an integral member of the SEC's team that investigated and successfully brought charges against Stanford, he has special knowledge about the SEC's litigation strategy, and he had unique interactions with defendants, which form the basis of the plaintiffs' complaints in these matters.  (Defs. Br. at 4-8.)

    When interpreting attorneys' ethical obligations of confidentiality in other contexts, Texas courts have made clear that a "substantial relationship, not substantial identity, of legal and factual elements between the prior representation and the pending litigation" is sufficient to implicate concerns regarding sharing of confidential information.  *Home Ins. Co v. Marsh.,* 790 S.W.2d 749, 753 (Tex. App.—El Paso 1990, orig. proceeding).  Here, there is no question that the plaintiffs' allegations bear a "substantial relationship" to the SEC's investigation and prosecution of Stanford or that this case constitutes the same "matter" as the SEC's investigation and prosecution of Stanford.  The complaints allege that Sjoblom had direct communications with Edmundson while he was investigating Stanford.  Evidence of the statements Sjoblom purportedly made to Edmundson is an essential element of plaintiffs' claims in this case because plaintiffs allege that Sjoblom breached his duty to his clients by making such statements.  Defs. Br. at 4.  Whether, and to what extent, the SEC (including Edmundson) believed and relied on such statements is also critical to the causation element of plaintiffs' claims in these cases.  That information has never been disclosed by the government and therefore is confidential.  Whether the SEC was investigating Stanford, Sjoblom, or Proskauer is simply irrelevant.

---

[2] The Opposition appears to conflate "confidential information" with "privileged information"  See. Pls. Opp. at 6. While privileged information is a subset of confidential information, confidential information is much a broader category that encompasses far more than the simply privileged information.  Texas Disciplinary Rules of Professional Conduct 1.05(a) ("Confidential information includes both privileged and unprivileged client information."); *Perillo v. Johnson*, 205 F.3d 775, 799 (5th Cir. 2000) ("[A]n attorney's duty of confidentiality is broader than just client communications, and extends to all confidential information, whether privileged or unprivileged and whether learned directly from the client or from another source.").

**B.      Defendants Need Not Provide Examples of Confidential Information in
Edmundson's Possession to Be Entitled to Discovery**

Plaintiffs' contention that the defendants' cross-motion should be denied because the

defendants have not identified any specific confidential information possessed by Edmundson is

baseless and illogical.  (Opp. at 5.)

Under Texas law, defendants need not provide examples of any confidential information

to obtain discovery.  *Home Ins. Co.*, 790 S.W.2d at 754 ("The movant need not expose the

specific confidences involved.").[3]  Indeed, such a requirement would be impossible to satisfy in

this case because defendants, by definition, do not have access to Edmundson's confidential

government information.  On this basis, the Texas Supreme Court has expressly rejected a

requirement that a party seeking disqualification show that confidential information has been

shared because it would be "virtually impossible for a [party] to show that [a] lawyer had

revealed confidences . . . and that the [party] should not be required to do so."  *In re Am. Home

Prods. Corp.*, 985 S.W.2d at 81.[4]  Rather, "[o]nce a party seeking disqualification establishes

that there was contact or communication between the tainted [party] and co-counsel, the burden

shifts to the party resisting disqualification of co-counsel to offer evidence that there was no

reasonable prospect that the opposing party's confidential information was disclosed and that it

was not in fact disclosed."  *Id.* at 77-78; *see also Grant v. Thirteenth Court of Appeals*, 888

S.W.2d 466, 467 (Tex. 1994) ("The test for disqualification is met by demonstrating a genuine

---

[3] Thus, under Texas law, plaintiffs' argument that the allegations defendants cited from the First Amended Complaint ("FAC") are not themselves confidential information is nothing more than a straw man.  (*See* Opp. at 6.) In any event, those allegations were cited not as examples of confidential information but rather as evidence that the frequency, nature, and scope of Sjoblom's interactions with Edmundson while he was employed by the SEC make clear that Edmundson has confidential government information relating to defendants.  (*See* Defs. Br. at 4-5, 7-8.)

[4] Plaintiffs assert that *American Home Products* is inapposite because it dealt with confidential client information rather than confidential government information but provides no citation nor any reasoned explanation for why client information is subject to more stringent ethical protections than government information.  There is none.

*threat* of disclosure, not an actual materialized disclosure.") (emphasis in original); Restatement (Third) of the Law Governing Lawyers § 204 cmt. d (observing that "the lawyer of firm seeking to remove imputation has the burden of persuasion that there is no reasonable prospect that confidential information . . . will be used with material adverse effect"). It is therefore plaintiffs' counsel, and not defendants, who will ultimately bear the burden of establishing that no confidential information will be disclosed should defendants move to disqualify them. Plaintiffs refused to do so during the meet-and-confer process and have not even attempted to do so in their opposition.

Moreover, plaintiffs' argument that defendants are not entitled to discovery because they have not "demonstrate[d] that there were substantive conversations between disqualified counsel and co-counsel, joint preparation for trial by these counsel, or the apparent receipt by co-counsel of confidential information" is a red herring. (Opp. at 5 n.2, citing *American Home Products*.) Such arguments—dubious though they are, *see* supra at 3—may be proper in defending a motion to disqualify Neligan Foley and other co-counsel, but defendants have not sought that relief at this time. Rather, defendants seek limited discovery into the scope, frequency, and nature of the interactions among Hohmann Taube, the Receiver, Neligan Foley and other counsel for the Investors Committee in order to *determine* whether Edmundson's confidential government information has been improperly shared with or should be imputed to co-counsel. This is information to which the Texas Supreme Court has unequivocally stated that defendants are entitled. *In re Am. Home Prods. Corp.*, 985 S.W.2d at 81.

**C.**     **Plaintiffs' Motion Improperly Relies on the Terms of a Nonpublic Agreement**

For the first time in its opposition, plaintiffs claim that an "information sharing agreement" with the SEC excuses any ethical violations because plaintiffs have long had access to "investigative files" and "other information" relating to Stanford and Sjoblom as a result of

that agreement.  (Opp. at 7.)  Plaintiffs did not rely on this undisclosed agreement during the

meet-and-confer process when asked by defendants to provide information demonstrating that

confidential information was not shared improperly.  (App. at 7-13.)  Now, however, plaintiffs

contend that because of this agreement, Hohmann Taube's decision to hire Edmundson "has not

made, and will not make, any material difference" with respect to the Receiver's access to SEC

information regarding this matter.  *Id.*  Other than its say-so, plaintiffs have not provided any

evidence reflecting the existence or terms of this non-public agreement, including whether it

purports to apply to privileged as well as confidential information.  Rather, plaintiffs' opposition

simply suggests that defendants—and this Court—take plaintiffs' word that any ethical violation

that may have occurred is moot.

　　　Plaintiffs' arguments based on this undisclosed agreement should be rejected because

they cannot rely on an agreement without establishing its terms and its existence.  *See Ramada*

*Dev. Co. v. Rauch*, 644 F.2d 1097, 1110 n.12 (5th Cir. 1981) (disregarding argument as "without

merit because it has not specified any part of the record that shows positively that there indeed

was an agreement"); *Garcia v. Brandt*, No. 13-97-357, 1998 Tex. Appl. LEXIS 7697, at *6 (Tex.

App.—Corpus Christi 1998, no pet.) (declining to "assume without any evidence" the extent and

limitations of an insurance agreement that was not produced).  Absent factual evidence of the

existence and terms of agreement, there is no basis to conclude anything concerning its scope or

applicability to the factual circumstances presented in this case.

## II.　　Plaintiffs' Procedural Arguments Are Misguided and Baseless

　　　Plaintiffs contend that defendants' motion to compel discovery should be denied pursuant

to Federal Rule of Civil Procedure 37 because it "fail[s] to identify any discovery request that the

Receiver has failed to answer."  This argument misconstrues the nature of defendants' motion.

Defendants have not moved to compel compliance with a specific discovery request.  No such

requests have been served because all proceedings in the 3:13-cv-477 action have been stayed since March 8, 2013, before the present motions were filed.  *See* Joint Stipulation and Order to Stay Proceedings [Dkt. #13] (Mar. 8, 2013).  All proceedings in the 3:12-cv-644 action have now been stayed as well.  *See* Order [Dkt. #71] at 7 (Aug. 21, 2013).  Rather, defendants seek leave of the court to propound limited discovery relating to whether Edmundson's knowledge of confidential government information has been shared with or can be imputed to the Receiver, Neligan Foley or other law firms representing plaintiffs.  (*See* Defs. Br. at 10-11.)[5]

Plaintiffs' contention that defendants failed to confer with plaintiffs is baseless.  (*See* Opp. at 9.)  Prior to the filing of the cross-motions, defendants engaged in several rounds of correspondence with Neligan Foley, during which defendants stated that if Neligan Foley were unwilling or unable to represent that (i) the Receiver had not already obtained Edmundson's confidential information and (ii) Neligan Foley would not seek any such information from the Receiver, defendants would oppose the substitution of counsel and would "seek whatever relief we deem appropriate from the Court."  (App. at 11.)  Plaintiffs' contention that the parties did not sufficiently "conference" thus rings hollow.  As the record reflects, plaintiffs made clear that they would not provide the requested information, rendering further conference unnecessary.

## CONCLUSION

For the foregoing reasons, the Court should grant defendants' cross-motion for leave to take discovery.

---

[5] The Receiver's offer to allow the defendants' requested discovery "provided that discovery is opened generally to all parties" is a baseless attempt to circumvent the stay stipulated by the parties and ordered by this Court.  (*See* Opp. at 9 n.5.)  Merits discovery is not appropriate in light of defendants' pending motions to dismiss and the possible ethical breaches that may result in disqualification of the plaintiffs' counsel.  By contrast, defendants request leave to obtain discovery on a limited set of threshold issues that should be resolved before this case proceeds to the merits.  *See, e.g.*, 8 Wright & Miller, Federal Practice & Procedure § 2040, at 521-22 (2d ed. 1994) ("[W]hen one issue may be determinative of a case, the court has discretion to stay discovery on other issues until the critical issue has been decided.").  In any event, Proskauer long ago turned over its documents regarding Stanford to the Receiver.

Dated:   September 13, 2013          Respectfully submitted,

DAVIS POLK & WARDWELL LLP


By:   /s/ James P. Rouhandeh
      James P. Rouhandeh*
      New York Bar No. 2211837
      rouhandeh@davispolk.com
      Daniel J. Schwartz*
      New York Bar No. 4159430
      daniel.schwartz@davispolk.com
      Jonathan K. Chang*
      New York Bar No. 4500484
      jonathan.chang@davispolk.com

450 Lexington Avenue
New York, New York  10017
Tel:  (212) 450-4000
Fax:  (212) 701-5800
* admitted *pro hac vice*


- and -


CARRINGTON, COLEMAN, SLOMAN &
    BLUMENTHAL, L.L.P.


By:   /s/ Neil R. Burger
      Fletcher L. Yarbrough
      Texas Bar No. 22137000
      fyarbrough@ccsb.com
      Bruce W. Collins
      Texas Bar No. 04604700
      bcollins@ccsb.com
      Neil R. Burger
      Texas Bar No. 24036289
      nburger@ccsb.com

901 Main Street, Suite 5500
Dallas, Texas  75202
Telephone:  (214) 855-3000
Facsimile:  (214) 855-1333

*Attorneys for Defendant Proskauer Rose LLP*

FISH & RICHARDSON P.C.

By:   /s/ William B. Mateja
     William B. Mateja
     Texas Bar No. 13185350
     mateja@fr.com

1717 Main Street, Suite 5000
Dallas, Texas  75201
Telephone:  (214) 747-6101
Facsimile:  (214) 747-2091

- and -

McKENNA LONG & ALDRIDGE LLP

By   /s/ Mindy L. Rattan
     Joshua R. Hochberg*
     D.C. Bar No. 495732
     jhochberg@mckennalong.com
     Mindy L. Rattan*
     D.C. Bar No. 467553
     mrattan@mckennalong.com

1900 K Street NW
Washington D.C.  20006
Telephone:  (202) 496-7500
Facsimile:  (202) 496-7756
* admitted *pro hac vice*
*Attorneys for Defendant Thomas V. Sjoblom*

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing instrument was served upon the attorneys of record in the above cause in accordance with Rule 5, Federal Rules of Civil Procedure, on this 13th day of September, 2013.

/s/ James P. Rouhandeh
James P. Rouhandeh