UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                    :

RALPH S. JANVEY, IN HIS CAPACITY    :
AS COURT-APPOINTED RECEIVER FOR  :
THE STANFORD RECEIVERSHIP     :
ESTATE, AND THE OFFICIAL       :
STANFORD INVESTORS COMMITTEE,   :
                                    :   Civil Action No. 3:13-cv-00477-N
            *Plaintiffs*,       :   Hon. David C. Godbey
                                   :
       - against -        :   **ORAL ARGUMENT**
                                   :   **REQUESTED**
                                   :
PROSKAUER ROSE, LLP,         :
CHADBOURNE & PARKE, LLP, AND    :
THOMAS V. SJOBLOM,         :
                                     :
            *Defendants*.      :
                                     :
                                     :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

---

**DEFENDANT PROSKAUER ROSE LLP'S MOTION TO DISMISS AND
BRIEF IN SUPPORT OF ITS MOTION TO DISMISS
PLAINTIFFS' ORIGINAL COMPLAINT**

---

| | |
|---|---|
| Neil R. Burger | James P. Rouhandeh* |
| Bruce W. Collins | Daniel J. Schwartz* |
| CARRINGTON, COLEMAN, SLOMAN | Jonathan K. Chang* |
|   & BLUMENTHAL, L.L.P. | DAVIS POLK & WARDWELL LLP |
| 901 Main Street, Suite 5500 | 450 Lexington Avenue |
| Dallas, Texas 75202 | New York, New York 10017 |
| Telephone:  (214) 855-3000 | Telephone:  (212) 450-4000 |
| Facsimile:  (214) 855-1333 | Facsimile:  (212) 701-5800 |
| E-mail:  nburger@ccsb.com | E-mail:  rouhandeh@davispolk.com |
| | * admitted *pro hac vice* |

# TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ..................................................... 1

STATEMENT OF THE CASE..................................................... 4

PROCEDURAL HISTORY.......................................................... 7

LEGAL STANDARD.................................................................. 9

ARGUMENT ............................................................................... 10

I.    The Receiver's Claims Are Governed by Texas Procedural Law and New York Substantive Law .......................................................... 10

II.   The Complaint Should Be Dismissed as Untimely (Applies to All Claims)........ 14

      A.    The Receiver's Claims Are Subject to a Two-Year Limitations Period and Have Long Been Time-Barred .......................................... 14

      B.    The Anti-Fracturing Rule Bars the Receiver from Splitting His Claims to Evade the Two-Year Limitations Period ............................................... 18

      C.    The Receiver Cannot Benefit from Equitable Tolling.............................. 19

III.  The Receiver's Claims Are Barred by the Doctrine of In Pari Delicto (Applies to All Claims).................................................................... 21

IV.   The Receiver's Theory of Causation Fails as a Matter of Law (Applies to All Claims)............................................................................ 23

V.    The Complaint Does Not Allege the Knowledge Required for Conspiracy and Aiding and Abetting Liability (Applies to Counts 2, 3, 4, 5, and 6).................... 25

VI.   Aiding and Abetting Fraudulent Transfer Is Not a Valid Cause of Action Under New York Law (Applies to Count 3).......................................... 28

VII.  The Complaint Fails to State a Claim for Aiding and Abetting Conversion (Applies to Count 5)................................................................... 29

VIII. The Complaint Fails to State a Claim for Negligent Retention/Negligent Supervision (Applies to Count 7) ......................................................... 30

CONCLUSION.......................................................................... 31

REQUEST FOR ORAL ARGUMENT ............................................................................ 31

# TABLE OF AUTHORITIES

### CASES

PAGE(S)

9310 Third Ave. Assoc., Inc. v. Schaffer Food Serv. Co.,
    210 A.D.2d 207 (N.Y. App. Div. 1994) ................................................................. 29

In re Agape Litig.,
    773 F. Supp. 2d 298 (S.D.N.Y. 2011) ..................................................................... 26

Agostini v. Sobol,
    304 A.D.2d 395 (N.Y. App. Div. 2003) .................................................................. 28

Atlanta Shipping Corp. v. Chem. Bank,
    631 F. Supp. 335 (S.D.N.Y. 1986), aff'd, 818 F.2d 240 (2d Cir. 1987) .................. 29

Bell Atl. Corp. v. Twombly,
    550 U.S. 544 (2007) ......................................................................................... passim

Benchmark Elecs. Inc. v. J.M. Huber Corp.,
    343 F.3d 719 (5th Cir. 2003) ................................................................................... 11

In re Bernard L. Madoff Inv. Sec. LLC,
    721 F.3d 54 (2d Cir. 2013).......................................................................................21

Caplin v. Marine Midland Grace Trust Co. of N.Y.,
    406 U.S. 416 (1972) ................................................................................................. 22

Cobalt Multifamily Investors I, LLC v. Arden,
    857 F. Supp. 2d 349 (S.D.N.Y. 2011) ..................................................................... 22

Collins v. Morgan Stanley Dean Witter,
    224 F.3d 496 (5th Cir. 2000) ............................................................................ 10, 12

Cragie v. Hadley,
    1 N.E. 537 (N.Y. 1885) ........................................................................................... 21

Cypress/Spanish Ft. I, L.P. v. Prof'l Serv. Indus., Inc.,
    814 F. Supp. 2d 698 (N.D. Tex. 2011) ............................................................. 10, 11

Daly v. Llanes,
    30 F. Supp. 2d 407 (S.D.N.Y. 1998) ....................................................................... 30

Davis v. Johnson,
    158 F.3d 806 (5th Cir. 1998) ............................................................................ 19, 20

Deutsch v. Hoover, Bax & Slovacek, L.L.P.,
    97 S.W.3d 179 (Tex. App.—Houston [14th Dist.] 2002, no pet.) ............................ 18

Diversified Grp., Inc. v. Daugerdas,
    139 F. Supp. 2d 445 (S.D.N.Y. 2001) ...................................................................... 14

Drake v. McNair,
    993 A.2d 607 (D.C. 2010) ........................................................................................ 16

El Pollo Loco, S.A. de C.V. v. El Pollo Loco, Inc.,
    344 F. Supp. 2d 986 (S.D. Tex. 2004) ..................................................................... 13

EMC Mortg. Corp. v. MortgageIT, Inc.,
    No. CIV.A. 3:06-CV-0440N, 2006 WL 4286676 (N.D. Tex. Oct. 12, 2006) .......... 11

In re Enron Corp. Sec., Derivative & "ERISA" Litig.,
    540 F. Supp. 2d 800 (S.D. Tex. 2007) ..................................................................... 26

Equitable Recovery, L.P. v. Heath Ins. Brokers of Tex., L.P.,
    235 S.W.3d 376 (Tex. App.—Dallas 2007, pet. dism'd) ......................................... 16

Faulkner v. City of Yonkers,
    105 A.D.3d 899 (N.Y. App. Div. 2013) ................................................................... 23

Fed. Deposit Ins. Corp. v. LaMattina,
    27 Misc. 3d 1236(A), 910 N.Y.S.2d 762 (N.Y. Sup. Ct. 2010) ............................... 23

Fed. Deposit Ins. Corp. v. Porco,
    552 N.E.2d 158 (N.Y. 1990) ................................................................................... 28

Filler v. Hanvit Bank,
    339 F. Supp. 2d 553 (S.D.N.Y. 2004) ..................................................................... 28

Floyd v. CIBC World Markets, Inc.,
    426 B.R. 622 (S.D. Tex. 2009) .................................................................................12

Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC,
    479 F. Supp. 2d 349 (S.D.N.Y. 2007) ..................................................................... 26

Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte,
    536 F.3d 439 (5th Cir. 2008) ................................................................................... 13

Goddard v. Citibank, NA,
    No. 04-Civ. 531, 2006 WL 842925 (E.D.N.Y. Mar. 27, 2006) ................................ 30

Haase v. Abraham, Watkins, Nichols, Sorrels, Agosto & Friend, LLP,
  404 S.W.3d 75 (Tex. App.—Houston [14th Dist.] 2013, no pet.) ............................. 19

Harris & Greenwell, LLP v. Hilliard,
  No. 13-12-00089-CV, 2013 WL 7707847
  (Tex. App.—Corpus Christi Aug. 1, 2013, pet. granted, judgm't vacated w.r.m.) ... 19

Hirsch v. Arthur Andersen & Co.,
  72 F.3d 1085 (2d Cir. 1995) .................................................................................. 22

Irwin v. Dep't of Vet. Affairs,
  498 U.S. 89 (1990) ................................................................................................ 19

Janvey v. Alguire,
  647 F.3d 585 (5th Cir. 2011) ................................................................................. 22

Janvey v. Democratic Senatorial Campaign Comm., Inc.,
  712 F.3d 185 (5th Cir. 2013) ............................................................................. 15, 20

Janvey v. Proskauer Rose, LLP,
  --- F. Supp. 2d ----, No. 12-155 (CKK), 2014 WL 3668578
  (D.D.C. July 24, 2014) ...................................................................................2, 9, 17

Kaufman v. Cohen,
  307 A.D.2d 113 (N.Y. App. Div. 2003) .................................................................. 23

Kirschner v. KPMG LLP,
  938 N.E.2d 941 (N.Y. 2010) ............................................................................. 21, 23

Kolbeck v. LIT Am., Inc.,
  939 F. Supp. 240 (S.D.N.Y. 1996) ........................................................................ 26

Lam v. Thompson & Knight, LLP,
  No. CIV.A. 302CV2555-R, 2003 WL 22220666 (N.D. Tex. Sept. 25, 2003) .......... 14

Lewis v. Wells Fargo Bank,
  939 F. Supp. 2d 634 (N.D. Tex. 2013) ................................................................... 13

Lippe v. Bairnco Corp.,
  229 B.R. 598 (S.D.N.Y. 1999), aff'd, 99 F. App'x 274 (2d Cir. 2004) ................... 29

Lovelace v. Software Spectrum Inc.,
  78 F.3d 1015 (5th Cir. 1996) ............................................................................. 10, 28

Malarkey v. Piel,

7 A.D.3d 681 (N.Y. App. Div. 2004) ........................................................................ 30

Mecca v. Shang,
    258 A.D.2d 569 (N.Y. App. Div. 1999) .................................................................. 30

Mfrs. Hanover Trust Co. v. Chem. Bank,
    160 A.D.2d 113 (N.Y. App. Div. 1990) .................................................................. 29

Navarro v. Grant Thornton, LLP,
    316 S.W.3d 715 (Tex. App.—Houston [14th Dist.] 2010, no pet.) .......................... 14

Ordonez v. Long Island R.R. Co.,
    112 A.D.2d 923 (N.Y. Sup. Ct. 1985) .................................................................... 24

Paradigm BioDevices, Inc. v. Viscogliosi Bros.,
    842 F. Supp. 2d 661 (S.D.N.Y. 2012) .................................................................... 28

PER Grp., L.P. v. Dava Oncology, L.P.,
    294 S.W.3d 378 (Tex. App.—Dallas 2009, no pet.) ................................................ 12

Regions Bank v. Wieder & Mastroianni, P.C.,
    526 F. Supp. 2d 411 (S.D.N.Y. 2007) .................................................................... 29

Republic of Haiti v. Duvalier,
    211 A.D.2d 379 (N.Y. App. Div. 1995) .................................................................. 29

Robinson v. Crown Cork & Seal Co.,
    335 S.W.3d 126 (Tex. 2010) .................................................................................. 10

Roselink Investors, LLC v. Shenkman,
    386 F. Supp. 2d 209 (S.D.N.Y. 2004) .................................................................... 28

Rudolf v. Shayne, Dachs, Stanisci, Corker & Sauer,
    867 N.E.2d 385 (N.Y. 2007) ............................................................................ 23, 24

S.V. v. R.V.,
    933 S.W.2d 1 (Tex. 1996) ............................................................................... 14, 19

Shivers v. Siegel,
    11 A.D.3d 447 (N.Y. App. Div. 2004) .................................................................... 30

Sitar v. Sitar,
    50 A.D.3d 667 (N.Y. App. Div. 2008) .................................................................... 30

In re SMEC, Inc.,

160 B.R. 86 (M.D. Tenn. 1993) ..................................................................14

Stanfield Offshore Leveraged Assets, Ltd. v. Metro. Life Ins. Co.,
    64 A.D.3d 472 (N.Y. App. Div. 2009) ................................................ 23

In re Stanford Entities Sec. Litig.,
    655 F. Supp. 2d 1360 (J.P.M.L. Mar. 1, 2012) ................................... 8

Strohm v. Clearone Commc'ns, Inc.,
    308 P.3d 424 (Utah 2013) .................................................................. 13

Sykes v. Pub. Storage Inc.,
    425 F. App'x 359 (5th Cir. 2011) ...................................................... 14

In re The Bennett Funding Grp., Inc.,
    336 F.3d 94 (2d Cir. 2003).................................................................21

In re The Mediators, Inc.,
    105 F.3d 822 (2d Cir. 1997) .............................................................. 23

Tigue Inv. Co. v. Chase Bank of Tex., N.A.,
    Civil Action No. 3:03-cv-2490-N, 2004 WL 3170789
    (N.D. Tex. Nov. 15, 2004) ................................................................. 26

Trousdale v. Henry,
    261 S.W.3d 221 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) .................. 19

Tsafatinos v. Lee David Auerbach, P.C.,
    80 A.D.3d 749 (N.Y. App. Div. 2011) ............................................... 30

ULU v. Turkotrans Int'l Transp. Co.,
    No. 109367/08, 2011 WL 2680780 (N.Y. Sup. Ct. July 1, 2011) ............................ 23

In re United Servs. Auto. Ass'n,
    307 S.W.3d 299 (Tex. 2010) .............................................................. 17

Vt. Mut. Ins. Co. v. McCabe & Mack, LLP,
    105 A.D.3d 837 (N.Y. App. Div. 2013) ............................................. 30

Walch v. Adjutant Gen.'s Dep't of Tex.,
    533 F.3d 289 (5th Cir. 2008) ...............................................................6

Walden Terrace, Inc. v. Broadwall Mgmt. Corp.,
    213 A.D.2d 630 (N.Y. App. Div. 1995) ............................................. 30

Welk v. Simpkins,
    402 F. App'x 15 (5th Cir. 2010) ................................................................ 14

Wight v. BankAmerica Corp.,
    219 F.3d 79 (2d Cir. 2000) ..................................................................... 21

Woolley v. Clifford Chance Rogers & Wells, L.L.P.,
    No. CIV.A. 3:01-CV-2185, 2004 WL 57215 (N.D. Tex. Jan. 5, 2004) .................... 10

Zaruba v. Boethel,
    393 S.W.2d 716 (Tex. App.—Corpus Christi 1965, no writ) .................................... 16

Zutty v. Rye Select Broad Mkt. Prime Fund, L.P.,
    No. 113209/09, 2011 N.Y. Misc. LEXIS 5596 (N.Y. Sup. Ct. Apr. 15, 2011) ........ 26

S<span style="font-variant:small-caps">TATUTES</span>

Fed. R. Civ. P. 9(b) ...................................................................................25, 26, 30

Fed. R. Civ. P. 12(b)(6)..................................................................................1

Tex. Civ. Prac. & Rem. Code § 16.064(b) ................................................... 17

O<span style="font-variant:small-caps">THER</span> A<span style="font-variant:small-caps">UTHORITIES</span>

4 Ronald E. Mallen et al., Legal Malpractice § 37:8 (2014) .................................13, 14, 15

7 Jefferson James Davis et al., Tex. Jur. 3d Attorneys at Law § 318 (2014) ..............18, 19

51 Romualdo P. Eclavea et al., Am. Jur. 2d Limitation of Actions § 263 (2014) .............17

Defendant Proskauer Rose LLP ("Proskauer") moves pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the Original Complaint (the "Complaint") filed by plaintiffs Ralph S. Janvey and the Official Stanford Investors Committee (collectively, the "Receiver")[1] for failure to state a claim upon which relief can be granted.

## PRELIMINARY STATEMENT

Almost immediately after the revelation and demise of the Stanford Ponzi scheme in February 2009, the Court-appointed Receiver for the Stanford Receivership Estate began taking voluminous pre-complaint discovery from Proskauer. Despite this immediate and open access to Proskauer's files and attorneys, the Receiver delayed filing this action for nearly four years, and even with all of the discovery he received, still cannot state a claim. Because this action is untimely and the Receiver's causes of action are fatally deficient for numerous reasons, the claims against Proskauer must be dismissed with prejudice.

<u>First</u>, the Receiver's causes of action against Proskauer are time-barred. The applicable Texas statute of limitations for negligence is two years from discovery, but the Receiver did not file this action for nearly four years after his appointment. On their face, the Receiver's claims were filed years too late to remain viable. Nor can the Receiver evade the statute of limitations by trying to plead his legal malpractice claims as fraud claims. Texas procedure prohibits former law-firm clients from "fracturing" their untimely negligence claims in this manner.

Moreover, the Receiver's claims cannot be saved by the discovery rule or any tolling, which is inapplicable here, given that the Receiver has known of his claims for years—a fact confirmed by the Receiver's own conduct in this and related litigation. As early as March 2009,

---

[1] Because the Official Stanford Investors Committee's claims in this action are being brought solely in its capacity as an assignee of the Receiver (Compl. ¶ 3), this brief refers to the Receiver and the Official Stanford Investors Committee collectively as the "Receiver."

the Receiver interviewed defendant Thomas Sjoblom, who was a partner at Proskauer at the time, and received the entirety of Proskauer's Stanford-related files, amounting to 14 boxes of materials.

Although the Receiver knew or should have known of his claims no later than the date of James Davis's August 27, 2009 guilty plea—which occurred months after the Receiver was given the documents on which he based his claims against Proskauer—he waited until January 2012 to assert any claims against Proskauer, Sjoblom, or Sjoblom's prior law firm Chadbourne & Parke LLP ("Chadbourne").  Apparently recognizing that the two-year limitations period applicable to legal malpractice claims under Texas law had by that point lapsed, the Receiver sued in the U.S. District Court for the District of Columbia—which lacked jurisdiction over the Receiver's claims—in an attempt to benefit from that jurisdiction's longer limitations period.  As the District of Columbia found in dismissing that case, the "timing of [the Receiver's] suit . . . suggest[ed] that [the Receiver was] attempting to circumvent concerns regarding the constraints of the statute of limitations in Texas."  Janvey v. Proskauer Rose, LLP, --- F. Supp. 2d ----, No. 12-155 (CKK), 2014 WL 3668578, at * 5 (D.D.C. July 24, 2014).  The court thus concluded the Receiver's lawsuit was filed in the District of Columbia "either in bad faith and/or as an attempt at forum shopping."  Id.  The only difference between this case and the one the Receiver improperly filed in the District of Columbia is that this case was commenced over a year later, making the Receiver's untimely claims—which he has improperly tried to fracture into non-barred claims—even more stale.

Second, under New York substantive law, which governs this dispute, the Receiver's claims are barred by the doctrine of in pari delicto, which prevents wrongdoers and their successors—including receivers—from seeking to recover for harm caused by the wrongdoer.

The only persons who even arguably can sue are the injured creditors, and they filed their own putative class action lawsuit against defendants based on essentially the same allegations over five years ago.  (See Pls.' Original Class Action Compl., Troice v. Proskauer Rose LLP, No. 3:09-CV-1600-N (N.D. Tex. Aug. 27, 2009), ECF No. 1.) [2]  Thus, as numerous courts have held in factually analogous circumstances, the claims should be dismissed under the doctrine of in pari delicto.

Third, the Receiver has not—and cannot—allege a plausible theory of causation.  The Receiver claims that Sjoblom somehow prevented the U.S. Securities and Exchange Commission (the "SEC") from detecting the Stanford Ponzi scheme and delayed the SEC's prosecution of those involved by claiming that the SEC had no jurisdiction because Stanford's CDs were issued by an Antiguan bank.  The Complaint, however, makes clear that nothing Sjoblom said or did possibly—much less plausibly—prevented the SEC from taking action.  Indeed, the Complaint alleges that the SEC believed Stanford was running a Ponzi scheme as early as 1997—eight years before Sjoblom was first engaged by the Stanford Financial Group ("Stanford Financial")—and had determined at that time that jurisdiction was a "major issue" in any potential prosecution.  The Receiver therefore cannot plead that anything Sjoblom said or did was the proximate cause of any damages that resulted from the SEC's delay in prosecuting Stanford.

---

[2] Proskauer's motion to dismiss the Troice action is sub judice before this Court.  (See Def. Proskauer Rose LLP's Mot. to Dismiss and Brief in Supp. of its Mot. to Dismiss Pls.' Second Am. Class Action Compl., Troice v. Proskauer Rose LLP, No. 3:09-CV-1600-N (N.D. Tex. Dec. 11, 2009), ECF No. 31; Decl. of James P. Rouhandeh in Supp. of Def. Proskauer Rose LLP's Mot. to Dismiss Pls.' Second Am. Class Action Compl., Troice v. Proskauer Rose LLP, No. 3:09-CV-1600-N (N.D. Tex. Dec. 11, 2009), ECF No. 32; Pls.' Joint Resp. and Brief in Opp'n to Defs. Mot. to Dismiss Pls.' Second Am. Compl. and, in the Alternative, Mot. for Leave to Am., Troice v. Proskauer Rose LLP, No. 3:09-CV-1600-N (N.D. Tex. Feb. 1, 2010), ECF No. 50; Def. Proskauer Rose LLP's Reply Brief in Further Supp. of its Mot. to Dismiss Pls.' Second Am. Class Action Compl., Troice v. Proskauer Rose LLP, No. 3:09-CV-1600-N (N.D. Tex. Feb. 1, 2010), ECF No. 64.)

<u>Fourth</u>, the Complaint fails to allege that Sjoblom had actual knowledge of Stanford's fraud. To the contrary, the Complaint demonstrates that Sjoblom was himself misled by Stanford and his operatives and that, when he ultimately learned that Stanford was engaged in a fraud, Sjoblom (and Proskauer) promptly withdrew from the representation and disaffirmed all prior representations made on behalf of his clients. Such allegations cannot support an inference that Sjoblom had the actual knowledge of Stanford's fraud required to sustain the aiding and abetting claims asserted in this case.

For these and other reasons set forth below, the Complaint should be dismissed in its entirety with prejudice.

## STATEMENT OF THE CASE

Plaintiff Ralph S. Janvey was appointed the Receiver for the Stanford Receivership Estate by this Court in February 2009. (Compl. ¶¶ 2, 254.) The Receiver's co-plaintiff, the Official Stanford Investors Committee, was formed on August 10, 2010 (<u>see</u> <u>id.</u> ¶ 3) and is asserting claims in this case solely as an assignee of the Receiver, <u>see</u> <u>supra</u> note 1.

Proskauer is an international law firm organized under the laws of the State of New York. (Compl. ¶ 4.) From 2006 to 2009, Sjoblom was a partner at Proskauer. (<u>Id.</u> ¶ 7.) In June 2005, Stanford Financial retained Sjoblom and his prior law firm, Chadbourne, to represent it and certain of its affiliates in connection with an SEC investigation. (<u>Id.</u> ¶¶ 97, 115; <u>see also</u> App. at 3-12 [Rouhandeh Decl., Ex. 1] (August 23, 2005 engagement letter between Chadbourne and Stanford Financial).) According to the Complaint, Sjoblom "continued" that representation when he left Chadbourne and joined Proskauer in the summer of 2006. (Compl. ¶ 9; <u>see also</u> <u>id.</u> ¶¶ 7, 144; App. at 13-17 [Rouhandeh Decl., Ex. 2] (September 6, 2006 engagement letter between Proskauer and Stanford Financial).) Sjoblom and Proskauer withdrew from

4

representing Stanford Financial and its affiliates on February 11, 2009[3]—mere days after

Sjoblom learned of Stanford's fraudulent conduct—and, on February 13, 2009, disaffirmed to

the SEC all representations made in connection with that representation.  (Compl. ¶¶ 251-52.)

Days later, the SEC commenced an enforcement action against Stanford Financial, Allen

Stanford, and a number of other individuals involved in the Stanford Ponzi scheme.  See SEC

Charges R. Allen Stanford, Stanford International Bank for Multi-Billion Dollar Investment

Scheme, U.S. Securities and Exchange Commission (Feb. 17, 2009), available

at http://www.sec.gov/news/press/2009/2009-26.htm.

The Complaint asserts seven claims against defendants on behalf of the Stanford

Receivership Estate:  (1) professional negligence; (2) aiding, abetting, or participation in a

breach of fiduciary duties; (3) aiding, abetting, or participation in a fraudulent scheme; (4)

aiding, abetting, or participation in fraudulent transfers; (5) aiding, abetting, or participation in

conversion; (6) civil conspiracy; and (7) negligent retention/supervision.  (Compl. ¶¶ 256-68.)

The crux of the Receiver's claims is that defendants helped Allen Stanford evade detection by

the SEC.  (See, e.g., Compl. ¶ 95 (alleging that Sjoblom participated in a "conspiracy to obstruct

the SEC's investigation" and "delay[ed] and obstruct[ed] the investigation").)

Despite the Receiver's theory of liability, the majority of the Complaint's allegations

have nothing to do with Proskauer or Sjoblom; instead, they are directed to the Stanford fraud

more generally.  The Complaint, for example, describes in detail the SEC Office of Inspector

General's ("OIG") report, issued on March 31, 2010, which catalogues a series of inspections,

---

[3] The Complaint incorrectly states that Sjoblom and Proskauer withdrew on February 12, 2009 (Compl. ¶ 251), but the precise date of that withdrawal is immaterial for purposes of this motion.

examinations, and investigations by various offices within the SEC that concluded that Allen

Stanford was running a Ponzi scheme.[4]  More specifically, as alleged in the Complaint:

- In August 1997, after an examination, the SEC staff determined that Stanford International Bank Ltd. ("SIBL") "'appeared' to be misrepresenting its CDs as 'safe and secure' investment" and the Assistant District Administrator of the SEC's examination program in Fort Worth "concluded that the CDs' interest rates, SIBL's claimed investment returns, and SIBL's purportedly conservative investment approach all served as 'red flags' of a Ponzi scheme." (Compl. ¶ 76.)

- The SEC's branch chief believed that there were red flags "that Allen Stanford 'was possibly stealing from investors.'"  (Id. ¶ 77.)

- Between July and September 1998, the SEC received requests for access to its file on Stanford Financial's affiliated broker-dealer company Stanford Group Company ("SGC") "from the FBI, the Department of Justice, the IRS, and the U.S. Customs Service."  (Id. ¶ 78.)

- In June 1998, an investment adviser examination of SGC identified "very suspicious" activity and identified possible violations of the Investment Advisers Act of 1940.  (Id. ¶¶ 80-81.)

- In November 2002, an investment adviser examination of SGC identified a number of red flags and assigned Stanford the highest risk rating possible, because the staff had "suspicions that SIBL was a Ponzi scheme."  (Id. ¶ 82.)

- In October 2004, a broker-dealer examination of Stanford found the company to be a "'high regulatory risk' and suspected that SIBL's CD offerings 'may in fact be a very large [P]onzi scheme.'"  (Id. ¶ 86.)

The allegations that are actually directed at Proskauer—as opposed to Allen Stanford and

his web of companies—acknowledge that Sjoblom took steps to thwart Stanford's fraud.

Specifically, before learning of the fraud, Sjoblom:

---

[4] A copy of the OIG Report is attached as Exhibit 3 to the accompanying Declaration of James P. Rouhandeh in Support of Defendant Proskauer Rose LLP's Motion to Dismiss (hereinafter, "Rouhandeh Decl."). Because the Complaint refers to and relies upon the OIG Report, this Court may consider the Report without converting this motion into a motion for summary judgment.  See Walch v. Adjutant Gen.'s Dep't of Tex., 533 F.3d 289, 293-94 (5th Cir. 2008).

- Advised Stanford Financial's general counsel that the company should "hire a third-party consultant to audit SIBL's portfolio records and present its findings to the SEC staff." (Id. ¶ 227.)

- Requested that Stanford Financial obtain an opinion from outside Antiguan counsel on Antiguan privacy laws. (Id. ¶ 228.)

And, immediately upon learning of the fraud, Sjoblom:

- Advised "that Stanford Financial could not continue to use SIBL's annual report or marketing materials." (Id. ¶ 234.)

- Advised Stanford Financial's general counsel that all sales of the SIBL CDs should cease in the United States "and there should be no further distributions of SIBL's disclosure statements, annual reports, and marketing materials" once he learned that Tier 3 contained substantial amounts of real estate and loans to Stanford. (Id. ¶ 241; see ¶¶ 232-34, 238.)

- Recommended that the company conduct an internal investigation. (Id. ¶ 243.)

Then, on February 12, 2012, two days after Laura Holt's testimony to the SEC, Sjoblom withdrew as counsel to Stanford Financial and disaffirmed all prior written and oral representations to the SEC. (Id. ¶¶ 248, 251-52.)

## PROCEDURAL HISTORY

Prior to filing this action, the Receiver had filed fifty-eight actions in federal court on behalf of the Stanford Receivership Estate. (See App. at 176-88 [Rouhandeh Decl., Ex. 4] (evidencing search results in database of federal court dockets).) Fifty-seven of those lawsuits were filed in the Northern District of Texas. (See id.) Only one lawsuit—a predecessor to this lawsuit involving the same claims, the same allegations, and the same parties ("Janvey I")—was initially filed in the U.S. District Court for the District of Columbia. (See id.)

Janvey I was not the first time that Proskauer, Chadbourne, and Sjoblom were sued for allegedly helping Allen Stanford perpetrate his Ponzi scheme. In August 2009, a putative class of Stanford investors sued Proskauer, Chadbourne, and Sjoblom in Troice v. Proskauer Rose

7

LLP, asserting claims premised on the very same theory that the defendants somehow aided Stanford in avoiding the SEC's detection.  (Pls.' Original Class Action Compl., Troice v. Proskauer Rose LLP, No. 3:09-CV-1600-N (N.D. Tex. Aug. 27, 2009), ECF No. 1; compare, e.g., Pls.' Second Am. Class Action Compl. ¶¶ 109-15, Troice v. Proskauer Rose LLP, No. 3:09-CV-1600-N (N.D. Tex. Oct. 9, 2009), ECF No. 6, with Compl. ¶¶ 261, 266-71.)  That is no surprise, given that the Troice plaintiffs are represented by the same lawyers who serve as "proposed replacement counsel" for the Receiver,[5] and who represent the Committee in this action (and represented the Committee in Janvey I).[6]

On March 1, 2012, the Judicial Panel on Multidistrict Litigation (the "JPML") conditionally transferred Janvey I to this Court "for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407" with the In re Stanford Entities Securities Litigation. (Conditional Transfer Order (CTO-7), In re Stanford Entities Sec. Litig., 655 F. Supp. 2d 1360 (J.P.M.L. Mar. 1, 2012), ECF No. 155.)  Defendants thereafter moved to dismiss for lack of subject matter jurisdiction.  The Receiver, in turn, acknowledged that there was no subject matter jurisdiction, but asked the Court to recommend that the JPML remand the action back to the District of Columbia so that it could be transferred back to this Court in the "interest of justice"

---

[5] The Receiver has moved to replace his counsel of record, Hohmann, Taube & Summers, LLP, with Neligan Foley LLP.  [ECF No. 33.]  Proskauer has opposed that motion, and has cross-moved to compel discovery concerning whether confidential government information was improperly shared by Hohmann, Taube with Neligan Foley and/or the Receiver.  [ECF No. 37.]

[6] As the Troice plaintiffs themselves acknowledged in a recent filing, the only difference between the allegations in this case and in Troice is that the Complaint in this case "contains more detailed factual allegations" because it "was largely drafted by [the Troice plaintiffs'] counsel based on records belonging to the Stanford estate."  (Pls.' Supp. Briefing in Resp. and Opp. to Defs.' Mots. to Dismiss Pls.' Second Am. Compl., Troice v. Proskauer Rose LLP, No. 3:09-CV-1600-N (N.D. Tex. Sept. 23, 2014), ECF No. 143.)  Indeed, Castillo Snyder, P.C., the Official Stanford Investors Committee's counsel in this case, signed the original Troice complaint.  (See Pls.' Orig. Class Action Compl., Troice v. Proskauer Rose LLP, No. 3:09-CV-1600-N (N.D. Tex. Aug. 27, 2009), ECF No. 1.)  Neligan Foley LLP—co-counsel for the Official Stanford Investors Committee and "proposed replacement counsel" for the Receiver—also signed the Second Amended Complaint in Troice, which was filed on October 9, 2009.  (See Pls.' Second Am. Class Action Compl., Troice v. Proskauer Rose LLP, No. 3:09-CV-1600-N (N.D. Tex. Oct. 9, 2009), ECF No. 6.)

pursuant to 28 U.S.C. § 1631.  (Pls.' Joint Response to Defs.' Mots. to Dismiss Pls.' First Am.

Compl., Mot. for Recommendation of Remand and Mot. to Stay Pending Remand and Transfer

of This Action, Janvey v. Proskauer Rose LLP, No. 3:12-CV-0644-N (N.D. Tex. Dec. 12, 2012),

ECF No. 55.)  The Receiver also commenced this action as a "backup" to Janvey I by filing the

Complaint on January 31, 2013.

On August 21, 2013, this Court transferred Janvey I back to the U.S. District Court for

the District of Columbia for a determination as to "whether a transfer . . . [was] in the interest of

justice."  (Order at 6, Janvey v. Proskauer Rose LLP, No. 3:12-CV-0644-N (N.D. Tex. Aug. 21,

2013), ECF No. 71.)  After briefing, the District of Columbia concluded transfer was not in the

interest of justice because, among other things, the Receiver's decision to file only one lawsuit in

the District of Columbia "suggest[ed] that Plaintiffs may have been aware that the District of

Columbia was an improper forum" but nevertheless attempted to invoke its jurisdiction "in bad

faith and/or as an attempt at forum shopping . . . to circumvent concerns regarding the constraints

of the statute of limitations in Texas."  Janvey, 2014 WL 3668578, at *5.

Following that dismissal, the question of whether the Receiver has set forth any

cognizable and plausible claim that Proskauer allegedly helped perpetuate the Stanford fraud is

ripe for this Court's resolution.

## LEGAL STANDARD

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the

Court must determine whether the complaint's allegations can "nudge[] the[ plaintiffs'] claims

across the line from conceivable to plausible."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570

(2007).  That analysis is informed by the factual allegations in the complaint, which are accepted

as true for purposes of the motion, as well as documents "attache[d] to a motion to dismiss . . .

9

[that] are referred to in the plaintiff's complaint and are central to [the plaintiff's] claim."

Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498-99 (5th Cir. 2000); Lovelace v.

Software Spectrum Inc., 78 F.3d 1015, 1017 (5th Cir. 1996) (courts may consider

"documents . . . incorporated in the complaint" on a motion to dismiss).  The Court may also

"consider matters of which [it] may take judicial notice."  Lovelace, 78 F.3d at 1017-18.

## ARGUMENT

The Complaint should be dismissed in its entirety because the Receiver's causes of action

are untimely under the relevant statute of limitations, the claims are barred as a matter of law

under the doctrine of in pari delicto, and the Complaint fails to plead causation or knowledge,

both of which are critical elements of the Receiver's claims.  Moreover, certain of the Receiver's

claims do not exist under governing law or are otherwise improperly pleaded.

### I.     The Receiver's Claims Are Governed by Texas Procedural Law and New York Substantive Law

The Receiver's claims are subject to Texas's statutes of limitations, under which they are

untimely, and New York substantive law, under which they are barred by the doctrine of in pari

delicto and suffer from other fundamental deficiencies.

Texas courts apply Texas procedural law to procedural matters.  Cypress/Spanish Ft. I,

L.P. v. Prof'l Serv. Indus., Inc., 814 F. Supp. 2d 698, 708 (N.D. Tex. 2011) (Boyle, J.).

"[B]ecause . . . limitations are procedural rules," Texas limitations law determines the timeliness

of the Receiver's claims.  Order at 10, Janvey v. Adams & Reese, No. 3:12-CV-0495-N (N.D.

Tex. Sept. 11, 2013), ECF No. 58; see Robinson v. Crown Cork & Seal Co., 335 S.W. 3d 126,

141 (Tex. 2010) (observing that Texas regards "[s]tatutes of limitations [as being] procedural"

(quotation marks omitted)); Woolley v. Clifford Chance Rogers & Wells, L.L.P., No. CIV.A.

3:01-CV-2185, 2004 WL 57215, at *3 (N.D. Tex. Jan. 5, 2004) (Fitzwater, J.) ("Several Texas

appellate courts have considered which state's statutes of limitation should apply, and they have uniformly held that statutes of limitation are procedural and therefore Texas law controls.").

In determining the applicable substantive law, this Court applies Texas's choice-of-law rules.  Order at 9, Janvey v. Adams & Reese, No. 3:12-CV-0495-N (N.D. Tex. Sept. 11, 2013), ECF No. 58.  Here, application of those principles points to New York substantive law because Stanford Financial engaged Proskauer with the understanding that New York law would govern disputes stemming from Sjoblom's relationship with the Stanford entities.  See Benchmark Elecs., Inc. v. J.M. Huber Corp., 343 F.3d 719, 726 (5th Cir. 2003) (respecting the "parties' determination that their agreement be construed under New York law"); Cypress/Spanish Ft. I, 814 F. Supp. 2d at 708 ("Texas courts typically apply the substantive law of a contractually chosen state"); EMC Mortg. Corp. v. MortgageIT, Inc., No. CIV.A. 3:06-CV-0440N, 2006 WL 4286676, at *2 n.1 (N.D. Tex. Oct. 12, 2006) (Godbey, J.) (applying New York law because "[t]he contract in question contain[ed] a choice of law provision specifying that New York law governs the resolution of disputes arising under the contract").

There can be no dispute that Sjoblom and Stanford Financial initially selected New York substantive law to govern their relationship.  Sjoblom began representing Stanford Financial in 2005.  (Compl. ¶¶ 7, 115, 146.)  On August 23, 2005, Stanford Financial signed an engagement letter specifying that New York law would govern Stanford Financial's relationship with Sjoblom and his law firm, which at that time was Chadbourne.  (See id. ¶ 115 (describing engagement letter); App. at 3-12 [Rouhandeh Decl., Ex. 1].)[7]  The engagement letter stated that

---

[7] This Court may consider Stanford Financial's engagement letters with Chadbourne and Proskauer without converting Proskauer's motion to a motion for summary judgment because Stanford Financial's retention of those law firms is expressly referred to in the Complaint and is integral to the Receiver's claim that "Proskauer . . . [is] liable for the tortious acts of . . . Sjoblom."  (Compl. ¶ 269; see id. ¶ 115 ("On August 23, 2005, . . . Sjoblom executed the engagement letter on behalf of Chadbourne, agreeing to represent Stanford Financial and its affiliates

Stanford Financial's "attorney-client and contractual relationships [with Sjoblom], and any

disputes relating to [its] bills or charges, are to be governed by the laws of the State of New York

(exclusive of its conflict of law principles)." (App. at 11 [Rouhandeh Decl., Ex. 1].)

Nor can there be any dispute that the parties intended to continue all of the terms of their

relationship—including its application of New York substantive law—once Sjoblom moved to

Proskauer in the summer of 2006. (Compl. ¶ 9.) The Complaint itself expressly alleges that

following Sjoblom's move and "while a partner at Proskauer, Sjoblom <u>continued</u> to defend

Stanford Financial in these investigations [by the SEC and FINRA]." (<u>Id.</u> (emphasis added).)

Indeed, in connection with Sjoblom's move to Proskauer, Sjoblom and Stanford Financial

documented their continued relationship with a new engagement letter that began: "Thank you

very much for permitting me to <u>continue</u> representing the Stanford Financial Group and its

affiliate companies in the investigation by the . . . United States Securities and Exchange

Commission." (App. at 12 [Rouhandeh Decl., Ex. 2] (emphasis added).)

Because Stanford Financial expressly agreed to "continue" its relationship with Sjoblom,

the terms of the Chadbourne engagement letter continued to govern the relationship to the extent

they were not superseded by the new Proskauer engagement letter. <u>See, e.g.</u>, <u>PER Grp., L.P. v.</u>

<u>Dava Oncology, L.P.</u>, 294 S.W.3d 378, 385-86 (Tex. App.—Dallas 2009, no pet.) (holding that a

provision from one agreement became part of the subsequent agreement because the parties

agreed to "continue to be bound" by the prior agreement). Moreover, the Proskauer engagement

letter expressly provided that New York professional responsibility rules would govern

---

SGC and SIBL through all stages of the SEC's ongoing investigation."); <u>see</u> <u>id.</u> ¶ 144 (referencing the Proskauer engagement letter); <u>see</u> <u>Collins v. Morgan Stanley Dean Witter</u>, 224 F.3d 496, 498-99 (5th Cir. 2000) (courts may consider documents when they are "referred to in the plaintiff's complaint and are central to [the plaintiff's] claim"); <u>Floyd v. CIBC World Markets, Inc.</u>, 426 B.R. 622, 633 (S.D. Tex. 2009) (considering an engagement letter because it was "central to Plaintiff's claim").)

Sjoblom's representation.  (App. at 13, 15 [Rouhandeh Decl., Ex. 2].)  Thus, although the

Proskauer engagement letter does not contain an express choice-of-law provision, the choice-of-

law provision in the Chadbourne engagement "continued" to govern the parties' relationship

when Sjoblom left Chadbourne for Proskauer.  See Strohm v. ClearOne Commc'ns, Inc., 308

P.3d 424, 442 (Utah 2013) (holding new engagement letter "alter[ed] parties' engagement

agreement only to the extent that its provisions conflict[ed] with or change[d] the provisions" of

the prior engagement agreement where attorney continued representation of client after moving

to new law firm).

Courts routinely enforce choice-of-law clauses in engagement letters so long as the

selected jurisdiction's law "bears a reasonable relationship to the parties."  4 Ronald E. Mallen et

al., Legal Malpractice § 37:8 (2014); see id. ("The parties may contract for a particular state's

law to apply to all issues or a specified issue.  Such an agreement will be honored, if the state

from which the law is selected bears a reasonable relationship to the parties . . . ."); see Ginter ex

rel. Ballard v. Belcher, Prendergast & Laporte, 536 F.3d 439, 445 (5th Cir. 2008); El Pollo Loco,

S.A. de C.V. v. El Pollo Loco, Inc., 344 F. Supp. 2d 986, 988-89 (S.D. Tex. 2004).  Here, the

parties' selection of New York law is appropriate given that Sjoblom is admitted to practice in

New York,[8] and Chadbourne and Proskauer are both headquartered in New York.  (Compl. ¶¶ 4-

5.)  Indeed, as noted above, the Proskauer engagement letter made repeated reference to the New

York law governing the relationship between attorneys and clients.  (App. at 13, 15 [Rouhandeh

Decl., Ex. 2].)  Thus, New York not only "bears a reasonable relationship to the parties," but also

has a significant interest in regulating the conduct of the defendants in this case.  Accord Legal

---

[8] The Court may take judicial notice of Sjoblom's admission to practice in New York.  Lewis v. Wells Fargo Bank, N.A., 939 F. Supp. 2d 634, 637 n.3 (N.D. Tex. 2013) (Fish, J.) ("The court may take judicial notice of matters of public record.").  Sjoblom was also admitted to practice in the District of Columbia, Pennsylvania, and Minnesota.

<u>Malpractice</u> § 37:8 (explaining lawyer's "domicile [is] usually the appropriate" choice of law in a legal malpractice action "because of that forum's interest in applying its standards").

Accordingly, the Court should defer to the parties' selection of New York law and apply New York substantive law to the Receiver's claims.[9]

## II.     The Complaint Should Be Dismissed as Untimely (Applies to All Claims)

### A.     The Receiver's Claims Are Subject to a Two-Year Limitations Period and Have Long Been Time-Barred

Four of the Receiver's claims are plainly time-barred under Texas's applicable two-year statute of limitations.  Under Texas law, the Receiver's claims for negligence (Count 1), aiding and abetting conversion (Count 5), civil conspiracy (Count 6), and negligent retention (Count 7) are all subject to two-year statutes of limitations.[10]  This action was commenced on January 31, 2013.  Thus, in order to be timely filed, the claims could not have accrued prior to January 31, 2011.  Accrual occurs when a plaintiff knows or should know about its claims.  See <u>S.V. v. R.V.</u>, 933 S.W.2d 1, 4 (Tex. 1996).  Here, the Receiver knew or should have known about his claims well before January 31, 2011—more than two years before this action was filed.

_____

[9] Although the parties' selection of New York law obviates the need for this Court to consider which jurisdiction has the most significant relationship in this case, New York law would apply even if the parties had not included a choice-of-law clause as part of their contractual agreement because New York has a significant interest in regulating the defendants' conduct.  See <u>Lam v. Thompson & Knight, LLP</u>, No. CIV.A. 302CV2555-R, 2003 WL 22220666, at *3 (N.D. Tex. Sept. 25, 2003) (Buchmeyer, J.) (observing that Texas's "'most significant relationship' test considers the qualitative nature and relative importance of various contacts to determine which state's substantive law to apply"); <u>Diversified Grp., Inc. v. Daugerdas</u>, 139 F. Supp. 2d 445, 453 (S.D.N.Y. 2001) (holding that Illinois law applied since Illinois's interest in regulating the conduct of its lawyers outweighed New York's interest in protecting its citizens from harm that results from engaging with out-of-state attorneys); <u>In re SMEC, Inc.</u>, 160 B.R. 86, 91 (M.D. Tenn. 1993) (applying the law of the jurisdiction in which the attorneys were licensed to practice since the attorneys "conducted themselves according to [that jurisdiction's] laws and professional codes"); <u>accord</u> <u>Legal Malpractice</u> § 37:8  (explaining lawyer's "domicile is usually the appropriate" choice of law in a legal malpractice action "because of that forum's interest in applying its standards").

[10]  See <u>Sykes v. Pub. Storage Inc.</u>, 425 F. App'x 359, 362 (5th Cir. 2011) (affirming that the plaintiff's conversion claim has a two-year statute of limitations); <u>Welk v. Simpkins</u>, 402 F. App'x 15, 17 (5th Cir. 2010) (two-year statute of limitations for negligence); <u>Navarro v. Grant Thornton, LLP</u>, 316 S.W.3d 715, 719 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (two-year statute of limitations for conspiracy to defraud).

The Fifth Circuit has already recognized that the Receiver could have discovered his claims no later than August 27, 2009 (and, as demonstrated below, actually months earlier), when James Davis entered into a plea agreement that "disclosed facts indicating the true nature and duration of Stanford's operation of a massive Ponzi scheme."  See Janvey v. Democratic Senatorial Campaign Comm., Inc., 712 F.3d 185, 197 (5th Cir. 2013) (rejecting argument that Receiver was on notice of claims by February 19, 2009 because there was "no evidence in the record to indicate that the Receiver . . . had developed or could have reasonable developed knowledge or probative evidence of the true nature and duration of the Ponzi scheme prior to Davis's guilty plea on August 27, 2009").  Indeed, many of the allegations in the Complaint are based on information disclosed in Davis's plea agreement.  For example:

- Sjoblom heard "through the grapevine" that the SEC had not provided the Financial Services Regulatory Commission with an appropriate request for documents evidencing how SIBL invested depositor funds, that Sjoblom was "well-equipped" to recognize the "hallmarks of fraud" since he spent over a decade investigating fraud while at the SEC, and that from his review of the company, Sjoblom believed SIBL to be an "incredible institution."  (Compare Compl. ¶¶ 148-49, with Plea Agreement at ¶ 17(x), United States v. Davis, No. H-09-335 (S.D. Tex. Aug. 27, 2009), ECF No. 30.)

- Sjoblom was informed that SIBL's investments included an undisclosed "Tier 3" of investments that included real estate and private equity investments that were not disclosed to investors.  (Compare Compl. ¶ 204, with Plea Agreement at ¶ 17(y), United States v. Davis, No. H-09-335 (S.D. Tex. Aug. 27, 2009), ECF No. 30.)

- Prior to learning of the fraud, Sjoblom permitted Holt and SIBL President Juan Rodriguez-Tolentino to testify to the SEC regarding SIBL's entire investment portfolio.  (Compare Compl. ¶ 218, with Plea Agreement at ¶ 17(ee), United States v. Davis, No. H-09-335 (S.D. Tex. Aug. 27, 2009), ECF No. 30.)

Moreover, the plaintiffs have, through their conduct, admitted that they were on notice of the alleged claims more than two years before this action was filed.  The Receiver's "proposed replacement counsel" and the Official Stanford Investors Committee's counsel in this case filed

15

the putative class in <u>Troice v. Proskauer Rose LLP</u>, No. 3:09-cv-01600-N (N.D. Tex.) on August

27, 2009.  <u>See</u> <u>supra</u> notes 5-6.  The <u>Troice</u> complaint contains many of the same allegations in

this action.  If the Receiver's counsel had sufficient information to commence <u>Troice</u>, the

Receiver certainly had sufficient information to commence this action by August 27, 2009.  Put

another way, the fact that the investors whom the Official Stanford Investors Committee

represents asserted their claims in August 2009 is a binding admission that at least one of the

plaintiffs in this action knew of its claims over two years before commencing this case.  <u>Cf.</u>

<u>Zaruba v. Boethel</u>, 393 S.W.2d 716, 719 (Tex. App.—Corpus Christi 1965, no writ) (plaintiff's

failure to controvert defendant's limitations argument constituted an admission that the claims

were untimely).  And because the Receiver, who stands in the shoes of Stanford Financial, must

have knowledge of his claims that is at least as good as the knowledge of those investors, he too

is charged with discovering his claims more than two years before this action was commenced.[11]

     Similarly, the Receiver, through his own conduct in filing this action and its predecessor

action, all but admits that his claims are untimely under Texas law.  Specifically, the Receiver

filed <u>Janvey I</u> in the U.S. District Court for the District of Columbia on January 27, 2012—more

than one year before commencing this action, and more than two years, but less than three years,

after the Davis plea agreement was entered.  Unlike Texas, which applies two-year statutes of

limitations to the Receiver's non-fraud-based claims, the District of Columbia has a lengthier,

three-year limitations period for those claims.  <u>See, e.g.</u>, <u>Drake v. McNair</u>, 993 A.2d 607, 617

---

[11] Although the Official Stanford Investors Committee was not established until August 10, 2010 (<u>see</u> Order, <u>SEC v. Stanford Int'l Bank</u>, No. 3:09-CV-0298 (N.D. Tex. Aug. 10, 2010), ECF No. 1149), it is asserting claims as an assignee of the Receiver, who was appointed in February 2009 and was already filing suit on behalf of the Stanford Receivership Estate by August 2009 (<u>see</u> Compl. ¶ 3).  Because the Official Stanford Investors Committee stands in the shoes of the Receiver as an assignee of the Receiver's claims, it is subject to the same limitations bar as the Receiver.  <u>See</u> <u>Equitable Recovery, L.P. v. Heath Ins. Brokers of Tex., L.P.</u>, 235 S.W.3d 376, 387 (Tex. App.—Dallas 2007, pet. dism'd) ("Assignees stand in the shoes of their assignors and have no greater rights.").

(D.C. 2010).  As the District of Columbia found, the fact that <u>Janvey I</u> was—in  contrast to all of

the Receiver's other actions—commenced in the District of Columbia with "intentional disregard

of proper jurisdiction," demonstrated that the Receiver had engaged in "bad faith and/or an

attempt at forum shopping . . . to circumvent concerns regarding the constraints of the statute of

limitations in Texas."  <u>Janvey</u>, 2014 WL 3668578, at *5.[12]  In other words, as the Court's ruling

recognized, the Receiver perceived that his claims were already untimely under Texas law when

<u>Janvey I</u> was commenced in January 2012 and chose to file suit in a jurisdiction with longer

statutes of limitations (but which lacked subject matter jurisdiction) for that precise reason.

        Furthermore, the Receiver in fact had access to additional information from Sjoblom and

Proskauer that should have put it on notice of its claims.  On February 26, 2009, shortly after the

Receiver was appointed, the Receiver's counsel interviewed Sjoblom regarding his

representation of Stanford Financial.  On March 20, 2009, Proskauer provided the Stanford

Financial "client file" to the Receiver.  This file amounted to 14 boxes of documents regarding

Proskauer's representation of Stanford Financial.  As the "proposed replacement counsel" for the

Receiver and counsel for the Official Stanford Investors Committee have acknowledged, the

Complaint was drafted "based on [these] records."  (Pls.' Supp. Briefing in Response and Opp.

to Defs.' Mots. to Dismiss, <u>Troice v. Proskauer Rose LLP</u>, No. 3:09-CV-1600-N (N.D. Tex.

Sept. 23, 2014), ECF No. 143.)  And, indeed, information contained in these boxes is referred to

---

[12] The Texas savings statute has no effect on the outcome of this case because the Receiver's claims would
be untimely even if the Court measured them against <u>Janvey I</u>'s January 2012 filing date.  As explained above, the
Davis plea agreement occurred on August 27, 2009, predating that filing by more than two years.  In any event, the
District of Columbia's finding that <u>Janvey I</u> was filed with "intentional disregard of proper jurisdiction" precludes
the Receiver from relying on the <u>Janvey I</u> filing date since Texas's saving statute "does not apply if the adverse
party has shown in abatement that the first filing was made with intentional disregard of proper jurisdiction." Tex.
Civ. Prac. & Rem. Code § 16.064(b); <u>see</u> <u>In re United Servs. Auto. Ass'n</u>, 307 S.W.3d 299, 313 (Tex. 2010) ("But
while the tolling statute protects plaintiffs who mistakenly file suit in a forum that lacks jurisdiction, it does not
apply to a strategic decision to seek relief from such a court"); <u>see generally</u> 51 Romualdo P. Eclavea et al., Am. Jur.
2d <u>Limitation of Actions</u> § 263 (2014) ("A savings statute does not apply if the original action that was dismissed
for lack of jurisdiction was not brought in good faith.").

throughout the Complaint.  For example, the Complaint alleges that Sjoblom's notes revealed

that in February 2009, Sjoblom discussed with Stanford Financial's General Counsel that "we

still don't know what is going on with [T]ier 3" (Compl. ¶ 231), and that after Sjoblom learned

of Stanford's fraud, he advised officers of Stanford Financial "that the company may need to

start an internal investigation, possibly self report its violations to the SEC, and consider a

change in management" (id. ¶ 238).  The Receiver's interview of Sjoblom, and receipt and

review of the documents on which the Receiver relied in crafting his Complaint (which is

substantially similar to the Troice complaint that was filed on August 27, 2009), confirm that the

Receiver was on notice of his claims by August 27, 2009 at the latest.

     As a result, the claims in this case—which were filed more than four years later—are

barred as a matter of law and must be dismissed.

     B.     The Anti-Fracturing Rule Bars the Receiver from
               Splitting His Claims to Evade the Two-Year
               Limitations Period

     Because the Receiver's professional negligence and other non-fraud-based claims are

plainly time-barred, his fraud-based claims also must be dismissed.  Texas procedural law does

not allow plaintiffs to "fracture" legal malpractice claims by pleading them as fraud claims to

take advantage of a longer statute of limitations.  Here, the Receiver has purported to assert

claims sounding in fraud—which are subject to lengthier limitations periods in Texas—based on

the very same theory as his negligence-based claims.  Texas courts have consistently prohibited

"plaintiffs from converting what are actually professional negligence claims against an attorney

into other claims . . . in order to avail themselves of longer limitations periods, less onerous proof

requirements, or other tactical advantages."  7 Jefferson James Davis et al., Tex. Jur.3d Attorneys

at Law § 318 (2014); see Deutsch v. Hoover, Bax & Slovacek, L.L.P., 97 S.W.3d 179, 189 (Tex.

App.—Houston [14th Dist.] 2002, no pet.) (observing that the anti-fracturing rule "prevents legal-malpractice plaintiffs from opportunistically transforming a claim that sounds only in negligence into other claims" to avail themselves of longer limitations periods).  Thus, all of the Receiver's claims should be dismissed as either untimely or as an impermissible splitting of his malpractice claim.  See 7 Tex. Jur. 3d Attorneys at Law § 318; Haase v. Abraham, Watkins, Nichols, Sorrels, Agosto & Friend, LLP, 404 S.W.3d 75, 83 (Tex. App.—Houston [14th Dist.] 2013, no pet.); see also Harris & Greenwell, LLP v. Hilliard, No. 13-12-00089-CV, 2013 WL 7707847, at *5 n.3 (Tex. App.—Corpus Christi Aug. 1, 2013, pet. granted, judgm't vacated w.r.m.).

C.     The Receiver Cannot Benefit from
       Equitable Tolling

The Receiver alleges—without any factual support or explanation—that the doctrine of equitable tolling applies to his claims because he "did not discover, and could not with the exercise of reasonable diligence have discovered . . . the true nature of Defendants' participation in the Stanford Ponzi scheme."  (Compl. ¶ 254.)  Equitable tolling is a doctrine that should be sparingly applied in "extraordinary" circumstances.  See Davis v. Johnson, 158 F.3d 806, 810 (5th Cir. 1998); see also Irwin v. Dep't of Vet. Affairs, 498 U.S. 89, 96 (1990).  Under Texas law, there are only two circumstances in which the doctrine may apply: (1) when an injury is "inherently undiscoverable and the evidence of the injury is objectively verifiable," and (2) in instances when a defendant's fraud prevents the plaintiff from discovering its claim.  See S.V., 933 S.W.2d at 6 (quotation marks omitted); Trousdale v. Henry, 261 S.W.3d 221, 234-35 (Tex. App.—Houston [14th Dist.] 2008, pet. denied).  Neither circumstance applies in this case.

First, the Receiver's suggestion that he could not have discovered his alleged claims prior to January 2011 is baseless.  The Receiver not only had all of Proskauer's documents pertinent to

this suit by March 20, 2009, but, as noted above, his proposed replacement counsel and the

Official Stanford Investors Committee's counsel in this case filed another lawsuit against

Proskauer, Chadbourne, and Sjoblom on August 27, 2009, based on the same theory of liability

asserted here—that Sjoblom allegedly conspired to delay the SEC's prosecution of Stanford.

The Receiver's conclusory invocation of tolling is also precluded by the Fifth Circuit's ruling

that the Davis plea agreement—on which the Complaint extensively relies—"disclosed facts

indicating the true nature and duration of Stanford's operation of a massive Ponzi scheme." See

Democratic Senatorial Campaign Comm., Inc., 712 F.3d at 197.  In addition, the Receiver's

theory of tolling would require this Court to find that even the OIG report, which was issued in

March 2010, did not put the Receiver on notice of its claims.  That theory strains credulity.

Second, the Complaint is devoid of any factual allegations that Proskauer (or Sjoblom,

for that matter) engaged in fraud or somehow attempted to conceal the nature and extent of

defendants' alleged participation in the Stanford Ponzi scheme after February 2009.  To the

contrary, as the Complaint admits, Proskauer withdrew from its representation of Stanford in

February 2009 and informed the SEC of its withdrawal that same day,[13] and disaffirmed all prior

representations made to the SEC on February 13, 2009.  (Compl. ¶¶ 251-52.)  The Complaint is

devoid of any allegations concerning the conduct of Proskauer or Sjoblom after that date, much

less allegations that either attempted to conceal information.  The failure to make such

allegations is not an "extraordinary" circumstance requiring invocation of equitable tolling.

Davis, 158 F.3d at 810.

---

[13] As noted supra, the Complaint incorrectly states that Proskauer withdrew on February 12 instead of February 11.  See supra note 3.

### III.   The Receiver's Claims Are Barred by the Doctrine of <u>In Pari Delicto</u>   (Applies to All Claims)

As a matter of well-settled New York law, the Receiver is barred by the doctrine of <u>in pari delicto</u> from bringing the claims alleged in the complaint.  <u>In pari delicto</u> bars one wrongdoer from recovering from another and, under New York law, can be resolved as a matter of law on the pleadings.  <u>Kirschner v. KPMG LLP</u>, 938 N.E.2d 941, 947 n.3 (N.Y. 2010).  The New York Court of Appeals, the highest authority on state law, has noted that the principle that a wrongdoer should not profit from his own misconduct "is . . . strong in New York."  <u>Id.</u> at 964.  Thus, when a corporation commits fraud, it must bear the consequences and cannot recover from third parties that allegedly assisted in the commission of that fraud.  <u>See</u> <u>Wight v. BankAmerica Corp.</u>, 219 F.3d 79, 87 (2d Cir. 2000) (under "fundamental principle[s] of agency," management's misconduct is imputed to the company and "bars a trustee from suing to recover for a wrong that he himself essentially took part in"); <u>Craigie v. Hadley</u>, 1 N.E. 537, 538 (N.Y. 1885) (explaining that a corporation "is represented by its officers and agents, and their fraud in the course of the corporate dealings[] is in the law the fraud of the corporation").  That is so regardless of the defendants' involvement (or lack thereof) in the corporation's misconduct.  <u>Wight</u>, 219 F.3d at 86-87.

Indeed, the Second Circuit recently applied <u>in pari delicto</u> to dismiss claims brought under New York law by the Madoff Trustee against various financial service companies that allegedly aided and abetted Bernie Madoff's Ponzi scheme.  <u>In re Bernard L. Madoff Inv. Sec. LLC</u>, 721 F.3d 54, 63 (2d Cir. 2013).  Moreover, the Second Circuit has repeatedly applied the doctrine of <u>in pari delicto</u> to bar representatives of bankrupt corporations—including receivers—from asserting claims against third parties, including law firms, based on the third party's alleged role in aiding and abetting the perpetrators of a Ponzi scheme.  <u>See, e.g.</u>, <u>In re The Bennett</u>

21

Funding Grp., Inc., 336 F.3d 94, 101 (2d Cir. 2003) (barring trustee's legal malpractice and breach of fiduciary duty claims against company's former attorneys because the attorneys were alleged to have aided and abetted the company's Ponzi scheme); Hirsch v. Arthur Andersen & Co., 72 F.3d 1085, 1094 (2d Cir. 2000) (dismissing claims based on alleged "promulgating and promoting [of the debtor's] Ponzi scheme" because such claims can be brought only by innocent creditors and not by the trustee); see also Cobalt Multifamily Investors I, LLC v. Arden, 857 F. Supp. 2d 349, 362 (S.D.N.Y. 2011) (applying in pari delicto to receivers because receivers "fulfill[] a role sufficiently analogous to that of a bankruptcy trustee").

This case is no different.  The claims in this case are all brought on behalf of the Receiver, who stands in the shoes of Stanford Financial.[14]  (Compl. ¶ 1 (alleging "[t]his action is filed to recover damages for the Stanford Receivership Estate from Defendants").)  The Receiver's claims are grounded in the allegation that the defendants somehow "participat[ed] in the massive Ponzi scheme orchestrated by Allen Stanford," whose acts are imputed to Stanford Financial Group.  (Compl. ¶ 1.)  Indeed, the Complaint makes no distinction between the conduct of Allen Stanford and the conduct of the Stanford entities.  (See, e.g., id. ¶¶ 14, 16, 18, 31, 32, 34, 36, 39, 94 (alleging objective of Allen Stanford's fraud was to allow Stanford Financial and SIBL to "continue receiving economic benefits from the fraud").)  Thus, as the Fifth Circuit and this Court have already held, the Stanford Financial Group entities were a singular fraudulent organization beholden to Allen Stanford.  See Janvey v. Alguire, 647 F.3d 585, 598 (5th Cir. 2011); Janvey v. Alguire, No. 09-724 (N.D. Tex. June 10, 2010), ECF No. 456

---

[14] To the extent the complaint purports to seek recovery not simply for damage done to the company but for damage done to investors as well, see, e.g., Compl. ¶ 270 (alleging the loss of "billions of dollars" by "the Receiver and/or the Committee"), such claims are clearly barred by the doctrine of prudential standing and should be dismissed.  See Caplin v. Marine Midland Grace Trust Co. of N.Y., 406 U.S. 416, 416 (1972) (holding that a bankruptcy trustee has no standing to assert claims on behalf of creditors of the estate but is instead restricted to asserting claims owned by the estate).

(Godbey, J.).   Accordingly, Stanford's wrongdoing must be imputed to the entities, barring the

Receiver's claims in this case.   See In re The Mediators Inc., 105 F.3d 822, 827 (2d Cir. 1997)

(sole shareholder's knowledge is imputed "to the principal notwithstanding [his or her] self-

dealing because the party that should have been informed was the agent itself in its capacity as

principal"); cf. Kirschner, 938 N.E.2d at 953 (explaining that in pari delicto applies "[s]o long as

the corporate wrongdoer's fraudulent conduct enables the business to survive—to attract

investors and customers and raise funds for corporate purposes").

## IV.   The Receiver's Theory of Causation Fails as a Matter of Law (Applies to All Claims)

Causation is a required element of each of the claims asserted in this case.[15]   The

Receiver's theory of causation is, however, flatly contradicted by his own allegations.   The

Complaint alleges that Sjoblom and his law firms caused damage because Sjoblom allegedly

"joined [a] conspiracy to obstruct the SEC's investigation" by representing to the SEC that

Stanford Financial was not a Ponzi scheme and that the SEC did not have jurisdiction to compel

documents from SIBL.   (Compl. ¶¶ 95-96.)   As the Complaint makes clear, however, the SEC

---

[15]   See Rudolf v. Shayne, Dachs, Stanisci, Corker & Sauer, 867 N.E.2d 385, 388 (N.Y. 2007) (Count 1)
("To establish causation, a plaintiff must show that he or she would have prevailed in the underlying action or would
not have incurred any damages, but for the lawyer's negligence."); Kaufman v. Cohen, 307 A.D.2d 113, 125 (N.Y.
App. Div. 2003) (Count 2) ("A claim for aiding and abetting a breach of fiduciary duty requires . . . that plaintiff
suffered damage as a result of the breach."); Stanfield Offshore Leveraged Assets, Ltd. v. Metro. Life Ins. Co., 64
A.D.3d 472, 476 (N.Y. App. Div. 2009) (Count 3) ("In order to plead properly a claim for aiding and abetting fraud,
the complaint must allege . . . substantial assistance by the aider and abettor," which in turn requires "[that] the
actions of the aider/abettor proximately caused the harm on which the primary liability is predicated." (quotation
marks omitted)); ULU v. Turkotrans Int'l Transp. Co., No. 109367/08, 2011 WL 2680780 (N.Y. Sup. Ct. July 1,
2011) (Count 5) ("[A] claim for aiding and abetting conversion exists where plaintiff can prove . . . the existence of
a violation committed by the primary party . . . [and] 'substantial assistance' by the aider and abettor in achievement
of the violation."); Faulkner v. City of Yonkers, 105 A.D.3d 899, 900-01 (N.Y. App. Div. 2013) (Count 6) ("[I]n
order to properly plead a cause of action to recover damages for civil conspiracy, the plaintiff must allege a
cognizable tort, coupled with an agreement between the conspirators regarding the tort, and an overt action in
furtherance of the agreement."); Fed. Deposit Ins. Corp. v. LaMattina, 27 Misc. 3d 1236(A), 910 N.Y.S.2d 762
(N.Y. Sup. Ct. 2010) (Count 7) (applying the elements of a claim for negligence, including causation, to a negligent
retention claim).

As discussed infra in Part VI, New York law does not recognize aiding and abetting a fraudulent transfer
(Count 4) as a valid cause of action.

long believed Stanford was operating a Ponzi scheme but did not take action because of jurisdictional concerns having nothing to do with any representations by Sjoblom.  For example, the Complaint alleges that:

- "[T]he SEC's Fort Worth office first suspected that Allen Stanford and Stanford Financial were running a Ponzi scheme in 1997."  (Id. ¶ 75.)

- From 1997 through 2004, four examinations of Allen Stanford and Stanford Financial were conducted, "and in each examination, the staff doubted the legitimacy of SIBL's CDs and believed SIBL's purported investment returns were 'highly unlikely' given the bank's purportedly conservative investments. Because of these doubts, the examination staff concluded that SIBL's CDs were likely a Ponzi scheme or similar fraudulent scheme."  (Id.)

- The SEC Fort Worth Branch Chief in 1997 declared the purported returns on SIBL CDs "'absolutely ludicrous,' and further concluded that SGC's substantial 'referral' fees indicated the CDs were not legitimate."  (Id. ¶ 76.)

- The SEC examiners identified possible violations by the SGC of its fiduciary duties as an investment advisor in 1998 and in 2002 assigned the highest possible risk rating to SGC because of the SEC's "suspicions [that] [SIBL] was a Ponzi scheme."  (Id. ¶ 82.)

- The SEC received letters from private citizens about Stanford, including a letter in 2003 "comparing the 'striking similarities' between a recently exposed Ponzi scheme . . . and Stanford Financial's operations."  (Id. ¶ 85.)

Thus, the Receiver has admitted that the SEC believed Stanford operated a Ponzi scheme long before Sjoblom was even retained in 2005.  Accordingly, nothing Sjoblom (and, by extension, Proskauer) said or did actually prevented the SEC from reaching that conclusion.  This lack of causal nexus defeats the Receiver's theory of causation.  See Ordonez v. Long Island R.R. Co., 112 A.D.2d 923, 925 (N.Y. Sup. Ct. 1985) (causation is lacking if the harm "would have occurred" regardless); see also Rudolf, 867 N.E.2d at 388 (explaining causation requires establishing a different result "but for the lawyer's negligence"); cf. Twombly, 550 U.S. at 570 (to avoid dismissal, complaint must "state a claim to relief that is plausible on its face").

24

Nor can the Receiver plausibly allege that Sjoblom's dealings with the SEC as counsel for Stanford Financial delayed the SEC's prosecution of Stanford.  The March 2010 OIG Report—on which the Receiver's detailed allegations concerning the SEC's knowledge of the Stanford fraud are based—found that the SEC did not bring an enforcement action for a number of reasons, including "the Staff's perception that the case was difficult, novel, and not the type of case favored by the Commission."  (App. at 146 [Rouhandeh Decl., Ex. 3].)  In particular, the SEC was concerned as early as 1997 that SIBL's presence in Antigua presented a "major jurisdictional issue."  (Id. at 39.)  Thus, the fact that Sjoblom advocated to the SEC that it lacked jurisdiction years later (Compl. ¶ 96) could not have prevented the SEC from prosecuting Stanford until February 2009.  In short, the OIG Report, upon which the Complaint is based in significant part, discredits the Receiver's theory that the SEC would have done anything differently or would have shut down Stanford Financial earlier than February 2009 but for Sjoblom's conduct.  See Twombly, 550 U.S. at 570 (allegations must "nudge[] the[ plaintiffs'] claims across the line from conceivable to plausible").

In light of the allegations in the Complaint concerning the SEC's knowledge of the Stanford Ponzi scheme and the OIG report, the Receiver cannot plead a plausible theory of causation involving Sjoblom and Proskauer, and all claims must be dismissed.

**V.    The Complaint Does Not Allege the Knowledge Required for Conspiracy and Aiding and Abetting Liability (Applies to Counts 2, 3, 4, 5, and 6)**

The Complaint fails to state civil conspiracy and aiding and abetting claims because the Receiver has failed to allege with particularity that Proskauer had the requisite knowledge to join and further Stanford Financial's fraudulent enterprise.[16]

---

[16] When, as here, conspiracy or aiding and abetting claims are based on an alleged fraud, plaintiffs must plead their claims—and, thus, Proskauer's knowledge—with particularity under Federal Rule of Civil Procedure

Under New York law, actual knowledge is required to plead Counts 2, 3, 4, 5, and 6.  See Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC, 479 F. Supp. 2d 349, 367 (S.D.N.Y. 2007) ("Plaintiffs must allege actual knowledge on the part of the defendant.").  "Allegations of constructive knowledge or recklessness are insufficient."  Id.; see Kolbeck v. LIT Am., Inc., 939 F. Supp. 240, 246 (S.D.N.Y. 1996) (holding that actual knowledge, as opposed to constructive knowledge, is required).  "[T]he burden of demonstrating actual knowledge" is "a heavy one" and "general awareness of certain pieces of the . . .  puzzle . . . [is] not sufficient to give rise to a plausible inference that [defendant] had put the puzzle together, or even that it had enough of the pieces to do so."  In re Agape Litig., 773 F. Supp. 2d 298, 326-27 (S.D.N.Y. 2011) (quotation marks omitted); see Fraternity Fund Ltd. 479 F. Supp. 2d at 367 (holding that "[a]llegations of constructive knowledge or recklessness are insufficient"); Zutty v. Rye Select Broad Mkt. Prime Fund, L.P., No. 113209/09, 2011 N.Y. Misc. LEXIS 5596, 33-34 (N.Y. Sup. Ct. Apr. 15, 2011) ("To be sufficient, allegations of scienter based on red flags must include facts showing both that the defendant was actually aware of the alleged flags and that the flags were so obviously indicative of misconduct that the defendant must have been aware of the wrongdoing and desirous of furthering it." (quotation marks omitted)).  The Receiver fails to satisfy this heavy burden.

The Receiver pleads no facts to support an inference that defendants actually knew about Stanford's conspiracy to fraudulently sell CDs as part of his Ponzi scheme prior to February 2009.  Despite the Receiver's conclusory and factually baseless allegations that Sjoblom must have known about the Stanford fraud (Compl. ¶ 114), the only plausible conclusion from the

---

9(b).  See, e.g., Tigue Inv. Co. v. Chase Bank of Tex., N.A., Civil Action No. 3:03-cv-2490-N, 2004 WL 3170789, at *2-3 (N.D. Tex. Nov. 15, 2004) (Godbey, J.) (conspiracy to commit fraud subject to Rule 9(b)); see also In re Enron Corp. Sec., Derivative & "ERISA" Litig., 540 F. Supp. 2d 800, 833 (S.D. Tex. 2007) (rejecting aiding and abetting claim because the plaintiffs failed to allege knowledge with the required particularity).

Complaint's factual allegations is that Sjoblom was unaware of the true nature of Stanford's fraud up until February 2009 when Stanford "admit[ted] the fraud" and Sjoblom withdrew as Stanford Financial's counsel.  (See id. ¶¶ 231-52.)  Indeed, the Complaint contains numerous allegations admitting that the truth about Stanford's fraud was concealed from Sjoblom prior to that point.  (See, e.g., Compl ¶ 109 (describing August 2005 meetings where "Davis and Pendergest-Holt never told Sjoblom anything about the specific investments in SIBL's portfolio"); ¶ 146 (describing September 2006 conversation in which Stanford told Sjoblom that the SEC "was making wild accusations about Stanford Financial, including allegations regarding a fraudulent pyramid scheme" (emphasis omitted)); ¶¶ 232-33 (alleging that Sjoblom first learned about the assets in Tier 3 in February 2009).)  As the Receiver's own allegations admit, Stanford affirmatively lied to Sjoblom as late as February 5, 2009, when Stanford falsely insisted that SIBL "still had 'at least $850 million more in assets than liabilities.'"  (Id. ¶ 235 (emphasis omitted).)  As the truth was revealed in the days that followed, Sjoblom took corrective actions that render his knowing participation in Stanford's fraud implausible, including:

- Advising Stanford Financial to stop using SIBL's annual report and marketing materials.  (Id. ¶ 234.)

- Advising Stanford Financial that it may need to conduct an internal investigation, possibly self-report to the SEC and consider a management change.  (Id. ¶ 238.)

- Advising Stanford Financial that all sales of the SIBL CDs should cease in the United States and there should be no further distributions of SIBL's disclosure statements, annual reports, and marketing materials.  (Id. ¶ 241.)

- Advising Stanford Financial (again) to conduct an internal investigation.  (Id. ¶ 243.)

- Withdrawing as counsel to Stanford Financial and disaffirming all prior written and oral representations to the SEC.  (Id. ¶ 251-53.)

27

In light of these allegations, the Receiver simply has not alleged and cannot allege that Sjoblom was actually "<u>aware</u> of [the] fraud and <u>intended</u> to aid in" its commission, as is required under New York law.[17] <u>Agostini v. Sobol</u>, 304 A.D.2d 395, 396 (N.Y. App. Div. 2003) (emphasis added); <u>see also</u> <u>Filler v. Hanvit Bank</u>, 339 F. Supp. 2d 553, 558 (S.D.N.Y. 2004) (concluding allegations that defendants should have known the effect factoring agreements would have on corporation's financial statements did not support the inference that they actually knew the corporation was attempting to defraud its investors).

Accordingly, the Complaint's aiding and abetting and conspiracy claims should be dismissed. <u>See</u> <u>Twombly</u>, 550 U.S. 570 (to avoid dismissal, complaint must "state a claim to relief that is plausible on its face").

## VI. Aiding and Abetting Fraudulent Transfer Is Not a Valid Cause of Action Under New York Law (Applies to Count 3)

The Receiver's claim for aiding and abetting a fraudulent transfer should be dismissed because no such cause of action exists under New York law against parties who, like Proskauer, were not the recipient of a fraudulent transfer. New York law does not permit "a creditor's remedy for money damages against parties who . . . were neither transferees of the assets nor beneficiaries of the conveyance." <u>Fed. Deposit Ins. Corp. v. Porco</u>, 552 N.E.2d 158, 158 (N.Y. 1990); <u>see</u> <u>Roselink Investors, LLC v. Shenkman</u>, 386 F. Supp. 2d 209, 226 (S.D.N.Y. 2004) (same); <u>see also</u> <u>Paradigm v. BioDevices, Inc. v. Viscogliosi Bros., LLC</u>, 842 F. Supp. 2d 661, 667 (S.D.N.Y 2012) ("Under New York law, a fraudulent conveyance claim is actionable only

---

[17] Moreover, as James Davis acknowledged in his trial testimony, Sjoblom—like most everyone else—did not know what assets were in Tier 3 until the bitter end of Stanford's scheme. <u>See, e.g.</u>, Volume 11, Jury Trial Transcript of James Davis's Testimony, Tr. 3258:4-3260:2, <u>United States v. Stanford</u>, No. 09-CR-342 (S.D. Tex. Feb. 6, 2012), ECF No. 696 (testifying that prior to February 2009, people had "been led to believe" that the assets in Tier 3 "were the same style[] and content of what was in Tier 2"). It is appropriate for the Court to take judicial notice of Mr. Davis's trial testimony. <u>See</u> <u>Lovelace</u>, 78 F.3d at 1017.

against the transferee . . . and not against third party aiders and abettors of the transfer."); <u>Lippe v. Bairnco Corp.</u>, 229 B.R. 598, 061 (S.D.N.Y. 1999), <u>aff'd</u>, 99 F. App'x 274 (2d Cir. 2004).[18]

Because the Receiver has not alleged that Proskauer was the transferee or beneficiary of any fraudulent transfer and is instead seeking to hold Proskauer liable on account of alleged fraudulent transfers "to third parties" (Compl. ¶¶ 260-61), the Complaint fails to state a claim against Proskauer for aiding and abetting fraudulent transfer.

**VII.    The Complaint Fails to State a Claim for Aiding and Abetting Conversion (Applies to Count 5)**

The Receiver's claim for aiding and abetting conversion must be dismissed because the Receiver has not pled a primary violation.  Under New York law, "[t]o maintain a claim for conversion, a plaintiff must show legal ownership of a specific identifiable piece of property and the defendant's exercise of dominion over or interference with the property in defiance of plaintiffs' rights."  <u>Regions Bank v. Widers & Mastroianni, P.C.</u>, 526 F. Supp. 2d 411, 413 (S.D.N.Y. 2007) (quotation marks omitted).  Money is not the proper subject of a conversion action unless it is specifically identifiable or segregated from other funds.  <u>See</u> <u>Republic of Haiti v. Duvalier</u>, 211 A.D.2d 379, 384 (N.Y. App. Div. 1995) ("Where the property is money, it must be specifically identifiable . . . ."); <u>9310 Third Ave. Assoc., Inc. v. Schaffer Food Serv. Co.</u>, 210 A.D.2d 207, 208 (N.Y. App. Div. 1994) ("[S]ince the allegedly converted money is incapable of being 'described or identified in the same manner as specific chattel,' it is not the proper subject of a conversion action." (internal citation omitted)); <u>Mfrs. Hanover Trust Co. v. Chemical Bank</u>,

---

[18] As New York courts have explained, it is not possible to state a claim for aiding and abetting fraudulent transfer because "the appropriate relief is to void the conveyance" to the transferee who was actually the beneficiary of the conveyance.  <u>Atlanta Shipping Corp. v. Chem. Bank</u>, 631 F. Supp. 335, 348 (S.D.N.Y. 1986), <u>aff'd</u> 818 F.2d 240 (2d Cir. 1987); <u>see id.</u> (observing that an "aiding and abetting claim against someone other than the transferee is meaningless").

160 A.D.2d 113, 124 (N.Y. App. Div. 1990) (allegedly converted money must be "specifically identifiable and segregated").

Here, the Complaint does not allege any specific property—money or otherwise—that was converted.  That failure is fatal to the conversion claim.  Walden Terrance, Inc. v. Broadwall Mgmt. Corp., 213 A.D.2d 630, 631 (N.Y. App. Div. 1995) (plaintiffs must allege the "specific and identifiable property converted by the defendants"); see Daly v. Llanes, 30 F. Supp. 2d 407, 414 (S.D.N.Y. 1998) (noting that where a "[p]laintiff's claim of conversion . . . rests on allegation of fraudulent taking," it is "subject to the pleading requirements of Rule 9(b)"); Goddard v. Citibank, NA, No. 04-Civ. 531, 2006 WL 842925, at *7 (E.D.N.Y. Mar. 27, 2006) (allegations that fraud was employed in the conversion "trigger[] heightened pleading standards pursuant to Federal Rule of Civil Procedure 9(b)").

## VIII.   The Complaint Fails to State a Claim for Negligent Retention/Negligent Supervision (Applies to Count 7)

The Receiver's negligent retention/negligent supervision claim fails because it is duplicative of the professional negligence claim and rests on the same underlying facts as his negligence claim.  See Vt. Mut. Ins. Co. v. McCabe & Mack, LLP, 105 A.D.3d 837, 839 (N.Y. App. Div. 2013) (holding that where a cause of action for negligent supervision arises "from the same facts as the causes of action alleging legal malpractice and do not allege distinct damages . . .[, it is] duplicative of the causes of action alleging legal malpractice"); see also Tsafatinos v. Lee David Auerbach, P.C., 80 A.D.3d 749, 750 (N.Y. App. Div. 2011); Sitar v. Sitar, 50 A.D.3d 667, 670 (N.Y. App. Div. 2008); Shivers v. Siegel, 11 A.D.3d 447, 447 (N.Y. App. Div. 2004); Malarkey v. Piel, 7 A.D.3d 681, 681 (N.Y. App. Div. 2004); Mecca v. Shang, 258 A.D.2d 569, 570 (N.Y. App. Div. 1999).  The Receiver's allegations that Proskauer negligently retained or supervised Sjoblom rest on the same general facts and seek identical damages to those sought by

his negligence claim.  (Compare Compl. ¶ 268, with id. ¶ 256.)  Namely, both allege that the

Receiver was injured through the perpetration of the Stanford Ponzi scheme, which Sjoblom

and/or Proskauer did detect or should have detected.  (Id.)  The Complaint alleges no facts of any

sort about what Proskauer did to hire or supervise Sjoblom, and there is no factual basis to

support the Receiver's conclusory claim that Proskauer was negligent in employing Sjoblom.

For this reason, the Receiver's claim for negligent retention/negligent supervision must be

dismissed.

## CONCLUSION

For all of these reasons, the Receiver's Complaint should be dismissed in its entirety

against defendant Proskauer Rose LLP with prejudice.[19]

## REQUEST FOR ORAL ARGUMENT

Defendant Proskauer Rose LLP respectfully requests oral argument on its motion to

dismiss the Complaint.

Dated:  October 3, 2014                          Respectfully submitted,

                                                 DAVIS POLK & WARDWELL LLP

                                                 By:   /s/ James P. Rouhandeh
                                                       James P. Rouhandeh*
                                                       New York Bar No. 2211837
                                                       rouhandeh@davispolk.com
                                                       Daniel J. Schwartz*
                                                       New York Bar No. 4159430
                                                       daniel.schwartz@davispolk.com
                                                       Jonathan K. Chang*
                                                       New York Bar No. 4500484
                                                       jonathan.chang@davispolk.com

---

[19] Proskauer incorporates by reference the arguments made in Chadbourne's brief in support of its motion to dismiss the Complaint.  [ECF No. 56.]

450 Lexington Avenue
New York, New York 10017
Tel:  (212) 450-4000
Fax:  (212) 701-5800
* admitted *pro hac vice*

- and -

CARRINGTON, COLEMAN, SLOMAN
   & BLUMENTHAL, L.L.P.


By:   /s/ Neil R. Burger
      Neil R. Burger
      Texas Bar No. 24036289
      nburger@ccsb.com
      Bruce W. Collins
      Texas Bar No. 04604700
      bcollins@ccsb.com

901 Main Street, Suite 5500
Dallas, Texas 75202
Tel:  (214) 855-3000
Fax:  (214) 855-1333

*ATTORNEYS FOR DEFENDANT*
 *PROSKAUER ROSE LLP*

32

**CERTIFICATE OF SERVICE**

I hereby certify that on October 3, 2014, I electronically transmitted the foregoing

document to the Clerk of the Court using the ECF system for filing.  A Notice of

Electronic Filing was transmitted to all ECF registrants.


/s/ James P. Rouhandeh
James P. Rouhandeh