IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

RALPH S. JANVEY, IN HIS CAPACITY     §
AS COURT-APPOINTED RECEIVER          §
FOR THE STANFORD RECEIVERSHIP        §
ESTATE, *et al.*,                    §
                                     §
         Plaintiffs,                 §
                                     §
v.                                   §          Civil Action No. 3:13-CV-0477-N
                                     §
PROSKAUER ROSE LLP, *et al.*,        §
                                     §
         Defendants.                 §

## ORDER

This Order addresses Defendant Chadbourne & Parke LLP's ("Chadbourne") motion to dismiss [55]; Defendant Proskauer Rose LLP's ("Proskauer") motion to dismiss [58]; and Defendant Thomas V. Sjoblom's motion to dismiss [61]. The Court grants the motions in part and denies them in part.

## I. THE PARTIES' DISPUTE

This action arises out of the Ponzi scheme perpetrated by R. Allen Stanford, his associates, and various entities under his control (collectively, "Stanford"). The facts associated with Stanford's scheme are well-established, *see, e.g.*, *Janvey v. Democratic Senatorial Campaign Comm.*, 712 F.3d 185, 188–89 (5th Cir. 2013), and will not be recounted in great detail here. Fundamentally, Stanford's scheme entailed the sale of fraudulent certificates of deposit ("CDs") from an offshore bank located in Antigua known

as Stanford International Bank Limited ("SIBL").  Although Stanford represented that the CD proceeds were invested only in low risk, high return funds, in reality the proceeds were funneled into speculative private equity investments and used to fund Stanford's extravagant lifestyle.

Plaintiffs in this action are the court-appointed receiver for the Stanford entities, Ralph S. Janvey (the "Receiver"),[1] and the Official Stanford Investors Committee ("OSIC").[2]  This action is based on legal assistance allegedly provided by Sjoblom to Stanford while Sjoblom was an attorney with Chadbourne and subsequently Proskauer.   Plaintiffs allege that Stanford retained Chadbourne and Sjoblom in 2005 to assist with an SEC investigation into Stanford's potential wrongdoing.   According to Plaintiffs, Sjoblom, allegedly armed with knowledge of Stanford's scheme, nevertheless corresponded with the SEC and made a number of misrepresentations of fact and law that obstructed the investigation.  Plaintiffs also allege that Sjoblom was involved in hiding the SEC investigation from Stanford's auditor.  Plaintiffs allege that Sjoblom continued to assist in obstructing regulatory investigations into Stanford's misconduct after his move to Proskauer.

---

[1]The Receiver's rights and obligations are laid out in detail in this Court's Second Amended Order Appointing Receiver [1130], *in SEC v. Stanford Int'l Bank, Ltd.*, Civil Action No. 3:09-CV–0298-N (N.D. Tex. filed Feb. 17, 2009).

[2]The Official Stanford Investors Committee is a body tasked with representing Stanford investors and has similar rights and responsibilities as a bankruptcy creditors' committee appointed under Title 11 of the United States Code. *See generally* Order, Aug. 10, 2010 [1149], *in SEC v. Stanford Int'l Bank, Ltd.*, Civil Action No. 3:09-CV-0298-N (N.D. Tex. filed Feb. 17, 2009).

Based on these allegations, Plaintiffs bring claims for (1) professional negligence, (2) aiding and abetting/participation in breach of fiduciary duty, (3) aiding and abetting/participation in a fraudulent scheme, (4) aiding and abetting/participation in fraudulent transfers, (5) aiding and abetting/participation in conversion, (6) civil conspiracy, and (7) negligent retention/negligent supervision.  Defendants now move to dismiss.

## II. RULE 12(b)(6) LEGAL STANDARD

When considering a Rule 12(b)(6) motion to dismiss, a court must determine whether the plaintiff has asserted a legally sufficient claim for relief.  *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995).  A viable complaint must include "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A court generally accepts well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff.  *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012).  But a court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions."  *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007).  A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  "Factual allegations must be enough to raise a right

to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted).

In ruling on a Rule 12(b)(6) motion, a court generally limits its review to the face of the pleadings, accepting as true all well-pleaded facts and viewing them in the light most favorable to the plaintiff. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). However, a court may also consider documents outside of the pleadings if they fall within certain limited categories. First, "[a] court is permitted ... to rely on 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). Second, "[a] written document that is attached to a complaint as an exhibit is considered part of the complaint and may be considered in a 12(b)(6) dismissal proceeding." *Ferrer*, 484 F.3d at 780. Third, a "court may consider documents attached to a motion to dismiss that 'are referred to in the plaintiff's complaint and are central to the plaintiff's claim.'" *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010) (quoting *Scanlan v. Tex. A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003)). Finally, "[i]n deciding a 12(b)(6) motion to dismiss, a court may permissibly refer to matters of public record." *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994) (citation omitted); *see also, e.g.*, *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (stating, in upholding district court's dismissal pursuant to Rule 12(b)(6), that "[t]he district court took appropriate judicial notice of publically available documents and transcripts

produced by the [Food and Drug Administration], which were matters of public record directly relevant to the issue at hand").

### III. CHOICE OF LAW

As an initial matter, the parties disagree over what substantive law governs Plaintiffs' claims. In federal receivership actions, state choice-of-law rules apply. *See Janvey v. Alguire*, 2013 WL 2451738, at *2 (N.D. Tex. 2013) (citing *Terry v. June*, 420 F. Supp. 2d 493, 499–502 (W.D. Va. 2006)). Under Texas law, unless "the parties have agreed to a valid choice of law clause, the law of the state with the most significant relationship to the particular substantive issue will be applied . . . ." *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (Tex. 1984). Defendants contend that under both governing choice of law contracts applicable to the parties and the most significant relationship test, New York law should govern the dispute. Plaintiffs assert that Texas law should apply.

### A. The Court Does Not Consider The Submitted Engagement Agreement

Defendants rely on the engagement agreement purportedly agreed to by Stanford and Chadbourne.[3] *See* Chadbourne's Mem. Supp. Mot. Dismiss 24 [56]; Proskauer Mot. Dismiss 10–14; App. Supp. Chadbourne's Mot. Dismiss 162–171 [57]. The engagement agreement contains a choice of law provision which states that "[o]ur attorney-client and contractual relationships, and any disputes relating to our bills or charges, are to be governed by the laws

---

[3]Proskauer contends that Chadbourne's engagement letter continued to govern Sjoblom's work for Stanford even after Sjoblom had joined Proskauer, an argument with which Plaintiffs disagree. The Court does not resolve this issue at this stage.

of the State of New York . . . ." App. Supp. Chadbourne's Mot. Dismiss 170. Defendants contend the Court should recognize the applicability of the choice of law provision and hold that New York substantive law applies to this action.

The parties agree that when deciding a motion to dismiss, the Court may consider documents attached to a motion to dismiss if they are referred to in the complaint and are central to the plaintiffs' claims. *See, e.g.*, *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). However, in order for the Court to consider such a document, its authenticity must be undisputed. *See Ryan, LLC v. Inspired Dev., LLC*, 2013 WL 6159288, at *10 (N.D. Tex. 2013) (collecting cases). Here, Plaintiffs dispute the authenticity of the submitted engagement agreement, noting that the agreement is unsigned and questioning whether it reflects the actual terms of Chadbourne's engagement. *See* Pls.' Joint Resp. 6 & n.4 [63].[4] A number of Courts have found such an objection to authenticity sufficient to preclude admissibility of attached exhibits on a Rule 12(b)(6) motion. *See Ryan, LLC*, 2013 WL 6159288, at *11 (excluding materials based on plaintiffs' objection to authenticity, which defendants described as "frivolous"); *Columbia Hosp. at Med. City Subsidiary, L.P. v. Legend Asset Mgmt. Corp.*, 2004 WL 769253, at *3 (N.D. Tex. 2004) (declining to resolve

---

[4]Although it is ultimately sufficient that Plaintiffs have objected to the engagement agreement's authenticity, the Court questions whether Plaintiffs can continue to rely on their argument that because they were not parties to the agreement, they can not verify the agreement's authenticity. The Receiver's status as Stanford's representative is well established; he should be in a position to either verify or disclaim Stanford's purported contractual obligations.

arguments as to authenticity and holding "it is enough that [plaintiff] has contested [the document's] authenticity.").

Defendants cite authority that purportedly establishes that Plaintiffs must do more than merely contest the engagement agreement's authenticity.  For instance, Defendants rely on *Berry v. Indianapolis Life Insurance Co.*, 600 F. Supp. 2d 805 (N.D. Tex. 2009), which declined to strike an exhibit submitted with a motion to dismiss where plaintiffs "ha[d] not argued that it [was] not in fact authentic."  *Id.* at 812.  *Berry* is distinguishable because the plaintiffs there merely argued the proffered document was unauthenticated, whereas here Plaintiffs have actually challenged the engagement agreement's authenticity by arguing it is unsigned and potentially inapplicable to the dispute.  *See* Pls.' Joint Resp. 6 & n.4.  The rest of the cases Defendants submit on this issue are similarly distinguishable.

Defendants also argue that Plaintiffs should be estopped from contesting the engagement agreement's authenticity because the Stanford entities have relied on the documents in other litigation.  Specifically, Defendants point out that the Antiguan Joint Liquidators ("AJLs"), appointed as Stanford's representatives by the High Court of Antigua and Barbuda, have relied on the submitted engagement letter.  *See, e.g.*, Chadbourne's Reply 2 [68].  But the conduct of the AJLs is not binding on the Receiver.  This Court, as the United States federal court tasked with overseeing the Stanford receivership, has recognized the Receiver as the exclusive representative of the Stanford entities.  *See supra* note 1.  Thus, the

AJLs' conduct on behalf of the Stanford entities in foreign proceedings does not bind the Receiver in this Court.

The Court accordingly declines to consider the submitted engagement agreements as evidence of a choice of law agreement at this stage. Plaintiffs have disputed their authenticity, and the Court does not wade into consideration of the factual questions necessary to resolve their disputation.

### B. A Choice of Law Analysis is Otherwise Premature

The Court also declines to conduct a traditional choice of law analysis at this stage. First, the choice of law analysis under Texas law typically requires resolution of factual questions, *Hughes Wood Prods., Inc. v. Wagner*, 18 S.W.3d 202, 204 (Tex. 2000), making the analysis inappropriate in the Rule 12(b)(6) context. *See Blanchard & Co., Inc. v. Contursi*, 2000 WL 574590, at *4 (E.D. La. 2000) ("The choice of law issue, which is inherently fact-based, is not appropriately determined on a motion to dismiss."). Moreover, it would be particularly inappropriate to conduct the analysis here, where there is a potentially binding choice of law agreement between the parties. Accordingly, the Court declines at this stage to determine whether Plaintiffs' claims are subject to New York or Texas law. As a result the Court analyzes Defendants' motions to dismiss under the presumption that Texas law applies to the dispute. *See Excess Underwriters at Lloyd's, London v. Frank's Casing Crew & Rental Tools, Inc.*, 246 S.W.3d 42, 53 (Tex. 2008) (noting that Texas courts presume the laws of other states are the same as those in Texas); *see also*

*Janvey v. Suarez*, 978 F. Supp. 2d 685, 693–94 (N.D. Tex. 2013) (proceeding to analyze motion to dismiss under Texas law where defendant had not proved the applicability of other law).

## IV. DEFENDANTS' *IN PARI DELICTO* DEFENSE

Defendants assert that Plaintiffs' claims are barred by the New York doctrine of *in pari delicto*, which generally operates to prevent one wrongdoer from recovering from another. *See, e.g.*, Proskauer's Mot. Dismiss 21. Because the Court has not yet determined that New York applies to this dispute, the Court declines to dismiss any claims based on the *in pari delicto* doctrine.[5]

## V. DEFENDANTS' LIMITATIONS DEFENSE

### A. The Discovery Rule Applies

Defendants also argue that each of Plaintiffs' claims is barred by the applicable statutes of limitations. "A statute of limitations may support dismissal pursuant to Rule 12(b)(6) when it is evident from a plaintiff's pleadings that the action is time-barred and the pleadings fail to set forth or raise some basis for tolling the statute." *Glover v. Raytheon Co.*, 2013 WL 5744361, at *3 (N.D. Tex. 2013) (citing *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003)). Plaintiffs here have raised the discovery rule as a basis for tolling limitations on their claims. *See* Orig. Compl. ¶ 254 [1]. The Court finds this sufficient to

---

[5]Applying Texas law, the Court has found that the *in pari delicto* doctrine does not bar the Receiver's claims on behalf of the Stanford entities. *See* Order 5–8, Sept. 11, 2013 [58], *in Janvey v. Adams & Reese*, Civil Action No. 3:12-CV-0495-N (N.D. Tex. filed Feb. 16, 2012).

preclude dismissal based on limitations at this stage.  *See TIB–The Indep. BankersBank v. Canyon Cmty. Bank*, 13 F. Supp. 3d 661, 668–69 & n.5 (N.D. Tex. 2014) (concluding that where plaintiff pled the discovery rule, the court was unable to determine from the pleadings whether plaintiff's claims were time barred).

### B. Plaintiffs Have Not Impermissibly Fractured Their Malpractice Claim

The Texas "anti-fracturing" rule prevents plaintiffs from "convert[ing] what are really negligence claims into claims for fraud, breach of contract, breach of fiduciary duty, or violation of the DTPA."[6] *Murphy v. Gruber*, 241 S.W.3d 689, 693 (Tex. App. – Dallas 2007, pet. denied).  "If the gist of a client's complaint is that the attorney failed to exercise the degree of care, skill, or diligence that attorneys of ordinary skill and knowledge commonly possess, then the legal malpractice claim is based on negligence."  *Riverwalk Cy Hotel Partners, Ltd. v. Akin Gump Strauss Hauer & Feld, LLP*, 391 S.W.3d 229, 236 (Tex. App. – San Antonio 2012, no pet.).  "Such a claim encompasses a cause of action based on an attorney giving a client bad legal advice or otherwise improperly representing the client."  *Id.*  Here, Defendants assert that counts two through seven of Plaintiffs' complaint are impermissibly fractured from Plaintiffs' professional negligence claim.  *See, e.g.*, Chadbourne's Mem. Supp. Mot. Dismiss 22.

---

[6]Defendants primarily raised the fracturing argument so that all claims would be considered under the two-year statute of limitations applicable to professional negligence claims.  Although the Court does not decide here that the negligence claims were untimely, the Court nevertheless considers whether nonmalpractice claims were fractured, and thus subject to dismissal.

This Court has previously dismissed claims for breach of fiduciary duty based on the anti-fracturing rule. *See* Order 15–18, Dec. 17, 2014 [114] (the "Greenberg Traurig Order"), *in The Official Stanford Investors Comm. v. Greenberg Traurig*, Civil Action No. 3:12-CV-4641-N (N.D. Tex. filed Nov. 15, 2012). The breach of fiduciary duty claim there was based on an alleged conflict of interest between the defendant-law firm's representation of the Stanford entities, and its willingness to follow Allen Stanford's instructions to maintain his business. *Id.* at 16. The Court found that claim duplicative of a malpractice claim based on a number of Texas authorities dictating that a conflict of interest necessary to support an independent claim for breach of fiduciary duty must entail more than the continuing receipt of legal fees. *Id.* at 16–18 (citing *Won Pak v. Harris*, 313 S.W.3d 454 (Tex. App. – Dallas 2010, pet. denied)).

Plaintiffs have not raised a breach of fiduciary duty claim here. Instead, counts two through seven are for aiding and abetting breaches of fiduciary duties, aiding and abetting participation in a fraudulent scheme, aiding and abetting fraudulent transfers, aiding and abetting conversion, civil conspiracy, and negligent retention/supervision. Defendants do not address in detail how these claims are redundant of a professional negligence claim. Moreover, at least one Texas federal court has noted that "Texas law permits a party to bring both a malpractice action based on his lawyer's breach of independent duties and a separate claim *for the lawyer's assistance with the breach of another's fiduciary duties*." *Floyd v. Hefner*, 556 F. Supp. 2d 617, 659 (S.D. Tex. 2008) (emphasis added). This is because such

a claim focuses on "the [l]awyers' action vis-â-vis [other parties]," as opposed to the lawyers' actions toward the plaintiff-clients themselves. *Id.*  The Court agrees with the reasoning applied in *Floyd*.  Plaintiffs' nonmalpractice claims here are based on the Defendants' actions towards other entities – namely, the Stanford officers and directors.  Accordingly, the Court determines that Plaintiffs' counts two through seven are not necessarily fractured malpractice claims, and are not subject to dismissal on that basis.

## VI. PLAINTIFFS' CLAIMS ARE ADEQUATELY PLED

### A. Plaintiffs Adequately Plead Causation

Defendants argue that Plaintiffs fail to plead the causation element of their claims. In addition, Chadbourne contends Plaintiffs' theory of causation is insufficient to support constitutional standing.  The gist of Defendants' position is that Plaintiffs have not and cannot allege that the Stanford entities or the SEC would have done anything differently in the absence of Sjoblom's alleged assistance.

First, the Court finds Plaintiffs' allegations sufficient to support standing under Article III.  The causation element of the standing requirement demands "a causal connection between the injury and the conduct complained of . . . ."  *Croft v. Governor of Tex.*, 562 F.3d 735, 745 (5th Cir. 2009).  This element requires that the "putative injury is fairly traceable to the [defendant's] allegedly unlawful actions."  *AHF Cmty. Dev., LLC v. City of Dallas*, 633 F. Supp. 2d 287, 295 (N.D. Tex. 2009).  Defendants rely on the additional requirement that "[t]he injury must not be the result of the independent action of some third party not

before the court[,]" *id.*, and argue that Plaintiffs' claims here depend on the actions of the SEC. However, here Plaintiffs' allegations do not support the conclusion that their injuries were the result of the SEC's actions; the SEC played a role in the facts of this dispute, but Plaintiffs' injuries were not the result of SEC action. Plaintiffs have sufficiently alleged that their injuries are "fairly traceable" to Defendants' alleged conduct.

Plaintiffs also sufficiently allege causation as it pertains to the merits of their claims. In Texas, causation is inherently a fact-dependent inquiry and the Court has been hesitant to grant dismissal on that basis. *See, e.g.*, Greenberg Traurig Order at 13–14. The Court concludes that Plaintiffs have sufficiently alleged Sjoblom's misrepresentations to the SEC resulted in loss to the Stanford entities to avoid dismissal.

### B. Plaintiffs Adequately Allege Knowledge

In order to recover on an aiding and abetting/participation claim, the plaintiff must show "that the defendant ha[d] an unlawful intent, i.e., knowledge that the other party is breaching a duty and the intent to assist that party's actions." *Juhl v. Airington*, 936 S.W.2d 640, 644 (Tex. 1996) (internal quotation marks omitted). A conspiracy claim requires a specific intent to agree to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means. *Id.* The Court finds Plaintiffs have adequately alleged both.

Plaintiffs allege that while at Chadbourne, Sjoblom conducted substantial due diligence regarding Stanford. Pls.' Orig. Compl. [1] ¶ 104. Sjoblom became aware that Antiguan regulators were not independent from Stanford. *Id.* ¶¶ 110–111. Further,

according to Plaintiffs, Sjoblom was aware that Stanford was offering unrealistic rates of return on his CD products, and that this supported the SEC's belief Stanford was operating a fraudulent scheme. *Id.* ¶¶ 113–114. Reading these allegations in a light most favorable to Plaintiffs and indulging reasonable inferences in their favor, Plaintiffs have sufficiently alleged that Sjoblom, while at Chadbourne, was aware that Stanford was engaged in a fraudulent enterprise, and that the enterprise was very possibly a Ponzi scheme. *Id.* ¶ 114. This knowledge followed Sjoblom to Proskauer. Because Sjoblom's knowledge is imputed to both Chadbourne and Proskauer, *see, e.g.*, *Floyd*, 556 F. Supp. 2d at 655, Plaintiffs have alleged that all Defendants were aware of sufficient wrongdoing on Stanford's part to support the knowledge element of the aiding and abetting claims.

Additionally, the Court finds these allegations sufficient to support the scienter requirement of a claim for civil conspiracy. Although a conspiracy claim requires specific agreement, "the agreement need not be formal; rather the unserstanding may be tacit and it is not essential that each conspirator have knowledge of the details; inferences of concerted action may be drawn from participation in the transactions." *J.T.T. v. Chon Tri*, 111 S.W.3d 680, 684 (Tex. App. – Houston [1st Dist.] 2003) (citing *Bourland v. State*, 528 S.W.2d 350, 354 (Tex. App. – Austin 1975, writ ref'd n.r.e)), *reversed on other grounds*, 162 S.W.3d 552 (Tex. 2005). Plaintiffs have alleged enough to raise a reasonable inference that Sjoblom knew of Stanford's fraudulent scheme and agreed to help perpetuate it. Plaintiffs have adequately alleged scienter to support their aiding and abetting and conspiracy claims.

### C. Plaintiffs Adequately Allege Substantial Assistance

An additional element of an aiding and abetting claim is that the aider gave "substantial assistance and encouragement to [the] wrongdoer in a tortious act." *West Fork Advisors, LLC v. SunGard Consulting Servs., LLP*, 437 S.W.3d 917, 921 (Tex. App. – Dallas 2014, pet. filed) (citing *Juhl*, 936 S.W.2d at 644). Among other things, Plaintiffs allege that Sjoblom made a number of misrepresentations to regulators while he was at both Chadbourne and Proskauer. *See* Pls.' Orig. Compl. ¶¶ 120, 125, 194. Assuming Plaintiffs can prove the requisite scienter, the Court finds these acts in furtherance of Stanford's scheme amount to "substantial assistance." Plaintiffs have adequately pled this element.[7]

### D. Plaintiffs Adequately Plead a Claim for Malpractice

The elements of a legal malpractice claim in Texas are "(1) the attorney owed the plaintiff a duty of care; (2) the attorney breached that duty; (3) the breach proximately caused the plaintiff's injuries; and (4) damage occurred." *Duerr v. Brown*, 262 S.W.3d 63, 76 (Tex. App. – Houston [14th Dist.] 2008, no pet.). Chadbourne argues Plaintiffs fail to adequately plead a breach of duty by Sjoblom.[8]

---

[7]The Court further finds these allegations sufficient to plead the "overt acts" requirement of a claim for civil conspiracy. *See Juhl*, 936 S.W.2d at 644 (identifying the requirements for a civil conspiracy claim).

[8]Chadbourne also argues Plaintiffs fail to plead the causation element of the malpractice claim. For the reasons more fully discussed above, *see supra* Part VI.A, the Court rejects this argument.

ORDER – PAGE 15

An attorney owes a duty of care to his client and is "held to the standard of care which would be exercised by a reasonably prudent attorney." *Cosgrove v. Grimes*, 774 S.W.2d 662, 664 (Tex. 1989). Chadbourne argues that Defendants cannot be held liable for Sjoblom's failure to reveal the Stanford fraud to the SEC and cites *Reneker v. Offill*, 2009 WL 3365616, at *4 (N.D. Tex. 2009). In *Reneker*, this Court held that a malpractice claim based on an attorney's failure to report the client's wrongdoing was deficient on its face because the attorney owed no duty to third-parties to apprise them of the client's wrongdoing. *Id.* Here, Plaintiffs' claims are not based on Sjoblom's failure to whistleblow; rather, they have alleged Sjoblom owed a duty to refrain from making legal and factual misrepresentations to the SEC regarding Stanford's wrongdoing. Plaintiffs have alleged this conduct was not in the best interest of the Stanford entities, and perpetuated the fraudulent scheme that ultimately destroyed the Stanford entities. Plaintiffs have alleged a theory under which Sjoblom, and thus Chadbourne and Proskauer, can be held liable for breaching duties owed to the Stanford entities.

### E. Plaintiffs State a Claim for Aiding and Abetting a Breach of Fiduciary Duty

Chadbourne contends Plaintiffs have failed to plead their claim for aiding and abetting a breach of fiduciary duty. The elements of a claim for aiding and abetting a breach of fiduciary duty are "(1) the existence of a fiduciary relationship; (2) that the third party knew of the fiduciary relationship; and (3) that the third party was aware that it was participating in the breach of that fiduciary relationship." *Meadows v. Hartford Life Ins. Co.*, 492 F.3d

634, 639 (5th Cir. 2007).  Chadbourne complains that Plaintiffs have not identified the specific directors alleged to have breached their fiduciary duties, have not alleged any assistance in any breach, and have not alleged knowledge of any breach.  Chadbourne's Mem. Supp. Mot. Dismiss 42.

Plaintiffs have adequately pled all elements.  First, Plaintiffs have specifically identified Allen Stanford as an individual whose breach of fiduciary duties was facilitated by Defendants.  *See, e.g.*, Pls.' Orig. Compl. ¶ 256.  As to any other directors who may have breached their own duties, Chadbourne does not identify authority requiring Plaintiffs to specifically identify the directors who are alleged to have breached fiduciary duties. Plaintiffs have also alleged substantial assistance.  The conduct considered above, *see supra* Part VI.C, is sufficient to support an inference that Sjoblom's willing assistance to the Stanford scheme prolonged its existence and thus enabled Allen Stanford and other officers to continue defrauding the Stanford entities.  Finally, as to knowledge, the Court reiterates its analysis above, *see supra* Part VI.B.  Plaintiffs have alleged facts suggesting Sjoblom was aware to a substantial degree of Allen Stanford's fraudulent conduct, which would also imply some awareness of Allen Stanford's misuse of the Stanford entities to accomplish his fraud. The Court finds these allegations sufficient to infer awareness on Sjoblom's part of breaches of fiduciary duties undertaken by Allen Stanford and his fellow officers and directors.

### F. Plaintiffs State a Claim for Aiding and Abetting a Fraudulent Scheme

Chadbourne argues that Plaintiffs have failed to allege knowledge of and substantial assistance to any underlying fraud, which the Court has already addressed. Chadbourne argues further that Plaintiffs have not alleged that the Stanford entities themselves were defrauded. *See* Chadbourne's Mem. Supp. Mot. Dismiss 42–43. This argument, however, ignores the Plaintiffs' allegations that a central aspect of Stanford's scheme was the theft of assets from the Stanford entities and their reinvestment into speculative real estate investments. *See* Pls. Orig. Compl. ¶ 62. Thus, Plaintiffs have alleged that Stanford Financial was defrauded.

### G. Plaintiffs Adequately Plead A Claim for Aiding and Abetting Conversion

Defendants argue that Plaintiffs have failed to allege an underlying conversion of assets to support their aiding and abetting claims. A conversion is the "unauthorized and wrongful assumption and exercise of dominion and control over the property of another, to the exclusion of or inconsistent with the owner's rights." *Rogers v. Rican Enters., Inc.*, 930 S.W.2d 157, 165 (Tex. App. – Amarillo 1996, writ denied). "Money is subject to conversion only when it can be identified as a specific chattel and not where an indebtedness may be discharged by the payment of money generally." *Paschal v. Great W. Drilling, Ltd.*, 215 S.W.3d 437, 456 (Tex. App. – Eastland 2006, pet. denied). This requires that the money has been (1) delivered for safekeeping; is (2) intended to be kept segregated; is (3) substantially in the form in which it is received or an intact fund; and is (4) not the subject of a title claim

by its keeper.  *Newsome v. Charter Bank Colonial*, 940 S.W.2d 157, 161 (Tex. App. –

Houston [14th Dist.] 1996, writ denied).

Here, the underlying conversion supporting Plaintiffs aiding and abetting claims is

Allen Stanford's theft of CD proceeds delivered to the Stanford entities and misappropriated

by Stanford for his own use.  *See* Pls.' Orig. Compl. ¶ 62.  The argument that money has not

been specifically identified and is thus not subject to conversion is an affirmative defense.

*See* 4A Tex. Jur. 2d *Answer–Affirmative defense–Money not subject to identification* § 74:30.

Defendants thus bear the burden of establishing the money alleged to have been converted

in this case was not specifically identified and segregated.  Because Defendants cannot make

the requisite factual demonstration at this stage, the Court declines to dismiss Plaintiffs'

claims for aiding and abetting conversion.

### H. Plaintiffs Adequately Plead a Claim for Negligent Retention/Negligent Supervision

Plaintiffs bring related claims of negligent retention and negligent supervision.

Defendants raise a number of arguments supporting dismissal.

First, Chadbourne cites a previous Order of this Court, in which the Court dismissed

negligent supervision claims based on a finding that the claims related solely to the lawyers'

actions.  *See* Chadbourne's Mem. Supp. Mot. Dismiss 47 (citing Order 23 n.9, Sept. 11, 2013

[58], *in Janvey v. Adams & Reese*, Civil Action No. 3:12-CV-0495-N (N.D. Tex. filed Feb.

16, 2012)).  Chadbourne mischaracterizes the holding in that Order.  Dismissal of negligent

supervision claims against the defendant-law firm in that case was predicated on the

determination that the underlying torts committed by the lawyers were time barred.  *See id.* at 22–23.  Thus, because the negligent supervision claims were based on time-barred tortious conduct, the negligent supervision claims too failed.  *Id.*

Chadbourne next argues that a negligent supervision/retention claim is viable only where the employee commits an actionable tort.  Although Chadbourne argues Sjoblom has not, the Court has found otherwise in this Order.  Thus, this argument does not support dismissal.

Chadbourne also contends that the Plaintiffs have failed to allege that it was aware of Sjoblom's propensity for his allegedly tortious conduct.  Chadbourne relies on New York law for this requirement.  Texas law also requires a plaintiff to demonstrate that the employee's tortious conduct was foreseeable to the employer.  *See, e.g.*, *CoTemp, Inc. v. Houston W. Corp.*, 222 S.W.3d 487, 493–94 (Tex. App. – Houston [14th Dist.] 2007, no pet.) (requiring under the causation analysis that the plaintiff's injuries were foreseeable to employer).  The Court finds Plaintiffs have made sufficient allegations to raise a reasonable inference of foreseeability.  Plaintiffs have alleged Sjoblom agreed to facilitate Stanford's scheme and provided material assistance to Stanford in order to do so.  Assuming an ordinary degree of supervision by Chadbourne and Proskauer, it is not unreasonable to infer they were aware to some degree of his tortious conduct.  Any further analysis of this issue requires factual development more appropriately considered on a motion for summary judgment.

Finally, Chadbourne argues that negligent retention and negligent supervision claims are viable only where the plaintiff alleges a physical injury resulting from the employee's conduct. Again, Chadbourne relies on New York law for this proposition. It appears to be unsettled amongst Texas appellate courts whether a physical injury is a requirement for a negligent retention/negligent supervision claim. *See Zarzana v. Ashley*, 218 S.W.3d 152, 157 n.3 (Tex. App. – Houston [14th Dis.] 2007, pet. struck) (noting disagreement among Texas courts of appeal). The Court thus declines to dismiss on this basis.

### VII. THE COURT DISMISSES PLAINTIFFS' CLAIMS FOR AIDING AND ABETTING FRAUDULENT TRANSFERS

Finally, Defendants seek to dismiss Plaintiffs' claims for aiding and abetting fraudulent transfers. This Court has held that based on the weight of applicable authority, Texas does not recognize a claim for aiding and abetting fraudulent transfers, at least insofar as the defendant was not a recipient of any alleged transfers. *See* Greenberg Traurig Order 25–27. Based on the reasoning more fully discussed in that Order, the Court dismisses the aiding and abetting fraudulent transfer claims against Defendants.

### CONCLUSION

The Court grants Defendants' motions to dismiss Plaintiffs' aiding and abetting fraudulent transfer claims. The Court denies Defendants' motions in all other regards.

Signed June 23, 2015.

David C. Godbey
United States District Judge