UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RALPH S. JANVEY, IN HIS CAPACITY AS COURT-APPOINTED RECEIVER FOR THE STANFORD INTERNATIONAL BANK, LTD, ET AL., | § § § § § | |
| Plaintiffs, | § § | |
| VS. | § § | CIVIL ACTION NO. 3:10-CV-2584-N |
| PABLO M. ALVARADO, ET AL., | § § § | |
| Defendants. | § | |

**DEFENDANT PABLO ALVARADO'S MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT**

Defendant Pablo M. Alvarado moves this Court to dismiss Plaintiff's First Amended Complaint (Doc. 73) based on Plaintiff's failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6) and pursuant to Rule 9(b). The Plaintiff has failed to allege facts sufficient to show a right to relief that is plausible on its face and above mere speculation, and has failed to meet the pleading requirements of Rule 9. In support thereof Defendant would respectfully show as follows:

**INTRODUCTION**

This case is one of the many lawsuits filed in the wake of the Stanford International Bank ("SIB") debacle by Receiver Ralph S. Janvey.[1] Alvarado was not employed by SIB, but was employed by a related entity, Stanford Financial Group Company ("SFGC"). There are no

---

[1] The SIB "debacle" refers to the implosion of R. Allen Stanford's financial empire culminating in losses to innocent investors, lengthy prison sentences for culpable SIB executives, and the appointment of a Receiver for SIB and its affiliated entities.

allegations that Alvarado sold CDs or received commissions from the sale of CDs, or that he was even paid by any entity which sold the CDs. The Complaint does not identify any actions of Alvarado or Stanford Financial Group Company that were fraudulent. Nevertheless, in numerous lawsuits Janvey has sued employees like Alvarado seeking to disgorge them of the salaries and compensation they received as a result of their employment—and in the case of Alvarado, to seize property that is unrelated to compensation received directly or indirectly from Stanford. Janvey sued Defendant Pablo M. Alvarado for fraud, fraudulent transfer pursuant to the Texas Uniform Fraudulent Transfer Act, and unjust enrichment. Janvey seeks to "claw back" Alvarado's compensation he received as an employee of SFGC.

In an improper attempt to create guilt by association, Plaintiff takes great efforts to list a host of wrongs committed by SIB, R. Allen Stanford, James Davis and others in the course of committing a "massive worldwide fraud." Plaintiff then uses generalized allegations and innuendo in a desperate attempt to link Defendants to the alleged Ponzi scheme. However, missing from the Receiver's Complaint are specific facts sufficient to back up the claims against Alvarado. Accordingly, pursuant to Rule 12(b)(6) and Rule 8 of the Federal Rules of Civil Procedure, Alvarado respectfully requests the Court dismiss the allegations against him and, in support thereof, shows as follows:

## THE ALLEGATIONS AGAINST ALVARADO

The number two man at SIB, James Davis, admitted that in 1988 he began creating fake books reflecting false revenues and false investment balances. Davis Plea Agreement at ¶ 17(a).[2] Plaintiff admits in its First Amended Complaint that "[Allen] Stanford fabricated the performance of SIB's investment portfolio. SIB's financial statements, including its investment

---

[2] The Davis Plea Agreement is Doc. 771 in Case No. 3:09-cv-00298-N.

income, were fictional." (Doc. 73 ¶ 25). Not only were they clearly keeping these facts secret, they were actively covering up the facts. With no knowledge of any wrongdoing at SIB, Alvarado began working for an affiliated entity, SFGC in 1999.

The Plaintiff asserts that revenue from the sale of fraudulent CD's issued by SIB "generated substantially all of the income for R. Allen Stanford, his associates James Davis and Laura Holt" in addition to three Stanford entities, Stanford International Bank, Ltd. (SIB), Stanford Group Company (SGC), and Stanford Capital Management, LLC". (Doc 73 ¶ 2). However, the Plaintiff does not—and cannot—state facts that support any allegation that Alvarado played any role in the SIB CDs.

The Receiver's conclusory and vague factual allegations against Alvarado are limited to the following:

- Alvarado was or should have been aware that the proceeds from the sale of SIB CDs flowed into SIB's bank accounts and were used to pay the operating expenses of the other Stanford entities. ¶31;
- Alvarado worked closely with Allen Stanford and other high-level Stanford personnel. ¶31;
- Alvarado was aware of Ponzi scheme allegations being made by former employees. ¶31;
- Alvarado was aware of regulatory inquiries by the SEC and other regulatory bodies. ¶31;
- Alvarado hired Thomas Sjoblom as outside counsel to represent Stanford in addressing regulatory inquiries by the SEC. ¶ 32;
- Financial advisors communicated with Alvarado regarding the SEC inquiries. ¶32
- The Stanford entities took the position that the SEC had no jurisdiction over SIB because the CDs were not securities. ¶33;
- An associate of outside counsel drafted a memo on when a bank CD is a security under U.S. law and forwarded that memo to Alvarado. ¶34;
- Outside counsel, Thomas Sjoblom, with "Alvarado's full awareness" took the position that Antiguan confidentiality laws prevented SIB from producing portfolio-related documents to the SEC. ¶35;
- A follow-up letter which Alvarado "reviewed" took the position that the SEC lacked jurisdiction over SIB's CD program. ¶36;

- Alvarado worked with the Financial Services Regulatory Commission (the Antiguan government's financial regulatory arm, FSRC) in preparing responses by FSRC to inquiries by third parties. ¶¶37-41;

- Alvarado never meaningfully reviewed whether Antiguan banking laws prohibited SIB from disclosing portfolio positions, but instead relied on SIB president Juan Rodriguez-Tolentino's interpretation of Antiguan banking secrecy law. ¶42-44;

- Alvarado was aware that SIBH CD investors were not guaranteed repayment by SIB's insurance coverage. ¶45. SIB reported in its disclosures to investors that "you may lose your entire investment … Payments of principal and interest are subject to risk." ¶35;

- Alvarado knew about several whistleblower allegations brought by former employees as part of claims or counterclaims in NASD arbitrations or private lawsuits. ¶46-49;

- In July 2008 Bloomberg published an article stating that the SEC was "investigating sales of certificates of deposit by Stanford Group Company." This article was the topic of conversation between Alvarado and others. ¶50;

- Alvarado failed to counsel the Stanford entities on the known or obvious and foreseeable consequences of making unsupported representations about SIB and the SIB CDs. ¶52;

- Alvarado drafted an agreement whereby SGC contracted with SIB to manage a portion of its portfolio. ¶54;

These facts are submitted in support of three causes of action: (i) breach of fiduciary duty, (ii) fraudulent transfer, and (iii) unjust enrichment. Plaintiff requests dismissal pursuant to Rule 12(b)(6) because Plaintiff fails to allege facts sufficient to show a right to relief that is plausible on its face and above mere speculation.

## PLEADING STANDARDS UNDER *IQBAL* AND *TWOMBLY*

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). "A claim has facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged ... Determining whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at

679. Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions. *Id.* Courts will not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir.2007) ; *see also Iqbal*, 556 U.S. at 664, 129 S.Ct. at 1940 ("While legal conclusions can provide the complaint's framework, they must be supported by factual allegations.")

## BREACH OF FIDUCIARY DUTY

### INTRODUCTION

In order to prevail on his claim for breach of fiduciary duty, the Receiver must establish each of the following elements: "(1) a fiduciary relationship between the plaintiff and defendant; (2) the defendant must have breached his fiduciary duty to the plaintiff; and (3) the defendant's breach must result in injury to the plaintiff or benefit to the defendant." *Navigant Consulting, Inc. v. Wilkinson,* 508 F.3d 277, 283 (5th Cir. 2007).

While the Receiver vaguely implies that Alvarado owed a fiduciary duty to each and every identified as well as unidentified SIB related entity, he has pled no facts to show that Alvarado had any connection with any entity other than his employer, SFCG, that could give rise to a fiduciary duty. Furthermore the Receiver fails to provide any facts which would establish a breach of that duty, or of any damage that was proximately caused by any such breach.

### FACTS ALLEGED DO NOT SUPPORT BREACH OF FIDUCIARY DUTY

Most of the factual allegations in the First Amended Complaint are related to Alvarado's alleged misinterpretation of Antiguan banking law. For example, Plaintiff alleges, "Alvarado never meaningfully reviewed whether Antiguan banking laws prohibited SIB from disclosing its portfolio positions voluntarily." Instead it is alleged, "Alvarado was aware that, on several

occasions, members of his legal department were relying on SIB president Juan Rodriguez-Tolentino's interpretation of Antiguan banking secrecy laws." (Doc. 73, ¶¶ 42-43). Even assuming for purposes of argument that this describes a lapse in legal judgment, such is not a breach of fiduciary duty, and none of the facts alleged support a cause of action for breach of fiduciary duty. Indeed, the First Amended Complaint does not state any facts which, if taken as true, would establish that Alvarado even owed a fiduciary duty towards any person or entity with the possible exception of his employer, SFGC. Further vague allegations that this alleged fiduciary duty towards SFGC was somehow transferred to all other unidentified "affiliated Stanford entities," the SEC, and NASD/FINRA, among others, in a manner that is now enforceable by the Receiver are not sufficient to support a claim. Therefore Plaintiff's claim for breach of fiduciary duty must be dismissed.

Furthermore, Defendant's alleged "awareness" of various matters[3] says nothing about the course of action Alvarado should have taken that would have either fulfilled his duty, or have mitigated any injury. *See*, *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 682 (Bankr. N.D. Tex. 2011) (merely alleging knowledge of information alone does not suffice without some explanation as to what the officers should have done with the information.)

In addition, the factual allegations as presented in the First Amended Complaint tend to imply that Plaintiff was injured because Alvarado should have alerted the Plaintiff of a potential Ponzi scheme. Any such facts cannot support a claim for breach of fiduciary duty because the chief officers of SIB were aware of their own misdeeds. As stated above, James Davis, admitted

---

[3] E.g., Awareness that proceeds from the sale of SIB CDs flowed into SIB's bank accounts and were used to pay the operating expenses of the other Stanford entities. ¶ 31. Awareness of allegations of Ponzi scheme made by disgruntled employees ¶ 31. Awareness of regulatory inquiries made by the SEC. ¶ 31. Awareness that SIBH CD investors were not guaranteed repayment by SIB's insurance coverage. ¶ 45. Awareness of whistleblower allegations brought by former employees as part of claims or counterclaims in NASD arbitrations or private lawsuits. ¶ 46-49, etc., all as identified herein above.

that in 1988—well before Alvarado was hired—that he (Davis) began creating fake books reflecting false revenues and false investment balances. The Plaintiff does not and cannot allege that absent Alvarado's advice, SIB officers were actually unaware that their actions were illegal. *See Reneker v. Offill*, No. 3:08-CV-1394-D, 2009 U.S. Dist. LEXIS 97338, *16-17 (N.D. Tex. Oct. 20, 2009) ("complaint does not allege that, absent their lawyers' advice, the [Plaintiffs] were actually unaware that their actions were illegal.")

### FACTS ALLEGED DO NOT SUPPORT DAMAGES

Finally, the Plaintiff pleads no facts sufficient to infer a causal link between any alleged breach of fiduciary duty and any injury. It is not enough that Alvarado's alleged actions or inactions merely "furnish[ed] the condition that made Plaintiff's injury possible." *See Reneker*, 2009 U.S. Dist. LEXIS 97338, at *18 (citing *Askanse v. Fatjo*, 130 F.3d 657, 676 (5th Cir. 1997)). Instead, Alvarado's actions must have been a "substantial factor" in the Plaintiff's damages. *Id*. at *19. The factual allegations used to support Plaintiff's breach of fiduciary duty claim fail to meet the *Ibqal* and *Twombly* standard of "stating a claim to relief that is plausible on its face." The claim must contain "allegations plausibly suggesting (not merely consistent with)" an entitlement to relief. *Twombly* at 557. If there in an "obvious alternative explanation," then the claim stops short of the "line between possibility and plausibility of entitle[ment] to relief." *Id*. at 557, 567. For example, awareness of regulatory inquiries by the SEC and other regulatory bodies (Doc. 73, ¶ 31) is consistent with his duties as general counsel. Indeed, he would be *expected* to be aware of such inquiries, and such awareness in no way supports breach of fiduciary duty.[4] The fact that Thomas Sjoblom, outside counsel at a major New York law firm

---

[4] The same reasoning holds true for numerous other facts alleged by the Receiver. For example, the fact that Alvarado hired Thomas Sjoblom as outside counsel to represent Stanford in addressing regulatory inquiries by the SEC, and the fact that financial advisors communicated with Alvarado regarding the SEC inquiries (Doc. 73 ¶32) in no way make it more or less likely that Alvarado breached a fiduciary duty. These are actions he or any other

hired by Alvarado, took the position that Antiguan confidentiality laws prevented SIB from producing portfolio-related documents to the SEC (Doc. 73, ¶35) is note even "merely consistent with" an entitlement to relief.

### CLAIM BARRED BY LIMITATIONS

Finally, the statute of limitations on a claim for breach of fiduciary duty is four years. Tex. Civ. Prac. & Rem. § 16.004(a)(5). A motion to dismiss may be granted on a statute of limitations defense where it is evident from the pleadings that the action is time-barred, and the pleadings fail to raise an adequate basis for tolling. *Jones v. ALCOA, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003). The Plaintiff brought this claim for the first time at the filing of its First Amended Complaint on December 3, 2014. The absolute latest that a cause of action for breach of fiduciary duty could have accrued is February, 2009, the date that Alvarado resigned his employment with SFGC. Therefore, any claim for breach of fiduciary duty is barred by the statute of limitations.

### CONCLUSION

The facts cited in Plaintiff's First Amended Complaint do not implicate a breach of fiduciary duty, and it do not support beyond mere speculation that any change in Alvarado's actions would have altered the actions of SIB CEO Allen Stanford, CFO James Davis, CIO Laura Pendergest Holt, or accountants Gilbert Lopez and Mark Kuhrt in perpetuating a Ponzi scheme. Therefore, Plaintiff's claim should be dismissed. In addition, because on its face the First Amended Complaint establishes that this claim is barred by limitations, this claim should be dismissed.

---

general counsel would be *expected* to take in the normal course of affairs.

**FRAUDULENT TRANSFER**

**INTRODUCTION**

The Plaintiff makes claims under two provisions of the Texas Uniform Fraudulent Transfer Act ("TUFTA"), Tex. Bus. & Com. Code § 24.001 *et seq.* The First Amended Complaint recites the language of 24.005(a)(1): "The Stanford Parties made payments to Alvarado with actual intent to hinder, delay, or defraud Stanford's creditors," It also recites the language of 24.006(a): "Additionally, the Stanford Parties transferred the funds to Alvarado at a time when the Stanford Parties were insolvent, and the Stanford Parties did not receive reasonably equivalent value in exchange for the transfers." (Doc. 73, ¶ 124).

A creditor has the burden to prove the fraudulent transfer by a preponderance of the evidence. *Walker v. Anderson*, 232 S.W.3d 899, 913 (Tex. App.—Dallas 2007, no pet.); *G.M Houser, Inc. v. Rodgers*, 204 S.W.3d 836, 842 (Tex. App.—Dallas 2006, no pet.). It is the creditor's burden to offer evidence addressing the elements of fraudulent transfer as to each transfer. *Walker*, 232 S.W.3d at 913; *G.M Houser*, 204 S.W.3d at 843. Because the Plaintiff has not alleged facts that, if taken as true, would establish each element of fraudulent transfer, its claims must be dismissed.

**FACTS ALLEGED DO NOT SUPPORT CLAIM**

The Received does not allege facts to show what alleged funds were transferred, when they were transferred, or by which Stanford entity they were transferred. The Receiver does not allege facts showing actual intent to hinder, delay or defraud creditors. The Receiver does not allege facts showing that alleged funds were transferred at a time when the alleged debtor transferring the funds was insolvent, and that a reasonably equivalent value was not given in exchange for the funds. The Receiver merely asserts that Defendant received unspecified "CD

Proceeds" from an unspecified Stanford entity. The Receiver bases his allegations upon a ruling that SIB operated as a Ponzi scheme, and then extrapolates that this shifts the burden of proof to the Defendant and relieves the Receiver of the obligation to plead sufficient facts to establish a cause of action for fraudulent transfer under Texas law. *See*, Doc. 73, ¶¶ 125-127. It is the creditor's burden to offer evidence addressing the elements of fraudulent transfer as to each transfer. *Walker*, 232 S.W.3d at 913; *G.M Houser*, 204 S.W.3d at 843. The First Amended Complaint therefore fails to state a claim.

For example, Plaintiff cites *Warfield v. Byron*, 436 F.3d 551, 560 (5th Cir. 2006), in support of their erroneous claim that "services provided in the context of a Ponzi scheme" do not constitute reasonably equivalent value. Doc. 73 ¶ 129. That case is factually distinguishable because the defendant there provided broker services and knowingly recruited new investors for the Ponzi scheme. Alvarado, by contrast, was not a broker and did not sell CDs. Alvarado is entitled to the "presumption of reasonableness" of his salary. *See Askanase v. Fatjo,* 1996 WL 33373364, *9 (S.D.Tex.). The Complaint does not identify facts that to indicate his salary and bonuses were anything less than fair consideration for a lawyer working in his position. Other courts have held that reasonably equivalent value can nonetheless be given, regardless of the debtor's conduct, when payments are commensurate with industry standards and when the transaction was at arm's length. *See In re World Vision Entertainment, Inc.*, 275 B.R. 641, 658 (Bankr. M.D. Fla. 2002) ("Simply because a debtor conducts its business fraudulently does not make every single payment by the debtor subject to avoidance. If so, every vendor supplying goods to the debtor would receive an avoidable fraudulent transfer when the debtor paid the vendor's invoice."); *In re First Commercial Mgmt. Group, Inc.*, 279 B.R. 230, 239 (Bankr. N.D. Ill. 2002); *In re Carrozzella & Richardson*, 286 B.R. 480, 490 (D. Conn. 2002) ("the proper

focus of a fraudulent transfer inquiry is on the transfer itself, not the overall business practices of the Debtor"); *In re Universal Clearing House Co.*, 60 B.R. 985, 999 (D. Utah 1986) ("The financial position of a debtor need not necessarily be improved by a particular transaction in order for us to hold that value was given."). The focus of the Court's inquiry should be on the discrete transactions between SFGC and Alvarado and their *quid pro quo*, rather than on the fraudulent nature of R. Allen Stanford's overall enterprise. *See*, *e.g.*, *In re Churchill Mortg. Inv. Corp.*, 256 B.R. 664, 678, 680 (Bankr. S.D.N.Y. 2000) ("a determination of whether value was given . . . should focus on the value of the goods and services provided rather than on the impact that the goods and services had on the bankrupt enterprise"). In short, Alvarado provided valuable services and was compensated at a fair market rate. The Complaint fails to allege any facts plausibly supporting a contrary conclusion.

## NO STANDING

In addition, the Receiver does not have standing to bring this claim. TUFTA creates a statutory cause of action through which a *creditor* may seek recourse against a *third party* who is the recipient of a fraudulent conveyance by a *debtor*. *See*, *Beal Bank v. Gilbert*, 417 S.W.3d 704, 710-11 (Tex.App.–Dallas, 2013). The creditors in this action are the defrauded CD holders, the debtor is SFGC, and the third party transferee is Alvarado. *See*, Doc. 73, ¶ 125 (alleging that Alvarado was an "insider" of the debtor SFGC pursuant to § 24.002(7), who received fraudulent transfers from the debtor). A receiver may sue to redress only injuries to the entity in receivership, and not the claims of the entities investor-creditors. *Janvey v. Democratic Senatorial Campaign Committee, Inc.*, 712 F.3d 185, 190 (5th Cir. 2013). Therefore Janvey cannot sue on behalf of the creditors, this action must be dismissed.

**LIMITATIONS BAR**

Finally, the statue of limitations for a claim under § 24.006(a) is an absolute four years after the transfer was made. Tex. Bus. & Com. Code § 24.010(a)(2). The original Complaint was filed on December 17, 2010. Therefore, any claim under this section is limited to alleged transfers after December 17, 2006.

**CONCLUSION**

Plaintiff has not pled facts sufficient to support a cause of action for fraudulent transfer, Plaintiff does not have standing to bring this claim, and the statute of limitations bars any alleged fraudulent transfer under § 24.006(a) prior to December 17, 2006. Therefore these claims should be dismissed.

**UNJUST ENRICHMENT**

Unjust enrichment is an equitable *remedy*, not an independent cause of action. *R.M. Dudley Constr. Co. v. Dawson*, 258 S.W.3d 694, 703 (Tex. App.–Waco 2008, pet. denied) ("Unjust enrichment, itself, is not an independent cause of action."); *Argyle ISD ex rel. Bd. of Trustees v. Wolf*, 234 S.W.3d 229, 246 (Tex. App. – Fort Worth 2007, no pet.) (same); The remedy applies to circumstances that give rise to an implied or quasi-contract, or where one person has obtained a benefit from another by duress or undue advantage. *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d39, 41 (Tex. 1992); *Oxford Fin. Walker v. Cotter Properties, Inc.*, 181 S.W.3d 895, 900 (Tex.App.–Dallas 2006, no pet.).

Furthermore, an unjust enrichment remedy is unavailable because the services that Alvarado provided to the Stanford entities are governed by an express or implied employment agreement between the parties. *See, e.g., Coghlan v. Wellcraft Marine Corp.*, 240 F.3d 449, 454

(5th Cir. 2001) ("In Texas, unjust enrichment is based on quasi-contract and is unavailable when a valid, express contract governing the subject matter of the dispute exists."); *Albemarle Corp. v. MEMC Electronic Materials, Inc.*, 685 F. Supp. 2d 652, 658 (S.D. Tex. 2010) (stating that a plaintiff cannot recover under an unjust enrichment theory when an express contract governs the services provided).

Additionally, to the extent that the unjust enrichment claim is based on a cause of action for anything sounding in fraud, the pleading requirements of Federal Rule 9(b) applies to unjust enrichment. *See Breckenridge Enterprises, Inc. v. Avio Alternatives, LLC*, No. 3:08-CV-1782-M, 2009 U.S. Dist. WL 1469808 at *10 (N.D. Tex. May 27, 2009) (unjust enrichment theory which mirrored fraud claims dismissed per Rule 9(b)).

Because unjust enrichment is a remedy and not a cause of action, and because Plaintiff has not pled any cause of action or facts which would give rise to this remedy this claim must be dismissed.

### FAILURE TO MEET RULE 9(b) PLEADING STANDARDS

All claims that "sound in fraud" must satisfy the requirements of Federal Rule of Civil Procedure 9(b). The Receiver asserts a claim for actual fraudulent transfer, alleging that Alvarado made transfers "with the actual intent to hinder, delay, or defraud creditors." Doc. 73 ¶124. The Receiver also asserts an unjust enrichment claim.

To satisfy Rule 9(b), a plaintiff must plead "who, what, when, where and how" of the alleged fraudulent transfers with specificity. *Williams v. WMX Technologies, Inc.*, 112 F.3d 175, 178 (5th Cir. 1997), *cert. denied*, 522 U.S. 966 (1997). The Fifth Circuit has emphasized that Rule 9(b) should be applied stringently, and that all complaints failing to meet its requirements should be dismissed for failure to state a claim. As the *Williams* court noted, "we apply [Rule

9(b)] with force, without apology." *Williams*, 112 F.3d at 178. Here, the Receiver utterly fails to meet this standard.

The Receiver does not allege facts showing actual intent to hinder, delay or defraud creditors. The Receiver merely asserts that Alvarado received unspecified "CD Proceeds" from an unspecified Stanford entity. He has provided no information regarding the form or method or source of any of the challenged transfers. The Receiver bases his allegations of actual fraudulent transfer entirely upon the allegation that SIB operated as a Ponzi scheme and, thus, actual intent to defraud is presumed. Doc. 73 ¶ 125. However, this does not relieve him of pleading the necessary facts surrounding the alleged transfers.

Because the Receiver's conclusory allegations are insufficient under Rule 9(b), the First Amended Complaint should be dismissed for failure to state a claim.

## DEMAND FOR JURY

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Alvarado demands a trial by jury of all issues triable of right by a jury in this action.

## CONCLUSION

The Receiver has not—and cannot—plead a claim for breach of fiduciary duty, fraudulent transfer or unjust enrichment against Alvarado. Therefore Alvarado respectfully requests the Court dismiss the Receiver's First Amended Complaint, and further requests any an all relief to which Defendant is justly entitled in law or in equity.

Respectfully submitted,

**STANLEY, FRANK & ROSE, L.L.P.**

*/s/ W. Shawn Staples*
W. Shawn Staples
State Bar No. 00788457
wsstaples@stanlelaw.com
Michael J. Stanley
State Bar No. 19046600
Federal Bar I.D. 13283
mstanley@stanleylaw.com
Brian Tagtmeier
State Bar No. 00785078
btagtmeier@stanleylaw.com
7026 Old Katy Road, Suite 259
Houston, Texas  77024
Telephone:  713-980-4381
Facsimile:   713-980-1179

**ATTORNEYS FOR DEFENDANT
PABLO M. ALVARADO**

### CERTIFICATE OF SERVICE

On January 14th, 2015, I electronically submitted the foregoing document with the clerk of the court of the U.S. District Court, Northern District of Texas, using the electronic case filing system of the Court. I hereby certify that I will serve all counsel of record electronically or by other means authorized by the Court or the Federal Rules of Civil Procedure.

*/s/ W. Shawn Staples*
W. Shawn Staples