IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

RALPH S. JANVEY, IN HIS CAPACITY AS §
COURT-APPOINTED RECEIVER FOR THE §
STANFORD RECEIVERSHIP ESTATE, §
AND THE OFFICIAL STANFORD INVESTORS §
COMMITTEE §
§
Plaintiffs, §
§
v. §    Case No. 3:13-CV-0477-N-BG
§
PROSKAUER ROSE LLP, §
CHADBOURNE & PARKE LLP, §
THOMAS V. SJOBLOM, AND §
PABLO M. ALVARADO, §

Defendants.

### ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ORDER TO SHOW CAUSE

Before the court is Plaintiff Ralph S. Janvey's Motion for Order to Show Cause, filed September 14, 2017. ECF No. 186. The District Court has referred discovery issues such as those raised in the pending motion to the undersigned United States Magistrate Judge, *see* Order, *In re Stanford Entities Secs. Litig.*, 3:09-MD-2099-N (N.D. Tex. Sept. 24, 2012, and Feb. 13, 2014) (ECF Nos. 30, 50), and the motion is ripe for review. The undersigned has considered the papers filed by the parties and determined that the Receiver's motion should be granted in part and denied in part. The court defers ruling on the Receiver's request for an award under Rule 37(a) and (b) pending the further submissions ordered below.

## I.   Background

This discovery dispute involves requests for production and interrogatories served on Defendant Pablo M. Alvarado (Alvarado) by Plaintiff Ralph S. Janvey, in his capacity as Court-Appointed Receiver for the Stanford entities (Receiver). This is not the court's first consideration

1

of issues related to these discovery requests. On June 19, 2017, the court entered an order granting in part an initial motion to compel filed by the Receiver (ECF No. 165), and directed Alvarado to "fully and completely answer and respond to" Request for Production (RFP) Nos. 1 through 14 and Interrogatory Nos. 1 and 2 for the period of April 1999 through December 2010, and "serve such answers or responses no later than July 10, 2017." Order, at 17, 21 (ECF No. 175). With regard to RFP Nos. 5 through 14, and Interrogatory No. 1, the court specifically ordered Alvarado to "produce all real estate contracts and closing documents relating to all real property purchased or owned by Alvarado from April 1999 through December 2010 (including the Brickell Key Property), as well as all financial records showing payment of purchase price, down payments, mortgage payments, and any other expenditures made to acquire or maintain ownership of all real property by Alvarado during that period." *Id.* at 21–22. As to RFP Nos. 1, 2, 3, and 4, and Interrogatory No. 2, the court ordered Alvarado to "identify all bank accounts held by him from April 1999 through December 2010," "produce all bank statements for such accounts," and "identify all bank accounts held by Guglielmi or in her name . . . ." *See id.* at 9, 17 n.11.

On September 14, 2017, the Receiver subsequently filed the motion presently before the court. While the Receiver agrees that Alvarado served amended discovery responses prior to the July 10 deadline, containing seventy-one pages of additional document production (*See* House Decl., at 2 (ECF No. 186-2)), he alleges that Alvarado nevertheless failed to fully comply with the court's June 19 Order, as Alvarado did not adequately amend his responses to either the interrogatories or the requests for production. *See, e.g.*, Pl.'s Mot. for Order to Show Cause, at 4–5, 7–10 (ECF No. 186) [hereinafter Pl.'s Mot. to Show Cause]. Specifically, the Receiver claims Alvarado failed to: (1) accurately describe the source of funds used to acquire the six properties at issue; (2) adequately identify all bank accounts held during the relevant time period; and (3)

2

sufficiently describe his efforts to identify or locate such accounts and records. Pl.'s Reply in Supp. of Mot. to Show Cause, at 3, 11 (ECF No. 188) [hereinafter Pl.'s Reply]. The Receiver also generally finds fault in Alvarado's document production concerning the foregoing areas, and notes that Alvarado initially claimed he would produce additional responsive documents, but then failed to do so, insisting there were in actuality no additional documents to produce. *Id.* at 1. Through his motion, the Receiver asks the court to enter an order requiring Alvarado to show cause as to why he failed to comply with the June 19 Order and why the court should not impose sanctions against him. Pl.'s Mot. to Show Cause, at 1. The Receiver also seeks an order requiring Alvarado to: (1) provide the documents and information that the court previously ordered Alvarado to produce and, with respect to any documents and information Alvarado contends he cannot produce, provide a further explanation, supported by written evidence, explaining Alvarado's efforts to comply with the June 19 Order; and (2) pay the Receiver's reasonable litigation expenses incurred as a result of Alvarado's purported violations of the discovery rules and the Order. *Id.* at 2.

After the Receiver filed his Motion for Order to Show Cause, Alvarado produced an additional thirty-five pages of responsive documents, some of which documented his attempts to collect additional account records or statements from his banks. Pl.'s Reply, at 3. Approximately two weeks later, Alvarado filed his response to the Receiver's motion, which included a sworn declaration by Alvarado. ECF No. 187; 187-1. In his response, Alvarado generally alleges he timely served amended discovery responses with additional document production. Def.'s Resp., at 1 (ECF No. 187). He also claims that he has produced "all bank records and financial records . . . that are in [his] possession, custody, and control . . . ." Alvarado Decl., at 1–2 (ECF No. 187-1); Def.'s Resp., at 2. In defense of his reported inability to produce additional documents,

3

Alvarado maintains that "[e]ven the banks themselves do not keep records for the relevant time period." Def.'s Resp., at 3. He further argues that the Receiver's complaint as to his answers to Interrogatory No. 2, i.e., dealing with the bank accounts Alvarado held between April 1999 and December 2010, is "utterly frivolous." *Id.* at 7. Alvarado's declaration provides more detail than his amended answer to the interrogatory (which is the subject of the Receiver's motion) concerning his efforts to verify the existence of other bank accounts and whether such records exist. *See, e.g.,* Alvarado Decl., at 1–3.

The Receiver subsequently filed his reply October 19, 2017 (ECF No. 188), and the matter is ripe for determination by the court. Based on the parties' submissions (i.e., motion, response, and reply, and their attachments), the court construes the present motion as a motion to compel interrogatory answers and RFP responses in keeping with its June 19 Order, and for an order to show cause why the court should not impose sanctions against Alvarado under Federal Rule of Civil Procedure 37. For the reasons set forth below, the court **GRANTS** in part and **DENIES** in part the Receiver's motion.

## II.    Analysis

### A. Legal Standard

Federal Rule of Civil Procedure 37(a) governs motions to compel discovery responses. Rule 37(a)(3)(B) provides that a party seeking discovery may move for an order compelling production against another party when the latter has failed to produce documents requested under Federal Rule of Civil Procedure 34. *See* Fed. R. Civ. P. 37(a)(3)(B)(iv). The rule similarly offers relief for a party's failure to answer an interrogatory. *See* Fed. R. Civ. P. 37(a)(3)(B)(iii). For purposes of Rule 37(a)(4), "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4).

4

In response to a RFP, a party has an obligation to produce any documents in its "possession, custody, or control." Fed. R. Civ. P. 34(a)(1). A party has custody or control over a document when he "has the legal right to obtain the document, even though in fact he has no copy." *Johnson v. PPI Tech. Servs.*, Civ. A. No. 11-2733, 2013 WL 12231609, *3 (E.D. La. Nov. 22, 2013) (citing 8B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2210 (3d ed. 1998)); *see also Cadle Co. v. Terrel*, No. 4:01-CV-0399-E, 2002 WL 22075, at *5 (N.D. Tex. Jan. 7, 2002), *aff'd sub nom. In re Terrell*, 46 F. App'x 731 (5th Cir. 2002) (finding that party had duty to disclose financial information in response to discovery request where he and his wife had the legal right to request account records from bank and statements from credit card company); *In re Wells*, 426 B.R. 579, 610 (Bankr. N.D. Tex. 2006) (acknowledging federal courts have "universally held" that under Rule 34 documents are deemed within a party's possession, custody, and control where the party has the legal right to obtain the documents on demand). The party seeking production has the burden of showing that the other party has control over the material sought. *See Harper v. City of Dall.*, No. 3:14-cv-2647-M, 2017 WL 3674830, at *17 (N.D. Tex. Aug. 25, 2017); *S. Filter Media, LLC v. Halter*, No. CIV.A. 13-116-JJB-RL, 2014 WL 4278788, at *5 (M.D. La. Aug. 29, 2014).

A proper Rule 37(a) motion to compel must include copies of the discovery requests at issue (e.g., Rule 34 requests for production or inspection, Rule 33 interrogatories, subpoena, etc.) and the resisting party's responses and objections to the requests. *Harper*, 2017 WL 3674830, at *8. The motion should also "specifically and individually identify each discovery request in dispute and specifically, as to each request, identify the nature and basis of the dispute, including, for example, explaining . . . how a response or answer is deficient or incomplete, and ask the Court

for specific relief as to each request; and must include a concise discussion of the facts and authority that support the motion as to each discovery request in dispute." *Id.*

## B. Discovery Relating to Alvarado's Bank Accounts and Financial Records

### 1. Interrogatory No. 2

The June 19 Order states that to sufficiently answer Interrogatory No. 2 "Alvarado must identify all bank accounts held by him from April 1999 through December 2010." Order, at 9.  The Receiver claims Alvarado's amended response to Interrogatory No. 2 is insufficient because Alvarado did not confirm whether additional bank accounts existed.   Pl.'s Mot. to Show Cause, at 4–5.  As a result, the Receiver contends he is unable to follow the trail of disputed proceeds from Stanford to Alvarado.  *Id.*  Alvarado disagrees, claiming the Receiver's complaint regarding his answer to Interrogatory No. 2 is "utterly frivolous." Def.'s Resp., at 7.

In his amended answer to the interrogatory, Alvarado states that he "does not recall all bank accounts that he and his wife may have had during the relevant period," but he is aware of checking and savings accounts at Chase Manhattan Bank and Washington Mutual.  App. in Supp. of Pl.'s Motion to Show Cause, Ex. A, at 4–5 (ECF No. 186-1).  Alvarado also identifies three bank accounts owned by Claire Guglielmi (his wife) individually or as Claire Guglielmi, P.C., as part of her law practice, and states that Guglielmi also owned the BNP Paribus bank account.  *Id.* Alvarado further states he: (1) "vaguely recalls that during the relevant time period he *may* have had other individual or joint accounts at one or more of the following banks: Chase, Bank of America, Citibank, HSBC Bank, South West Bank of Texas, or other banks," but he "has no specific recollection of any such other account"; and (2) "has not been able to ascertain any other information regarding bank accounts during the relevant time period." *Id.* (emphasis added).  This

6

was the sum and substance of Alvarado's response to Interrogatory No. 2 until the Receiver filed his September 14 motion.

As noted in section I above, Alvarado produced an additional thirty-five pages of responsive documents concerning his efforts to collect additional account records or statements from his banks *after* the Receiver had filed his Motion for Order to Show Cause. *See* Pl.'s Reply, at 3. Approximately two weeks later, Alvarado filed his response to the Receiver's motion, with the accompanying sworn declaration, which up to that point constituted Alvarado's most comprehensive effort to answer the interrogatory. *See* ECF No. 187; 187-1. Alvarado supplied both of these responses, however, almost three months after the deadline (July 10) imposed in the court's original order to "fully and completely answer" the interrogatory.

The court reiterates that it previously determined the Receiver "should be allowed to conduct discovery for the purpose of tracking the trail of disputed proceeds from Stanford to Alvarado." Order, at 10. Indeed, the court stated that "[t]he most logical place for such tracking begins with *all* bank accounts held by [the] transferee. . . ." *Id.* at 11–12 (emphasis added). Upon a review of Interrogatory No. 2 and Alvarado's amended answers to such, the court finds Alvarado's answer to be insufficient—such a general, equivocal answer provides neither the court nor the Receiver any assurance that Alvarado fully and completely answered the interrogatory, or even attempted to do so. *See Grantham v. Wal-Mart Stores, Inc.*, No. 08-3466-CV-S-GAF, 2011 WL 13136618, at *1–2 (W.D. Mo. June 2, 2011) (finding that defendant's answer listing "a slew of entities that 'may have' had a role" in designing and manufacturing a pool slide was insufficient when court had previously ordered defendant to tell plaintiff who manufactured and who designed the slide). Moreover, the court finds that Alvarado's inconclusive and incomplete response constitutes a failure to answer under Rule 37(a)(4). Alvarado originally identified banks where he

"may" have had accounts, without offering any basis for that belief or describing his efforts, if any, to either confirm or disprove such suspicions. Only after the Receiver filed the present motion did Alvarado even attempt (as reflected by his recitations in the declaration) to more fully and completely answer the interrogatory. While the court acknowledges Alvarado's declaration provides significantly more information than that contained in his amended answer, as noted by the Receiver it still falls short in fully explaining the steps he took to comply with the court's order *as to each bank and/or account. See* Pl.'s Reply, at 3–4 (e.g., providing information and documentation concerning banks' responses as to whether such accounts existed, retention policy for account records, etc.). If Alvarado insists that he cannot fully comply with the court's previous order, he must, at a minimum, explain in detail why he cannot, including all efforts made by him to comply.

Consequently, the court **ORDERS** Alvarado to provide the following information, under oath, in an amended answer to Interrogatory No. 2 **within 10 days of the date of this order:**

1. Identify every bank where Alvarado and his wife, Claire Guglielmi, unequivocally know they each, either individually or jointly, had a bank account during the relevant time period (April 1999 to December 2010), providing the account number and account holder's name for each.

2. Provide the specific facts upon which Alvarado bases his belief that he or his wife **may** have had an account at each bank identified in Alvarado's amended answer to Interrogatory No. 2 served July 7, 2017. As to **each bank**, Alvarado must describe in detail all steps taken by him in attempting to confirm the existence and identity of such accounts, as well as the existence of any records related to those accounts. If he has not already done so, Alvarado must **IMMEDIATELY** contact each bank where he believes he or his wife may have had an account, and request copies of all records covered by Interrogatory No. 2 and RFP Nos. 1–4. If Alvarado does not have complete responses from each bank within ten (10) days of the date of this order, Alvarado shall so indicate in his amended answer to Interrogatory No. 2, and supplement his answer as he receives additional information from each bank as to each account. To the extent Alvarado has already contacted a bank where he believes he or his wife may have had an account, he must specifically identify that bank in his amended answer to Interrogatory No. 2, and state the bank's response to his inquiry, as well as the date he received the bank's response.

8

In conjunction with the court's holding set forth above and Alvarado's obligation to fully respond to RFP Nos. 1–4, he shall also provide to the Receiver copies of all written responses and communications received from each bank identified in parts 1 and 2 concerning: (1) the existence or non-existence of accounts held by Alvarado and Guglielmi, either individually or jointly; (2) the bank's retention policy; and (3) any records and other documents related to such accounts.

### 2. Request for Production Nos. 1 through 4

The Receiver also asserts that Alvarado's production of bank records is insufficient and violates the June 19 Order. Pl.'s Mot. to Show Cause, at 1–2, 6. The Receiver alleges that before the June 19 Order, Alvarado had only produced a few redacted records from his Washington Mutual Bank account for the time period of November 2007 through January 2008, and a document reflecting transactions involving his BNP Paribus account for the period February through October 2004. House Decl., at 2. In the June 19 Order, in addition to determining that the Receiver's discovery requests were relevant to the claims and defenses in this case and proportional to the needs of the parties, the court found that Alvarado had custody and control over the targeted bank records (Order, at 14), and ordered Alvarado to "produce all bank statements for [his bank] accounts" in response to the Receiver's RFP Nos. 1–4 "for the time period of April 1999 through December 2010." *Id.* at 9, 17.

In response to the court's order, Alvarado eventually produced an additional seventy-one pages of documents. House Decl., at 2. The Receiver maintains, however, that the only bank records contained in the seventy-one pages consisted of records from his Washington Mutual Bank account for the time period of January 2007 through January 2008 (approximately 10 months of additional records). *Id.* After the Receiver filed his Motion for an Order to Show Cause, Alvarado produced an additional thirty-five pages of documents. Pl.'s Reply, at 4. The additional materials

included: (1) a letter from HSBC, dated August 18, 2017, explaining it was unable to pull up statements before September 2010; (2) a letter from Bank of America, dated August 15, 2017, stating it was unable to produce records for the time period from April 1999 to August 13, 2010; and (3) the previously identified Citibank letter, dated August 18, 2017, referencing an inquiry made by Alvarado that same day, and stating that "they are unable to provide documents prior to August 18, 2010" but providing records from July 2010 through January 2011.[1] *See id.*; Alvarado Decl. Exs. 1–3 (ECF No. 187). Alvarado further states in his response to the Receiver's motion that "to the best of [his] understanding, [he] is in compliance" with the June 19 Order, and asserts under oath that he has produced all bank documents in his possession, custody, and control. Alvarado Decl., at 1–2; Def.'s Resp., at 2.

In his Reply, the Receiver argues Alvarado has admitted to not producing all bank documents in his possession, custody, or control. Pl.'s Reply, at 2, 5. Specifically, the Receiver notes that although Alvarado produced letters from HSBC and Bank of America confirming that they retained a portion of Alvarado's records for the relevant time period (i.e., August and September to December 2010), Alvarado "inexplicably . . . failed to do anything to collect and produce those remaining bank records." Pl.'s Reply, at 5.

Based on the record before the court, Alvarado's own admissions confirm the existence of responsive documents from HSBC for the period of September through December 2010, and Bank of America for August through December 2010. Alvarado Decl. Exs. 1–2. In its June 19 Order, the court found that Alvarado had custody and control of such records (i.e., records he has a legal right to request from the bank), and ordered Alvarado to produce them. Order, at 14. The court

---

[1] Alvarado's declaration states he received a letter from Citibank indicating they were unable to produce records from before August 18, 2010. Alvarado Decl. Ex. 3. The Receiver asserts Alvarado produced records from July 2010 through January 2011. Pl.'s Reply, at 4. The court finds no explanation in the record for the one-month discrepancy.

therefore **ORDERS** Alvarado to produce these bank account records from Bank of America for the period of August through December 2010, and from HSBC Bank for the period of September through December 2010, which the exhibits attached to his declaration show are available.

As to records that may no longer exist, Alvarado is correct: the court clearly cannot require him to produce documents or records the banks no longer maintain. "A document or thing is not in the possession, custody, or control of a party if it does not exist." Wright & Miller, *Federal Practice and Procedure* § 2210. Indeed, a court "cannot order the production of documents that no longer exist or, despite a diligent search, cannot be found in the possession, custody, or control of a party." *Payne v. Forest River, Inc.*, No. Civ. A. 13-679-JJB-RLB, 2015 WL 1912851, at *4 (M.D. La. Apr. 22, 2015); *see also ORIX USA Corp. v. Armentrout*, No. 3:16-MC-63-N-BN, 2016 WL 4095603, at *5 (N.D. Tex. Aug. 1, 2016) (noting the court cannot compel a party or non-party to produce non-existent documents); *Seahorn Invs., L.L.C. v. Fed. Ins. Co.*, 1:13CV320-HSO-RHW, 2014 WL 11444117, at *4 (S.D. Miss. Oct. 16, 2014) ("In response to the motion to compel, Plaintiff affirms that all responsive documents have been produced. The court will therefore require no further response . . . ."). Consequently, Alvarado does not have custody or control over targeted account records that the banks no longer maintain due to their retention policies. He is required, however, to produce all records sought by RFP Nos. 1–4 not previously produced, whether currently in his actual possession or subsequently provided to him by the banks in response to his inquiries, and the court **ORDERS him to do so within 10 days of the date of this order.**

Moreover, as to records covered by RFP Nos. 1–4 that Alvarado claims he cannot produce, the Receiver is entitled to an unequivocal representation that Alvarado has conducted a diligent search for such records. Consistent with the relief granted by the court as to Interrogatory No. 2,

11

and Alvarado's obligation to fully respond to RFP Nos. 1–4, Alvarado must also provide amended responses to RFP Nos. 1–4, producing copies of all written responses and communications received from every bank identified in Alvarado's amended answer to Interrogatory No. 2 concerning: (1) the existence or non-existence of accounts held by Alvarado and Guglielmi, either individually or jointly; (2) the bank's retention policy; and (3) all records and other documents related to such accounts. The foregoing production is required in addition to Alvarado producing the actual account records currently in his possession, custody or control, as well as those subsequently provided by banks in response to his requests for additional records. **Alvarado must provide the above described amended responses to the Receiver no later than ten (10) days from the date of this order.**[2]

### C. Discovery Relating to Alvarado's Real Estate

#### 1. Interrogatory No. 1

The Receiver also contends Alvarado refused to amend his answer to Interrogatory No. 1, which seeks to identify all properties Alvarado purchased or owned during his tenure with Stanford, and the source of funds used to purchase and maintain those properties. Pl.'s Mot. to Show Cause, at 10. Specifically, the Receiver alleges Alvarado failed to properly identify the source of funds used to acquire the properties at issue and therefore did not, as required by the court's order, "fully and completely answer . . . Interrogatory number 1." *See* Order, at 21; *see also* Pl.'s Mot. to Show Cause, at 10; Pl.'s Reply, at 6. In his amended answer to the interrogatory, Alvarado states that the funds used to purchase the properties consist of "personal funds" or "savings." Pl.'s Mot. to Show Cause, at 10; Pl.'s Reply, at 6. The Receiver argues Alvarado

---

[2] If Alvarado does not have complete responses from each bank within ten (10) days of the date of this order, Alvarado shall so indicate in his amended responses to RFP Nos. 1-4, and supplement his responses as he receives additional information from each bank as to each account

should have identified the specific source of funds designated as "personal," including whether he used any Stanford CD proceeds to purchase the properties at issue. Pl.'s Mot. to Show Cause, at 10.

Alvarado's answer and amended answer to Interrogatory No. 1 contribute little or nothing to identifying the actual source of funds he identifies as "personal," simply stating the money came "from Defendant and his wife." App. in Supp. of Pl.'s Mot. to Show Cause Ex. A, at 3–4. Such a response merely restates Alvarado's position, and does not address the substance of the Receiver's question or comply with the court's directive to "fully and completely" answer. Simply adding the phrase "from Defendant and his wife," without providing any factual basis for such a conclusion, does not sufficiently identify where Alvarado or his wife derived the funds used to purchase the properties at issue and borders on flippancy. The court finds that Alvarado's amended answer is evasive. *See, e.g., United States v. Two (2) Acres of Land & Pers. Prop., Located in First Judicial Dist. of Harrison Cty.*, 789 F. Supp. 220, 226 (S.D. Miss. 1992) (finding defendant's answer to an interrogatory seeking information about the origin of cash used to acquire property subject to forfeiture evasive when defendant failed to give dates, names, etc., regarding the source of the cash). As such, the court treats Alvarado's amended answer to Interrogatory No. 1 as a failure to answer. *See* Fed. R. Civ. P. 37(a)(4).

Consequently, the court **ORDERS** Alvarado to identify the original source of "personal funds" and "savings" used to purchase the properties in question, and to specifically distinguish between salary, proceeds, etc., received from Stanford, and those Alvarado claims were received from sources other than Stanford, e.g., other employers, gifts, inheritance, sale of assets, etc., and produce all records and documents reflecting such sources (as required by RFP Nos. 10–14). To be complete, in addition to specifically identifying the original source of funds used to purchase

13

the properties in question, Alvarado's answers must include the bank account from which the purchase money (or money used to maintain the property) was withdrawn, the name(s) of the account holder(s), the date the funds were originally deposited into that account, and the amount of the deposit. As to each identified account, Alvarado shall also state whether Stanford proceeds were deposited into the account at any time prior to the withdrawal.

If Alvarado alleges that he used proceeds from the sale of an asset to acquire any of the properties in question, he must also produce records in his possession, custody or control showing the source of funds used to acquire the asset (if acquired during the period April 1999 through December 2010), or satisfy any indebtedness on the asset (if paid during the period April 1999 through December 2010), as required by RFP Nos. 10–14. Should Alvarado claim he cannot produce such documentation, he is to provide a sworn answer to Interrogatory No. 1 specifically identifying every source of funds used to obtain (or satisfy indebtedness on) the asset that was sold and used to acquire the property in question, and stating the reason why he cannot produce such documents.

**Alvarado must serve these amended answers and responses on the Receiver no later than ten (10) days from the date of this order.**

### 2. Request for Production Nos. 10 through 14

The Receiver also contends Alvarado's amended responses to RFP Nos. 10–14 (i.e., financial records regarding the purchase and maintenance of Alvarado's real estate at issue) are insufficient. Pl.'s Reply, at 4–5. The June 19 Order directed Alvarado to "produce all real estate contracts and closing documents relating to all real property purchased or owned by Alvarado" during the relevant time period, "as well as financial records showing the payment of the purchase price, down payments, mortgage payments, and any other expenditures made to acquire or

14

maintain ownership of real property owned by Alvarado during that period." Order, at 21–22. In his response, Alvarado asserts that "he has produced all [such] documents in his possession, custody, or control," and that the Receiver can obtain the requested financial records from the relevant third party. Def.'s Resp., at 5. The Receiver faults Alvarado's efforts in this regard, claiming he "did not even attempt to obtain any other financial records, which may still be in the possession of title companies, real estate brokers or agents, or other persons involved in those financial transactions" and that "[i]f Alvarado has a legal right to obtain such documents, he must collect them and produce them." Pl.'s Reply, at 5.

The court finds the remaining documents sought by the Receiver, i.e., financial records in the possession of real estate agents, title companies, and similar third parties, to be, at least facially, distinguishable from bank account records the court previously ordered produced. Initially, the court notes that bank account records necessarily imply some type of written agreement or contractual relationship between the customer and the bank (whatever the type of account or product involved, e.g., checking, savings, money-market, certificate of deposit, line of credit, etc.), which would bestow on the customer the power or authority (custody or control) to obtain from the bank records related to the account in question. *See, e.g., Cadle Co.,* 2002 WL 22075, at \*5; *In re Wells,* 426 B.R. at 610.

On the current record, however, the court cannot reach a similar conclusion as to records in the possession of other third parties, such as real estate agents or title companies. Unlike bank records, where Alvarado undisputedly has the ability to procure such documents related to his accounts, Alvarado's power to obtain financial records from other third parties is not as clear-cut. *See, e.g., Diamond Consortium, Inc. v. Manookian,* No. 4:16CV94-ALM, 2017 WL 3301527, at \*9 (E.D. Tex. Aug. 3, 2017) (quoting *Estate of Monroe v. Bottle Rock Power Corp.,* No. 03-2682,

15

2004 WL 737463, at *10 (E.D. La. Apr. 2, 2004)) ("Typically, what must be shown to establish control over documents in the possession of a non-party is that there is 'a relationship, either because of some affiliation, employment or statute, such that a party is able to command release of certain documents by the non-party person or entity in actual possession.'"). Differing scenarios exist where Alvarado's legal relationship with the third party might vary significantly. As an example, Alvarado may have purchased real property through a real estate agent representing the seller. In such a circumstance, the contractual relationship typically exists between the seller and her agent. While logic would suggest Alvarado could obtain from the seller's agent documents related to the closing, the Receiver has provided no authority for the proposition that any records maintained by the seller's agent are legally in Alvarado's possession, custody, or control. *See, e.g., McMillan v. JPMorgan Chase Bank NA*, No. CV 15-500-SDD-RLB, 2017 WL 477969, at *2 (M.D. La. Feb. 6, 2017) (denying Rule 37(c) exclusionary sanction for bank's failure to identify subcontractor as possible third party tortfeasor where bank had contractual relationship with the contractor, and subcontractor's identity was therefore not in bank's possession, custody, or control). A similar situation could exist where Alvarado sold real property to a buyer represented by a real estate agent, and the buyer's agent conducted the closing. Under either of these circumstances, the court believes factual and legal questions exist over whether such documents are in Alvarado's possession, custody, or control. *See Jefferson v. Delphi Auto. Sys. LLC*, No. 2:13-CV-320, 2015 WL 8479066, at *3 (S.D. Tex. Dec. 10, 2015) (denying motion to compel production of expert witness's prior reports generated for unrelated cases because defendant had not made any showing that plaintiff could command release of the documents); *Goh v. Baldor Elec. Co.*, No. 3:98-MC-064-T, 1999 WL 20943, at *3 (N.D. Tex. Jan. 13, 1999) (finding plaintiff

16

failed to prove accounting firm had control over documents held by overseas entities when entities controlled their own resources, maintained separate profit pools, and held different management).

Conversely, in the event Alvarado either bought or sold real property through his own agent, thus giving rise to an express contractual relationship between he and the realtor, the court believes such custody or control would almost certainly exist. *See, e.g., Sensormatic Elecs. Corp. v. WG Sec. Prod., Inc.*, No. CIV.A. 2:04-CV-167, 2006 WL 5111116, at *1 (E.D. Tex. Feb. 9, 2006) (finding a party is in custody or control of documents in possession of a third party through a contractual relationship with that party). Given, however, the foregoing factual and legal uncertainties, the court must resolve this question on the basis of which party has the burden of proof—here, that is the Receiver. *See Harper*, 2017 WL 3674830, at *17 (noting the party seeking the production of documents bears the burden of establishing the opposing party's control over those documents); *Piazza's Seafood World, L.L.C. v. Odom*, Civ. A. No. 07-413-BAJ-CN, 2011 WL 3664437, at *3 n.6 (M.D. La. Aug. 19, 2011) ("The burden is on the party seeking discovery to make a showing that the other party has control over the material sought."). The Receiver has offered no factual basis or legal authority supporting a finding that Alvarado has possession, custody, or control over documents in the possession of other third parties, e.g., real estate agents and title companies, related to the real property transactions in dispute.

Because the Receiver has not met his burden of showing Alvarado is in possession, custody, or control of the financial records that may be in the possession of other third parties (i.e., real estate agents, title companies, etc.), the court **DENIES** the Receiver's motion to compel only in regard to such documents. Of course, Rule 34 of the Federal Rules of Civil Procedure provides a mechanism under Rule 45 to subpoena "a nonparty . . . to produce documents and tangible things or to permit inspection." Fed. R. Civ. P. 34(c); *see* Fed. R. Civ. P. 45.

17

### D. Sanctions

The Receiver additionally requests that the court enter an order requiring Alvarado to pay the Receiver's reasonable litigation expenses incurred as a result of Alvarado's violation of the discovery rules and the June 19 Order. Pl.'s Mot. to Show Cause, at 12–13. The Receiver alleges he has incurred in excess of $10,270 in attorneys' fees as a result of Alvarado's failure to meet his discovery obligation. House Decl., at 17–19. Alvarado denies the Receiver's entitlement to any sanctions, claiming he has complied with the court's order in all material respects. Def.'s Resp., at 2, 7.

A court *must* award expenses and attorneys' fees to a party seeking an order compelling disclosure or discovery under Rule 37: (1) when the court grants the motion; (2) where the requested discovery or disclosure is provided after the motion's filing; or (3) where a party fails to obey an order to provide or permit discovery. Fed. R. Civ. P. 37(a)(5)(A), (b)(2)(A). The recalcitrant party can avoid such an award only by showing that his failure to obey or adequately respond was substantially justified or that circumstances make such an award unjust. *See* Fed. R. Civ. P. 37(a)(5)(A)(ii)–(iii), (b)(2)(C).

Alvarado's failure to provide discovery responses and answers compliant with this court's previous order, and refusal to produce records admittedly within his possession, custody, or control—both of which have resulted in the necessity of the court issuing this order granting in part the Receiver's motion[3]—require the award of fees and expenses as requested by the Receiver, absent Alvarado demonstrating either substantial justification or that granting such relief is unjust. Accordingly, Alvarado shall have until **January 18, 2018,** to file a response to this order explaining why the court should not require him to pay the Receiver's expenses, including

---

[3] Where the motion is granted in part and denied in part, the court "may . . . apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C).

18

attorneys' fees, incurred in briefing and filing his motion and reply. In his response, Alvarado should fully explain whether his failure to adequately answer and respond to the interrogatories and RFPs at issue was substantially justified or whether other circumstances make an award of expenses under Rule 37(a) and (b) unjust. The Receiver may file a reply in support of his request for an award of his reasonable expenses **within ten (10) days after Alvarado files his response to this order**.

The court defers ruling on the Receiver's request for sanctions pending this additional briefing.

### III.    Conclusion

For the reasons and to the extent explained above, the court grants in part and denies in part the Receiver's Motion for Order to Show Cause.

**SO ORDERED.**

Dated: December 28, 2017

D. GORDON BRYANT, JR.
UNITED STATES MAGISTRATE JUDGE