UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

RALPH S. JANVEY, IN HIS CAPACITY AS COURT-APPOINTED RECEIVER FOR THE STANFORD RECEIVERSHIP ESTATE, AND THE OFFICIAL STANFORD INVESTORS COMMITTEE,

*Plaintiffs*,

- against -

PROSKAUER ROSE, LLP, CHADBOURNE & PARKE, LLP, AND THOMAS V. SJOBLOM,

*Defendants*.

Civil Action No. 3:13-cv-00477-N
Hon. David C. Godbey

**ORAL ARGUMENT REQUESTED**

**DEFENDANT PROSKAUER ROSE LLP'S MOTION TO EXCLUDE EXPERT TESTIMONY OF KARYL VAN TASSEL AND BRIEF IN SUPPORT THEREOF**

Neil R. Burger
Bruce W. Collins
CARRINGTON, COLEMAN, SLOMAN & BLUMENTHAL, L.L.P.
901 Main Street, Suite 5500
Dallas, Texas 75202
Telephone: (214) 855-3000
Facsimile: (214) 855-1333
E-mail: nburger@ccsb.com

James P. Rouhandeh*
Daniel J. Schwartz*
Craig M. Reiser*
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
E-mail: rouhandeh@davispolk.com
* admitted *pro hac vice*

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES .......... ii

PRELIMINARY STATEMENT .......... 1

ARGUMENT .......... 3

I. Van Tassel's Damages Calculation Is Not Reliable Because It Is Based on a Fundamentally Flawed Methodology .......... 4

II. Van Tassel's Testimony Is Not Relevant Because It Recites Plaintiff's Interpretation of the Factual Record and Draws Impermissible Conclusions from It .......... 8

CONCLUSION .......... 13

# TABLE OF AUTHORITIES

## CASES

PAGE(S)

Am. Tourmaline Fields v. Int'l Paper Co.,
No. CIV. A.3:96CV3363D, 1999 WL 242690 (N.D. Tex. Apr. 19, 1999) ..............................4

Cannon v. BP Prods. N. Am., Inc.,
No. 3:10-CV-00622, 2013 WL 5514284 (S.D. Tex. Sept. 30, 2013) .......................................4

Cassidian Commc'ns, Inc. v. Microdata GIS, Inc.,
No. 2:12-cv-00162-JRG, 2013 WL 11322510 (E.D. Tex. Dec. 3, 2013).................................4

Charalambopoulos v. Grammer,
No. 3:14-CV-2424-D, 2017 WL 930819 (N.D. Tex. Mar. 8, 2017).......................................11

In re CitX Corp.,
448 F.3d 672 (3d Cir. 2006)..............................................................................................5, 6, 7

Coroles v. Sabey,
79 P.3d 974 (Utah Ct. App. 2003) ...........................................................................................5

Crow v. United Benefit Life Ins. Co.,
No. CIV. A. 3:00-CV-1375-G, 2001 WL 285231 (N.D. Tex. Mar. 16, 2001)...................9, 10

Curtis v. M&S Petroleum, Inc.,
174 F.3d 661 (5th Cir. 1999) (en banc) .....................................................................................3

Daubert v. Merrell Dow Pharm., Inc.,
509 U.S. 579 (1993)........................................................................................ 1, 4, 9, 12-13

Deaf Interpreter Servs., Inc. v. Webbco Enters., L.L.C.,
Civ. A. No. 5:13-867-RCL, 2015 WL 11565191 (W.D. Tex. Feb. 11, 2015)....................9, 12

Janvey v. Democratic Senatorial Campaign Comm., Inc.,
712 F.3d 185 (5th Cir. 2013) ...............................................................................................2, 8

Johnson v. Arkema, Inc.,
685 F.3d 452 (5th Cir. 2012) ...................................................................................................3

Kirschner v. Grant Thornton LLP,
No. 07 Civ. 11604 (GEL), 2009 WL 1286326 (S.D.N.Y. Apr. 14, 2009),
aff'd sub nom. Kirschner v. KPMG LLP, 626 F.3d 673 (2d Cir. 2010)..........................5, 6, 7

Kumho Tire Co. v. Carmichael,
526 U.S. 137 (1999) ....................................................................................................4

In re Magnesium Corp. of Am.,
399 B.R. 722 (Bankr. S.D.N.Y. 2009) ..........................................................................8

Matosky v. Manning,
428 F. App'x 293 (5th Cir. 2011) ..................................................................................4

MGM Well Servs. Inc. v. Mega Lift Sys., LLC,
Civ. A. No. H-05-1634, 2007 WL 150606 (S.D. Tex. Jan. 16, 2007) ..........................8

In re Plaza Mortg. & Fin. Corp.,
187 B.R. 37 (Bankr. N.D. Ga. 1995) ............................................................................7

Richards v. Lufkin Indus., Inc.,
No. 9:14-CV-00136, 2017 WL 4320700 (E.D. Tex. Sept. 28, 2017) ...........................9

Robroy Indus.-Tex., LLC v. Thomas & Betts Corp.,
No. 2:15-CV-512-WCB, 2017 WL 1319553 (E.D. Tex. Apr. 10, 2017) ..............8, 9, 10

Salas v. Carpenter,
980 F.2d 299 (5th Cir. 1992) .............................................................................8, 9, 11, 13

In re SI Restructuring, Inc.,
532 F.3d 355 (5th Cir. 2008) .........................................................................................5

Sims v. Kia Motors of Am., Inc.,
839 F.3d 393 (5th Cir. 2016) .........................................................................................3

In re Troll Commc'ns, LLC,
385 B.R. 110 (Bankr. D. Del. 2008) ..............................................................................5

United States ex rel. Ruscher v. Omnicare, Inc.,
Civ. A. No. 4:08-cv-3396, 2015 WL 5178074 (S.D. Tex. Sept. 3, 2015) ....................11

STATUTES & RULES

Fed. R. Evid. 702 ...........................................................................................................3, 4

OTHER AUTHORITIES

Ken Herzinger & Alexander Aganin, Questioning the Deepening Insolvency Theory,
The Deal Pipeline (May 29, 2012, 12:39 PM)
https://pipeline.thedeal.com/article/10005714999/index.dl. ...........................................6

Defendant Proskauer Rose LLP ("Proskauer") respectfully submits this brief in support of its motion to exclude the opinion and testimony of Karyl Van Tassel, offered in this case with respect to claims asserted by the Official Stanford Investors Committee ("OSIC" or "plaintiff") as a purported assignee of Ralph S. Janvey (the "Receiver").

**PRELIMINARY STATEMENT**

This Court previously determined that R. Allen Stanford and James Davis used Stanford International Bank ("SIB"), Stanford Group Company ("SGC"), and other companies that Stanford owned and controlled (collectively "Stanford Financial") to carry out a massive, worldwide Ponzi scheme. See Order, SEC v. Stanford Int'l Bank, No. 3:09-CV-00298-N (N.D. Tex. Apr. 25, 2013), Dkt. No. 1858. In so holding, the Court concluded that Stanford, Davis, SIB, and SGC were jointly and severally liable for $5.9 billion in damages—a sum based on SIB's net outstanding liabilities to certificate of deposit ("CD") holders that it incurred as a result of its fraudulent scheme. Id. at 12; Order of Forfeiture at Sentencing, United States v. Robert Allen Stanford, No. H-090342-01-S (S.D. Tex. June 14, 2012), Dkt. No. 881. Plaintiff, purportedly asserting SIB and SGC's claims through an assignment from the Receiver, now seeks to hold Proskauer liable for a substantial portion of those very same damages: $1.5 billion.

In support of its misguided attempt to transfer responsibility from Stanford and Davis to a law firm that performed legal services for Stanford Financial, plaintiff relies exclusively on the opinions of Karyl Van Tassel—a forensic accounting expert. Van Tassel's opinions, however, fail to meet the basic requirements for expert testimony set forth by the Supreme Court in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). Van Tassel's opinions fall into two categories: (1) her calculation of damages; and (2) her recitation of purported "facts" that allegedly relate to the issues identified to her by plaintiff and/or link Proskauer's

actions to the damages this Court has already determined that Stanford, Davis, SIB, and SGC caused. Neither opinion is admissible.

First, Van Tassel's computations of damages allegedly attributable to Proskauer fails to meet the Daubert standard for admissibility. It is common ground that Proskauer had no role in the sale, marketing or issuance of the CDs which formed the basis of the Ponzi scheme. Rather, plaintiff seeks to prove that Proskauer aided and abetted the Ponzi scheme through its representation of Stanford Financial in an SEC investigation. But, as Van Tassel admitted at her deposition, she did not compute the dollar-value losses flowing from any action by Proskauer or its former partner, Thomas V. Sjoblom, nor did she compute the losses attributable to any of the purported misconduct that Proskauer allegedly aided and abetted. Her opinions as to damages, therefore, are completely untethered to Proskauer's conduct and/or the issue of causation.

Instead, Van Tassel measures damages as the portion of the $5.9 billion in net CD liabilities that SIB and SGC incurred during the time period when Proskauer was representing Stanford Financial. Among the myriad problems with this approach is that it is a "deepening insolvency" damages methodology that is fundamentally flawed, and has been repudiated by both the economic community and by the courts, including the Fifth Circuit. By calculating the amount of increased liabilities for SIB and SGC, both already insolvent companies, Van Tassel computes a measure of damages that does not reflect any harm to the companies themselves. Indeed, as she admitted at her deposition, SGC has no CD liabilities and SIB was not injured by the increase in CD liabilities because it received equivalent cash that entirely offset those liabilities. And while CD purchasers may be damaged by SIB's inability to repay them, the Receiver—and OSIC, which purports to assert his claims—has no standing to recover those damages, as the Fifth Circuit has conclusively ruled. Janvey v. Democratic Senatorial Campaign Comm., Inc., 712 F.3d 185, 190

(5th Cir. 2013). As a result, Van Tassel's damages calculation does not provide any evidence of a legally cognizable harm caused by Proskauer, and her testimony on this topic should be excluded.

Second, Van Tassel's attempt to link Proskauer's actions to the economic damages she calculates does not provide any assistance to the jury because it is nothing more than a recitation of purported "facts" that plaintiff alleged in the complaint and will seek to prove at trial. Rather than opining on proximate causation or loss causation, Van Tassel does nothing more than summarize or quote documents and testimony, all of which a jury is perfectly capable of understanding on its own. Notwithstanding her professed "expertise" in reading and interpreting documents, Van Tassel is no more of an expert in that subject than any juror. In offering her one-sided summary of emails and Mr. Sjoblom's attorney notes, Van Tassel does not draw on any specialized knowledge of any accounting issue—the area in which she purports to be an expert—and is impermissibly serving as a mouthpiece for plaintiff. Her conclusions about what Mr. Sjoblom knew and intended fall far outside the bounds of permissible expert testimony. This testimony is inadmissible pursuant to Federal Rule of Evidence Rule 702 and Daubert, which require that expert opinions assist the jury in some way.

Accordingly, and for the reasons set forth below, the Court should grant Proskauer's motion to exclude Van Tassel's opinions and testimony.

## ARGUMENT

Plaintiff, as the proponent of Van Tassel's testimony, bears the burden of demonstrating its admissibility. See Sims v. Kia Motors of Am., Inc., 839 F.3d 393, 400 (5th Cir. 2016); Johnson v. Arkema, Inc., 685 F.3d 452, 459 (5th Cir. 2012). Federal Rule of Evidence 702 "assigns to the district judge a gatekeeping role" in ensuring that the proponent satisfies that burden. Johnson, 685 F.3d at 459 (quoting Curtis v. M&S Petroleum, Inc., 174 F.3d 661, 668

(5th Cir. 1999) (en banc)); Fed. R. Evid. 702. The Supreme Court has held that district judges must confirm "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." Daubert, 509 U.S. at 597; Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141 (1999) (holding that federal trial judges must fulfill this "'gatekeeping' obligation" not only when assessing "'scientific' knowledge," but also when evaluating "testimony based on 'technical' and 'other specialized' knowledge" (quoting Fed. R. Evid. 702)). Here, plaintiff has failed to satisfy its burden. Van Tassel's damages opinion is not reliable because it is based on a flawed methodology that the Fifth Circuit has already rejected. And, it is not relevant because it will provide no assistance to the jury—it consists entirely of Van Tassel's inaccurate recitation of cherry-picked portions of the factual record and the inferences she draws from it. This Court should accordingly exclude Van Tassel's opinion and testimony.

## I. Van Tassel's Damages Calculation Is Not Reliable Because It Is Based on a Fundamentally Flawed Methodology

Van Tassel's damages calculation is not reliable, and should be excluded, because it is based on a "deepening insolvency" methodology that courts and commentators have rejected. See Daubert, 509 U.S. at 593-94 (noting that expert testimony should be "generally accepted" in the relevant professional community); Matosky v. Manning, 428 F. App'x 293, 298 & n.3 (5th Cir. 2011) (affirming ruling that expert testimony "derived from an unreliable methodology" was unreliable under both Daubert and Rule 702).[1] Van Tassel's methodology plainly attempts to

[1] See also Cassidian Commc'ns, Inc. v. Microdata GIS, Inc., No. 2:12-CV-00162-JRG, 2013 WL 11322510, at *2 (E.D. Tex. Dec. 3, 2013) (explaining that where an expert's methodology for calculating damages is "fundamentally flawed" and "the flaw cannot be cured by vigorous cross-examination, presentation of contrary evidence, or careful instruction on the burden of proof," the expert's opinion must be excluded (internal quotations omitted)); Cannon v. BP Prods. N. Am., Inc., No. 3:10-CV-00622, 2013 WL 5514284, at *14 (S.D. Tex. Sept. 30, 2013) (finding an expert's damages analysis inadmissible because it was not based on "a reliable or formulaic model"); Am. Tourmaline Fields v. Int'l Paper Co., No. CIV. A.3:96CV3363D, 1999 WL 242690 at *4-6 (N.D. Tex. Apr. 19, 1999) (rejecting a damages expert's unsupported methodology).

calculate damages based on SIB's increased insolvency. Indeed, she acknowledges that SIB was insolvent beginning in at least 1999—six years prior to when Mr. Sjoblom was engaged by Stanford Financial—but nevertheless calculates the damages his conduct allegedly caused based on the "increased CD liabilities that accrued to SIB" during the time he was at Proskauer from 2006 to 2009. (App. 11-12 [Ex. 1, Suppl. Decl. ¶ 10]; App. 38-40 [Ex. 2, Van Tassel Tr. 94:3-96:15].)[2]

As the Fifth Circuit and numerous other courts have held, this approach—i.e., measuring a corporate entity's damages by the extent to which it became more insolvent—"is not a valid theory of damages." In re SI Restructuring, Inc., 532 F.3d 355, 363 (5th Cir. 2008) (emphasis added); In re CitX Corp., 448 F.3d 672, 678 (3d Cir. 2006) (the "deepening of a firm's insolvency is not an independent form of corporate damage"); see also In re Troll Commc'ns., LLC, 385 B.R. 110, 122 (Bankr. D. Del. 2008) (concluding that deepening insolvency was not a valid theory of damages); Coroles v. Sabey, 79 P.3d 974, 983 (Utah Ct. App. 2003) ("declin[ing] Plaintiffs' invitation to recognize deepening insolvency" as a measure of damages (internal quotations omitted)).

The reason, as courts and commentators have explained, is that increased liabilities do not, in and of themselves, cause any economic harm to a corporation. See Kirschner v. Grant Thornton LLP, No. 07 Civ. 11604GEL, 2009 WL 1286326, at *8 (S.D.N.Y. Apr. 14, 2009) (explaining that "[i]t is a basic principle of corporate finance that extending credit to a distressed entity in itself does the entity no harm" and "with respect to injury to the corporate body . . . the extension of credit is—at worst—neutral"), aff'd sub nom. Kirschner v. KPMG LLP, 626 F.3d

[2] Citations in the form "App. __" are to the Appendix filed in connection with this motion, which includes the Declaration of James P. Rouhandeh, dated February 20, 2018, and the exhibits thereto.

673 (2d Cir. 2010). Indeed, "the issuance of debt . . . does not do damage to the company because when a company raises new debt, it generally acquires a new asset in the form of debt proceeds with fair market value equal to the new debt." Ken Herzinger & Alexander Aganin, Questioning the Deepening Insolvency Theory, The Deal Pipeline (May 29, 2012, 12:39 PM), https://pipeline.thedeal.com/article/10005714999/index.dl (explaining that deepening insolvency "is not grounded in sound economic theory"). Moreover, the fact that a company can use the influx of capital from increased liabilities "to turn the company around and transform it into a profitable business" undermines any assertion of corporate injury. In re CitX Corp., 448 F.3d at 678.

Van Tassel acknowledged that these economic principles apply with respect to the sale of CDs on which her damages methodology is based, testifying that when a "CD comes in, the cash is increased and there is a liability," such that "the net effect on assets minus liabilities would be zero." (App. 44-45 [Ex. 2, Van Tassel Tr. 133:12-134:3].) She likewise acknowledged that the increased CD sales could have resulted in a net benefit to SIB because it could have used the cash it received from CD investments to pay off its liabilities. (See App. 46-47 [id. 135:2-136:2] (testifying that money from CD liabilities was used for "the current CD holders, to pay them back when there was a redemption or interest payment that was due and was requested by the CD holder").) Accordingly, to the extent SIB or SGC suffered any damages, it is not because CD liabilities increased—it is because the proceeds of the CD sales were looted by Stanford and Davis. See Kirschner, 2009 WL 1286326, at *8 (explaining that "any harm done to the corporation is not done by the extension of credit itself but by any subsequent looting or embezzlement").

Van Tassel does not calculate the amount looted by Stanford and Davis, however, because she improperly includes all of the CD investments—regardless of why or how they were used—to determine damages to SIB and SGC. See In re Plaza Mortg. & Fin. Corp., 187 B.R. 37, 45 (Bankr. N.D. Ga. 1995) (noting damages for a Ponzi scheme are not "an amount equal to the funds invested in the debtor's Ponzi scheme, but should [be] measure[d] . . . based on funds improperly paid out by the debtor"); In re CitX Corp., 448 F.3d at 678 (purported harm to debtor that operated an illegal Ponzi scheme in the form of deepening insolvency was not a valid theory of damages supporting professional malpractice claim by trustee). A calculation of increased liabilities based on all CD sales does not and cannot correspond to the amount looted, particularly given that Stanford Financial had "real employees," "valid investments," "real offices," and "businesses . . . [that] were unrelated to the CDs." (App. 58 [Ex. 3, Davis Tr. 137:2-10]; App. 109-11 [Ex. 4, Decl. ¶¶ 103-06]; App. 118-20 [Ex. 5, Van Tassel July 27, 2009 Decl. ¶¶ 14, 18 (acknowledging "SIB received some returns on investments" and "Tier 2 principally consisted of investments placed with a variety of investment firms or funds located in the U.S. and Europe").) Nor does it account for the looted assets that the Receiver has recovered on behalf of the Stanford Receivership Estate.

And because Van Tassel does no more than compute the amount the investors paid SIB to purchase CDs—as opposed to what was stolen—her model at most approximates the damages suffered by investors in Stanford's Ponzi scheme. See Kirschner, 2009 WL 1286326, at *9 ("The fraud here produced an influx of cash to the company, not an outflow, and the benefit procured by the insiders came at the expense of the securities purchasers, not of [the company] itself."). But, the remaining claims in this case originated with the Receiver (Compl. ¶¶ 3, 270; App. 139-40 [Ex. 6, Janvey Tr. 24:20-25:4]), who can only recover for harm to SIB and SGC.

See Democratic Senatorial Campaign Comm., Inc., 712 F.3d at 190. Accordingly, plaintiff does not have standing to recover for the damages Van Tassel has purported to calculate. See In re Magnesium Corp. of Am., 399 B.R. 722, 758 (Bankr. S.D.N.Y. 2009) (explaining that the "determination of standing requires inquiry as to whether the injury was to the corporation (with resulting claims to be brought by or on behalf of the corporation), or was to creditors individually"). Van Tassel's opinion and testimony should be excluded for this reason alone, and because there is no other evidence of damages, Proskauer is entitled to summary judgment for the reasons set forth in its pending summary judgment motion. (See ECF Nos. 219, 220.)

## II. Van Tassel's Testimony Is Not Relevant Because It Recites Plaintiff's Interpretation of the Factual Record and Draws Impermissible Conclusions from It

Van Tassel's opinion and testimony should also be excluded because her attempt to link the actions of Mr. Sjoblom and Proskauer to her calculation of damages amounts to a recitation of plaintiff's self-serving (and incorrect) interpretation of the factual record. As Van Tassel admitted at her deposition, her analysis simply "set[s] forth" information related to plaintiff's allegations, "contrast[s] it with other information available" and indicates "whether there are inconsistencies" in the record. (App. 34-35 [Ex. 2, Van Tassel Tr. 64:17-65:21].) This is not proper expert testimony; "denominating a witness as an expert does not give that witness leave to simply read materials such as exhibits and depositions in the case and then testify as to their contents." Robroy Indus.-Tex., LLC v. Thomas & Betts Corp., No. 2:15-CV-512-WCB, 2017 WL 1319553, at *9 (E.D. Tex. Apr. 10, 2017); Salas v. Carpenter, 980 F.2d 299, 305 (5th Cir. 1992) ("[T]he trial judge ought to insist that a proffered expert bring to the jury more than the lawyers can offer in argument."); MGM Well Servs., Inc. v. Mega Lift Sys., LLC, Civ. A. No. H-05-1634, 2007 WL 150606, at *4 (S.D. Tex. Jan. 16, 2007) (excluding opinions of expert witness whose testimony was "an effort to synthesize [the party's] positions and present them

summarily as an expert opinion"); Richards v. Lufkin Indus., Inc., No. 9:14-CV-00136, 2017 WL 4320700, at *5 (E.D. Tex. Sept. 28, 2017) (excluding expert opinion when conclusions in opinion "could just as easily be argued to the jury by the attorneys in presenting their respective cases").

While Van Tassel professes to have an expertise in interpreting emails because she has "read a lot of them" (App. 31-33 [Ex. 2, Van Tassel Tr. 35:22-37:4]), she is no better equipped than a jury to review the factual record and observe inconsistencies and omissions. See Robroy, 2017 WL 1319553, at *9-10 (an expert's testimony as to the "contents" of documents "is not helpful to the jury where the jury can easily reach reliable conclusions based on common sense, common experience, and the jury's own perceptions, or . . . where there is other evidence or other means to put the jury in a position to accurately decide the facts." (internal quotations omitted)); Crow v. United Benefit Life Ins. Co., No. CIV. A. 3:00CV1375G, 2001 WL 285231, at *3 (N.D. Tex. Mar. 16, 2001) (when jury "is capable of assessing" the evidence "for itself," expert opinion "would not even marginally assist the trier of fact" and "must be viewed as a needless presentation" (internal quotations omitted)). Accordingly, Van Tassel's "parrot[ing]" of the evidence in the factual record, see Robroy, 2017 WL 1319553, at *10, will fail to "assist the trier of fact to understand the evidence or to determine a fact in issue" as is required to be admissible. Daubert, 509 U.S. at 589-92; Salas, 980 F.2d at 305 (finding expert was "not in a better position than a juror" to make factual conclusions about defendant's actions); Deaf Interpreter Servs., Inc. v. Webbco Enter., L.L.C., Civ. A. No. 5:13-867-RCL, 2015 WL 11565191, at *3-5 (W.D. Tex. Feb. 11, 2015) (striking expert testimony involving factual matters because expert was "in no better position to evaluate the evidence and make these findings than the jury is").

Van Tassel's report contains numerous examples reflecting this type of inadmissible factual recitation. For example, in paragraph 16 of her Declaration, Van Tassel describes Mr. Sjoblom's emails with an associate and proceeds to explain what the emails "indicate" by copying and pasting a word-for-word excerpt of the email itself. (App. 69 [Ex. 4, Decl. ¶ 16].) Similarly, in paragraph 58, Van Tassel summarizes—without analysis—the contents of multiple documents to explain what Mr. Sjoblom told the SEC, what Mr. Sjoblom's notes stated and what Mr. Sjoblom communicated to his client. (App. 88-91 [id. ¶ 58].) Van Tassel's Declaration is replete with analogous examples, in which Van Tassel merely restates plaintiff's interpretation of the factual record. (See, e.g., (App. 68-71, 73-75, 79-82, 85, 88-91, 93, 97-100, 103 [id. ¶¶ 14, 15, 16, 20, 21, 26, 28, 30, 37, 40, 41, 43, 44, 45, 50, 52, 56, 58, 61, 69, 71, 72, 73, 74, 75, 78, 79, 86].) In other instances, Van Tassel simply mentions when she has seen "no evidence" in the factual record regarding a particular issue or topic. (See, e.g., App. 95-96 [id. ¶ 65] ("I have seen no evidence that Mr. Sjoblom asked for the information that would have allowed the FSRC to compile the percentages indicated in the exam report."); see also App. 73, 81, 84-85 [id. ¶¶ 27, 42, 49]; App. 23-25 [Ex. 1, Suppl. Decl. ¶¶ 35, 38].) A jury is equally capable of identifying what the evidence does or does not support. See Robroy, 2017 WL 1319553, at *9-10; Crow, 2001 WL 285231, at *3.

In the few instances Van Tassel does more than summarize the "documents found through [her] investigation relating to [plaintiff's] allegations" (App. 67-68 [Ex. 4, Decl. ¶ 13]), she ventures outside the scope of permissible expert testimony and demonstrates that she is acting as a "ventriloquist's dummy" for the legal conclusions plaintiff wants this Court to draw. Robroy, 2017 WL 1319553, at *9 (quoting United States v. Brownlee, 744 F.3d 479, 482 (7th Cir. 2014)). For example, while Van Tassel acknowledged that she cannot offer an opinion as to Mr. Sjoblom's

knowledge (App. 42 [Ex. 2, Van Tassel Tr. 103:9-12]), she repeatedly does that in her expert declarations and testimony. (See App. 73, 84-85, 88, 94, 109-11 [Ex. 4, Decl. ¶¶ 26, 27, 49, 57, 63, 105] (opining on what Mr. Sjoblom "was aware" of, "learned" or "knew"); App. 21 [Ex. 1, Suppl. Decl. ¶¶ 28, 29] (opining on what was "known" to Mr. Sjoblom); App. 41, 53-54, 55 [Ex. 2, Van Tassel Tr. 100:10-15; 172:22-173:6; 175:21-25] (same).) "Conclusory assertions" about a defendant's "state of mind" are outside the scope of permissible expert testimony. Salas, 980 F.2d at 305; see also Charalambopoulos v. Grammer, No. 3:14-CV-2424-D, 2017 WL 930819, at *12 (N.D. Tex. Mar. 8, 2017) (explaining that an "expert [should not] be permitted to draw conclusions about another's state of mind"); United States ex rel. Ruscher v. Omnicare, Inc., Civ. A. No. 4:08-cv-3396, 2015 WL 5178074, at *11 (S.D. Tex. Sept. 3, 2015) (an expert "will not be permitted to testify about . . . intent, motive, or state of mind, as that is typically held to be within the province of the jury").

As a comparison to plaintiff's complaint reveals, when stripped of the veneer of "expert testimony," Van Tassel's opinions are no more than a recitation of plaintiff's allegations:

| **Van Tassel's Opinions** | **Allegations in Complaint** |
|---|---|
| Mr. Sjoblom had "knowledge . . . that the relationship between the [FSRC] and company [was] not completely independent" because the FSRC and Stanford Financial shared information "in an open and free manner." (App. 71-72 [Ex. 4, Decl. ¶¶ 23-24].) | Mr. Sjoblom "knew the FSRC was *not* truly independent," because the FSRC "openly discussed" information with Stanford Financial. (Compl. ¶ 111.) |
| Mr. Sjoblom knew "the FSRC would not provide the SEC" with requested information. (App. 88 [Ex. 4, Decl. ¶ 57]; App. 49 [Ex. 2, Van Tassel Tr. 154:7-19].) | Mr. Sjoblom knew "King would not provide the SEC" with requested information. (Compl. ¶¶ 110-11.) |
| Mr. Sjoblom "withheld information from the SEC." (App. 69 [Ex. 4, Decl. ¶ 16].) | Mr. Sjoblom spent years "withholding documents" from the SEC. (Compl. ¶ 229.) |
| Claiming Mr. Sjoblom "knew SIB was not a commercial bank." (App. 110 [Ex. 4, Decl. ¶ 105b]; App. 53-54 [Ex. 2, Van Tassel Tr. 172:22-173:6].) | Claiming Mr. Sjoblom "knew that SIBL was not substantially engaged in commercial banking activity." (Compl. ¶ 184.) |

| | |
|---|---|
| Claiming Mr. Sjoblom engaged in "further delay tactics . . . to stall document production." (App. 110-11 [Ex. 4, Decl. ¶ 105c].) | Claiming Mr. Sjoblom "engineered delay after delay in producing the requested emails." (Compl. ¶ 183.) |
| "[Mr.] Sjoblom discovered SGC had ignored his advice . . . and continued its sales contests." (App. 110-11 [Ex. 4, Decl. ¶ 105c]; App. 55 [Ex. 2, Van Tassel Tr. 175:21-25].) | "[Mr.] Sjoblom . . . discovered that SGC had ignored Sjoblom's advice and continued its sales contests for SIBL CDs." (Compl. ¶ 185.) |
| "The high rates of return of the SIB CDs that were reported by SIB . . . likewise were known to Mr. Sjoblom." (App. 20 [Ex. 1, Suppl. Decl. ¶ 25].) | "[Mr.] Sjoblom also knew that the SIBL CDs offered returns that were far greater than the prevailing market rates." (Compl. ¶ 113.) |

And, as Van Tassel conceded, they are a recitation based on the documents that plaintiff's counsel selected for her so she could give the precise opinions they sought from her. (App. 36, 37, 43 [Ex. 2, Van Tassel Tr. 73:11-17; 76:6-8; 129:1-21].)

Van Tassel admitted that she did not consider evidence inconsistent with plaintiff's factual and legal theories. For instance, she disregarded the testimony of Rebecca Hamric, a lawyer in Stanford Financial's legal department, that Mr. Sjoblom advised Stanford Financial to produce a document that plaintiff claims he advised Stanford Financial to withhold. (App. 50-52 [id. 164:8-166:16].) Nor does Van Tassel acknowledge, much less account for, the uncontroverted evidence that Mr. Sjoblom was routinely lied to by his clients, and that Mr. Sjoblom advised Stanford Financial officers to stop the sale of CDs and conduct an internal investigation the moment he learned about his clients' duplicity. (See App. 25-26 [Ex. 1, Suppl. Decl. ¶ 40 (describing evidence omitted from initial declaration)]; see also ECF No. 220 at 9-11, 14, 19-21, 37-38.)

In sum, Van Tassel's opinions that Mr. Sjoblom "endorsed" various positions, "knew" or "was aware" of various facts, and "assisted" the Stanford Ponzi scheme (e.g., App. 67-68, 80, 109-11 [Ex. 4, Decl. ¶¶ 13, 39, 105]) "read[] like a lawyer's brief" and are inadmissible because they would not assist the jury. Deaf Interpreter Servs., Inc., 2015 WL 11565191, at *5; see also Daubert, 509 U.S. at 589-92 (expert testimony must "assist the trier of fact to understand the

evidence or to determine a fact in issue"); Salas, 980 F.2d at 305 (finding it would not "assist the trier of fact to understand the evidence or to determine a fact in issue" when expert opinion did not "bring to the jury more than the lawyers can offer in argument"). They should accordingly be excluded.

**CONCLUSION**

For the foregoing reasons, this Court should grant Proskauer's motion to exclude the opinion and testimony of Karyl Van Tassel.

Dated: February 20, 2018

CARRINGTON, COLEMAN,
SLOMAN & BLUMENTHAL, L.L.P.

By: /s/ Neil R. Burger
Neil R. Burger
Texas Bar No. 24036289
nburger@ccsb.com
Bruce W. Collins
Texas Bar No. 04604700
bcollins@ccsb.com
901 Main Street, Suite 5500
Dallas, Texas 75202
Telephone: (214) 855-3000
Facsimile: (214) 855-1333

DAVIS POLK & WARDWELL LLP

/s/ James P. Rouhandeh
James P. Rouhandeh*
New York Bar No. 2211837
rouhandeh@davispolk.com
Daniel J. Schwartz*
New York Bar No. 4159430
daniel.schwartz@davispolk.com
Craig M. Reiser*
New York Bar No. 4886735
craig.reiser@davispolk.com
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
* admitted *pro hac vice*

*Attorneys for Defendant Proskauer Rose LLP*

**CERTIFICATE OF SERVICE**

I hereby certify that, on February 20, 2018, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF system for filing. A Notice of Electronic Filing was transmitted to all ECF registrants.

/s/ James P. Rouhandeh
James P. Rouhandeh

**CERTIFICATE OF CONFERENCE**

Pursuant to Local Rules of Civil Procedure 7.1(a) and 7.1(b), counsel for Proskauer (Craig M. Reiser) conferred with counsel for plaintiff (Edward C. Snyder) regarding this motion on February 16, 2018, and Mr. Snyder indicated that plaintiffs oppose this motion.

/s/ James P. Rouhandeh
James P. Rouhandeh