IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RALPH S. JANVEY, IN HIS CAPACITY AS | § | |
| COURT-APPOINTED RECEIVER FOR THE | § | |
| STANFORD RECEIVERSHIP ESTATE, | § | |
| AND THE OFFICIAL STANFORD INVESTORS | § | |
| COMMITTEE | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Case No. 3:13-CV-0477-N-BQ |
| | § | |
| PROSKAUER ROSE LLP, | § | |
| CHADBOURNE & PARKE LLP, | § | |
| THOMAS V. SJOBLOM, AND | § | |
| PABLO M. ALVARADO, | § | |

Defendants.

## ORDER IMPOSING DISCOVERY SANCTIONS

Plaintiff Ralph S. Janvey, in his capacity as Court-Appointed Receiver for the Stanford entities (Receiver), filed a Motion for Order to Show Cause and to compel further discovery responses (ECF No. 186) from Defendant Pablo M. Alvarado (Alvarado), which the court granted in part and denied in part on December 28, 2017. *See* ECF No. 207. In its December 28 order, however, the court deferred ruling on the Receiver's request for an award of monetary sanctions under Rule 37(a) and (b) pending the parties filing additional briefing on the issue. *Id.* Alvarado subsequently filed a response on the issue of sanctions (ECF No. 211), and the Receiver has filed his reply. ECF No. 214.

The District Court has referred discovery issues such as those before the court to the undersigned United States Magistrate Judge, *see* Order, *In re Stanford Entities Secs. Litig.*, 3:09-MD-2099-N (N.D. Tex. Sept. 24, 2012, and Feb. 13, 2014) (ECF Nos. 30, 50), and the court now

1

addresses the matter of discovery sanctions. For the reasons and to the extent explained below, the Receiver's request for sanctions (ECF No. 186) is **GRANTED**.

## I. Background

The background and procedural history of this discovery dispute between the Receiver and Alvarado are well known to the parties and to the undersigned, and need not be revisited in great detail herein. This dispute involves requests for production and interrogatories served on Alvarado by the Receiver.

**A.    The Court's First Order Compelling Production of Documents and Amended Discovery Responses.**

The court previously granted in part and denied in part the Receiver's initial motion to compel (ECF No. 165), directing Alvarado to "fully and completely answer and respond to" Request for Production (RFP) Nos. 1 through 14 and Interrogatory Nos. 1 and 2 for the period of April 1999 through December 2010.[1] Order Granting in Part and Den. in Part Pl.'s Mot. to Compel, at 17, 21 (ECF No. 175) [hereinafter June 19 Order]. In regard to RFP Nos. 5 through 14, and Interrogatory No. 1, the court specifically ordered Alvarado to "produce all real estate contracts and closing documents relating to all real property purchased or owned by Alvarado from April 1999 through December 2010 (including the Brickell Key Property), as well as all financial records showing payment of purchase price, down payments, mortgage payments, and any other expenditures made to acquire or maintain ownership of all real property by Alvarado during that period." *Id.* at 21–22. As to RFP Nos. 1, 2, 3, and 4, and Interrogatory No. 2, the court ordered Alvarado to "identify all bank accounts held by him from April 1999 through December 2010,"

---

[1] Alvarado served his original discovery responses January 30, 2017. The Receiver filed his initial motion to compel March 30, 2017.

"produce all bank statements for such accounts," and "identify all bank accounts held by Guglielmi or in her name . . . ." *See id.* at 9, 17 n.11.

## B.    The Court's Order Further Compelling Discovery Responses and to Show Cause.

The Receiver subsequently filed a motion for order to show cause alleging that Alvarado did not fully comply with the court's June 19 Order. *See* Pl.'s Mot. for Order to Show Cause, at 4–5, 7–10 (ECF No. 186) [hereinafter Pl.'s Mot. to Show Cause]. Specifically, the Receiver claimed Alvarado failed to: (1) accurately describe the source of funds used to acquire the six properties at issue; (2) adequately identify all bank accounts held during the relevant time period; and (3) sufficiently describe his efforts to identify or locate such accounts and records. Pl.'s Reply in Supp. of Mot. to Show Cause, at 1–3 (ECF No. 188) [hereinafter Pl.'s Reply]. Through that motion, the Receiver asked the court to enter an order requiring Alvarado to show cause as to why he failed to comply with the June 19 Order and why the court should not impose sanctions against him. Pl.'s Mot. to Show Cause, at 1–2. The Receiver also sought an order requiring Alvarado to: (1) provide the documents and information that the court previously ordered Alvarado to produce and, with respect to any documents and information Alvarado contends he cannot produce, provide a further explanation, supported by written evidence, explaining Alvarado's efforts to comply with the June 19 Order; and (2) pay the Receiver's reasonable litigation expenses incurred as a result of Alvarado's purported violations of the discovery rules and the Order. *Id.* at 2.

After the Receiver filed his Motion for Order to Show Cause, Alvarado produced an additional thirty-five pages of responsive documents, some of which documented his attempts to collect additional account records or statements from his banks. Pl.'s Reply, at 3. Approximately two weeks later, Alvarado filed his response to the Receiver's motion, which included a sworn declaration by Alvarado. ECF No. 187; 187-1. In his response, Alvarado generally alleged he

3

timely served amended discovery responses with additional document production. Def.'s Resp. to Pl.'s Mot. for Order to Show Cause, at 1 (ECF No. 187) [hereinafter Def.'s Resp.]. He also claimed that he produced "all bank records and financial records . . . that are in [his] possession, custody, and control. . . ." Decl. of Pablo Mauricio Alvarado, at 1–2 (Oct. 5, 2017) (ECF No. 187-1) [hereinafter Alvarado Decl.]; Def.'s Resp., at 2. In defense of his reported inability to produce additional documents, Alvarado maintained that "[e]ven the banks themselves do not keep records for the relevant time period." Def.'s Resp., at 3. He further argued that the Receiver's complaint as to his answers to Interrogatory No. 2, i.e., dealing with the bank accounts Alvarado held between April 1999 and December 2010, is "utterly frivolous." *Id.* at 7. While still not compliant with the court's June 19 Order, Alvarado's declaration also provided more detail than his July 7, 2017, amended answer to the interrogatory (which was the subject of the Receiver's motion) concerning his efforts to verify the existence of other bank accounts and whether such records exist. *See* Alvarado Decl., at 1–3.

After the Receiver filed his reply, the court issued its second order addressing Alvarado's discovery responses, again granting and denying in part the Receiver's motion. *See* Order Granting in Part and Den. in Part Pl.'s Mot. for Order to Show Cause (ECF No. 207) [hereinafter Show Cause Order]. Finding Alvarado had not fully complied with the court's June 19 Order compelling discovery responses, the court ordered Alvarado to produce additional documents and serve amended discovery responses. *See id.* In regard to Interrogatory No. 2, seeking information related to Alvarado's bank records, the Show Cause Order required Alvarado to "provide the following information, under oath, in an amended answer . . . **within 10 days of the date of this order:**"

    1.    Identify every bank where Alvarado and his wife, Claire Guglielmi, unequivocally know they each, either individually or jointly, had a bank account during the

4

relevant time period (April 1999 to December 2010), providing the account number and account holder's name for each; and

2.     Provide the specific facts upon which Alvarado bases his belief that he or his wife **may** have had an account at each bank identified in Alvarado's amended answer to Interrogatory No. 2 served July 7, 2017. As to **each bank**, Alvarado must describe in detail all steps taken by him in attempting to confirm the existence and identity of such accounts, as well as the existence of any records related to those accounts. If he has not already done so, Alvarado must **IMMEDIATELY** contact each bank where he believes he or his wife may have had an account, and request copies of all records covered by Interrogatory No. 2 and RFP Nos. 1–4. If Alvarado does not have complete responses from each bank within ten (10) days of the date of this order, Alvarado shall so indicate in his amended answer to Interrogatory No. 2, and supplement his answer as he receives additional information from each bank as to each account. To the extent Alvarado has already contacted a bank where he believes he or his wife may have had an account, he must specifically identify that bank in his amended answer to Interrogatory No. 2, and state the bank's response to his inquiry, as well as the date he received the bank's response.

*Id.* at 8. On the closely related question of Alvarado's compliance with his obligation to produce records associated with such bank accounts, sought via RFP Nos. 1–4, the court issued a three-part order requiring Alvarado to accomplish the following:

1.     Produce bank account records from Bank of America for the period of August through December 2010, and from HSBC Bank for the period of September through December 2010, which exhibits attached to Alvarado's declaration showed were available;

2.     Produce all records sought by RFP Nos. 1–4 not previously produced, whether currently in his actual possession or subsequently provided to him by the banks in response to his inquiries, within 10 days of the date of the order; and

3.     Having found that the Receiver was entitled to an unequivocal representation that Alvarado had conducted a diligent search for the requested bank records, consistent with the relief granted by the court as to Interrogatory No. 2 and Alvarado's obligation to fully respond to RFP Nos. 1–4, Alvarado must also provide amended responses to RFP Nos. 1–4, producing copies of all written responses and communications received from every bank identified in Alvarado's amended answer to Interrogatory No. 2 concerning: (1) the existence or non-existence of accounts held by Alvarado and Guglielmi, either individually or jointly; (2) the bank's retention policy; and (3) all records and other documents related to such accounts.

*Id.* at 10–12.

The last area in dispute involved the Receiver's attempts to trace potential Stanford proceeds through various real estate transactions consummated by Alvarado between 1999 and 2010. In regard to an interrogatory and requests for production seeking such information (Interrog. No. 1 and RFP. Nos. 10–14), the court also ordered as follows:

1. As to Interrogatory No. 1, Alvarado must identify the original source of "personal funds" and "savings" used to purchase the properties in question, and to specifically distinguish between salary, proceeds, etc., received from Stanford, and those Alvarado claims were received from sources other than Stanford, e.g., other employers, gifts, inheritance, sale of assets, etc., and in regard to RFP Nos. 10-14, produce all records and documents reflecting such sources. *To be complete, in addition to specifically identifying the original source of funds used to purchase the properties in question, Alvarado's answers must include the bank account from which the purchase money (or money used to maintain the property) was withdrawn, the name(s) of the account holder(s), the date the funds were originally deposited into that account, and the amount of the deposit. As to each identified account, Alvarado shall also state whether Stanford proceeds were deposited into the account at any time prior to the withdrawal.*

2. To the extent Alvarado alleges that he used proceeds from the sale of an asset to acquire any of the properties in question, he must also produce records in his possession, custody or control showing the source of funds used to acquire the asset (if acquired during the period April 1999 through December 2010), or satisfy any indebtedness on the asset (if paid during the period April 1999 through December 2010), as required by RFP Nos. 10-14. *Should Alvarado claim he cannot produce such documentation, he is to provide a sworn answer to Interrogatory No. 1 specifically identifying every source of funds used to obtain (or satisfy indebtedness on) the asset that was sold and used to acquire the property in question, and stating the reason why he cannot produce such documents.*

*Id.* at 13–14 (emphasis added).

In addition to the requirement to produce additional documents and amend certain interrogatory responses, the court's Show Cause Order directed Alvarado to file a response to the Order "explaining why the court should not require him to pay the Receiver's expenses . . . ." *Id.* at 18. The court specifically ordered Alvarado to "fully explain whether his failure to adequately answer and respond to the interrogatories and RFPs at issue was substantially justified or whether other circumstances [would] make an award of expenses under Rule 37(a) and (b) unjust." *Id.* at

19. The court's order also permitted the Receiver to file a reply in support of his request for an award of expenses. *Id.*

**C.     The Parties' Briefing Concerning Imposition of Sanctions.**

Pursuant to the court's Show Cause Order, on January 25, 2018, Alvarado filed a response concerning the imposition of monetary sanctions. *See* Alvarado's Resp. to Order Granting in Part and Den. in Part Pl.'s Mot. for Order to Show Cause (ECF No. 211) [hereinafter Def.'s Show Cause Resp.]. On February 5, 2018, the Receiver filed his reply. *See* The Receiver's Reply to Alvarado's Resp. to the Court's Order to Show Cause (ECF No. 214) [hereinafter Pl.'s Show Cause Reply].

In his Show Cause Response, Alvarado paints a picture of overall compliance in his discovery obligations. He argues that the court "den[ied] substantial portions of Plaintiff's" initial motion to compel and only ordered him to "fully respond" to Interrogatory Nos. 1–2 and RFP Nos. 1–14 for the "limited time" between April 1999 and December 2010. Def.'s Show Cause Resp., at 2. In further support of his position, Alvarado maintains that, following entry of the June 19 Order, he "served amended discovery responses with additional document production" showing that he "has complied by providing the requested information or producing all documents in his possession, custody or control." *Id.* In response to a letter from Receiver's counsel in August 2017 contending Alvarado had failed to fully comply in his discovery responses, Alvarado stated through his counsel that he had "produced all" bank account records responsive to RFP Nos. 1–4 "in his possession, custody and control." *Id.*

The Receiver alleges Alvarado has failed to comply with the court's Show Cause Order, as well as its original June 19 Order, and seeks an additional order from the court requiring Alvarado to "appear for deposition concerning his substantive discovery responses and his efforts

to comply with such requests and the Court's prior discovery orders . . . [and] pay the Receiver's reasonable litigation fees and expenses caused by Alvarado's failures to comply with the Receiver's discovery requests and the Court's prior orders . . . ." Pl.'s Show Cause Reply, at 1–2. Specifically, the Receiver claims Alvarado did not even serve amended responses to RFP Nos. 1–4, as required by the court's Show Cause Order, or provide amended answers to Interrogatory Nos. 1–2 compliant with the order. *Id.* at 2, 5–7. As further evidence of the need for court intervention in this matter, the Receiver notes that on January 5, 2018, Alvarado produced a partial set of JP Morgan Chase bank account statements for two new accounts never previously identified, despite repeated assurances by Alvarado that he had produced everything within his possession, custody, or control. *Id.* at 1, 3.

## II. Analysis

### A.    Legal Standard.

In the matter before the court, three separate provisions of Rule 37 potentially authorize an award of attorney's fees to the Receiver as a sanction against Alvarado. Rule 37(a)(5)(A) provides two grounds, stating that where (1) the motion to compel is granted[2] or (2) the requested discovery is provided after the motion was filed, "the court must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees," except that "the court must not order this payment if: (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." *Harrison v. Wells Fargo Bank, N.A.*,

---

[2] When the motion is granted in part and denied in part, the court "may . . . apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C).

3:13-CV-4682-D, 2016 WL 1392332, at *5 (N.D. Tex. Apr. 8, 2016) (citing Fed. R. Civ. P. 37(a)(5)(A)).

"A party's discovery conduct is found to be 'substantially justified' under Rule 37 if it is a response to a 'genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action.'" *Sec. Exch. Comm'n v. Kiselak Capital Grp., LLC*, No. 4:09-CV-256-A, 2012 WL 369450, at *5 (N.D. Tex. Feb. 3, 2012) (quoting *Devaney v. Cont'l Am. Ins. Co.*, 989 F.2d 1154, 1163 (11th Cir. 1993)); *see also Heller v. City of Dall.*, 303 F.R.D. 466, 477 (2014) ("The United States Supreme Court has defined 'substantially justified' to mean 'justified in substance or in the main—that is, justified to a degree that could satisfy a reasonable person.' 'Substantial justification' entails a 'reasonable basis in both law and fact,' such that 'there is a genuine dispute . . . or if reasonable people could differ [as to the appropriateness of the contested action].'" (citations omitted)). "The burden rests on the party who failed to comply with the order to show [cause] that an award of attorney's fees would be unjust or that the opposing party's position was substantially justified." *Kiselak Capital Grp.*, 2012 WL 369450, at *3 (footnote omitted).

Rule 37(b)(2)(C) supplies the third ground for imposing discovery sanctions, stating that where a party has failed to obey an order to provide or permit discovery, "[i]nstead of or in addition to the . . . [relief provided by 37(b)(2)(A)], the court *must* order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(A), (C) (emphasis added). Rule 37(b) "is designed to empower the court to compel production of evidence by the imposition of reasonable sanctions." *Dorsey v. Acad. Moving & Storage, Inc.*, 423 F.2d 858, 860 (5th Cir. 1970). Such sanctions "serve the dual function of reimbursing the moving party and deterring the violator of the discovery orders

9

(as well as other potential violators)." *Day v. Allstate Ins. Co.*, 788 F.2d 1110, 1114 (5th Cir. 1986). Sanctions meted out "must be both just and specifically related to the claim at issue in the discovery order." *Vicknair v. La. Dep't of Pub. Safety & Corr.*, 555 F. App'x 325, 332 (5th Cir. 2014). Rule 37(b) sanctions are appropriate where there is willful disobedience, gross indifference, or deliberate callousness, but not where the failure to comply is outside the party's control. *See Dorsey*, 423 F.2d at 860. A court should impose the least severe sanction adequate to achieve the proper functions of Rule 37(b)(2) under the particular circumstances. *Samsung Elecs. Am. v. Yang Kun Chung*, 321 F.R.D 250, 279 (N.D. Tex. 2017) (citing *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 488–90 (5th Cir. 2012)).

A United States Magistrate Judge has authority to enter nondispositive discovery orders, including the award of attorney's fees as sanctions, under Federal Rule of Civil Procedure 37. *See* 28 U.S.C. § 636(b); *Merritt v. Int'l Bd. of Boilermakers*, 649 F.2d 1013, 1016–17 (5th Cir. Unit A June 1981) (per curiam).

**B.     Alvarado's Bank Accounts and Records (Interrogatory No. 2 and RFP Nos. 1–4).**

> *1.     History and the parties' respective positions*

The court will examine Interrogatory No. 2 and RFP Nos. 1–4 together as they seek information related to Alvarado's bank accounts.

As noted by the Receiver, the court previously ordered Alvarado to "produce all records sought by RFP Nos. 1–4 not previously produced," to "provide amended responses to RFP Nos. 1–4" reflecting his diligent search for bank records, and to produce the written responses he received from the banks regarding the existence or non-existence of his accounts, their retention policy, and any records related to his accounts. Show Cause Order, at 11–12. Alvarado argues

two[3] primary grounds for showing it would be manifestly unjust for the court to award sanctions based on his responses to RFP Nos. 1–4: (1) through his declaration he has "testified under oath" the steps he has taken to obtain bank records and stated that "he has produced all records in his possession, custody and control"; and (2) the Receiver illogically assumed he had not produced records from Bank of America and HSBC based on letters provided by both banks in response to Alvarado's request for responsive documents. *See* Def.'s Show Cause Resp., at 6–8; *see* Verification of Interrog. and Decl. of Pablo Mauricio Alvarado (Jan. 5, 2018) (ECF No. 211-1) [hereinafter Alvarado's Show Cause Decl.].

The Receiver alleges Alvarado has not provided any amended responses to RFP Nos. 1–4 (*see* Declaration of David T. Arlington, at 2 ¶ 3 (Feb. 5, 2018) (ECF No. 214-1) [hereinafter Arlington Decl.]), or any correspondence between him and any of the banks regarding his account records or their retention policies (*id.* at 2 ¶ 6), other than a letter from JP Morgan Chase dated September 22, 2017, referencing a letter from Alvarado dated August 14, 2017, requesting copies of his bank statements from April 1999 to February 2010. *Id.* at 2 ¶ 5; *see also* Pl.'s Show Cause Reply, at 2–3. The Receiver further contends Alvarado produced, on January 5, 2018, statements for two JP Morgan Chase accounts for the time period of May 2010 through January 2011 (*see* Arlington Decl., at 2 ¶ 5), but offered no explanation for why neither the letter nor the additional records received from JP Morgan Chase in September 2017 were not produced until January 2018, four months after receipt of the documents. Pl.'s Show Cause Reply, at 3. The Receiver also argues that Alvarado not submitting his request to Chase for any discoverable records until almost

---

[3] Alvarado also alleges the court should not sanction him based on an "error" or "misunderstanding" related to whether documents produced by him from Citibank included statements for July 2010. *See* Def.'s Show Cause Resp., at 7–8. The court did not consider this question in making its original decision on the Receiver's motion for an order to show cause. The court simply noted, for the record, that neither party had addressed the discrepancy between the time period for which the Receiver alleged Alvarado had produced records from Citibank, i.e., July 2010 to January 2011 (Pl.'s Reply, at 3) and the letter produced by Alvarado from Citibank indicating it had no records prior to August 18, 2010. *See* Show Cause Order, at 10 n.1; Alvarado Decl., Ex. 3.

two months after the court's initial order further demonstrates his lack of a reasonable and good faith effort to comply with the court's discovery orders. *Id.*

Lastly, the Receiver asserts that Alvarado did not produce any additional records from his HSBC and Bank of America accounts, as required by the court's Show Cause Order, and Alvarado's Show Cause Declaration "does not indicate whether he made any further attempts to collect or produce those documents." *Id.* According to the Receiver, Alvarado's delay in obtaining all of the requested bank records may have resulted in the loss of responsive and relevant discovery. *Id.* at 5.

In regard to Interrogatory No. 2, Alvarado argues that he fully complied with the court's June 19 Order, contending that "[e]ach of the amended responses omit[ted] any previously lodged objections, [made] no further objection, and show that Plaintiff [sic] has complied by providing the requested information or producing all documents in his possession, custody or control." Def.'s Show Cause Resp., at 2. Alvarado further alleges that "the Court seeks to punish [him] for providing the most complete answer [to Interrogatory No. 2 that] he can," and producing the additional documentation after the Receiver filed his Motion to Show Cause was a "big mistake" because the "information is not responsive to [Interrogatory No. 2 or RFP Nos. 1–4], and nothing in the Rules or the Court's original order would suggest Alvarado had the duty to produce [such] information detailing his efforts to respond to the interrogatory." *Id.* at 5–6. Notwithstanding this stance, and in response to the court's Show Cause Order, Alvarado served a second amended answer to Interrogatory No. 2 on January 5, 2018, identifying accounts not previously disclosed. *See* Def. Pablo Mauricio Alvarado's Second Am. Resp. to Pl.'s Interrog. Nos. 1–2 (ECF No. 211-2) [hereinafter Alvarado's Second Am. Interrog. Resp.].

The Receiver contends that Alvarado's response to Interrogatory No. 2, including his most recent amendment, remains deficient. Specifically, the Receiver argues Alvarado failed to comply with the court's Show Cause Order in the following ways: (1) describing in detail the steps he took to confirm the existence and identity of all bank accounts (including providing copies of written inquiries and dates made); (2) confirming whether he attempted to locate other documents following the court's order; (3) confirming whether he has provided complete responses from each bank where he held an account during the relevant time period; and (4) providing banks' responses to his inquiries and the dates he received bank responses. Pl.'s Show Cause Reply, at 5–6.

## 2.    *Alvarado has failed to demonstrate substantial justification or that awarding sanctions would be unjust*

Alvarado's contention that he fully complied with his discovery obligations in regard to Interrogatory No. 2 and RFP Nos. 1–4, thereby demonstrating substantial justification or that an award of sanctions would be unjust, cannot stand. It is undisputed the court has now twice granted motions filed by the Receiver seeking to have Alvarado fully and completely answer these discovery requests. It is similarly beyond dispute that Alvarado has identified additional bank accounts and produced other bank account records only after the court issued its two discovery orders. For example, in his original answer to Interrogatory No. 2, served over a year ago, Alvarado objected and specifically identified *no bank accounts*, merely referencing his responses to RFP Nos. 1–4 and 10–14. Pl.'s App. in Supp. of Mot. to Compel Ex. D, at 34 (ECF No. 165). Other than mentioning a bank account each from Washington Mutual and BNP Paribas that were specifically identified by the Receiver in his requests for production (RFP Nos. 1 & 2), the RFP responses contain nothing but objections and no responsive, substantive information. *Id*. at 23–30. After the court issued its June 19 Order, Alvarado identified two Chase Manhattan and two Washington Mutual bank accounts held by him, along with four accounts held by his wife at

13

Southwest Bank of Texas and BNP Paribas. App. in Supp. of Pl.'s Mot. to Show Cause Ex. A., at 4–5 (ECF No. 186-1). Due to the equivocal nature of Alvarado's amended answer, however, i.e., "Defendant vaguely recalls that . . . he may have had" other accounts at five specifically identified banks "or other banks," the court again directed him, through the Show Cause Order, to take specific steps in identifying every bank account he or his wife *may* have held during the relevant period, including to: (1) "[p]rovide the specific facts upon which Alvarado bases his belief that he or his wife may have had an account" at the bank in question; (2) *immediately* contact each bank where he believes he and his wife may have had accounts, and request copies of all records covered by Interrogatory No. 2 (and RFP Nos. 1–4); and (3) provide the bank's response, as well as the date he received the response, to his inquiry *as to every bank he had contacted prior to the Show Cause Order*. Show Cause Order, at 7–8.

On January 5, 2018, *after* issuance of the court's Show Cause Order, Alvarado served his Second Amended Response to Interrogatory No. 2, which now lists fourteen bank accounts, including five not previously contained in his sworn interrogatory answers (i.e., Chase accounts ending in -9423 and -1813, HSBC accounts ending in -1853 and -2452, and a Citibank account ending in -9567). Alvarado's Second Am. Interrog. Resp., at 5. In addition to belatedly identifying certain bank accounts, Alvarado has provided conflicting responses in his discovery. Despite stating he "has no recollection of having any account at HSBC during the relevant time period" in his Show Cause Response, Alvarado disclosed two account numbers for HSBC accounts he held during the relevant time period in his second amended response to Interrogatory No. 2, and affirmatively stated in his declaration that he has "produced all records from HSBC bank" in his possession, custody, or control. *See* Def.'s Show Cause Resp., at 7; Alvarado's Second Am. Interrog. Resp., at 5; Alvarado's Show Cause Decl., at 3. The court further observes that although

14

Alvarado produced a letter from Bank of America with a specific account number referenced (i.e., account ending in -0612), Alvarado has still failed to name any accounts at Bank of America in his sworn answer to the interrogatory. *See* Alvarado Decl. Ex. 2; Alvarado's Show Cause Decl., at 2; Alvarado's Second Am. Interrog. Resp., at 5–6. Moreover, although Alvarado identified two JP Morgan Chase bank accounts in his amended discovery responses, dated July 7, 2017, those accounts bear different account numbers than the additional accounts he disclosed in January 2018. *Compare* App. in Supp. of Pl.'s Mot. to Show Cause Ex. A, at 4–5 (listing Chase accounts ending in -0885 and -2418), *with* Alvarado's Second Am. Interrog. Resp., at 5 (listing two additional Chase Bank account numbers ending in -9423 and -1813).

What Alvarado's second amended answer to Interrogatory No. 2 does not contain also supports a finding that he cannot establish substantial justification or circumstances that would make an award unjust. While Alvarado's declaration provides some responsive information required by the court's order in regard to Interrogatory No. 2, neither the declaration nor amended interrogatory answer (1) provides the dates for when he made inquiry at each bank and when he received each bank's response, or (2) states each bank's response to each inquiry or confirms whether he has received (and produced) complete responses from each bank. As noted by the Receiver, the similarities between Alvarado's January 5, 2018, declaration following the court's Show Cause Order, and his earlier October 2017 declaration, suggest he may have made no further effort after August or September to confirm the lack of any other accounts or responsive records. If that is the case, the court's order required him to so state under oath, specifically identifying the bank, the bank's response to his inquiry, and the date he received the response. Show Cause Order, at 8. Conversely, if Alvarado had not already contacted a bank where he believed he or his wife may have held an account, the court's order required him to do so immediately and provide the

bank's response within ten days of the court's order. *Id.* Neither Alvarado's amended answer nor declaration contain this information.

Alvarado's responses to RFP Nos. 1–4 further support such an award. As with his second amended answer to Interrogatory No. 2, Alvarado does not demonstrate substantial justification by simply stating he has "testified under oath" to the steps taken to obtain bank records, or further affirming that "he has produced all records in his possession, custody and control." Despite such assurances, a close examination of Alvarado's responses reveals he has not complied with portions of the court's order, and serious questions remain as to what he has and has not produced. First, Alvarado wholly failed to serve *any* amended responses to RFP Nos. 1–4, much less amended responses producing "all written responses and communications received from every bank identified" in his amended answer to Interrogatory No. 2 regarding the existence or non-existence of his bank accounts, the bank's retention policy, and all records related to such accounts. *See id.* at 11–12; Pl.'s Show Cause Reply, at 2–4; Arlington Decl., at 2 ¶¶ 3, 6. Although Alvarado submitted a declaration generally stating that "responses" he received from the banks "were previously produced" or "forwarded to his attorneys" (Alvarado's Show Cause Decl., at 2), he does not identify by Bates number or in any other meaningful way the documents he cites as being responsive, thereby preventing both the Receiver and court from determining what he has and has not produced, and whether it is truly responsive.

In addition, as noted in the court's discussion concerning Interrogatory No. 2, Alvarado for the first time identified two new JP Morgan Chase bank accounts in his most recent amended answer (January 5), and also produced statements related to those accounts for the period of May 2010 through January 2011. Arlington Decl., at 2 ¶ 5. According to the Receiver, the letter accompanying the account records from Chase is dated September 22, 2017 (*id.*), indicating

Alvarado obtained the records some three months before producing them, and then only after the court issued its Show Cause Order. While there may be a plausible explanation for why the accounts were not identified and disclosed earlier, and the relevant account records produced, Alvarado provided no such explanation in his amended discovery response or reply to the Show Cause Order. In any event, the last minute production raises serious doubts about either his efforts to obtain responsive documents or the speed with which he produces such documents once he obtains them.

Alvarado's other ground for establishing substantial justification in regard to his responses to RFP Nos. 3 and 4 rests on his belief that the Receiver (and in turn, the court) reached an "illogical" conclusion that he failed to produce responsive records from Bank of America and HSBC. Specifically, Alvarado previously produced a letter from Bank of America that responded to Alvarado's request for records related to a specific account ending in -0612. Alvarado Decl., Ex. 2. In the letter, dated August 15, 2017, Bank of America stated it could not produce copies of account records for the period "from April 1999 to August 13, 2010" because the request exceeded the bank's seven year retention period. This court, assuming Alvarado had complied with its initial June 19 Order and submitted a request to Bank of America seeking account records from April 1999 through December 2010, subsequently ordered Alvarado to obtain and produce records for August through December 2010 (*see* Show Cause Order, at 10–11) based on the fact Bank of America had not denied having *any* responsive documents for the relevant period—just those beyond the seven year retention span, i.e., prior to August 2010. The court believes this was, and still is, a logical conclusion, particularly where Alvarado had a specifically identified account; however, even entertaining his argument that the court's determination extended one step too far, and that for whatever reason no records actually existed, such a conclusion does not resolve the

17

issue in Alvarado's favor.  As of his receipt of Bank of America's letter, Alvarado knew the response was incomplete and that he had yet to comply with the court's June 19 Order to obtain and produce all bank account records within his possession, custody, or control.  For whatever reason, Bank of America's letter did not address the question of whether it had documents covered by the RFPs and the court's discovery order for the period from August to December 2010.  Either Alvarado's request did not cover the relevant time period, or if it did, he failed to follow up with Bank of America to ascertain whether it had any records for August to December 2010.  In either event, Alvarado did not comply with the court's orders.

In sum, Alvarado's claim he fully complied with the court's discovery orders is not factually supported, and he has not demonstrated that reasonable people could differ as to whether he did in fact comply, i.e., that his noncompliance was substantially justified. *See Kiselak*, 2012 WL 369450, at *5.  For the same reasons set forth above, the court does not find that an award of sanctions would be unjust.  Because Alvarado has offered no viable ground for the court to find substantial justification for taking almost one year to supply basic bank account information to the Receiver, or that awarding sanctions would be unjust, the court awards sanctions as set forth at page 23 below.

## C.      Information Concerning Alvarado's Real Estate (Interrogatory No. 1).

### 1.      *History and the parties' respective positions*

Alvarado also contends that a genuine dispute exists concerning whether his answers to Interrogatory No. 1 were reasonable and complete, thereby showing substantial justification. Def.'s Show Cause Resp., at 10.  He specifically alleges "[i]t is unjust to sanction [him] when he originally provided the most complete answers he could give under the circumstances" (e.g., "personal fund" and "inheritance from wife, and savings") (*id*. at 9–10), and where he is being

asked to "remember very detailed information from events that took place" between fourteen and seventeen years ago. *Id.* at 10. Alvarado also maintains that "the only properties in dispute [under the court's order] are the Sunset and Brickell Key properties." *Id.* at 8.

In response, the Receiver alleges Alvarado did not comply with the Show Cause Order in a number of ways. He asserts Alvarado failed to identify: (1) the source of personal savings used to purchase the properties; (2) how various financed properties were paid off; (3) the bank accounts containing the purchase funds, the dates such funds were deposited into the accounts, or the amount of the deposits; and (4) whether Stanford proceeds were deposited into any of the purchase fund accounts. Pl.'s Show Cause Reply, at 6–7.

In its June 19 Order, the court required Alvarado to "fully and completely answer and respond" to Interrogatory No. 1. June 19 Order, at 21 (ECF No. 175). Alvarado's original January 30, 2017, answers to the interrogatory identified the source of funds used to purchase some of the properties in question as "personal funds" and "savings." Pl.'s App. in Supp. of Mot. to Compel Ex. D, at 33–34. Instead of "fully and completely" identifying the actual source of funds, Alvarado's first amended answers (served July 7, 2017) merely added the phrase "from Defendant and his wife" to the original insufficient answer "personal funds," without providing any factual basis for such a conclusion. App. in Supp. of Mot. to Show Cause Ex. A, at 3–4.

As a result, the court's Show Cause Order required Alvarado to amend responses to Interrogatory No. 1 by doing the following:

> (1) Identify the original source of "personal funds" and "savings" used to purchase properties and *specifically distinguish* between salary, proceeds, etc. received from Stanford versus funds from other sources (e.g., other employers, gifts, etc.).
>
> (2) Produce all records and documents reflecting such sources.
>
> (3) List the bank account(s) from which purchase money (*or money used to maintain the property*) was withdrawn, name(s) of account holder(s), date funds

were originally deposited, and amount of the deposit. As to each account identified, Alvarado must also state whether Stanford proceeds were deposited into the account at any time prior to withdrawal.

(4) If proceeds from the sale of assets were used to acquire a property, Alvarado must produce records in his possession, custody and control showing source of the funds used to acquire the asset *or satisfy any indebtedness* on the asset. If Alvarado cannot produce such documents, he must provide a *sworn answer* identifying every source of funds used to obtain or satisfy indebtedness on the asset and state why is unable to produce documents.

Show Cause Order, at 13–14. Alvarado served amended answers to Interrogatory No. 1 on January 5, 2018 (*see* Alvarado's Second Am. Interrog. Resp.), but as Alvarado admits in his response to the court's Show Cause Order, his amended answers do "not contain significantly more valuable information than did [his] previous response[s] . . . ." Def.'s Show Cause Resp., at 9. Alvarado contends that his first amended answer to Interrogatory No. 1 "was the most complete response [he] could give." *Id.* (emphasis omitted).

### 2. *Alvarado has failed to demonstrate substantial justification or that awarding sanctions would be unjust*

As with Alvarado's responses to Interrogatory No. 2, attempting to obtain more substantive answers to the Receiver's inquiry has required two separate orders from the court. While Alvarado has served two amended answers in response, neither substantially complies with the court's directive. Alvarado's most recent answer contains a recitation generally stating he is unable to recall the source of funds used to purchase the various properties, save for his wife's inheritance, savings (including rental income), financing, and the sale of other real properties. *See* Alvarado's Second Am. Interrog. Resp., at 3–4. It makes no attempt, however, to identify each "bank account from which the purchase money (or money used to maintain the property) was withdrawn, the name(s) of the account holder(s), the date the funds were originally deposited into that account, and the amount of the deposit." Show Cause Order, at 14. Of equal importance is the fact that

Alvarado also failed to answer whether Stanford proceeds were ever deposited into such accounts at any time prior to account funds being expended on the real property, either for purchase or maintenance. As noted by the Receiver, this is not an academic question—Alvarado has produced statements for a Washington Mutual account showing Stanford proceed deposits and withdrawals or expenditures made to purchase at least one of the real properties in question. *See* Pl.'s Show Cause Reply, at 7.

As to the information actually provided in the latest amended answer, the court finds additional deficiencies. In regard to both the Sunset and Brickell Key properties, Alvarado vaguely states that he is "not aware of any documents that would determine the source of funds used to acquire the property, except to the extent that documents" already produced might be helpful. Alvarado's Second Am. Interrog. Resp., at 3, 5. Alvarado does not identify by Bates number or in any other meaningful way the documents he cites as being responsive, thereby again preventing both the Receiver and court from determining what he has and has not produced, and whether it truly addresses the issue.

**D.      Alvarado's conduct satisfies Rule 37's requirements for awarding attorney's fees as a sanction, and the court must make such an award due to Alvarado's failure to establish that his actions were substantially justified or that such an award would be unjust.**

This order and the court's two prior discovery orders set forth the justification for requiring Alvarado to pay the reasonable expenses incurred by the Receiver in pursuing his various motions, absent Alvarado showing either substantial justification or that such an award would be unjust. In response to the Receiver's motion to compel, filed March 30, 2017 (ECF No. 165), the court specifically granted the Receiver's motion as to Request for Production Nos. 1–4, 5–14, and Interrogatory Nos. 1 and 2. *See* June 19 Order, at 9, 17, 21–22. Thus, Rule 37(a)(5)(A) requires that the court award reasonable expenses, including attorney's fees, incurred by the Receiver in

pursuing the motion, as Alvarado did not prove substantial justification or that such an award would be unjust. *See Richmond v. SW Closeouts, Inc.*, No. 3:14-CV-4298-K, 2016 WL 4368305, at \*1, \*5 (N.D. Tex. Aug. 16, 2016) (awarding plaintiff reasonable attorney's fees when court granted his motion to compel). As noted above, such an award is subject to apportionment where the court only grants the motion in part. *See* Fed. R. Civ. P. 37(a)(5)(C). In addition, Alvarado produced responsive documents *after* the Receiver filed his motions to compel and for order to show cause (*see, e.g.*, Show Cause Order, at 9–10; Pl.'s Reply, at 3), thereby also authorizing an award of reasonable expenses under Rule 37(a)(5)(A). *See McKinney v. Verizon Commc'ns*, No. 3:12-CV-1376–N (BF), 2013 WL 6229539, at \*1–2 (N.D. Tex. Dec. 2, 2013) (awarding attorney's fees and costs incurred in bringing a motion to compel when plaintiff produced requested discovery only after Defendant filed its motion to compel).

Finally, the court has also previously found that Alvarado failed to provide or permit discovery as required in its initial order granting the Receiver's motion to compel (*see, e.g.*, June 19 Order, at 9, 17; Show Cause Order, at 13), as well as the order issued following the Receiver's motion to show cause. As described in more detail above, the court finds Alvarado has done so with at least gross indifference or deliberate callousness. These findings independently require an award of reasonable expenses from "the disobedient party, the attorney advising that party, or both" under Rule 37(b)(2)(C). Sanctions awarded under Rule 37(b), however, are not subject to the apportionment or fee shifting provisions of Rule 37(a)(5). *See, e.g., McKinney/Pearl Rest. Partners, L.P. v. Metro. Life Ins. Co.*, 3:14-CV-2498-B, 2016 WL 4013670, at \*4 (N.D. Tex. July 27, 2016) (finding that, unlike Rule 37(a)(5)'s award of expenses in regard to the grant or denial of a motion to compel, a Rule 37(b) motion for sanctions contains no such "loser pays" fee-shifting provision).

22

### Sanctions and Relief Awarded

With the April 30, 2018, trial setting looming, time is of the essence in fashioning the relief the court believes to be appropriate. Rule 37(b)(2)(A) authorizes a court to "issue further just orders" if it finds that a party has failed to obey an order to provide or permit discovery. What Alvarado has refused to provide through responses to valid interrogatories and requests for production he must now produce through a deposition. *See Pressey v. Patterson,* 898 F.2d 1018, 1021 (5th Cir.1990) (finding district courts have "broad discretion under Rule 37(b) to fashion remedies suited to the misconduct"); *Transportes Aereos de Angola v. Ronair, Inc.*, 104 F.R.D. 482, 502 (D. Del. 1985) (ordering party who did not comply with prior court order directing him to "fully and forthrightly" answer interrogatories to appear at deposition and "fully and completely" answer questions regarding personal and corporate bank accounts and transfers of assets).

The court grants the Receiver's motion seeking to have Alvarado appear for a deposition. All parties will stipulate to a mutually agreeable date, location, and time for the deposition, **which shall be concluded no later than March 23, 2018. The parties shall file a notice with the court no later than 12:00 p.m. March 8 confirming the deposition schedule.** If the parties cannot agree, the court will set the date, place, and time. The scope of the deposition is limited to the following areas:

1. Alvarado's efforts to locate and identify all bank accounts held by him and his wife, Claire Guglielmi, either individually or jointly, for the purpose of responding to the Receiver's interrogatories and requests for production, or complying with this court's discovery orders.

2. The factual basis for Alvarado's stated belief he "may" have had accounts at each bank identified in his amended answer to Interrogatory No. 2 served July 7, 2017.

3. The original source of "personal funds," "savings," and real estate proceeds used to purchase, maintain, or satisfy indebtedness on all six properties identified in Alvarado's

23

Second Amended Response to Interrogatory No. 1. This necessarily includes information concerning the bank accounts from which such funds were drawn, the name(s) of the account holder(s), the date such funds were originally deposited into that account, the amount of the deposit, and whether Stanford proceeds were deposited into the account at any time prior to the withdrawal for purchase, maintenance, or debt payment.

Alvarado must also provide the following tangible items at the deposition. If he has not already done so, Alvarado must produce all records sought by RFP Nos. 1–4 within his possession, custody, or control, including a complete list of all bank accounts held by him or his wife, individually and jointly, for the period April 1999 through December 2010. He must also produce copies of all written inquiries made by him to any bank concerning the existence or identity of any accounts held by him and his wife (individually and jointly), any written requests for copies of account statements, records, or other account-related documents, and all communications (including those regarding the bank's retention policy) received from such banks in response to his inquiries. If Alvarado maintains he has previously produced any of the foregoing, **he shall provide a list at the deposition identifying, by Bates number, the documents that he alleges are responsive for each specific bank.** Alvarado must similarly produce all items sought by RFP Nos. 10–14 to the extent he has not already done so. As to the six properties specifically identified in Interrogatory No. 1, to the extent Alvarado contends he has previously produced the responsive documents, **he must also provide a list at the deposition identifying, by Bates number, the documents that he alleges are responsive to each specific property.**

Following the deposition, should Alvarado opt to review the transcript under Rule 30(e)(1)(A), (B), as an additional sanction and due to the impending trial setting he shall have only ten days (rather than the thirty days provided by the rule) after being notified of the transcript's availability to review the transcript and sign a statement listing the changes and reasons for same.

24

The court will reserve making a final award of expenses, including attorney's fees, until after the deposition is complete. The Receiver may file a supplemental expense summary within ten days after completion of the deposition, covering expenses and fees related to Alvarado's deposition. Alvarado may file a response within seven days of the Receiver's supplement; however, any response must be limited to the issue of reasonableness and necessity of any expenses or fees claimed by the Receiver. The court will not consider any argument or briefing related to the decision to impose sanctions, as the court has already determined Alvarado failed to show substantial justification or that awarding expenses, including attorney's fees, would be unjust.

## III. Conclusion

For the reasons and to the extent explained above, the court **ORDERS** Alvarado to appear for a deposition and produce the identified tangible items. The court will determine the amount of expenses, including attorney's fees, to be awarded the Receiver via a separate order.

**SO ORDERED.**

Dated: March __6__, 2018

D. GORDON BRYANT, JR.
UNITED STATES MAGISTRATE JUDGE

25