UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

- - - - - - - - - - - - - - - - - - - - - - - - - - - x
                    :

RALPH S. JANVEY, IN HIS CAPACITY    :
AS COURT-APPOINTED RECEIVER FOR  :
THE STANFORD RECEIVERSHIP       :
ESTATE, AND THE OFFICIAL          :
STANFORD INVESTORS COMMITTEE,    :
                    :   Civil Action No. 3:13-cv-00477-N

*Plaintiffs*,          :   Hon. David C. Godbey
                    :

- against -           :   **ORAL ARGUMENT**
                    :   **REQUESTED**

PROSKAUER ROSE, LLP,         :
CHADBOURNE & PARKE, LLP, AND    :
THOMAS V. SJOBLOM,           :
                    :

*Defendants.*        :
                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - x

---

## DEFENDANT PROSKAUER ROSE LLP'S REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

---

Neil R. Burger
Bruce W. Collins
CARRINGTON, COLEMAN, SLOMAN
   & BLUMENTHAL, L.L.P.
901 Main Street, Suite 5500
Dallas, Texas 75202
Telephone:  (214) 855-3000
Facsimile:  (214) 855-1333
E-mail:  nburger@ccsb.com

James P. Rouhandeh*
Daniel J. Schwartz*
Craig M. Reiser*
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone:  (212) 450-4000
Facsimile:  (212) 701-5800
E-mail:  rouhandeh@davispolk.com
* admitted *pro hac vice*

# TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ...................................................................1

ARGUMENT ...........................................................................................4

I.     Plaintiff's Claims Are Barred as a Matter of Law Under New York's In Pari
Delicto Doctrine...................................................................................4

II.    Chapter 33 Bars Plaintiff's Claims as a Matter of Law ...................................5

     A.     There Is No Issue of Fact for the Jury to Consider .................................6

     B.     Chapter 33 Applies to Actions Brought by Equity Receivers ................7

     C.     Chapter 33 Applies to Plaintiff's Claims.............................................7

     D.     Proskauer Is Not Jointly and Severally Liable Under
Chapter 33 ...................................................................................9

III.    Texas Law Does Not Recognize Plaintiff's Aiding and Abetting Claims.........10

IV.    There Is No Evidence That Proskauer Knew of, or Intended to Assist, Any
Breach of Fiduciary Duties or Fraud ....................................................11

V.    As a Legal and Factual Matter, Proskauer Did Not Substantially Assist Any
Misconduct........................................................................................15

     A.     As a Matter of Law, Proskauer's Conduct Cannot Amount
to Substantial Assistance................................................................15

     B.     There Is No Evidence that Proskauer Substantially Assisted
Any Breach of Fiduciary Duty or Fraud .............................................17

VI.    There Is No Evidence that Proskauer Proximately Caused Any Damages .......19

     A.     There Is No Evidence of Damages During the Only
Relevant Time Period ...................................................................19

     B.     There Is No Evidence that Proskauer Proximately Caused
the Damages Plaintiff Is Seeking......................................................22

     C.     There Is No Evidence that Proskauer Proximately Caused
the Prolonging of Stanford Financial's Fraud......................................24

CONCLUSION......................................................................................26

## TABLE OF AUTHORITIES

### CASES

PAGE(S)

Arceneaux v. Pinnacle Entm't, Inc.,
523 S.W.3d 746 (Tex. App.—Houston [14th Dist.] 2017, no pet.) ......................................... 8

Badger v. Louisville & N.R. Co.,
414 F.2d 880 (5th Cir. 1969) ......................................................................... 6

Bell v. Phila. Int'l Records,
981 F. Supp. 2d 621 (S.D. Tex. 2013) ................................................................. 20

BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.,
881 F.3d 293 (4th Cir. 2018) ......................................................................... 11

Bridas S.A.P.I.C. v. Gov't of Turkmenistan,
345 F.3d 347, (5th Cir. 2003) .......................................................................22

Cantey Hanger, L.L.P. v. Byrd,
467 S.W.3d 477 (Tex. 2015) ................................................................... 15, 16

Celotex Corp. v. Catrett,
477 U.S. 317 (1986) ............................................................................... 11

Cook Composites Inc. v. Westlake Styrene Corp.,
15 S.W.3d 124 (Tex. App.—Houston [14th Dist.] 2000, pet. dism'd) ................................... 5

Dugger v. Arredondo,
408 S.W.3d 825 (Tex. 2013) ......................................................................... 8

In re Enron Corp. Sec., Derivative & "ERISA" Litig., No. CIV A H-01-3624,
2006 WL 3716669 (S.D. Tex. Dec. 12, 2006),
aff'd, 535 F.3d 325 (5th Cir. 2008) ................................................................. 10

Exxon Mobil Corp. v. Rincones,
520 S.W.3d 572 (Tex. 2017) ......................................................................... 21

F.D.I.C. v. Tex. Real Estate Counselors, Inc.,
No. A-88-CA-947, 1992 WL 237611 (W.D. Tex. July 20, 1992) ......................................... 7

F.F.P. Operating Partners, L.P. v. Duenez,
237 S.W.3d 680 (Tex. 2007) ......................................................................... 8

Fed. Sav. & Loan Ins. Corp. v. Tex. Real Estate Counselors, Inc. ,
955 F.2d 261 (5th Cir. 1992) ......................................................................... 7

First United Pentecostal Church of Beaumont v. Parker,
    514 S.W.3d 214 (Tex. 2017) ........................................................................ 10, 19

Gilcrease v. Garlock, Inc.,
    211 S.W.3d 448 (Tex. App.—El Paso 2006, no pet.) ............................................ 8

Herron v. S. Pac. Co.,
    283 U.S. 91 (1931) ...................................................................................... 6

Highland Crusader Offshore Partners., L.P. v. LifeCare Holdings, Inc.,
    No. 3:08-CV-0102-B, 2008 WL 3925272 (N.D. Tex. Aug. 27, 2008), aff'd,
    377 F. App'x 422 (5th Cir. 2010) ................................................................. 10

Hollander v. Brezenoff,
    787 F.2d 834 (2d Cir. 1986) ........................................................................ 20

Immobiliere Jeuness Establissement v. Amegy Bank Nat'l Ass'n,
    525 S.W.3d 875 (Tex. App.—Houston [14th Dist.] 2017, no. pet.) ........................ 19

Janvey v. Democratic Senatorial Campaign Comm., Inc.,
    712 F.3d 185 (5th Cir. 2013) ................................................................. 20, 24

Kirschner v. Grant Thornton L.L.P.,
    No. 07 Civ. 11604 (GEL), 2009 WL 1286326 (S.D.N.Y. Apr. 14, 2009),
    aff'd sub nom., Kirschner v. KPMG LLP, 626 F.3d 673 (2d Cir. 2010)................... 23

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
    475 U.S. 574 (1986) ................................................................................ 4, 10

Murphy v. Campbell,
    964 S.W.2d 265 (Tex. 1997) ....................................................................... 20

Nabors Well Servs., Ltd. v. Romero, 456 S.W.3d 553 (Tex. 2015) ......................... 7, 9

Nunez v. Superior Oil Co.,
    572 F.2d 1119 (5th Cir. 1978) ...................................................................... 6

Packard v. OCA Inc.,
    624 F.3d 726 (5th Cir. 2010) ........................................................................ 9

Pemex Exploracion y Produccion v. BASF Corp.,
    No. CIV.A. H-10-1997, 2011 WL 9523407 (S.D. Tex. Oct. 20 2011) ..................... 9

Pipkin v. Piper Impact, Inc.,
    70 F. App'x 760 (5th Cir. 2003) .................................................................... 9

Seven Seas Petrol., Inc. v. CIBC World Mkts. Corp.,
    No. CIV.A. H-08-3048, 2013 WL 3803966 (S.D. Tex. July 19, 2013) ................8, 11

Smith v. East, 411 S.W.3d 519 (Tex. App.—Austin 2013, pet. denied) ...................... 7

Smith v. Universal Elec. Const. Co., 30 S.W.3d 435, 439
    (Tex. App.—Tyler 2000, no pet.) ................................................................ 17, 18

Tex. Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.,
    219 S.W.3d 563 (Tex. App.—Austin 2007, pet. denied) ...................................... 21

TIG Ins. Co. v. Aon Re, Inc.,
    521 F.3d 351 (5th Cir. 2008) .............................................................................. 22

Thomas v. Express Boat Co., 759 F.2d 444 (5th Cir. 1985) ........................................ 25

Troice v. Proskauer Rose, L.L.P.,
    816 F.3d 341 (5th Cir. 2016) .............................................................................. 16

United States ex rel. King v. Solvay Pharms., Inc.,
    871 F.3d 318 (5th Cir. 2017) .............................................................................. 25

Villarreal v. Wells Fargo Brokerage Servs., L.L.C.,
    315 S.W.3d 109 (Tex. App.—Houston [1st Dist.] 2010, no pet.) ............................ 7

W. Fork Advisors, L.L.C. v. SunGard Consulting Servs., L.L.C.,
    437 S.W.3d 917 (Tex. App.—Dallas 2014, pet. denied) ......................................... 8

Williard Law Firm, L.P. v. Sewell, 464 S.W.3d 747
    (Tex. App.—Houston [14th Dist.] 2015) ............................................................. 21

Yesh Music v. Lakewood Church,
    No. 4:11-CV-03095, 2012 WL 2500099 (S.D. Tex. June 27, 2012) ..................... 22

## STATUTES & RULES

Fed. R. Civ. P. 56 ...................................................................................... 6, 11, 17

Tex. Civ. Prac. & Rem. Code § 16.004(a)(4) ................................................... 19

Tex. Civ. Prac. & Rem. Code § 33 ............................................................. *passim*

## OTHER AUTHORITIES

H. & S. Comm. Rep. for Tex. S. Bill No. 28 (Feb. 28, 1995) ...................................... 8

## PRELIMINARY STATEMENT

Proskauer's opening brief demonstrated that, after years of costly discovery and the dismissal of the majority of plaintiff's claims, plaintiff is unable to produce a shred of evidence with respect to the essential elements of its remaining claims.[1]  Plaintiff's Response does nothing to undermine that conclusion:  It concedes the critical points in Proskauer's motion and fails to respond to the affirmative evidence that bars plaintiff's claims.

As a threshold matter, if this Court considers plaintiff's claims under New York law, they fail under the in pari delicto doctrine—a point that plaintiff does not and cannot contest.  When Proskauer urged this Court to apply New York law and dismiss plaintiff's claims under New York law over three years ago, plaintiff asserted a baseless authenticity objection to the contracts that select New York law to govern this dispute.  Plaintiff jettisoned its authenticity objection in discovery.  This Court should now enforce the contracts that plaintiff previously persuaded this Court to disregard based on plaintiff's now-abandoned argument.

Regardless of the application of New York or Texas law, there is a separate and independent statutory bar to the claims here—Chapter 33 of the Texas Civil Practice and Remedies Code.  That statute bars claims brought by "claimants" that are more than fifty percent responsible for the harm for which they seek recovery.  Plaintiff does not and cannot dispute that Stanford Financial is a "claimant" under the statute.  Nor does or can it contend that Stanford Financial is less than fifty percent responsible for the claimed harm.  Instead, plaintiff misstates Chapter 33's language, disregards its purpose, and urges this Court to apply state procedural law to federal court proceedings in defiance of binding Supreme Court precedent.  These attempts

---

[1] Capitalized terms not otherwise defined herein have the meaning ascribed to them in Proskauer's Brief in Support of Motion for Summary Judgment ("Mot.").  Plaintiff's Brief in Support of Response to Motion for Summary Judgment, dated March 13, 2018, is referred to herein as the "Response" or "Resp."

fail.  Plaintiff is barred from recovering under Chapter 33, and Proskauer is entitled to judgment as a matter of law.

Plaintiff fares no better on the essential elements of its claims.  Even if plaintiff's aiding and abetting claims exist under Texas law—which they do not—plaintiff must adduce evidence that Proskauer had actual knowledge and intended to assist the commission of an underlying tort, substantially assisted its completion, and caused damages through its own conduct.  Plaintiff's claims fail at every single step of this analysis.

First, plaintiff does not even attempt to meet its burden of showing that Proskauer had actual knowledge of the conduct that proximately caused the damages plaintiff is seeking—i.e., Allen Stanford and James Davis's looting of Stanford Financial through their Ponzi scheme. Plaintiff argues instead that Proskauer's former partner, Mr. Sjoblom, should and could have figured out that there was a Ponzi scheme.  That is not enough to assert aiding and abetting claims.  There is no evidence that Mr. Sjoblom actually learned that Stanford and Davis were stealing money until February 2009, long after the alleged damages occurred.  In fact, although Proskauer does not bear the burden of proof, it has adduced evidence affirmatively demonstrating its lack of actual knowledge: namely, the unrebutted testimony of Davis that he hid the Ponzi scheme from Mr. Sjoblom for three-and-a-half years.  Plaintiff simply ignores this evidence.  Nowhere in its 50-page brief does plaintiff even address this critical testimony that Proskauer featured in its summary judgment motion.  Plaintiff also has abandoned any suggestion that Mr. Sjoblom knew that SIB was issuing false financial statements:  It now grudgingly concedes in its brief that Mr. Sjoblom "may not have known that Allen Stanford and Davis falsified SIBL's financials."  (Resp. 35 (emphasis added).)

2

Second, the substantial assistance prong of plaintiff's remaining claims also cannot be satisfied.  As a legal matter, plaintiff cannot demonstrate that Proskauer substantially assisted Stanford Financial's fraud or breaches of fiduciary duty because, despite plaintiff's characterizations of Mr. Sjoblom's conduct, his actions were those of a lawyer representing his client—as the Fifth Circuit and this Court have already held in related litigation.  Providing legal services does not qualify as substantial assistance.  Were it otherwise, the law would hold attorneys liable as aiders and abettors every time they provided zealous representation during an investigation or litigation that concluded with a finding of fraud against their client.

In any event, plaintiff's sole contention on substantial assistance is that Mr. Sjoblom made the SEC's investigation harder; yet plaintiff nowhere addresses the unrebutted testimony from the SEC that Mr. Sjoblom's advocacy did not stop the SEC from doing anything it wanted to do.  According to the SEC's lead attorney, Mr. Sjoblom's factual and legal arguments amounted to "personal views" that were "completely irrelevant" to her.  (Mot. 43-44.)

Finally, the causation and damages prongs of plaintiff's claims also fail as a matter of law.  First, the harm for which plaintiff seeks to hold Proskauer responsible occurred more than four years before this lawsuit.  Plaintiff cannot revive its stale claims by relying on the discovery rule because it irrevocably waived its right to rely on the discovery rule or any other form of tolling.  Second, the damages theory plaintiff advances—that Stanford Financial suffered "increased liabilities"—fails not only as a legal matter but also because there is no evidence that Proskauer or Mr. Sjoblom caused any damages whatsoever.  To the extent Stanford Financial suffered any harm occasioned by the sale of the CDs, it was caused by Stanford and Davis's misappropriation of the CD proceeds—not the "increased liabilities" SIB incurred when investors purchased the CDs.

For these reasons and those set forth in Proskauer's opening brief, the Court should enter judgment in Proskauer's favor on the remainder of plaintiff's claims.

## ARGUMENT

### I.      Plaintiff's Claims Are Barred as a Matter of Law Under New York's In Pari Delicto Doctrine

Plaintiff does not and cannot dispute that the doctrine of in pari delicto bars its claims if New York law applies.  Plaintiff concedes that Stanford Financial and Chadbourne expressly selected New York law to govern Mr. Sjoblom's representation of Stanford Financial.  (Mot. 25-26; Resp. 25.)  Plaintiff also does not and cannot contest that Stanford Financial's engagement letter with Proskauer expressly continued all material terms of that representation.  (Id.)  Nor does plaintiff point to a single fact suggesting that the parties intended to renegotiate their selection of New York law or choose a different governing law when Mr. Sjoblom took the Stanford Financial representation from Chadbourne to Proskauer.  Indeed, plaintiff does not even attempt to offer a rationale for its counterintuitive suggestion that they did so.  Because Proskauer has adduced evidence that the parties selected New York law and plaintiff has not even attempted to prove otherwise, this Court should conclude that New York law applies and that plaintiff's remaining claims are barred by the in pari delicto doctrine.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) ("[T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'").[2]

---

[2] In support of its Response, plaintiff purports to incorporate by reference its opposition to Proskauer's motion to dismiss.  That motion has already been decided by this Court—albeit, without applying New York law because plaintiff asserted a baseless objection to the authenticity of the Proskauer and Chadbourne engagement letters.  (See Resp. 25 n.179; ECF No. 79.)  In the event that this Court consults the arguments that plaintiff made in opposition to Proskauer's motion to dismiss, Proskauer respectfully requests that the Court likewise consult the arguments and authorities in Proskauer's reply to that opposition, which are hereby incorporated by reference.  (See ECF No. 70.)

Plaintiff's only response is that Proskauer is relying on Alvarado's "unexpressed subjective intent." (Resp. 25.) That is not the case. As has been clear from the outset of this litigation, Proskauer is relying on the parties' expressed intent set forth in the Chadbourne and Proskauer engagement letters. Mr. Alvarado's sworn statement confirms what the plain language of the Chadbourne and Proskauer engagement letters already provides: the parties selected New York law to govern their relationship. See Cook Composites, Inc. v. Westlake Styrene Corp., 15 S.W.3d 124, 132 (Tex. App.—Houston [14th Dist.] 2000, pet. dism'd) (explaining that "prior negotiations and all other relevant incidents bearing on the intent of the parties" may aid "in understanding the object and purpose of the contractual language the parties chose"). Specifically, Alvarado has stated that when Stanford Financial retained Proskauer, his understanding and intention was that "Mr. Sjoblom's representation of the Stanford Financial entities would continue as set forth in the Chadbourne engagement letter except as otherwise specified in the Proskauer engagement letter." (App. 28 [Ex. 1, Alvarado Aff. ¶ 24].)

Because the engagement letters provide that New York law governs (as Mr. Sjoblom and Alvarado have each confirmed), this Court should enter judgment for Proskauer under New York's in pari delicto doctrine.

## II.     Chapter 33 Bars Plaintiff's Claims as a Matter of Law

Proskauer is also entitled to summary judgment because Chapter 33 provides that "a claimant may not recover damages if his percentage of responsibility is greater than 50 percent." Tex. Civ. Prac. & Rem. Code § 33.001. Plaintiff does not and cannot contest that it is suing on behalf of two entities that qualify as "claimant[s]" under Chapter 33: SIB and SGC. (Mot. 47-48; Resp. 1 n.1.) Nor does plaintiff contest the fact that SIB and SGC are more than fifty percent responsible for the harm for which plaintiff seeks recovery. (Mot. 48-49.) As Proskauer demonstrated, because plaintiff is attempting to "recover damages" on behalf of a "claimant" that

bears a "percentage of responsibility . . . greater than 50 percent," Tex. Civ. Prac. & Rem. Code
§ 33.001, its claims are barred under Chapter 33 as a matter of law.

      A.     <u>There Is No Issue of Fact for the Jury to Consider</u>

      Unable to contest the facts that require a judgment in Proskauer's favor, plaintiff claims
that this Court cannot grant judgment as a matter of law under Chapter 33 because the statute
permits juries to "determine the percentage of responsibility" attributable to each wrongdoer.
(Resp. 49.)  That is incorrect for two reasons.  First, <u>federal law</u>—not state law—"governs the
allocation of issues . . . between judge and jury."  <u>Nunez v. Superior Oil Co.</u>, 572 F.2d 1119,
1125 (5th Cir. 1978).  When, as here, there is no triable issue of fact for a jury to hear, federal
courts must enter judgment as a matter of law regardless of whether state law permits the jury to
decide the issue.  <u>See</u> Fed. R. Civ. P. 56(a); <u>Herron v. S. Pac. Co.</u>, 283 U.S. 91, 93 (1931)
(holding that a state constitutional provision providing that a jury must decide contributory
negligence could not prevent federal court from deciding that issue as a matter of law); <u>Badger v.
Louisville & N. R. Co.</u>, 414 F.2d 880, 882 (5th Cir. 1969) (holding that state statute that
"committed to the jury all questions of negligence and contributory negligence" was not
controlling in federal court).  Second, plaintiff has already conceded that SGC and SIB are more
than fifty percent responsible for the harm for which plaintiff is seeking recovery, and is relying
on this Court's previous findings to that effect in aid of its attempt to hold Proskauer liable for
Stanford and Davis's misconduct.  (Order, <u>SEC v. Stanford Int'l Bank</u>, No. 3:09-CV-00298-N
(N.D. Tex. Apr. 25, 2013), Dkt. No. 1858; App. 1114-15 [Ex. 79, Janvey Tr. 204:25-205:8];
App. 1141 [Ex. 82, Van Tassel Decl. ¶ 102]; App. 1150-52 [Ex. 83, Van Tassel Tr. 126:18-
128:25].)

B.      Chapter 33 Applies to Actions Brought by Equity Receivers

Plaintiff next tries to graft an "equity-receivers exception" onto Chapter 33, arguing that the misconduct of the entities plaintiff is trying to represent cannot bar its recovery.  (Resp. 47-48.)  But, the Texas legislature has already decided that question against plaintiff in passing Chapter 33 itself; it is not this Court's prerogative to contravene the legislature's judgment as plaintiff urges.  See Smith v. East, 411 S.W.3d 519, 528 (Tex. App.—Austin 2013, pet. denied) ("[Plaintiff] further decries what she urges are harsh consequences or unfairness created by section 33.001's application here, but these arguments are properly directed to the Legislature."); Villarreal v. Wells Fargo Brokerage Servs., LLC, 315 S.W.3d 109, 122 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (holding that a "movants' policy argument . . . cannot serve to defeat the plain language" of Chapter 33); see also Nabors Well Servs., Ltd. v. Romero, 456 S.W.3d 553, 562 (Tex. 2015) ("[T]here are no restrictions on assigning responsibility to a [claimant] as long as it can be shown the [claimant's] conduct 'caused or contributed to cause his [harm].'").  Moreover, as Proskauer demonstrated in its opening brief (Mot. 50), courts have prohibited receivers from recovering under Chapter 33 when the party whose interest they represent is more than fifty percent responsible for the alleged harm.  See Fed. Sav. & Loan Ins. Corp. v. Tex. Real Estate Counselors, Inc., 955 F.2d 261, 268 (5th Cir. 1992); F.D.I.C. v. Tex. Real Estate Counselors, Inc., No. A-88-CA-947, 1992 WL 237611, at *2 (W.D. Tex. July 20, 1992).  Plaintiff does not—because it cannot—even attempt to distinguish this authority.

C.      Chapter 33 Applies to Plaintiff's Claims

Plaintiff also attempts to avoid Chapter 33's dispositive reach by arguing that this Court should adopt an aiding and abetting exception to the statute.  (Resp. 45-47.)  This Court should not take up the invitation.  Chapter 33, as this Court has already held, applies to "any cause of action based on tort."  Tex. Civ. Prac. & Rem. Code § 33.002(a)(1) (emphasis added); see Order

at 2-3, <u>Janvey v. Adams & Reese, LLP</u>, No. 3:12-CV-0495-N (Nov. 24, 2014), Dkt. No. 151;

<u>Arceneaux v. Pinnacle Entm't, Inc.</u>, 523 S.W.3d 746, 748 (Tex. App.—Houston [14th Dist.]

2017, no pet.).  Plaintiff does not and cannot dispute that aiding and abetting causes of action (if

they exist at all under Texas law) are "based on tort."  <u>See</u> <u>W. Fork Advisors, LLC v. SunGard</u>

<u>Consulting Servs., LLC</u>, 437 S.W.3d 917, 922 (Tex. App.—Dallas 2014, pet. denied) (discussing

the "tort of aiding and abetting"); <u>Seven Seas Petroleum, Inc. v. CIBC World Mkts. Corp.</u>, No.

CIV.A. H-08-3048, 2013 WL 3803966, at *22 (S.D. Tex. July 19, 2013) (holding that Chapter

33 applies to claims for aiding and abetting breach of fiduciary duty).

Despite the foregoing, plaintiff contends that Chapter 33 does not apply to torts that

provided for joint and several liability at common law.  (Resp. 45-47.)  But Chapter 33's purpose

is to <u>supplant</u> the common law's rules on joint and several liability—not to entrench them.  <u>See</u>

<u>Gilcrease v. Garlock, Inc.</u>, 211 S.W.3d 448, 457 (Tex. App.—El Paso 2006, no pet.) ("The

purpose of Chapter 33 . . . is to apportion the damages for which joint tortfeasors are liable,

according to the percentage of fault."); H. & S. Comm. Rep. for Tex. S. Bill No. 28, at 2 (Feb.

28, 1995) (explaining that the statute was designed to "limit the conditions under which a court is

authorized to find a defendant jointly and severally liable for a claimant's damages").

As the Texas Supreme Court has repeatedly held, "[w]hen the Legislature intends an

exception to Chapter 33's broad scheme, it creates specific exceptions for matters that are

outside the scope of proportionate responsibility."  <u>Dugger v. Arredondo</u>, 408 S.W.3d 825, 832

(Tex. 2013); <u>see id.</u> (holding that Chapter 33 abrogated Texas's common law unlawful acts

doctrine because there was no "specific exception[]" for it in Chapter 33); <u>F.F.P. Operating</u>

<u>Partners, L.P. v. Duenez</u>, 237 S.W.3d 680, 691 (Tex. 2007) ("When the Legislature has chosen to

impose joint and several liability rather than proportionate liability, it has clearly said so.").  The

legislature did not create any such exception for aiding and abetting claims.  Accordingly, to the extent aiding and abetting claims exist in Texas, they are common law torts to which Chapter 33's limitation on joint and several liability applies—a conclusion that multiple courts have reached by following the plain language of the statute and the reasoning of the Texas Supreme Court.  See Seven Seas Petroleum, 2013 WL 3803966, at *22; Pemex Exploracion y Produccion v. BASF Corp., No. CIV.A. H-10-1997, 2011 WL 9523407, at *13-14 (S.D. Tex. Oct. 20, 2011) (holding that Chapter 33 applies to claims for conspiracy).[3]

>    D.    Proskauer Is Not Jointly and Severally Liable Under Chapter 33

Finally, plaintiff argues that Proskauer can be held jointly and severally liable pursuant to Section 33.013(b)(2), which excepts claims from proportionate responsibility when a defendant not only acts in concert with another party but also does so "with the specific intent to do harm to others" in furtherance of certain criminal acts.  Tex. Civ. Prac. & Rem. Code § 33.013(b)(2). This exception does not apply, however, when there are no "damages recoverable by the claimant."  Tex. Civ. Prac. & Rem. Code § 33.013(b) (permitting joint and several liability only "for the damages recoverable by the claimant" (emphasis added)); Romero, 456 S.W.3d at 560 (stating that a claimant is entitled to recover only if its "own responsibility does not exceed 50%").  Here, SGC and SIB are indisputably claimants and are indisputably more than fifty percent responsible for the alleged harm—as the Receiver has already admitted.  (App. 1114-15

---

[3] The supposedly contrary authority on which plaintiff relies either predates the Supreme Court's rulings in Dugger and Duenez or ignores those rulings entirely.  The Court should disregard these erroneous decisions, which are contrary to Texas Supreme Court precedent and the plain text of Chapter 33.  See Packard v. OCA, Inc., 624 F.3d 726, 729 (5th Cir. 2010) ("In determining questions of Texas law, this court looks to the decisions of the Texas Supreme Court, which are binding."); Pipkin v. Piper Impact, Inc., 70 F. App'x 760, 763 (5th Cir. 2003) ("Under Erie, this Court is bound by the decisions of the [State] legislature and the [State] Supreme Court.").

[Ex. 79, Janvey Tr. 204:25-205:8].)  As a result, under Section 33.001, no damages are

recoverable by plaintiff.  See supra Section II.  Section 33.013(b)(2) therefore does not apply.[4]

### III.     Texas Law Does Not Recognize Plaintiff's Aiding and Abetting Claims

An independent reason for granting summary judgment to Proskauer is that the claims

plaintiff asserts have never been recognized under Texas law.  See First United Pentecostal

Church of Beaumont v. Parker, 514 S.W.3d 214, 224 (Tex. 2017) ("[The Texas Supreme Court]

has not expressly decided whether Texas recognizes a cause of action for aiding and abetting.");

Highland Crusader Offshore Partners, L.P. v. LifeCare Holdings, Inc., No. 3:08-CV-0102-B,

2008 WL 3925272, at *14 (N.D. Tex. Aug. 27, 2008) (dismissing claim for aiding and abetting

fraud because "Texas does not recognize such a cause of action"), aff'd, 377 F. App'x 422 (5th

Cir. 2010); In re Enron Corp. Sec., Derivative & "ERISA" Litig., No. CIV A H-01-3624, 2006

WL 3716669, at *8 (S.D. Tex. Dec. 12, 2006), aff'd, 535 F.3d 325 (5th Cir. 2008) (finding that

Texas does not recognize a claim for aiding and abetting fraud).  Plaintiff does not claim

otherwise.  Instead, it relies on Texas Supreme Court cases (one from 1969, the other from 1942)

holding that knowing participation in a party's breach of fiduciary duty can give rise to joint

liability.  But neither of those cases could possibly stand for the proposition that Texas

recognizes the aiding and abetting tort liability plaintiff is seeking to assert here because the

---

[4] Even if plaintiff's recovery were not barred under Section 33.001, its argument would still fail because Proskauer can only be jointly and severally liable under Section 33.013(b)(2) if plaintiff proves that Proskauer "[1] with the specific intent to do harm to others, [2] acted in concert with another person [3] to engage in the conduct described in [certain] provisions of the Penal Code [4] and in doing so proximately caused the damages legally recoverable by the claimant."  Tex. Civ. Prac. & Rem. Code § 33.013(b)(2).  Plaintiff makes no attempt to explain, much less adduce evidence supporting, its ipse dixit that Mr. Sjoblom's conduct satisfies these elements and has therefore failed to create a triable issue of fact on this issue.  See Matsushita Elec. Indus. Co, 475 U.S. at 586 ("[T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'").  In particular, plaintiff has not—because it cannot—even tried to explain how Mr. Sjoblom acted with the "conscious effort or desire to engage in . . . conduct for the purpose of doing substantial harm to others."  Tex. Civ. Prac. & Rem. Code § 33.013(e); Blackhorse Oilfield Specialty & Supply, LLC v. LK Trading, LLC, No. CIV.A. H-14-847, 2015 WL 224986, at *2 (S.D. Tex. Jan. 15, 2015) (granting summary judgment where the plaintiff "provided no evidence that [the defendant] acted with the specific intent to do any harm").

Texas Supreme Court declared in 2017 that it had never recognized such a tort.  The fact that

plaintiff's causes of action do not exist under Texas law provides an independent ground for

entering judgment in Proskauer's favor.

Even assuming that plaintiff's causes of action exist, plaintiff must show that Proskauer

(i) had knowledge of, and intended to assist, its clients' principals' wrongdoing, (ii) substantially

assisted them in committing fraud or breaching their fiduciary duties, and (iii) caused damages

through its own conduct.  (See Mot. 29-30.)  As explained below, Proskauer is entitled to

summary judgment because plaintiff is unable to establish any of these essential elements of its

claims.[5]  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

## IV.    There Is No Evidence That Proskauer Knew of, or Intended to Assist, Any Breach of Fiduciary Duties or Fraud

Plaintiff must establish that Mr. Sjoblom had actual knowledge of the underlying breaches

of fiduciary duty or fraud and intended to assist them.  Seven Seas Petroleum, 2013 WL 3803966,

at *14; see Resp. 35.  Plaintiff does not contend—because it cannot plausibly argue—that a

showing of recklessness or general suspicion suffices.  (See Mot. 30); BMG Rights Mgmt. (US)

LLC v. Cox Commc'ns, Inc., 881 F.3d 293, 309 (4th Cir. 2018) ("Because the Restatement here

uses only the word 'knows,' where in other places it uses phrases like 'knows or should know,' it is

clear that 'knows' here refers to actual knowledge, not any lesser mental state." (citing Restatement

(Second) of Torts § 876(b) (1977))).  And while plaintiff claims that it does not have to establish

---

[5] Pursuant to Federal Rule of Civil Procedure 56(c)(2), Proskauer objects to certain evidence on which plaintiff relies in its Response, which should be disregarded by this Court.  Specifically, Proskauer objects to plaintiff's use of (a) testimony from proceedings pursuant to which Proskauer was not a party and for which Proskauer was not present (Exhibits 2, 3, 4, 5, and 8 to the Appendix in Support of Plaintiffs' Response to Motion for Summary Judgment ("Plaintiff's Appendix")), (b) decisions and opinions from administrative proceedings (Exhibits 25 and 26 to Plaintiff's Appendix), and (c) plea agreements in the United States's cases against James Davis and Laura Pendergest-Holt (Exhibits 28 and 30 to Plaintiff's Appendix). These materials cannot be presented in a form that would be admissible in evidence because, among other deficiencies, they are hearsay.  Proskauer reserves its right to object at the appropriate time to this and other evidence cited in plaintiff's Response that plaintiff may seek to introduce at trial should plaintiff's claims survive Proskauer's pending dispositive motions.

that Mr. Sjoblom had actual knowledge of Stanford Financial's Ponzi scheme (Resp. 35), it does not and cannot explain how it can hold Proskauer responsible for damages arising from that scheme without establishing that Mr. Sjoblom knew about it.  (Mot. 30-31 & n.11.)

Those concessions spell the end of plaintiff's claims because, as plaintiff necessarily acknowledges, there is no evidence that Mr. Sjoblom actually knew of the fraud for which plaintiff is trying to recover in this case—namely, that Stanford and Davis stole money from Stanford Financial and "falsified SIBL's financials" to conceal their looting from the public. (Resp. 35.)  Plaintiff cannot contend otherwise given Davis's uncontroverted testimony of his and Stanford's duplicity.  When asked whether he "could have" told Mr. Sjoblom about the composition of Tier III in August 2005, Davis said that he "could have, but . . . wouldn't."  The reason?  "Because that would have revealed the fraudulent activity" and he wanted "to conceal the fraudulent activity from" Mr. Sjoblom.  (App. 172-73 [Ex. 5, Davis Tr. 111:17-112:2].)

Unable to grapple with Davis's uncontroverted testimony that he lied to Mr. Sjoblom, plaintiff ignores it and tries to elide the "actual knowledge" standard by contending that Mr. Sjoblom was "willfully blind" to the fraud and was "on notice" of its occurrence.[6]  (Resp. 1-2, 38-39.)  But, as plaintiff necessarily acknowledges, the willful blindness standard applies "in criminal cases."  (Id. at 38-40.)  Plaintiff does not and cannot identify a single civil case in Texas finding actual knowledge based on willful blindness.  It is the wrong standard.  Plaintiff's contention that Mr. Sjoblom was "on notice" is equally unavailing because "notice" does not amount to actual knowledge.

---

[6] For example, plaintiff relies on bullets outlining "[t]he elements of a Ponzi scheme" from the SEC's website to suggest that Mr. Sjoblom was "on notice" of Stanford Financial's fraudulent scheme.  (Resp. 1-2, 37-38.) But the fact that the SEC's website lists certain indicators of a Ponzi scheme (in 2018, no less, see Plaintiff's Appendix 2204) reveals nothing about what Mr. Sjoblom actually knew while representing Stanford Financial a decade ago.

Nor is there even any evidence that Mr. Sjoblom was willfully blind to the fraud or otherwise on notice of its occurrence.  As plaintiff admits, there is no evidence that Mr. Sjoblom knew or was on notice of the fact that Stanford and Davis might be engaged in misconduct at any point prior to January 15, 2009—months after all of the money Stanford and Davis stole had been looted and months after SIB's liabilities stopped increasing.[7]  (Resp. 18; see App. 1158-59 [Ex. 83, Van Tassel Tr. 139:14-140:6].)  Davis's undisputed testimony shows that two "dirty rotten, fraud-perpetuating liars" repeatedly lied to Mr. Sjoblom.  (App. 195 [Ex. 5, Davis Tr. 195:23-24].)  Davis never told "anyone what Tier III consisted of prior to February of 2009" because Tier III "was a fraud" that "did not exist as presented."  (App. 172 [id. 111:9-13].)  He admitted that "the bank's asset allocation was bogus" and "was fraudulently presented on the financial statements" (App. 170 [id. 60:4-8])—a fact that, as even plaintiff concedes, Mr. Sjoblom did not know during his representation of Stanford Financial (Resp. 35).  Even though Davis "could have taken steps" to stop the fraud and one of those steps would have been telling Mr. Sjoblom about it, he chose not to do so until February 2009 out of "fear of the collapse of the whole organization."  (App. 195, 205 [Ex. 5, Davis Tr. 166:2-12, 187:12-19].)

Unable to show actual knowledge on this record, plaintiff also claims that several "red flags" should have alerted Mr. Sjoblom to the possibility of fraud at Stanford Financial.  (Resp. 35-37.)  But, as Proskauer demonstrated in its opening brief, "red flags" are insufficient as a legal matter to prove actual knowledge.  (Mot. 32-33.)  In any event, these purported "red flags" are irrelevant.  For instance, the fact that the SEC alleged that Stanford Financial was a Ponzi

---

[7] Not only does plaintiff admit that there is no evidence that "[Mr.] Sjoblom learned that SIBL's Tier 3 investment portfolio contained private equity and real estate" prior to January 15, 2009 (Resp. 18), but there is no evidence that he learned anything about the details of Tier III until the following month—just days before he withdrew.  Plaintiff likewise admits that there is no evidence that Mr. Sjoblom learned about Stanford Financial's loans to Stanford prior to February 4, 2009.  (Id. 22.)

scheme (see Resp. 35-36), is not evidence that it actually was one; what everyone believed at the time suggested otherwise (Mot. 33).  Nor would Stanford Financial's lack of transparency about the contents of SIB's portfolio (see Resp. 36) have suggested that Stanford Financial was engaged in fraud, given that Mr. Sjoblom was assured that Stanford Financial had obtained an opinion from Antiguan legal counsel indicating that Antiguan law prohibited the disclosure of information about the CD portfolio—a position that SIB's regulator confirmed.  (See App. 30 [Ex. 1, Alvarado Aff. ¶ 30]; App. 146, 163 [Ex. 4, Sjoblom Tr. 133:13-22; 341:5-18].) Moreover, an Antiguan law expert has opined that SIB's position on Antiguan privacy law was valid.  (Reply App. 9-11 [Ex. 1, Johnson Aff. ¶¶ 7-12].)[8]  Even considered in combination, these purported "red flags" are not red flags at all—as demonstrated by the fact that Stanford Financial employees, investors, and third parties were aware of these facts and did not believe that Stanford Financial was a fraud.  (App. 27, 29-33 [Ex. 1, Alvarado Aff. ¶¶ 21, 29, 32-33, 39, 44]; App. 499 [Ex. 21, Hamric Tr. 246:2-14]; App. 520-21 [Ex. 23, Young Tr. 159:16-160:6]; App. 744, 749, 768 [Ex. 40]; App. 949-50, 961-62 [Ex. 57, Ancira Tr. 133:23-134:25; 207:6-208:25]; App. 1093-94 [Ex. 77, Bates Tr. 145:3-146:19]; App. 1195 [Ex. 86].)[9]

Plaintiff does not even contest that permitting a fact-finder to impute actual knowledge to Mr. Sjoblom from the purported "red flags" is tantamount to impermissibly holding lawyers

---

[8] Citations in the form "Reply App. __" are to the Reply Appendix filed in connection with this reply brief, which includes the Declaration of James P. Rouhandeh, dated March 27, 2018, and the exhibits thereto.

[9] Among these employees who did not believe that Stanford Financial was a fraud is Lena Stinson, former director of global compliance for Stanford Financial, who has agreed to testify on plaintiff's behalf at trial (if this case survives the pending motions) and whose affidavit is cited in plaintiff's Response.  (Reply App. 35-36 ([Ex. 2, Stinson Tr. 305:11-15, 306:7-12].)  During her deposition, which was taken after the close of fact discovery pursuant to the parties' agreement, Stinson testified that she knew the SEC accused Stanford Financial of being a prime bank scheme; that she was aware that SGC did not have knowledge of specific investments within the CD portfolio; and that she knew the SEC was inquiring into SGC's sale of the CDs.  (Reply App. 31, 32, 33 [id. 57:21-23, 68:19-22, 80:10-18].)  Nevertheless, Stinson, who has numerous securities licenses, did not find these purported "red flags" to be suspicious and believed throughout her tenure at Stanford Financial (from 1997 to February 2009) that the Stanford Financial companies were in compliance with all applicable laws.  (Reply App. 27-30, 34 [id. 44:12-47:20, 98:11-15].)

liable for their client's tortious conduct, even when the client lies to the lawyer at every turn. (Mot. 33-34.)  Plaintiff's effort to water down the relevant standard is a tacit recognition that application of the actual knowledge standard—as defined by relevant case law—dooms plaintiff's case.  Because plaintiff has adduced no evidence that Proskauer, through Mr. Sjoblom, had actual knowledge of any fraudulent scheme or breaches of fiduciary duty and intended to assist that misconduct, Proskauer is entitled to summary judgment on both of plaintiff's aiding and abetting claims.

## V.     As a Legal and Factual Matter, Proskauer Did Not Substantially Assist Any Misconduct

Plaintiff must also show that Proskauer substantially assisted the fraudulent scheme or breaches of fiduciary duty, but the law precludes its claims—and the facts do not support those claims in any event.  The law does not allow a jury to find substantial assistance from evidence that Proskauer provided legal services to its client.  Moreover, because plaintiff must show substantial assistance by relying on conduct from September 2006 to October 2008—and because there is no evidence of any substantial assistance during that timeframe—plaintiff's claims fail.

### A.     As a Matter of Law, Proskauer's Conduct Cannot Amount to Substantial Assistance

As Proskauer demonstrated in its opening brief, its provision of legal services to Stanford Financial cannot constitute substantial assistance as a matter of law.  (Mot. 40-41.)  Unable to distinguish the binding New York authority Proskauer cited, plaintiff tries to argue that a different conclusion follows under Texas law.  (See Resp. 41-42.)  Yet, plaintiff cannot muster a single Texas case where the performance of legal services gave rise to aiding and abetting liability.  Plaintiff instead relies on attorney immunity cases that predate the Texas Supreme Court's recent decision in Cantey Hanger, LLP v. Byrd, 467 S.W.3d 477 (Tex. 2015).  Those

15

decisions are inapposite, however, because Cantey Hanger clarified that attorneys cannot be held civilly responsible in Texas "for actions taken in connection with representing a client in litigation." Id. at 481.

Applying Cantey Hanger in two related litigations brought by plaintiff's counsel, the Fifth Circuit and this Court held that Mr. Sjoblom's conduct cannot give rise to liability because it is "the kind of conduct in which an attorney engages when discharging his duties to his client." Troice v. Proskauer Rose, LLP, 816 F.3d 341, 348 (5th Cir. 2016) (internal quotations omitted); see also Order at 13-14, Dorrell v. Proskauer Rose LLP, No. 3:16-CV-1152-N (N.D. Tex. Nov. 2, 2017), Dkt. No. 52.  As plaintiff's own Response admits, that conduct consisted of advancing legal arguments, communicating with the SEC about document requests, and preparing and defending a Stanford Financial executive at her deposition.  (Resp. 9-23, 41-42.)  These are "classic examples of an attorney's conduct in representing his client."  Troice, 816 F.3d at 348.

Because both New York and Texas law preclude aiding and abetting liability for professional services, and because there is no dispute that Mr. Sjoblom provided professional services to Stanford Financial, plaintiff's claims fail as a matter of law.  Plaintiff does not and cannot resist this conclusion by attempting to distinguish Troice, Dorrell, or Cantey Hanger. Rather, like the Troice plaintiffs, plaintiff argues that Mr. Sjoblom was not providing routine legal services because he purportedly acted with the subjective intent to obstruct the SEC's investigation.  (Resp. 42; see Troice, 816 F.3d at 344, 349.)  But plaintiff's focus on the "nature" of the legal services that Mr. Sjoblom provided is irrelevant.  As Cantey Hanger and Troice hold, "wrongful" or even "fraudulent" conduct is not actionable when it is the kind of conduct lawyers routinely engage in.  Cantey Hanger, 467 S.W.3d at 481, 483; Troice, 816 F.3d at 348.

That logic applies with equal force here.  Mr. Sjoblom was never criminally prosecuted, barred by the SEC, or disciplined by any federal or state court or bar.  If plaintiff can create aiding and abetting liability by speculating about Mr. Sjoblom's motives during his representation of Stanford Financial, every lawyer who zealously defends a client's conduct before a regulator or in a litigation will be subject to expansive civil liability if the client's conduct is ultimately adjudged to be illegal.  Neither New York nor Texas law permits that result.  Because plaintiff cannot use Mr. Sjoblom's provision of legal services to establish the substantial assistance prong of an aiding and abetting claim, Proskauer is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(a).

B.     There Is No Evidence that Proskauer Substantially
       Assisted Any Breach of Fiduciary Duty or Fraud

Proskauer is also entitled to judgment as a matter of law because there is no evidence that Proskauer substantially assisted any breaches of fiduciary duty or fraud.  Plaintiff has presented no evidence that Proskauer participated in the marketing or sale of the CDs, made any representations (much less misrepresentations) about those CDs, or had any financial stake in the CDs' success.  Instead, plaintiff tries to use Mr. Sjoblom's conduct as a lawyer representing his client to prove that he substantially assisted Stanford and Davis's fraud.  This effort fails.

Indeed, even were the Court to examine the evidence regarding Mr. Sjoblom's actions on this motion, that review would reveal that, with three exceptions, all of the conduct occurred while Mr. Sjoblom was at Chadbourne or after damages stopped accruing (under plaintiff's own damages theory).  Plaintiff cannot use evidence about Mr. Sjoblom's conduct while at Chadbourne to prove substantial assistance by Proskauer.  See Smith v. Universal Elec. Const. Co., 30 S.W.3d 435, 439 (Tex. App. —Tyler 2000, no pet.) (explaining that respondeat superior applies "only where the relationship of [employer] and [employee] exists at the time" of the

conduct at issue (emphasis added)); Compl. ¶ 269 (asserting a respondeat superior theory of liability).  Nor can plaintiff use evidence about Mr. Sjoblom's conduct after October 2008 when the net CD liabilities plaintiff is attempting to recover in this case began decreasing.  See infra Section VI.A.  Accordingly, the only relevant conduct at issue in this case relates to the period between September 2006 (when Proskauer began representing Stanford Financial) and October 2008 (when the damages plaintiff is seeking stopped accruing).  The only conduct plaintiff points to in that time frame consists of legal and factual arguments to the SEC, advice regarding production of documents, and responses to auditors.  None of this attorney conduct supports a finding that Proskauer substantially assisted in any misconduct.

Mr. Sjoblom's legal and factual arguments to the SEC in the fall of 2006 (Resp. 13-16) were the product of lies supplied by his client—that it was operating a legitimate business and had an opinion of Antiguan counsel that SIB was prohibited from disclosing the contents of the CD portfolio.  (App. 30 [Ex. 1, Alvarado Aff. ¶ 30]; App. 146, 163 [Ex. 4, Sjoblom Tr. 133:13-22; 341:5-9].)  Plaintiff's contention that Mr. Sjoblom directed Stanford Financial to withhold a document from the SEC in January 2007 (Resp. 16-17) is simply incorrect:  The only evidence in the record (undisputed by plaintiff) is that Mr. Sjoblom directed his client to make the relevant document available for the SEC's review and that the SEC never reviewed that or other relevant materials (Mot. 16-17).  And, even if plaintiff's assertion that Mr. Sjoblom misrepresented the status of the SEC's investigation to auditors in February 2007 and February 2008 were correct (Resp. 17-18, 40-41), which it is not (Mot. 14-16; see App. 872-75 [Ex. 47]), that conduct could not have substantially assisted Stanford and Davis in concealing their misconduct from the SEC because it had no bearing on the SEC's access to SIB's portfolio.

Because there is no evidence that Mr. Sjoblom assisted Stanford Financial's fraudulent scheme through his conduct as a lawyer, Proskauer is entitled to summary judgment.

## VI.    There Is No Evidence that Proskauer Proximately Caused Any Damages

Proskauer is also entitled to summary judgment because plaintiff has not adduced any evidence of damages caused by Proskauer. Plaintiff claims, without elaboration, that it need not show the existence of any such damages. (Resp. 26.) Plaintiff is wrong. Plaintiff bears the burden of proving that Proskauer's conduct proximately caused the alleged damages. See, e.g., Immobiliere Jeuness Establissement v. Amegy Bank Nat'l Ass'n, 525 S.W.3d 875, 882 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (affirming summary judgment where the defendant's "conduct was not the proximate cause of the alleged damages for aiding and abetting"); see also First United, 514 S.W.3d at 224 (granting summary judgment on alleged aiding and abetting claim where plaintiff "reference[d] no evidence that [defendant] assisted or encouraged [the primary violator] in stealing the [plaintiff's] money"). Because plaintiff has not met its burden, its claims fail.

### A.    There Is No Evidence of Damages During
####       the Only Relevant Time Period

This Court should grant summary judgment because plaintiff has not presented any proof that it suffered damages after January 31, 2009—which means that, to the extent it suffered any damages at all, claims arising from those damages are time-barred. (Mot. 26-29.) Plaintiff does not dispute all of the key points that compel this conclusion, including that:

- Its damages claims must have accrued after January 31, 2009 to be timely, see Tex. Civ. Prac. & Rem. Code § 16.004(a)(4);

- It is seeking damages for the increase in Stanford Financial's net CD liabilities (see Resp. 33-35); and

- Net CD liabilities did not increase after October 2008—in fact they decreased from October 2008 to February 2009 (see Mot. 27-28).

19

Because plaintiff did not incur any damages during the only period for which it may have timely claims, this Court should enter judgment dismissing plaintiff's claims.[10]  None of plaintiff's arguments requires a different result.

First, plaintiff argues that its claims did not accrue until after January 31, 2009, when "plaintiff knew, or should have known . . . of the facts giving rise to the cause of action."  (Resp. 28-30.)  That argument is nothing more than a recitation of the discovery rule, which plaintiff unequivocally waived in its Rule 41 stipulation.  (Mot. 27; ECF 172 at 4 ("The allegations set forth in paragraph 254 of the Complaint shall be and hereby are withdrawn with prejudice to Plaintiffs reasserting them against Proskauer in this or in any other action." (emphasis added)).)

Without the discovery rule allegations, plaintiff's causes of action accrued "when a wrongful act cause[d] some legal injury, even if the fact of injury [was] not discovered until later, and even if all resulting damages ha[d] not yet occurred."  Murphy v. Campbell, 964 S.W.2d 265, 270 (Tex. 1997) (emphasis added) (internal quotations omitted).  The Fifth Circuit's decision in Janvey v. Democratic Senatorial Campaign Committee ("DSCC"), 712 F.3d 185 (5th Cir. 2013), confirms as much.  Indeed, contrary to plaintiff's description, the Fifth Circuit in DSCC actually held that the Receiver's fraudulent transfer causes of action could not have accrued until after the Receiver's appointment because the discovery rule applied.  See id. at 194-95 ("[T]he discovery rule provides that a claim for fraud does not accrue . . . until the fraud is discovered, or in the exercise of reasonable diligence should have been discovered." (internal

---

[10] Contrary to plaintiff's contention, Proskauer need not identify the specific date when plaintiff's causes of action accrued (Resp. 28 n.188) because there is no dispute that the claims are time-barred if the claims accrued prior to January 31, 2009.  See Hollander v. Brezenoff, 787 F.2d 834, 839-40 (2d Cir. 1986) (granting summary judgment even though the "exact day" of accrual was unknown because there was no genuine dispute that the claims accrued prior to the last possible accrual date); Bell v. Philadelphia Int'l Records, 981 F. Supp. 2d 621, 625 (S.D. Tex. 2013) (granting summary judgment where, regardless of specific date of accrual, there was no genuine dispute that the cause of action was untimely).

quotations omitted)).[11]  Here, absent the availability of the discovery rule, plaintiff must show

that it suffered legal injury after January 31, 2009.  It cannot do so under the only theory of

damages it advances.[12]

Second, plaintiff argues that the Rule 41 Stipulation somehow withdrew its "allegations

regarding the applicability of the discovery rule to post-receivership time periods" and does not

apply to pre-Receivership time periods.  (Resp. 31.)  That argument is not only untethered from

any principle of law, but it is also foreclosed by the plain language of the Rule 41 Stipulation,

which withdraws all discovery rule allegations—full stop.[13]  (See ECF 172 at 3-4 (withdrawing

plaintiff's discovery rule allegations "with prejudice to Plaintiffs reasserting them against

Proskauer in this or in any other action").)

Third, plaintiff incorrectly claims that it can still assert the discovery rule against

Proskauer because plaintiff was not required to plead the discovery rule to invoke it.  (Resp. 32-

33.)  This argument similarly ignores the Rule 41 Stipulation's unambiguous statement that,

regardless of whether plaintiff was required to plead the discovery rule, plaintiff has forsaken its

ability to assert the discovery rule.  (ECF 172 at 4.)  In any event, federal law requires plaintiff to

---

[11] The other cases that plaintiff cites for its incorrect accrual standard likewise are inapposite because they,
like DSCC, expressly applied the discovery rule—a point plaintiff glosses over.  Compare Resp. 28, with Williard
Law Firm, L.P. v. Sewell, 464 S.W.3d 747, 751 (Tex. App.—Houston [14th Dist.] 2015) ("Neither party disputes
that the discovery rule properly applies to this case.").

[12] Plaintiff also suggests that its claims are somehow timely under the "continuing tort doctrine," which it
claims is "consistent with the holding of DSCC." (Resp. 29.)  DSCC neither discusses the continuing tort doctrine
nor purports to apply it.  In any event, the doctrine does not apply here, because the Texas Supreme Court has never
endorsed that doctrine.  Exxon Mobil Corp. v. Rincones, 520 S.W.3d 572, 592-93 (Tex. 2017).  But even if the
doctrine existed, it would not apply on these facts, because Mr. Sjoblom's actions were not a "constant, continuous
pattern of tortious conduct . . . such as each day of a false imprisonment or the daily consumption of a harmful
medication." Texas Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc., 219 S.W.3d 563, 587–88 (Tex.
App.—Austin 2007, pet. denied).  To the contrary, as the undisputed evidence reflects, his work for Stanford
Financial was intermittent and minimal.  (See Mot. 5.)

[13] Contrary to plaintiff's assertion, it cannot avoid summary judgment by relying on the Rule 41
Stipulation's provision stating that it "does not constitute a dismissal or waiver of any claim or defense not
specifically addressed herein" (Resp. 31) because the discovery rule is "specifically addressed" and waived by the
stipulation.

give notice if it "might assert that the discovery rule applies," see TIG Ins. Co. v. Aon Re, Inc., 521 F.3d 351, 357 (5th Cir. 2008), and plaintiff cannot meet that standard because it withdrew with prejudice the paragraph of its complaint that contained its discovery rule allegations.

Finally, plaintiff suggests in a footnote that the Court should take the extraordinary step to relieve plaintiff of the Rule 41 Stipulation to prevent "manifest injustice." (Resp. 32 n.193.) Plaintiff has waived this undeveloped argument, see Bridas S.A.P.I.C. v. Gov't of Turkmenistan, 345 F.3d 347, 356 (5th Cir. 2003), which in all events is baseless. Through the Rule 41 Stipulation, plaintiff, which is represented by sophisticated and able counsel, made a litigation decision to forgo its discovery rule allegations in exchange for an agreement permitting it to avoid costly and invasive discovery. Plaintiff has to live with that strategic choice. It is not for the Court to nullify the parties' bargain just to placate plaintiff or assuage its remorse. See Yesh Music v. Lakewood Church, No. 4:11-CV-03095, 2012 WL 2500099, at *4 (S.D. Tex. 2012) ("[C]ourts have not looked favorably on the entreaties of parties trying to escape the consequences of their own counseled and knowledgeable decisions." (internal quotations and citation omitted)).

> **B.** **There Is No Evidence that Proskauer Proximately Caused the Damages Plaintiff Is Seeking**

Regardless of when plaintiff's claims accrued, Proskauer is entitled to summary judgment because plaintiff has not adduced evidence of legally cognizable damages caused by Proskauer. Plaintiff concedes, as it must, that "the Fifth Circuit Court of Appeals has rejected 'deepening insolvency' as a valid measure of damage." (Resp. 33.) That is dispositive of plaintiff's inability to prove damages because no matter what label plaintiff gives to its damages theory, plaintiff still seeks to recover the entire increase in CD liabilities (i.e., debt) taken on by Stanford Financial during the period that Proskauer represented it. (Mot. 29; ECF 226 at 4-8.) By

definition, this increase in CD liabilities measures Stanford Financial's "deepening insolvency" because it is premised on the allegation that Proskauer's conduct enabled Stanford and Davis to "prolong[] an insolvent corporation's life through bad debt, causing the dissipation of corporate assets."  In re SI Restructuring Inc., 532 F.3d 355, 363 (5th Cir. 2008).

Plaintiff cannot overcome these fatal defects by claiming that it is seeking damages for "increased liabilities" rather than deepening insolvency because a mere increase in CD liabilities could not have caused any harm to the Stanford Financial entities.  See Kirschner v. Grant Thornton LLP, No. 07 Civ. 11604GEL, 2009 WL 1286326, at *8 (S.D.N.Y. Apr. 14, 2009) ("[E]xtending credit to a distressed entity in itself does the entity no harm."), aff'd sub nom. Kirschner v. KPMG LLP, 626 F.3d 673 (2d Cir. 2010).  As plaintiff's expert conceded and as plaintiff does not dispute (see ECF 226 at 6), those liabilities were fully offset by the receipt of equivalent cash at the time the CDs were sold.  Any harm was caused by Stanford and Davis's theft of the CD proceeds—not the "increased liabilities" their entities incurred.  That theft was the only proximate cause of the harm to Stanford Financial, but plaintiff and its expert have not even attempted to compute the amount of moneys misappropriated by Stanford and Davis.[14]  (Id. at 7.)

---

[14] Unlike in this case, the out-of-jurisdiction cases on which plaintiff relies involved alleged harm to the entity that was proximately caused by conduct that gave rise to increased liabilities.  See, e.g., Thabault v. Chait, 541 F.3d 512, 523 (3d Cir. 2008) (holding that increased liabilities were appropriate "under traditional negligence and malpractice principles" because they "stemm[ed] from actual harm of a defendant's negligence"); In re Le-Nature's Inc., No. 08-1518, 2009 WL 3571331, at *8 (W.D. Pa. Sept. 16, 2009) (approving "traditional damages" measured as increased liabilities "[w]here an independent cause of action gives a firm a remedy for the increase in its liabilities, the decrease in fair asset value, or its lost profits"); Official Comm. of Unsecured Creditors of Allegheny Health, Educ. & Research Found. v. Pricewaterhouse Coopers, LLP, No. 2:00CV684, 2007 WL 141059, at *7 (W.D. Pa. Jan. 17, 2007) (same), vacated and remanded, 607 F.3d 346 (3d Cir. 2010); In re Brooke Corp., 467 B.R. 492, 511 (D. Kan. 2012) (recognizing that damages can be measured as increased liabilities where there is evidence of "specific itemized damages . . . proximately caused by a breach of a legally recognized duty"); Kirschner v. K & L Gates LLP, 46 A.3d 737, 753 (Pa. Super. Ct. 2012) (approving a measure of damages that sought the amount of "increased liabilities, decreased asset values and losses proximately caused by the professional negligence of [the defendant]" (emphasis added)).  Contrary to plaintiff's assertion, neither this Court nor the Fifth Circuit has permitted plaintiff to recover under its theory of damages.  See, e.g., Janvey v. Alguire, 847 F.3d 231, 243 (5th Cir. 2017) (addressing whether "the third-party beneficiary doctrine" meant that the Receiver could be bound by an arbitration clause); Janvey v. Hamric, 2015 WL 11120301, at *4-5 (N.D. Tex. Nov. 5, 2015) (accepting factual assertions as undisputed and not addressing whether plaintiff could recover for deepening insolvency).

Nor has plaintiff explained how Proskauer could be responsible for aiding and abetting looting that plaintiff concedes Mr. Sjoblom had no knowledge of.  (Resp. 22.)  At best, by computing the amounts invested by CD purchasers during the period that Proskauer represented Stanford Financial, plaintiff has articulated a measure of the damages suffered by investors, but as this Court and the Fifth Circuit have held, Proskauer is immune from suit by Stanford Financial's investors, see supra Section V.A, and plaintiff has no standing to assert claims on their behalf.  See DSCC, 712 F.3d at 190.  Accordingly, there is no evidence that Proskauer proximately caused the damages plaintiff is seeking.

C.    There Is No Evidence that Proskauer Proximately
      Caused the Prolonging of Stanford Financial's Fraud

As explained in Proskauer's opening brief, none of Mr. Sjoblom's conduct influenced the SEC's conduct during its examinations and investigations of Stanford Financial—as the SEC's lead attorney on the investigation confirmed.  (App. 415, 424, 434 [Brandt Tr. 200:21-24; 217:12-24; 271:1-8]; Mot. 41-45; Compl. ¶¶ 75-90.)  Plaintiff has not pointed to a single act by Mr. Sjoblom that caused the SEC to fail to uncover Stanford and Davis's misconduct.

Plaintiff's Response does not raise any genuine dispute of material fact on this issue, instead glibly contending that "[t]he criminal should not go free because the constable did not act sooner."  (Resp. 44.)  But that misses the point:  Plaintiff's entire theory of proximate causation is that Proskauer aided and abetted Stanford Financial's conduct by preventing the constable from acting sooner.  There is no evidence to that effect.  All of the evidence is to the contrary:

- The SEC suspected that Stanford Financial was a fraud or Ponzi scheme before Mr. Sjoblom was hired by Stanford Financial in 2005, but took no action because it wanted to pursue only "quick-hit" or "slam-dunk" cases at the expense of more "complex cases" like Stanford Financial.  (App. 379-80 [Ex. 15, RFAs 76, 77]; App. 1132 [Ex. 80, Little Tr. at 95:10-25]; App. 246-47, 250 [Ex. 9].)

- The SEC decided to "close the case" after Stanford Financial "exercised its right not to voluntar[ily] produce documents" and before Mr. Sjoblom wrote the SEC explaining his client's legal positions.  (App. 432 [Ex. 19, Brandt Tr. 238:6-22]; App. 677 [Ex. 37].)

- The SEC never sought <u>any</u> testimony from <u>any</u> Stanford Financial witness until December 2008 (Mot. 15)—even though Proskauer told the SEC in July 2007 that Stanford Financial "would assist with establishing acceptable new dates upon the [SEC]'s request."  (App. 983 [Ex. 60].)

- The SEC's investigation "died on the vine" after SGC completed its production of documents in August 2007.  (App. 541 [Ex. 23, Young Tr. 274:9-17]; App. 497-98 [Ex. 21, Hamric Tr. 224:6-10; 225:4-22]; App. 985 [Ex. 61].)

- The lead SEC attorney on the investigation from 2005 through the spring of 2007 disagreed with Mr. Sjoblom's arguments, was not persuaded by them, and would not have allowed Mr. Sjoblom's advocacy to impact how she conducted the investigation.  (App. 419-20 [Ex. 19, Brandt Tr. 206:1-207:8].)

Notwithstanding this evidence, plaintiff contends that Stanford and Davis's fraud might have ended sooner if Mr. Sjoblom had instructed his clients to stop selling the CDs in 2005.  (Resp. 27.)  Not only is there no evidence to support that counterfactual assertion, but it is also irrelevant because it conflates but-for causation—which is insufficient as a matter of law—with proximate causation.  See Thomas v. Express Boat Co., 759 F.2d 444, 448 (5th Cir. 1985) ("Proximate or legal cause is something more than 'but for' causation, and the [act] must be a 'substantial factor' in the injury.").  The undisputed evidence shows that Mr. Sjoblom's conduct did not influence the SEC, and speculation about what "could have" happened if Mr. Sjoblom resigned years earlier is not enough to survive summary judgment on proximate causation.  See United States ex rel. King v. Solvay Pharms., Inc., 871 F.3d 318, 329 (5th Cir. 2017) ("[T]he probative value of [party's] causation evidence is primarily based on conjecture and speculation and is therefore insufficient to create a genuine issue of material fact for trial.").

## CONCLUSION

In light of the undisputed evidence in this case and for the reasons discussed above and in Proskauer's opening brief, Proskauer respectfully requests that the Court enter a summary judgment in Proskauer's favor and dismiss with prejudice plaintiff's remaining claims.

Dated:  March 27, 2018

CARRINGTON, COLEMAN,                          DAVIS POLK & WARDWELL LLP
SLOMAN & BLUMENTHAL, L.L.P.


By:  /s/ Neil R. Burger                        /s/ James P. Rouhandeh
    Neil R. Burger                          James P. Rouhandeh*
     Texas Bar No. 24036289                   New York Bar No. 2211837
     nburger@ccsb.com                         rouhandeh@davispolk.com
    Bruce W. Collins                        Daniel J. Schwartz*
     Texas Bar No. 04604700                   New York Bar No. 4159430
     bcollins@ccsb.com                        daniel.schwartz@davispolk.com
    901 Main Street, Suite 5500             Craig M. Reiser*
    Dallas, Texas 75202                      New York Bar No. 4886735
    Telephone:  (214) 855-3000               craig.reiser@davispolk.com
    Facsimile:  (214) 855-1333              450 Lexington Avenue
                                            New York, New York 10017
                                            Telephone:  (212) 450-4000
                                            Facsimile:  (212) 701-5800
                                            * admitted *pro hac vice*

                                            *Attorneys for Defendant Proskauer Rose LLP*

**CERTIFICATE OF SERVICE**

I hereby certify that, on March 27, 2018, I electronically transmitted the foregoing

document to the Clerk of the Court using the ECF system for filing.  A Notice of Electronic

Filing was transmitted to all ECF registrants.

/s/ James P. Rouhandeh
James P. Rouhandeh