UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

RALPH S. JANVEY, IN HIS CAPACITY
AS COURT-APPOINTED RECEIVER FOR
THE STANFORD RECEIVERSHIP
ESTATE, AND THE OFFICIAL
STANFORD INVESTORS COMMITTEE,

        *Plaintiffs*,

    - against -

PROSKAUER ROSE, LLP,
CHADBOURNE & PARKE, LLP, AND
THOMAS V. SJOBLOM,

        *Defendants*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Civil Action No. 3:13-cv-00477-N
Hon. David C. Godbey

---

## DEFENDANT PROSKAUER ROSE LLP'S
## MOTIONS *IN LIMINE*

---

Neil R. Burger
Bruce W. Collins
CARRINGTON, COLEMAN, SLOMAN
   & BLUMENTHAL, L.L.P.
901 Main Street, Suite 5500
Dallas, Texas 75202
Telephone:  (214) 855-3000
Facsimile:  (214) 855-1333
E-mail:  nburger@ccsb.com

James P. Rouhandeh*
Daniel J. Schwartz*
Craig M. Reiser*
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone:  (212) 450-4000
Facsimile:  (212) 701-5800
E-mail:  rouhandeh@davispolk.com
* admitted *pro hac vice*

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ................................................................................ ii

Motion No. 1: Motion to Exclude Testimony of Investors
in Stanford Financial's Certificates of Deposit.........................................................1

Motion No. 2: Motion to Exclude Any Evidence or Arguments
Concerning "Fraud" Other than the Ponzi Scheme and the
Theft of Stanford Financial's Funds .......................................................................4

Motion No. 3: Motion to Exclude Any Evidence of or Reference to
Mr. Sjoblom's Conduct While at Chadbourne & Parke LLP ....................................6

Motion No. 4: Motion to Exclude Evidence of or Reference to
Administrative Decisions and Orders Concerning Third Parties
and Related Materials ..............................................................................................7

Motion No. 5: Motion to Exclude Any Evidence of or Reference to
the Holt and Davis Plea Agreements, Certain Indictments, and
Related Materials ...................................................................................................10

Motion No. 6: Motion to Exclude Testimony by Ralph S. Janvey
and John Little Regarding "Facts" Underlying This Dispute ..................................11

Motion No. 7: Motion to Exclude Evidence of or Reference to
Responsible Third Parties' Resources ...................................................................14

Motion No. 8: Motion to Preclude Argument Speculating
that Mr. Sjoblom's Departure From Proskauer Was Related
to His Representation of Stanford Financial...........................................................16

Motion No. 9: Motion to Exclude Any Evidence of or Reference
to Pre-February 2009 Conduct by Mr. Sjoblom or Proskauer ................................17

Motion No. 10: Motion to Exclude Evidence of or References to
Financial Resources of Proskauer ..........................................................................18

Motion No. 11: Motion to Preclude Argument Concerning
the Location of Proskauer's or Its Counsel's Headquarters....................................20

Motion No. 12: Motion to Preclude Experts' Use of the Term "Red Flags"................................21

# TABLE OF AUTHORITIES

C<small>ASE</small>(<small>S</small>)

P<small>AGE</small>(<small>S</small>)

In re Bay Vista of Va., Inc.,
428 B.R. 197 (Bankr. E.D. Va. 2010) .................................................................13

Bodin v. Vagshenian,
462 F.3d 481 (5th Cir. 2006) ..............................................................................6

Carter v. Burch,
34 F.3d 257 (4th Cir. 1994) ..............................................................................8

City Nat'l Bank of Sulphur Springs v. Smith,
No. 06-15-00013-CV, 2016 WL 2586607 (Tex. App.—Texarkana May 4, 2016)...........15, 16

Crow v. United Benefit Life Ins. Co.,
No. CIV.A NO. 3:00-CV-1375-G, 2001 WL 285231 (N.D. Tex. Mar. 16, 2001) .................22

Daubert v. Merrell Dow Pharm., Inc.,
509 U.S. 579 (1993)...........................................................................................3

FDIC v. McFarland,
243 F.3d 876 (5th Cir. 2001) ..............................................................................2

First United Pentecostal Church of Beaumont v. Parker,
514 S.W.3d 214 (Tex. 2017)................................................................................5

Fisher v. Halliburton,
667 F.3d 602 (5th Cir. 2012) ............................................................................15

Fisher v. Page,
Nos. 02 C 1588, 02 C 1691, 02 C 1692, 02 C 1693, 02 C 1694, 02 C 1695,
02 C 1696, 02 C 1697, 01 C 1698,
2002 WL 31749262 (N.D. Ill. Dec. 3, 2002) ........................................................13

Galbraith Eng'g Consultants, Inc. v. Pochucha,
290 S.W.3d 863 (Tex. 2009)...............................................................................15

GE Capital Commer., Inc. v. Worthington Nat'l Bank,
No. 3:09-CV-572-L, 2011 WL 5025153 (N.D. Tex. Oct. 21, 2011)......................17

Geddes v. United Fin. Grp.,
559 F.2d 557 (9th Cir. 1977) ............................................................................19

Guaranty Serv. Corp. v. Am. Emp'rs Ins. Co.,
      893 F.2d 725 (5th Cir. 1990) ..............................................................................20

Houk v. Commissioner,
      173 F.2d 821 (5th Cir. 1949) ................................................................................2

Hoyt v. Career Sys. Dev. Corp.,
      No. 07cv1733 BEN (RBB), 2010 WL 11508867 (S.D. Cal. May 3, 2010) ...........................7

Huskey v. Ethicon, Inc.,
      848 F.3d 151 (4th Cir. 2017) ................................................................................9

Janvey v. Democratic Senatorial Campaign Comm., Inc.,
      712 F.3d 185 (5th Cir. 2013) ................................................................................1

Juhl v. Airington,
      936 S.W.2d 640 (Tex. 1996)..................................................................................5

Kennedy v. Lockyer,
      379 F.3d 1041 (9th Cir. 2004) ....................................................................9, 10, 11

Kerr-McGee Corp. v. Ma-Ju Marine Servs., Inc.,
      830 F.2d 1332 (5th Cir. 1987) ..............................................................................16

Landis v. Jarden Corp.,
      5 F. Supp. 3d 808 (N.D.W. Va. 2014) .....................................................................9

Latman v. Burdette,
      366 F.3d 774 (9th Cir. 2004), abrogated on other grounds by
      Law v. Siegel, 134 S. Ct. 1188 (2014).............................................................12, 13

Lectec Corp. v. Chattem, Inc.,
      No. 5:08-CV-130, 2011 WL 13086026 (E.D. Tex. Jan. 4, 2011) .........................................19

Mayoza v. Heinold Commodities, Inc.,
      871 F.2d 672 (7th Cir. 1989) ................................................................................3

Nabors Well Servs., Ltd. v. Romero,
      456 S.W.3d 553 (Tex. 2015)..................................................................................15

In re Plaza Mortgage & Fin. Corp.,
      187 B.R. 37 (Bankr. N.D. Ga. 1995) ......................................................................3

Quality Infusion Care, Inc. v. Health Care Serv. Corp.,
      628 F.3d 725 (5th Cir. 2010) ...........................................................................1, 2

Reed v. Gen. Motors Corp.,
    773 F.2d 660 (5th Cir. 1985) ...............................................................................19

In re Reserve Fund Sec. & Derivative Litig.,
    Nos. 09MD.2011(PGG), 09 Civ. 4346(PGG), 2012 WL 12354220 (S.D.N.Y. 2012)..........2, 4

Rock v. Huffco Gas & Oil Co.,
    922 F.2d 272 (5th Cir. 1991) ...............................................................................11

Rubens v. Mason,
    387 F.3d 183 (2d Cir. 2004)..................................................................................9

Sec. & Exch. Comm'n v. Goldstone,
    No. CIV 12-0257 JB/GBW, 2016 WL 3996427 (D.N.M. June 21, 2016) ...........................3, 4

Smith v. Isuzu Motors Ltd.,
    137 F.3d 859 (5th Cir. 1998) .................................................................................8

Thompson v. State Farm Fire & Cas. Co.,
    34 F.3d 932 (10th Cir. 1994) ...............................................................................22

Transp. Ins. Co. v. Moriel,
    879 S.W.2d 10 (Tex. 1994)..................................................................................19

Troice v. Proskauer Rose, LLP,
    816 F.3d 341 (5th Cir. 2016) .................................................................................2

Underwriters at Lloyd's London v. OSCA, Inc.,
    No. 03-20398, 2006 WL 941794 (5th Cir. Apr. 12, 2006) ................................................16, 17

United States v. El-Mezain,
    664 F.3d 467 (5th Cir. 2011) .................................................................................8

United States v. Hernandez,
    750 F.2d 1256 (5th Cir. 1985) ...............................................................................10

United States v. Kramer,
    768 F.3d 766 (8th Cir. 2014) .................................................................................9

United States v. Morris,
    79 F.3d 409 (5th Cir. 1996) .................................................................................18

United States v. Polasek,
    162 F.3d 878 (5th Cir. 1998) ...............................................................................9, 11

United States v. Quezada,
 754 F.2d 1190 (5th Cir. 1985) ...........................................................................8

United States v. Ricardo,
 472 F.3d 277 (5th Cir. 2006) ...........................................................................11

United States v. Williams,
 22 F.3d 580 (5th Cir. 1994) ...........................................................................11

Walker v. NationsBanks of Florida N.A.,
 53 F.3d 1548 (11th Cir. 1995) ...........................................................................9

Westbrook v. Gen. Tire & Rubber Co.,
 754 F.2d 1233 (5th Cir. 1985) .....................................................................20, 21

Whitehead v. Food Max of Miss., Inc.,
 163 F.3d 265 (5th Cir. 1998) ...........................................................................20

In re WorldCom, Inc. Sec. Litig.,
 No. MASTER FILE 02 Civ. 3288 (DLC), 2005 U.S. Dist. LEXIS 2216
 (S.D.N.Y. Feb. 17, 2005)...................................................................................21

<u>STATUTES & RULES</u>

Fed. R. Evid. 103 ...................................................................................................1

Fed. R. Evid. 104 ...................................................................................................1

Fed. R. Evid. 401 ........................................................................................ <u>passim</u>

Fed. R. Evid. 403 ........................................................................................ <u>passim</u>

Fed. R. Evid. 407 ............................................................................................16, 17

Fed. R. Evid. 602 ..........................................................................2, 11, 12, 13, 14

Fed. R. Evid. 702 .................................................................................................21

Fed. R. Evid. 801 ...................................................................................................7

Fed. R. Evid. 802 ..............................................................................................7, 10

Fed. R. Evid. 803 ..............................................................................................7, 8

Fed. R. Evid. 805 ...................................................................................................................10, 11

Fed. R. Evid. 807 ...................................................................................................................11

Tex. Civ. Prac. & Rem. Code Ann. § 16.004(a)(4) .......................................................17

Tex. Civ. Prac. & Rem. Code Ann. § 41.009 ...............................................................19

Tex. Civ. Prac. & Rem. Code Ann., ch. 33.....................................................................14, 15, 16

Defendant Proskauer Rose LLP ("Proskauer") respectfully submits these motions *in limine* pursuant to Federal Rules of Evidence 103 and 104 and the Court's Amended Scheduling Order [ECF No. 177].

For the reasons set forth herein, Proskauer respectfully requests that the Court enter the attached order granting each motion *in limine* in its entirety, and direct counsel for plaintiff the Official Stanford Investors Committee ("OSIC" or "plaintiff"), counsel for Ralph S. Janvey, in his capacity as Court-appointed receiver for the Stanford Receivership Estate (the "Receiver"), and any fact or expert witnesses testifying on behalf of plaintiff to refrain from raising the matters below in any manner during any trial.

**Motion No. 1:**      **Motion to Exclude Testimony of Investors in Stanford Financial's Certificates of Deposit**

Plaintiff plans to call as witnesses investors in certificates of deposit ("CDs") issued by Stanford International Bank ("SIB" and, together with its affiliates, "Stanford Financial").  This Court should preclude plaintiff from offering any such testimony because it is not relevant to any claim or defense in this lawsuit and whatever minimal probative value it offers would be substantially outweighed by the danger of causing unfair prejudice, confusing the issues, misleading the jury, and wasting time.  Fed. R. Evid. 401, 403.

As an initial matter, plaintiff, as the Receiver's purported assignee, claims to represent the interests of *Stanford Financial*—not its CD investors.  As the Fifth Circuit held in another of the Receiver's lawsuits, "a federal equity receiver has standing to assert only the claims of the entities in receivership, and not the claims of the entities' investor-creditors." Janvey v. Democratic Senatorial Campaign Comm., Inc., 712 F.3d 185, 190 (5th Cir. 2013).  Plaintiff thus "stands in the same position as [the Receiver] stood"; at most, it has all of the Receiver's rights, "no greater and no less." Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725,

729 (5th Cir. 2010) (quoting Houk v. Comm'r, 173 F.2d 821, 825 (5th Cir. 1949); FDIC v.

McFarland, 243 F.3d 876, 887 n.43 (5th Cir. 2001)).   Accordingly, plaintiff *cannot* assert claims

to recover on behalf of CD investors in this case, and the extent to which *investors* were

defrauded and suffered losses is immaterial.   Cf. In re Reserve Fund Sec. & Derivative Litig.,

Nos. 09 MD.2011(PGG), 09 Civ. 4346(PGG), 2012 WL 12354220, at *1 (S.D.N.Y. Sept. 11,

2012) (precluding evidence of investor loss at a trial in an SEC enforcement action, where

"investor loss is not an element of the SEC's claims").   That is particularly true because the Fifth

Circuit and this Court have already held that Proskauer is *immune from suit* by investors.   Troice

v. Proskauer Rose, L.L.P., 816 F.3d 341, 348-49 (5th Cir. 2016); see also Order at 13-14, Dorrell

v. Proskauer Rose LLP, No. 3:16-CV-1152-N (N.D. Tex. Nov. 2, 2017), Dkt. No. 52.

Nor is investor testimony otherwise relevant to any of the elements of plaintiff's only

remaining claims, which focus on what Proskauer, through its former partner Thomas V.

Sjoblom, actually knew and did during the course of his representation of Stanford Financial.

Plaintiff does not and cannot contend that Proskauer or Mr. Sjoblom ever spoke to or interacted

with investors, or ever sold or marketed CDs.   The investors therefore lack personal knowledge

of the facts that will be at issue, see Fed. R. Evid. 602 ("A witness may testify to a matter only if

evidence is introduced sufficient to support a finding that the witness has personal knowledge of

the matter."), and their testimony is irrelevant, see Fed. R. Evid. 401(a).

But, even if this Court finds that there is minimal relevance in the investors' testimony

(which there is not), its probative value is substantially outweighed by the danger of causing

unfair prejudice, confusing the issues, misleading the jury, and wasting time.   Fed. R. Evid. 403.

Presenting testimony from CD investors will lead the jury to believe that the investors—rather

than Stanford Financial—are bringing the claims at issue in this litigation, creating confusion as

to whether damages should be measured as the loss to Stanford Financial or the loss to its investors (who, again, are not permitted to sue Proskauer).[1]  See In re Plaza Mortg. & Fin. Corp., 187 B.R. 37, 45 (Bankr. N.D. Ga. 1995) (noting that a bankruptcy trustee pleading claims on behalf of a *debtor* should measure harm "based on [the amount of] funds improperly paid out by the debtor"—not based on the amount of "funds invested in the debtor's Ponzi scheme").  The potential for confusion and prejudice is compounded by the fact that the only plaintiff still asserting claims in the case—OSIC—literally has the words "investors committee" in its name.[2]

Plaintiff should not be permitted to exploit this confusion to evoke sympathy for investors who allegedly suffered losses—losses that, as a matter of law, have nothing to do with the harm suffered by Stanford Financial itself or with the legal issues that underlie plaintiff's aiding and abetting claims.  See Fed. R. Evid. 403 advisory note ("'Unfair prejudice' within its context means an undue tendency to suggest decision on an improper basis, commonly . . . an emotional one.").  Courts regularly exclude investor testimony in securities fraud cases to mitigate the risk of confusion associated with this form of testimony.  See Mayoza  v. Heinold Commodities, Inc., 871 F.2d 672, 676-78 (7th Cir. 1989) (affirming exclusion of an investor's testimony about his heart condition under Rule 403, in part on the ground that it "might very well have provoked sympathy from the jury"); SEC v. Goldstone, No. CIV 12-0257 JB/GBW, 2016 WL 3996427, at *14 (D.N.M. June 21, 2016) ("The jury need not hear about the amount of the

---

[1] Plaintiff has repeatedly attempted to conflate the issue of investor losses with the distinct question of corporate losses, including through the expert report of its damages expert, Karyl Van Tassel.  Van Tassel computes damages based on the amount of CD liabilities that SIB incurred between 2006 and 2009—an amount that corresponds to the amount of damages allegedly suffered by investors, not to the amount suffered by the corporation as a result of its principals' misconduct.  [ECF No. 226 at 6-8.]  For this and other reasons, Van Tassel's report is inadmissible under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993).  [Id.]

[2] For the reasons set forth in Proskauer's motion for judgment on the pleadings [ECF No. 99], OSIC's claims against Proskauer are barred by Texas's attorney immunity doctrine and should be dismissed on that basis.  To the extent OSIC is permitted to remain in this case, the Court should preclude it from identifying itself in a manner that might lead the jury to mistakenly believe it is asserting claims on behalf of investors.

investors' losses, because that would merely engender sympathy for that individual investor.");

In re Reserve Fund Sec. & Derivative Litig., 2012 WL 12354220, at *1-2 (granting motion *in limine* to exclude evidence of investor loss at a trial in an SEC enforcement action).  This Court should do the same thing here.

| Motion No. 2: | **Motion to Exclude Any Evidence or Arguments Concerning "Fraud" Other than the Ponzi Scheme and the Theft of Stanford Financial's Funds** |
|---|---|

The Court should exclude any evidence or arguments related to any misconduct, including "fraud," other than the Ponzi scheme and theft of money orchestrated by Allen Stanford and James Davis.  Evidence of other purported misconduct or frauds is irrelevant to plaintiff's theory of the case, and any minimal probative value it might have would be substantially outweighed by the danger of causing unfair prejudice, confusing the issues, and misleading the jury.  Fed. R. Evid. 401, 403.

Plaintiff seeks to hold Proskauer responsible for the $1.57 billion increase in SIB's net outstanding CD liabilities between November 1, 2006 and February 16, 2009—the time that Mr. Sjoblom and Proskauer represented Stanford Financial.  (App. 11-13 [Ex. 1, Van Tassel Tr. 128:12-130:20]; App. 23-25 [Ex. 2, Van Tassel Decl. ¶¶ 105-06].)  As plaintiff's damages expert, Karyl Van Tassel, admitted, she measured damages based on Proskauer's purported liability for the damages caused by Stanford Financial's Ponzi scheme.  (App. 9-11; 13 [Ex. 1, Van Tassel Tr. 126:21-128:2; 130:1-20]; App. 23 [Ex. 2, Van Tassel Decl. ¶ 103].)  Indeed, Van Tassel testified repeatedly that she did not compute a dollar-value loss for *any* "fraud" other than the Ponzi scheme.  (App. 14; 15-16; 17-19; 20 [Ex. 1, Van Tassel Tr. 153:8-22; 157:23-158:10; 169:13-171:9; 178:11-18].)  The Receiver likewise acknowledged that Van Tassel computed damages for the alleged harm caused "by Mr. Sjoblom in relation to *the Stanford Ponzi scheme*."  (App.

29-30 [Ex. 3, Janvey Tr. 259:21-260:13 (emphasis added)].)  As a result, to establish its aiding and abetting claims (which require proof of actual knowledge, intent, substantial assistance, and proximate causation), plaintiff must establish that Mr. Sjoblom had knowledge of the Ponzi scheme and the associated theft of money and that he intended to assist with perpetuating these acts.  See Juhl v. Airington, 936 S.W.2d 640, 644 (Tex. 1996).

Because plaintiff has based its damages calculation on the damages allegedly caused by Stanford Financial's Ponzi scheme, this Court should not permit plaintiff to present evidence or argument that Mr. Sjoblom knew about or intended to (or did) assist *other* aspects of Stanford Financial's fraudulent conduct—such as alleged false statements in disclosure documents or alleged violations of securities laws by members of SGC.  See First United Pentecostal Church of Beaumont v. Parker, 514 S.W.3d 214, 225 (Tex. 2017) (holding that, to the extent aiding and abetting claims exist in Texas, they "require[] evidence that the defendant, with wrongful intent, substantially assisted and encouraged a tortfeasor in a wrongful act *that harmed the plaintiff*" (emphasis added)).

To permit plaintiff to offer proof or argument about other frauds that were purportedly part of the Ponzi scheme will prejudice Proskauer and confuse and mislead the jury.  Plaintiff cannot prevail by showing that Proskauer had actual knowledge of one act of wrongdoing but substantially assisted another; plaintiff must satisfy the higher burden of establishing that Proskauer had actual knowledge of, intended to, and did assist the very conduct (i.e., the Ponzi scheme and the theft of funds from Stanford Financial) that caused the loss for which plaintiff seeks recovery.  Juhl, 936 S.W.3d at 644.  As a result, evidence of fraudulent conduct other than the Ponzi scheme that Stanford and Davis perpetrated is irrelevant to plaintiff's case, and even if it were relevant, would confuse the jury by blurring the lines between the different elements of

plaintiff's claims.  Fed. R. Evid. 401, 403.  Accordingly, the Court should exclude any evidence

and argument relating to Proskauer's and Mr. Sjoblom's alleged knowledge, intent, or assistance

with respect to any misconduct (including "fraud") other than the Ponzi scheme itself and the

associated misappropriation of funds.

**Motion No. 3:**         **Motion to Exclude Any Evidence of or Reference to Mr. Sjoblom's**
                          **Conduct While at Chadbourne & Parke LLP**

This Court should exclude evidence of, and reference to, Mr. Sjoblom's actions while at

Chadbourne & Parke LLP ("Chadbourne") because such conduct is irrelevant and any minimal

probative value it might have is substantially outweighed by the danger of causing unfair

prejudice, confusing the issues, and misleading the jury.  Fed. R. Evid. 403.

Plaintiff can establish its claims against Proskauer *only* through evidence of conduct by

Mr. Sjoblom that was within the scope and in furtherance of his duties *while he was a partner at*

*Proskauer*.  See Bodin v. Vagshenian, 462 F.3d 481, 484 (5th Cir. 2006); see Compl. ¶ 269

(asserting a respondeat superior theory of liability).  Conduct that precedes Mr. Sjoblom's tenure

at Proskauer simply cannot form the basis of any liability because any such conduct, by

definition, could not have been within the scope or in furtherance of Proskauer's business.  Many

of plaintiff's allegations, however, focus on an earlier time period going back to June 2005, when

Mr. Sjoblom was a partner at Chadbourne.  (Compl. ¶¶ 97-143, 197.)  Mr. Sjoblom's conduct at

Chadbourne, however, is not a basis for holding *Proskauer* liable, and Chadbourne has settled

plaintiff's claims against it based on Mr. Sjoblom's alleged conduct during that time period.

Final Bar Order, SEC v. Stanford Int'l Bank, Ltd., No. 3:09-CV-0298 (Aug. 30, 2016), Dkt. No.

2365.  Accordingly, plaintiff should not be permitted to offer evidence about Mr. Sjoblom's

conduct or his representation of Stanford Financial between June 2005 and September 2006,

when he was at Chadbourne.  Such conduct is irrelevant to plaintiff's remaining claims in this

case.  Fed. R. Evid. 401; see also Hoyt v. Career Sys. Dev. Corp., No. 07cv1733 BEN (RBB), 2010 WL 11508867, at *2 (S.D. Cal. May 3, 2010) (holding that testimony about conduct that several witnesses "were subjected to during a different time period would be irrelevant under Rule 401 and unfairly prejudicial under Rule 403").

Even if evidence of pre-September 2006 conduct were minimally probative, it still would be unfair to permit plaintiff to present it to a jury because such evidence could confuse or mislead the jury into impermissibly finding Proskauer liable for Chadbourne's conduct.  See Hoyt, 2010 WL 11508867, at *2.

**Motion No. 4:**      **Motion to Exclude Evidence of or Reference to Administrative Decisions and Orders Concerning Third Parties and Related Materials**

The Court should exclude evidence of or reference to any versions of the decision by Administrative Law Judge Carol Fox Foelak in the Matter of Daniel Bogar, Bernerd E. Young, and Jason T. Green, File No. 3-15003 (the "ALJ Decision"), the Order instituting cease-and-desist proceedings in connection with the ALJ Decision, and the subsequent Opinion of the Commission in the matter of Bernerd E. Young, dated March 24, 2016, File No. 3-15003 (collectively, the "Administrative Materials"), including discovery materials that refer to the contents of these Administrative Materials.  The Administrative Materials are hearsay, and their probative value is otherwise substantially outweighed by the risk of causing unfair prejudice, confusing the issues, misleading the jury, presenting cumulative evidence, and wasting time. Fed. R. Evid. 802, 403.

The Administrative Materials are out-of-court statements and cannot be admitted for their truth unless a specific hearsay exception is available.  See Fed. R. Evid. 801, 802.  No such exception applies.  Rule 803(8)'s public records exception, for example, is inapplicable to the

Administrative Materials.  As the Fifth Circuit has explained, "[t]he public records exception to the hearsay rule is 'designed to permit the admission into evidence of public records prepared for purposes independent of specific litigation.'"  United States v. El-Mezain, 664 F.3d 467, 498 (5th Cir. 2011) (quoting United States v. Quezada, 754 F.2d 1190, 1194 (5th Cir. 1985)).  "It is based on the notion that public records are reliable because there is a 'lack of . . . motivation on the part of the recording official to do other than mechanically register an unambiguous factual matter.'"  Id. (quoting Quezada, 754 F.2d at 1194).[3]  The Administrative Materials arise in the context of "specific litigation," contain a mix of legal and factual findings, and do not set out "the office's activities" or "a matter observed while under a legal duty to report," Fed. R. Evid. 803(8)—in short, they are not the type of "routine" documents contemplated by the public records exception, see El-Mezain, 664 F.3d at 498.[4]  The Court therefore should exclude these documents as inadmissible hearsay.

In all events, the risks of unfair prejudice, confusion, cumulative evidence, and waste of time substantially outweigh any probative value the Administrative Materials—and discovery materials referencing them—might have.  Fed. R. Evid. 403.  None of these materials has any direct relevance to Proskauer's liability, including with respect to establishing the alleged facts underlying Proskauer's role as counsel to Stanford Financial.  To the extent these materials relate to the Stanford Ponzi scheme more generally, they have minimal probative value in this case and present a high risk that the jury might be misled into attaching undue weight to them because they arose in an administrative proceeding conducted by a government agency.  See, e.g.,

---

[3] Any preliminary versions of these decisions should be considered administrative interim reports, which are independently inadmissible in evidence because they are unreliable and lack indicia of trustworthiness.  See Smith v. Isuzu Motors Ltd., 137 F.3d 859, 862 (5th Cir. 1998).

[4] These decisions, which are akin to judicial opinions, are not "legally authorized investigation[s]" contemplated by Rule 803(8).  See Carter v. Burch, 34 F.3d 257, 265 (4th Cir. 1994) (public records exception does not apply to findings of judges, which are not investigative in nature).

Huskey v. Ethicon, Inc., 848 F.3d 151, 160-61 (4th Cir. 2017) (probative value of FDA

determination of product safety substantially outweighed by risk of confusion in product liability

action and risk of usurping jury's role).[5]

Indeed, because these materials discuss some of the same overlapping facts and

responsible third parties as this case (namely, Stanford, Davis, Laura Pendergest-Holt, Mark

Kuhrt, and Gilbert Lopez), there is an even greater likelihood that the jury will be confused by

the introduction of the Administrative Materials and use them to draw impermissible inferences

as to Proskauer's liability.  See Landis v. Jarden Corp., 5 F. Supp. 3d 808, 816 (N.D. W. Va.

2014) (probative value of report in federal safety agency's investigative file substantially

outweighed by dangers of misleading jury and causing prejudice against various defendants); see

also United States v. Kramer, 768 F.3d 766, 771 (8th Cir. 2014) (probative value of evidence of

civil suit brought by defrauded lender against defendant outweighed by risk of prejudice and

needless presentation of cumulative evidence in criminal prosecution for bank and wire fraud).

Indeed, the risk that the Administrative Materials could induce the jury to improperly impose

liability based on "guilt by association" is especially substantial, given plaintiff's expressed

intent to present evidence that Proskauer and Mr. Sjoblom aided and abetted misconduct by

Bogar and Young—both of whom were disciplined in the proceedings giving rise to the

Administrative Materials.  United States v. Polasek, 162 F.3d 878, 885 (5th Cir. 1998)

(excluding testimony as "inadmissible guilt by association evidence" because it "showed only

that [the defendant] associated with criminals"); Kennedy v. Lockyer, 379 F.3d 1041, 1056 (9th

---

[5]  See also Walker v. NationsBanks of Fla. N.A., 53 F.3d 1548, 1555 (11th Cir. 1995) ("The admission of an EEOC report, in certain circumstances, may be much more likely to present the danger of creating unfair prejudice in the mind of the jury . . . ." (quoting Barfield v. Orange County, 911 F.2d 644, 651 (11th Cir. 1990)); cf. Rubens v. Mason, 387 F.3d 183, 190-91 (2d Cir. 2004) (excluding former arbitrator's affidavit in favor of one party as unfairly prejudicial because he was acting as a judge in the arbitration and thus would possess unimpeachable credibility as a decision maker).

Cir. 2004) (use of evidence that "impl[ies] 'guilt by association' is impermissible and prejudicial"). Because the contents of the Administrative Materials are significantly more prejudicial than probative, they must be excluded in whatever form plaintiff seeks to present them.

**Motion No. 5:     Motion to Exclude Any Evidence of or Reference to the Holt and Davis Plea Agreements, Certain Indictments, and Related Materials**

In connection with their involvement in Stanford Financial's Ponzi scheme, James Davis and Laura Pendergest-Holt each entered into a plea agreement with the United States Department of Justice (the "Plea Agreements"). These Plea Agreements and any indictments, as well as the indictment and verdict form in United States of America v. Robert Allen Stanford, should be excluded from evidence because they are hearsay and because their probative value is substantially outweighed by the risk of causing unfair prejudice, confusing the issues, misleading the jury, presenting cumulative evidence, and wasting time.[6]  Fed. R. Evid. 403, 802, 805. This Court has previously sustained an objection to the admission of the Davis plea agreement on Rule 401, 403, and 805 grounds (see Trial Tr. 141:2-14, Janvey v. Maldonado, No. 3:14-CV-2826 (Sept. 28, 2015), Dkt. No. 129), and the same reasoning applies here to the Plea Agreements, indictments, and verdict forms plaintiff seeks to rely on.

Indeed, the Plea Agreements, indictments, and verdict form are hearsay, see United States v. Hernandez, 750 F.2d 1256, 1257-58 (5th Cir. 1985), and they do not qualify under any exceptions to the exclusion of hearsay evidence. The Plea Agreements and indictments, moreover, contain numerous statements attributed to various individuals that are themselves hearsay within hearsay. Even if there were some available exception for the Plea Agreements

---

[6] This motion covers, at a minimum, plaintiff's Exhibits 11, 12A, 14, 16, and 466 and discovery materials referencing them..

and indictments themselves, plaintiff would still have to identify an applicable hearsay exception

for each and every out-of-court statement these documents contain.  See Fed. R. Evid. 805; Rock

v. Huffco Gas & Oil Co., 922 F.2d 272, 280 (5th Cir. 1991) ("To be admissible, both levels of

hearsay must come within exceptions to the hearsay rule.").  The residual exception, moreover,

offers no help to plaintiff here.  See Fed. R. Evid. 807; United States v. Ricardo, 472 F.3d 277,

286-87 (5th Cir. 2008) (holding that statements made at a plea colloquy did not involve

"exceptional circumstances or particular guarantees of trustworthiness that would support the use

of the residual exception to admit these statements"); United States v. Williams, 22 F.3d 580,

582 (5th Cir. 1994) ("An indictment is merely a charge and does not constitute evidence of

guilt.").

        The Plea Agreements and associated documents should also be precluded for the

independent reason that their probative value is substantially outweighed by the risk of causing

unfair prejudice, confusing the issues, misleading the jury, presenting cumulative evidence, and

wasting time.  Fed. R. Evid. 403.  If the Plea Agreements and criminal indictments are

introduced, jurors might tend to apply a "guilt by association" approach to impermissibly impute

misconduct by Stanford, Davis, or Holt to Mr. Sjoblom or Proskauer.  See Polasek, 162 F.3d at

885 (excluding testimony as "inadmissible guilt by association evidence" because it "showed

only that [the defendant] associated with criminals"); Kennedy, 379 F.3d at 1056 (use of

evidence that "impl[ies] 'guilt by association' is impermissible and prejudicial").

**Motion No. 6:**          **Motion to Exclude Testimony by Ralph S. Janvey and John Little**
                           **Regarding "Facts" Underlying This Dispute**

        This Court should exclude testimony by John Little, the representative of OSIC, and the

Receiver about any of the facts underlying this dispute.  Any such testimony would not be based

on personal knowledge and must be excluded under Federal Rule of Evidence 602.  Moreover, if

admitted, this evidence would be substantially more likely to cause unfair prejudice and mislead the jury than to offer anything of probative value.  Fed. R. Evid. 403.

Neither the Receiver nor Little has personal knowledge of any of the underlying facts relating to this dispute, and thus neither may testify as a fact witness.  Fed. R. Evid. 602.  The Receiver and Little were not present for, or participants in, any of the conversations, transactions, or interactions that form the factual predicate for plaintiff's lawsuit against Proskauer.  The Receiver was appointed on February 17, 2009, long after the occurrence of the events described in the Complaint (Compl. ¶¶ 2, 71), while this Court did not form OSIC (and appoint Little as a member) until August 2010.  (Id. ¶ 3; Order, SEC v. Stanford Int'l Bank, Ltd., No. 3:09-CV-0298 (N.D. Tex. Aug. 10, 2010), ECF No. 1149.)  Because the Receiver and Little do not have firsthand knowledge of the facts underlying this dispute—including any actions, statements, or conduct associated with it—Rule 602 bars them from testifying about their understanding of the purported "facts."  Despite their lack of firsthand knowledge required under the rules, however, the Receiver and Little both attempted to recite such facts at their depositions.  (See, e.g., App. 33-34 [Ex. 4, Little Tr. 152:15-153:7 (testifying about evidence that purportedly showed that Mr. Sjoblom "was hired to stop the SEC investigation")]; App. 28 [Ex. 3, Janvey Tr. 239:13-24 (testifying about evidence that purportedly showed that Mr. Sjoblom "had knowledge that [Stanford Financial] was a fraud")].)  Plaintiff's counsel has indicated that the Receiver and Little might offer the same kinds of testimony at trial.  This Court should not permit them to do so.

Courts routinely hold that successors-in-interest cannot offer testimony about facts related to the debtor's pre-bankruptcy conduct, given that such successors typically have only secondhand knowledge of that conduct.  See Latman v. Burdette, 366 F.3d 774, 786 (9th Cir.

2004) (affirming finding that debtor's account records were inadmissible "because they were submitted as an attachment to a supplemental declaration of Trustee's counsel, who had no personal knowledge of their authenticity"), abrogated on other grounds by Law v. Siegel, 134 S. Ct. 1188 (2014); Fisher v. Page, Nos. 02 C 1588, 02 C 1691, 02 C 1692, 02 C 1693, 02 C 1694, 02 C 1695, 02 C 1696, 02 C 1697, 01 C 1698, 2002 WL 31749262, at *7 (N.D. Ill. Dec. 3, 2002) (holding that, under Rule 602, trustee was not "competent to testify" about the debtors' business records or certain reports because "he lacked personal knowledge of and did not assist in the preparation or maintenance of [the debtor]'s business records" or the reports); In re Bay Vista of Va., Inc., 428 B.R. 197, 215 (Bankr. E.D. Va. 2010) (holding that a bankruptcy trustee's "discovery of these documents among the debtor's papers does not suffice to allow the Trustee to lay an adequate foundation for his testimony regarding the contents of the document and the truth thereof").  Put simply, "[t]he fact that the Trustee is the statutory successor to the assets, liabilities and records of the Debtors does not provide the Trustee with the Debtors' personal knowledge of [the debtors'] business operations or records."  Fisher, 2005 WL 31749262, at *7. The same principle applies here to the Receiver and Little, who are not competent to testify about what happened at Stanford Financial prior to February 17, 2009 (at the earliest).

Not only is the testimony inadmissible under Rule 602, it is also inadmissible under Rule 403.  If this Court were to permit the Receiver and Little to testify about pre-Receivership events, their testimony would create the misimpression that they have firsthand knowledge of the facts underlying this dispute—or that their testimony should be taken seriously even when it does not relate to events that they actually witnessed.  This Court should not allow the Receiver and Little to offer testimony that will mislead the fact-finder about their roles in this case and that fails to

offer anything of probative value to the jury.  Rules 602 and 403 bar them from testifying about the facts underlying this dispute or forming the basis for plaintiff's theory of the case.

**Motion No. 7:         Motion to Exclude Evidence of or Reference to Responsible Third Parties' Resources**

This Court should exclude evidence of or references to the financial resources of the responsible third parties listed in Proskauer's Motion to Designate Responsible Third Parties. [ECF No. 228.]  This information does not bear on Proskauer's liability or damages and, even if the information had some minimal relevance, its probative value is substantially outweighed by the danger of causing unfair prejudice and misleading the jury.  Fed. R. Evid. 401, 403.

Proskauer has designated several "responsible third parties" under Chapter 33 of the Texas Civil Practice and Remedies Code, Texas's proportionate responsibility scheme.  [ECF No. 228]; Tex. Civ. Prac. & Rem. Code §§ 33.002-.003.  Those responsible third parties include, among others, R. Allen Stanford, James Davis, Laura Pendergest-Holt, Mark Kuhrt, Gilbert Lopez, and Leroy King.  As this Court has already held, Stanford and Davis are 100% responsible for any harm for which plaintiff seeks recovery in this case.  Order, <u>SEC v. Stanford Int'l Bank, Ltd.</u>, No. 3:09-CV-00298-N (N.D. Tex. Apr. 25, 2013), Dkt. No. 1858.  Just as Proskauer's ability to satisfy a judgment is irrelevant to its liability or damages, these responsible third parties' *inability* to satisfy a judgment against them is irrelevant to their responsibility for the harm for which plaintiff has sued Proskauer.  Fed. R. Evid. 401; Tex. Civ. Prac. & Rem. Code § 33.011(4).

Evidence of a responsible third party's inability to pay is irrelevant to the allocation of responsibility under Chapter 33.  The statute requires the fact-finder to assign a "[p]ercentage of responsibility" to "each responsible third party," and that percentage simply reflects the degree of responsibility attributable to a responsible third party for "causing or contributing to cause in

any way . . . harm for which recovery of damages is sought." Tex. Civ. Prac. & Rem. Code

§ 33.011(4).  Because "'[i]n any way' can only mean what it says, . . . there are no restrictions on

assigning responsibility to a [third party] as long as it can be shown [that party's] conduct

'caused or contributed to cause' his [harm]." Nabors Well Servs., Ltd. v. Romero, 456 S.W.3d

553, 562 (Tex. 2015).  Indeed, even a third party's complete immunity from suit is not a bar to

designation as a responsible third party.  See Fisher v. Halliburton, 667 F.3d 602, 622 (5th Cir.

2012) ("Even parties . . . who are immune from liability to the claimant can be designated

responsible third parties under the statute." (internal quotation marks omitted)); see also

Galbraith Eng'g Consultants, Inc. v. Pochucha, 290 S.W.3d 863, 868 (Tex. 2009) ("Chapter

33 . . . is apparently unconcerned with the substantive defenses of responsible third

parties.").  Given that, there can be no question that evidence of a responsible third party's

financial condition—along with evidence of anything other than whether that party "caused or

contributed to cause [the] harm"—is irrelevant.

Even if relevant (which it is not), evidence about responsible third parties' ability or

inability to pay a damages judgment is substantially more prejudicial than probative.  A jury that

hears evidence on this point might be tempted to enter a judgment of liability—or maximize the

damages allocated—against Proskauer on the ground that the responsible third parties will not be

able to pay their fair share of the amount of damages attributable to them.  But Chapter 33

requires the jury to allocate blame among all responsible parties, and nowhere does it suggest

that those parties' ability or inability to pay should factor into the allocation.  See Tex. Civ. Prac.

& Rem. Code § 33.011(4); City Nat'l Bank of Sulphur Springs v. Smith, No. 06-15-00013-CV,

2016 WL 2586607, at *7 (Tex. App—Texarkana May 4, 2016, pet. denied) (noting that, in

allocating responsibility under Chapter 33, the fact-finder must assess "whether the person

15

contributed to cause the *harm* for which damages are sought," not "whether the person is liable to the plaintiff for all or part of the *damages* claimed").  Because evidence of or reference to the responsible third parties' financial resources may mislead the jury and cause it to base its apportionment of damages on factors not contemplated by Chapter 33, the Court should prohibit it.

**Motion No. 8:**     **Motion to Preclude Argument Speculating that Mr. Sjoblom's Departure From Proskauer Was Related to His Representation of Stanford Financial**

This Court should preclude any argument speculating that Mr. Sjoblom left Proskauer because of his representation of Stanford Financial.  In February 2009, Mr. Sjoblom disaffirmed all prior oral and written representations to the SEC and withdrew from his representation of Stanford Financial.  [ECF No. 220 at 5.]  Later that year, Mr. Sjoblom resigned from Proskauer. He testified that his departure had "nothing to do" with the Stanford Financial representation, but was instead related to his conflicts with members of the Proskauer Executive Committee about other client matters.  (App. 37-38 [Ex. 5, Sjoblom Tr. 349:19-350:23].)  There is no contrary evidence.

Any argument speculating that Mr. Sjoblom left Prosakuer because of his representation of Stanford Financial will be prejudicial and cause confusion.  The Federal Rules of Evidence prohibit parties from introducing evidence that an agent left an employer due to the agent's misconduct.  Fed. R. Evid. 407; <u>see also</u> Fed. R. Evid. 407 advisory committee's note (stating that the courts have applied Rule 407 to "discharge of employees"); <u>Kerr-McGee Corp. v. Ma-Ju Marine Servs., Inc.</u>, 830 F.2d 1332, 1344 (5th Cir. 1987) (stating that discharge of an employee is a classic example of a subsequent remedial measure); <u>Underwriters at Lloyd's London v. OSCA, Inc.</u>, No. 03-20398, 2006 WL 941794, at *4 (5th Cir. Apr. 12, 2006) (explaining that

Rule 407 "has been applied by the courts . . . 'to exclude evidence of . . . discharge of

employees'" (citing Fed. R. Evid. 407 advisory committee's note)); <u>GE Capital Commercial, Inc.</u>

<u>v. Worthington Nat'l Bank</u>, No. 3:09-CV-572-L, 2011 WL 5025153, at *13 (N.D. Tex. Oct. 20,

2011) (stating that "discharge of [an] employee responsible for" an incident is a subsequent

remedial measure).  It follows that speculation to that effect is equally impermissible.

This Court should not permit plaintiff to ask the jury to draw the impermissible (and

unsupported) inference that Mr. Sjoblom's departure from Proskauer was caused by his

representation of Stanford Financial.

**Motion No. 9:**        **Motion to Exclude Any Evidence of or Reference to Pre-February**
                        **2009 Conduct by Mr. Sjoblom or Proskauer**

This Court should exclude all evidence of, and reference to, Mr. Sjoblom's or

Proskauer's conduct prior to February 1, 2009 as irrelevant and insufficiently probative to

substantially outweigh the danger of creating unfair prejudice, confusing the issues, misleading

the jury, causing undue delay, and wasting time.  Fed. R. Evid. 401, 403.

As set forth in Proskauer's pending summary judgment motion [<u>see</u> ECF No. 220],

because plaintiff did not file this lawsuit until January 31, 2013, the applicable four-year statute

of limitations bars any claims that accrued before January 31, 2009.  <u>See</u> Tex. Civ. Prac. & Rem.

Code § 16.004(a)(4).  Thus, there is only a two-week window from February 1, 2009, to

February 14, 2009 (when Mr. Sjoblom withdrew from representing Stanford Financial and

disaffirmed all prior written and oral representations to the SEC) for which plaintiff could

possibly assert timely claims for damages.  In other words, plaintiff must establish all of the

requisite elements of its claims based on actions Mr. Sjoblom took during that window.  As

detailed in Proskauer's summary judgment motion, plaintiff cannot sustain this burden because,

among other things, there is no proof of damages during that period.  [ECF No. 220 at 26-29.]

Accordingly, because evidence prior to February 2009 will not be probative on any issues remaining in the case, it should be excluded under Rule 401.

Even if *pre*-February 2009 evidence could shed light on Proskauer's and Mr. Sjoblom's conduct during the relevant liability window, the evidence would have minimal probative value that would be substantially outweighed by unfair prejudice.  If presented, such evidence may mislead the jury into believing that it can hold Proskauer liable for pre-February 2009 conduct. Part of plaintiff's trial strategy will, no doubt, involve blurring the lines between Mr. Sjoblom's pre-February 2009 and post-January 2009 conduct, all in an attempt to hold Proskauer liable for *all* of this conduct—regardless of whether it is timely or untimely (or even whether it occurred before Mr. Sjoblom started working at Proskauer).  A convoluted limiting instruction (such as one that directed the jury to consider pre-February 2009 conduct for some purposes but not others) is inadequate to address this issue.  It "would only further confuse and mislead the jury," playing into plaintiff's improper trial strategy of attempting to prove that Proskauer had actual knowledge of some elements of the fraudulent scheme and substantially assisted completely different elements.  See United States v. Morris, 79 F.3d 409, 412 (5th Cir. 1996); see also supra p. 5.  Rule 403 does not permit plaintiff to attempt to confuse the jury by disregarding legal limits on the timeliness of its claims.

**Motion No. 10:**     **Motion to Exclude Evidence of or References to Financial Resources of Proskauer**

This Court should preclude any evidence of, or reference to, the financial resources of Proskauer because such evidence is irrelevant to liability and compensatory damages and, even if this Court determines that it has some minimal amount of probative value, that value is substantially outweighed by the dangers of unfair prejudice and misleading the jury.  Fed. R. Evid. 401, 403.

In the event that this Court determines that a trial is necessary, the fact-finder will need to determine how much harm was caused by any conduct the jury were to find that Proskauer proximately caused to assess compensatory damages.  Proskauer's financial resources and ability to pay a damages judgment have nothing to do with the amount of harm that Proskauer proximately caused with respect to Stanford Financial—which are the only factors relevant to assessing compensatory damages in this case.  See Immobiliere Jeuness Establissement v. Amegy Bank Nat'l Ass'n, 525 S.W.3d 875, 882 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (affirming summary judgment where the defendant's "conduct was not the proximate cause of the alleged damages for aiding and abetting").[7]

Beyond its irrelevance, evidence of or reference to Proskauer's financial resources is likely to unfairly prejudice Proskauer and mislead the jury.  As the Fifth Circuit has noted, "consideration of 'the ability of a defendant to pay the necessary damages injects into the damage determination a foreign, diverting, and distracting issue which may effectuate a prejudicial result."  Reed v. Gen. Motors Corp., 773 F.2d 660, 664 (5th Cir. 1985) (quoting Geddes v. United Fin. Grp., 559 F.2d 557, 560 (9th Cir. 1977)).  "[A]ny probative value of [a defendant's] financial size is substantially outweighed by the danger that the jury might set damages based on [the defendant's] ability to pay rather than on proper evidence of damages."  Lectec Corp. v. Chattem, Inc., No. 5:08-CV-130, 2011 WL 13086026, at *4 (E.D. Tex. Jan. 4, 2011).  Information about Proskauer's financial position will have just that effect here, because it

---

[7] While Proskauer's financial resources might be relevant to punitive damages, Proskauer is requesting that, if the Court were to overrule Proskauer's objection to submitting a punitive damages instruction to the jury, this Court bifurcate the determination of the amount of punitive damages from the remaining issues in the case—an approach that has been approved by the Texas Supreme Court and the Texas Legislature for the very reason that evidence about a party's financial worth may "prejudic[e] the jury's determination of other disputed issues in a tort case."  Transp. Ins. Co. v. Moriel, 879 S.W.2d 10, 30 (Tex. 1994), superseded by statute on other grounds as stated in U-Haul Int'l, Inc.v. Waldrip, 380 S.W.3d 118 (Tex. 2012); see Tex. Civ. Prac. & Rem. Code § 41.009 ("On motion by a defendant, the court shall provide for a bifurcated trial under this section.").

will not illuminate any of the factual or legal issues underlying this dispute—but will simply

tempt the jury to award damages based on factors, such as Proskauer's ability to pay, that cannot,

as a matter of law, play into its damages calculation in the slightest.

**Motion No. 11:**  **Motion to Preclude Argument Concerning the Location of Proskauer's or Its Counsel's Headquarters**

This Court should preclude any argument concerning the location of Proskauer's and its

counsel's headquarters or other offices because such arguments are irrelevant to the resolution of

this dispute and are highly prejudicial.  Fed. R. Evid. 401, 403.

The only plausible reason for plaintiff to reference the location of offices for Proskauer or

its counsel is to attempt to bias the jury against out-of-state law firms.  This is impermissible.  In

Whitehead v. Food Max of Miss., Inc., for instance, plaintiffs' counsel repeatedly made

reference to defendant Kmart Corporation's status as "a national, not local, corporation, with its

principal place of business in Troy, Michigan"—a point that plaintiffs' counsel attempted to

contrast with his own status as a Mississippi resident.  163 F.3d 265, 276 (5th Cir. 1998).  The

Court specifically disapproved of plaintiffs' "appeal[] to local bias," noting that "this

blatant . . . sectionalism" "ha[d] no place in a federal court" and had "prevent[ed] a fair trial."  Id.

at 276-78.  The court noted that "[a]rguments which invite a jury to act on behalf of a litigant

become improper 'conscience of the community' arguments when the parties' relative popular

appeal, identities, or geographical locations are invoked to prejudice the viewpoint of the jurors."

Id. at 277 (quoting Guaranty Serv. Corp. v. Am. Employers' Ins. Co., 893 F.2d 725, 729 (5th Cir.

1990)).  By "distract[ing] the jury from its 'sworn duty to reach a fair, honest and just verdict

according to the facts and evidence presented at trial,'" these sorts of arguments "carry the

potential of substantial injustice" when used "against out-of-state parties."  Id. (quoting

Westbrook v. Gen. Tire & Rubber Co., 754 F.2d 1233, 1238-39 (5th Cir. 1985)).  The court

ordered a new trial on this basis.  Id. at 278, 282; see also Westbrook, 754 F.2d at 1241, 1243

(remanding for a new trial on damages where "appeals to local bias against an outsider" led to

prejudice); In re WorldCom, Inc. Sec. Litig., No. 02 Civ. 3288, 2005 WL 375314, at *3

(S.D.N.Y. Feb. 17, 2005) (excluding "all references to government service by counsel, the size

of any law firm, the number of attorneys working on this matter, or the place of counsel's

residence and practice").

Reference to the location of Proskauer's and its counsel's headquarters would have a

similarly prejudicial effect and should be excluded under binding Fifth Circuit precedent.  It is

simply immaterial to the issues in this case whether Proskauer or its counsel are based in New

York, Texas, or anywhere else.  Fed. R. Evid. 401.  Moreover, such references risk exploiting the

jury's local biases—dangers that the Fifth Circuit has held require exclusion.  Fed. R. Evid. 403.

**Motion No. 12:        Motion to Preclude Experts' Use of the Term "Red Flags"**

This Court should preclude plaintiff's experts from offering opinions about what

constitutes (or otherwise using the phrase) "red flags," because such testimony will not be

helpful to the jury and its probative value, if any, is substantially outweighed by the danger of

causing unfair prejudice and misleading the jury.  Fed. R. Evid. 403, 702.

As the Court properly concluded in another Stanford-related litigation, the use of the term

"red flags," particularly when incorporated into the testimony of a witness presented as an expert,

will be misleading, irrelevant, and highly prejudicial.  See Transcript of Pretrial Conference

Hearing, Janvey v. Romero, No. 3:11-CV-0297 (Feb. 6, 2015) ("I don't want to hear 'red

flags.'").

At trial, the jury will hear evidence about what Mr. Sjoblom saw, heard, and believed

during his representation of Stanford Financial, and the jury can assess this information on its

own—without any experts telegraphing the conclusion that it qualifies as a "red flag."  By asking its experts to testify about "red flags," plaintiff's counsel is effectively injecting its own biased buzzwords into the experts' opinions, which might confuse the jury into accepting that Proskauer, through Mr. Sjoblom, should have known some fact, even if there is no evidence that Proskauer *actually* knew that fact.  Permitting the proposed "red flags" testimony to come from an expert will be highly prejudicial because the jury may be misled into lending such testimony undue credence.

Because the jury "is capable of assessing" this sort of factual evidence "for itself" without the filter of expert testimony or the gloss of terms like "red flags," opinions about "red flags" will "not even marginally assist the trier of fact" and would "impermissibly invade[] the province of the jury" by telling the jury how it should "apply[] the law to the facts."  Crow v. United Benefit Life Ins. Co., No. 00CV1375G, 2001 WL 285231, at *3 (N.D. Tex. Mar. 16, 2001) (internal quotation marks omitted) (quoting Thompson v. State Farm Fire & Cas. Co., 34 F.3d 932, 941 (10th Cir. 1994)).

Dated:  March 30, 2018

CARRINGTON, COLEMAN,                    DAVIS POLK & WARDWELL LLP
SLOMAN & BLUMENTHAL, L.L.P.


By:  /s/ Neil R. Burger _____                  /s/ James P. Rouhandeh _____
   Neil R. Burger                                    James P. Rouhandeh*
    Texas Bar No. 24036289                            New York Bar No. 2211837
    nburger@ccsb.com                                 rouhandeh@davispolk.com
   Bruce W. Collins                                  Daniel J. Schwartz*
    Texas Bar No. 04604700                            New York Bar No. 4159430
    bcollins@ccsb.com                                daniel.schwartz@davispolk.com
   901 Main Street, Suite 5500                       Craig M. Reiser*
   Dallas, Texas 75202                               New York Bar No. 4886735
   Telephone:  (214) 855-3000                        craig.reiser@davispolk.com
   Facsimile:  (214) 855-1333                        450 Lexington Avenue
                                                  New York, New York 10017
                                                  Telephone:  (212) 450-4000
                                                  Facsimile:  (212) 701-5800
                                                  * admitted *pro hac vice*

                                                  *Attorneys for Defendant Proskauer*
                                                  *Rose LLP*

## CERTIFICATE OF SERVICE

I hereby certify that, on March 30, 2018, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF system for filing.  A Notice of Electronic Filing was transmitted to all ECF registrants.

/s/ James P. Rouhandeh_____
James P. Rouhandeh

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rules of Civil Procedure 7.1(a) and 7.1(b), counsel for Proskauer (Craig M. Reiser) conferred with counsel for plaintiff (Edward C. Snyder and Judith R. Blakeway) regarding this motion on March 23, 2018, and counsel for plaintiff indicated that plaintiff opposes this motion.

/s/ James P. Rouhandeh

James P. Rouhandeh