UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
RALPH S. JANVEY, IN HIS CAPACITY :
AS COURT-APPOINTED RECEIVER FOR :
THE STANFORD RECEIVERSHIP :
ESTATE, AND THE OFFICIAL :
STANFORD INVESTORS COMMITTEE, :
: Civil Action No. 3:13-cv-00477-N
        *Plaintiffs*, : Hon. David C. Godbey
:
- against - : **ORAL ARGUMENT**
: **REQUESTED**
PROSKAUER ROSE, LLP, :
CHADBOURNE & PARKE, LLP, AND :
THOMAS V. SJOBLOM, :
:
        *Defendants*. :
:
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DEFENDANT PROSKAUER ROSE LLP'S REPLY BRIEF IN SUPPORT OF ITS
MOTION TO EXCLUDE EXPERT TESTIMONY OF KARYL VAN TASSEL**

| | |
|---|---|
| Neil R. Burger | James P. Rouhandeh* |
| Bruce W. Collins | Daniel J. Schwartz* |
| CARRINGTON, COLEMAN, SLOMAN | Craig M. Reiser* |
|    & BLUMENTHAL, L.L.P. | DAVIS POLK & WARDWELL LLP |
| 901 Main Street, Suite 5500 | 450 Lexington Avenue |
| Dallas, Texas 75202 | New York, New York 10017 |
| Telephone: (214) 855-3000 | Telephone: (212) 450-4000 |
| Facsimile: (214) 855-1333 | Facsimile: (212) 701-5800 |
| E-mail: nburger@ccsb.com | E-mail: rouhandeh@davispolk.com |
| | * admitted *pro hac vice* |

**TABLE OF CONTENTS**

PAGE

PRELIMINARY STATEMENT ........................................................................................................1

ARGUMENT ..................................................................................................................................2

I.    Van Tassel's Damages Calculation Is Not Reliable Because It Is Based on a Fundamentally Flawed Methodology ................................................................................2

    A.    Van Tassel's Methodology Calculates Stanford Financial's "Deepening Insolvency" ...........................................................................................................3

    B.    Plaintiff Cannot Distinguish Van Tassel's "Increased Liabilities" From "Deepening Insolvency" in This Case .....................................................................6

    C.    The Fifth Circuit Has Never Overturned Its Rejection of "Deepening Insolvency" Damages ...........................................................................................9

II.    Van Tassel's Opinions Will Not Help the Jury Decide the Facts ....................................10

CONCLUSION ..............................................................................................................................10

## TABLE OF AUTHORITIES

C<small>ASES</small>

P<small>AGE</small>(<small>S</small>)

In re Brooke Corp.,
 467 B.R. 492 (Bankr. D. Kan. 2012) .................................................................................. 8

Christians v. Grant Thornton, LLP,
 733 N.W.2d 803 (Minn. Ct. App. 2007) ............................................................................ 2

In re CitX Corp.,
 448 F.3d 672 (3d Cir. 2006) ............................................................................................2, 5

Commercial Fin. Servs., Inc. v. J.P. Morgan Sec., Inc.,
 152 P.3d 897 (Okla. Civ. App. 2006) ................................................................................ 2

Coroles v. Sabey,
 79 P.3d 974 (Utah Ct. App. 2003) ..................................................................................... 2

Dorrell v. Proskauer Rose LLP,
 No. 3:16-CV-1152-N (N.D. Tex. Nov. 2, 2017) ................................................................ 6

Factory Mut. Ins. Co. v. Alon USA L.P.,
 705 F.3d 518 (5th Cir. 2013) ............................................................................................ 10

First United Pentecostal Church of Beaumont v. Parker,
 514 S.W.3d 214 (Tex. 2017) .............................................................................................. 9

Immobiliere Jeuness Establissement v. Amegy Bank Nat'l Ass'n,
 525 S.W.3d 875 (Tex. App.—Houston [14th Dist.] 2017, no pet.) ................................... 9

Janvey v. Alguire,
 847 F.3d 231 (5th Cir. 2017) ............................................................................................. 9

Janvey v. Democratic Senatorial Campaign Comm., Inc.,
 712 F.3d 185 (5th Cir. 2013) ............................................................................................. 5

Janvey v. Hamric,
 No. 3:13-CV-0775-N, 2015 WL 11120301 (N.D. Tex. Nov. 5, 2015) .............................. 9

Kirschner v. Grant Thornton LLP,
 No. 07 Civ. 11604GEL, 2009 WL 1286326 (S.D.N.Y. Apr. 14, 2009),
 aff'd sub nom. Kirschner v. KPMG LLP, 626 F.3d 673 (2d Cir. 2010) ........................ 4, 6

In re Le-Nature's Inc.,
 No. 08-1518, 2009 WL 3571331 (W.D. Pa. Sept. 16, 2009) ............................................. 8

Marlin v. Moody Nat'l Bank, N.A.,
 248 F. App'x 534 (5th Cir. 2007) ............................................................................. 10

McHale v. Silicon Valley Law Grp.,
 919 F. Supp. 2d 1045 (N.D. Cal. 2013) ..................................................................... 4

In re Plaza Mortg. & Fin. Corp.,
 187 B.R. 37 (Bankr. N.D. Ga. 1995) ......................................................................... 4

In re Radnor Holdings Corp.,
 353 B.R. 820 (Bankr. D. Del. 2006) .......................................................................... 3

Robroy Indus.-Tex., LLC v. Thomas & Betts Corp.,
 Nos. 2:15-CV-512-WCB, 2:16-CV-198-WCB,
 2017 WL 1319553 (E.D. Tex. Apr. 10, 2017) ......................................................... 10

Salas v. Carpenter,
 980 F.2d 299 (5th Cir. 1992) ................................................................................... 10

SEC v. Stanford Int'l Bank Ltd.,
 No. 3:09-CV00298-N (N.D. Tex. Apr. 25, 2013) ...................................................... 5

In re SI Restructuring, Inc.,
 532 F.3d 355 (5th Cir. 2008) ......................................................................... 3, 5, 6, 9

Thabault v. Chait,
 541 F.3d 512 (3d Cir. 2008) ...................................................................................... 8

Torch Liquidating Tr. v. Stockstill,
 561 F.3d 377 (5th Cir. 2009) ..................................................................................... 8

Troice v. Proskauer Rose, L.L.P.,
 816 F.3d 341 (5th Cir. 2016) ..................................................................................... 6

In re Troll Commc'ns, LLC,
 385 B.R. 110 (Bankr. D. Del. 2008) .......................................................................... 2

United States ex rel. Ruscher v. Omnicare, Inc.,
 No. 4:08-cv-3396, 2015 WL 5178074 (S.D. Tex. Sept. 3, 2015) ............................ 10

Proskauer respectfully submits this reply brief in further support of its motion to exclude the opinion and expert testimony of Karyl Van Tassel.[1]

## PRELIMINARY STATEMENT

As Proskauer demonstrated in its Motion, permitting Van Tassel's testimony will contravene binding Fifth Circuit precedent, which rejects the "deepening insolvency" methodology that Van Tassel applies here. Plaintiff concedes that the Fifth Circuit has disallowed the deepening insolvency approach (Resp. 10) but tries to salvage Van Tassel's opinion by calling it something else. Plaintiff's attempt fails, because Van Tassel conceded that SIB has been insolvent since at least 1999 and that her damages calculations reflect the amount by which SIB's liabilities increased during that period of insolvency. As that concession makes plain, Van Tassel's calculation reflects nothing more than the degree to which SIB's insolvency deepened, no matter the label or spin that plaintiff puts on it.

Plaintiff's contrary claim—that Van Tassel is measuring SIB's "increased liabilities," not its deepening insolvency—defies economic reality. Van Tassel's methodology rests on the premise that prolonging a company's life and enabling it to take on new liabilities harms the company—the same premise that renders the deepening insolvency approach invalid. As the Fifth Circuit and many other courts have held, the additional liabilities are fully offset by equivalent assets, rendering any increase in liabilities neutral (if not beneficial) from the corporate entity's perspective. To the extent a company suffers injury, the injury occurs not when liabilities increase or when assets are deposited—but when those assets are dissipated or stolen by management. Here, Van Tassel conceded that SIB received cash to fully offset its

---

[1] Capitalized terms not otherwise defined herein have the meaning ascribed to them in Proskauer's Motion to Exclude Expert Testimony of Karyl Van Tassel and Brief in Support Thereof ("Motion" or "Mot."). Plaintiffs' Response to Proskauer Rose, LLP's Motion to Exclude Expert Testimony of Karyl Van Tassel and Alvarado's Joinder Therein, and Brief in Support, dated March 22, 2018, is referred to herein as the "Response" or "Resp."

additional liabilities, and she did not attempt to measure the assets that Stanford and Davis looted. Accordingly, Van Tassel's methodology measures only the harm to Stanford Financial's <u>investors</u> (i.e., the amount that they lost by purchasing SIB CDs) rather than the harm to Stanford Financial itself—an approach that cannot be reconciled with prior holdings by this Court and the Fifth Circuit, which have recognized that the Receiver (whose claims plaintiff purports to assert) may only sue on behalf of Stanford Financial and have in fact held Proskauer immune from suits by investors. Because the Fifth Circuit has rejected the "deepening insolvency" approach that Van Tassel takes here—and, contrary to plaintiff's claims, has never retreated from that rejection—controlling precedent requires the exclusion of Van Tassel's opinions.

Van Tassel's remaining opinions do not rely on any expert methodology at all: she merely parrots plaintiff's interpretation of documents from the record. Because Van Tassel—despite her claim to the contrary—has no greater expertise than the jury in interpreting emails or other documents, these opinions will not assist the jury and must be excluded.

## ARGUMENT

### I. Van Tassel's Damages Calculation Is Not Reliable Because It Is Based on a Fundamentally Flawed Methodology

Plaintiff does not and cannot contest that the Fifth Circuit—along with numerous other courts—has rejected the "deepening insolvency" damages methodology.[2] (Mot. 4-5; Resp. 10.) Instead, plaintiff contends that Van Tassel does not measure SIB's "deepening insolvency" but

---

[2] In re CitX Corp., 448 F.3d 672, 678 (3d Cir. 2006) ("[T]he deepening of a firm's insolvency is not an independent form of corporate damage." (internal quotations and citation omitted)); In re Troll Commc'ns, LLC, 385 B.R. 110, 122 (Bankr. D. Del. 2008) ("[D]eepening insolvency has been rejected as a valid cause of action or a theory of damages under Delaware law . . . ."); Christians v. Grant Thornton, LLP, 733 N.W.2d 803, 812 (Minn. Ct. App. 2007) ("We . . . hold that deepening insolvency is not a recognized form of corporate damage in Minnesota."); Coroles v. Sabey, 79 P.3d 974, 983 (Utah Ct. App. 2003) ("declin[ing] Plaintiffs' invitation to recognize 'deepening insolvency'" as a measure of damages); Commercial Fin. Servs., Inc. v. J.P. Morgan Sec., Inc., 152 P.3d 897, 900 (Okla. Civ. App. 2006) ("'Deeper insolvency' is not a recognized measure of damages in Oklahoma.").

its "increased liabilities," which plaintiff asserts is a valid damages methodology. (Resp. 10-19.) Calling "deepening insolvency" by a different name, however, does not validate Van Tassel's approach. See In re SI Restructuring, Inc., 532 F.3d 355, 362-63 (5th Cir. 2008) (citing In re Radnor Holdings Corp., 353 B.R. 820, 842 (Bankr. D. Del. 2006) ("[S]imply calling a discredited deepening insolvency cause of action by some other name does not make it a claim that passes muster.")). Nor, as discussed below, can plaintiff distinguish what Van Tassel is doing here from what the Fifth Circuit has rejected. See id.

### A. Van Tassel's Methodology Calculates Stanford Financial's "Deepening Insolvency"

As the Fifth Circuit explained in In re SI Restructuring, damages cannot be calculated based on the prolonging of "an insolvent corporation's life through bad debt" because the fact that a firm has taken out a loan that deepens its insolvency does not indicate that the firm has suffered harm. 532 F.3d at 363. The harm instead "depends on how the company uses the proceeds of the loan in question." Id. By assuming that a company would have been better off if it had not taken the loan and had liquidated sooner, the "deepening insolvency" methodology "looks at the issue through hindsight bias" and fails to assess harm to the corporate entity. Id.

This case confirms the Fifth Circuit's concerns. SIB—the entity that issued CDs (and thus the only entity that incurred CD liabilities)—saw its liabilities increase as it sold CDs to depositors in exchange for cash. (App. 44-45 [Ex. 2, Van Tassel Tr. 133:12-134:3].)[3] But the sale of CDs did not harm SIB because, as Van Tassel admitted, the cash received from CD depositors increased SIB's assets and fully offset the increase in SIB's liabilities. (App. 44, 46

---

[3] Citations in the form "App. __" are to the Appendix filed in support of Proskauer's Motion, which includes the Declaration of James P. Rouhandeh, dated February 20, 2018, and the exhibits thereto. (Dkt. No. 227.) Citations in the form of "Reply App. __" are to the Appendix filed concurrently herewith, which includes the Declaration of James P. Rouhandeh, dated April 4, 2018, and its exhibits.

3

[id. 133:24-25, 135:2-12] ("[T]he net effect on assets minus liabilities would be zero.").) Accordingly, the net effect on SIB as a corporate entity was neutral and SIB suffered no injury when the CD liabilities increased.  See Kirschner v. Grant Thornton LLP, No. 07 Civ. 11604GEL, 2009 WL 1286326, at *8 (S.D.N.Y. Apr. 14, 2009) ("It is a basic principle of corporate finance that extending credit to a distressed entity in itself does the entity no harm," because "the extension of credit is—at worst—neutral"), aff'd sub nom. Kirschner v. KPMG LLP, 626 F.3d 673 (2d Cir. 2010).[4]  What injured SIB was what Stanford and Davis did with the cash from the CD sales—but Van Tassel did not measure the amount they looted.  (Resp. 16-17.)

Contrary to plaintiff's contention (id. 15-16, 18-19), Stanford Financial's Ponzi scheme has no effect on this analysis.  Even in Ponzi schemes, the damages are the amounts stolen from the company.  See In re Plaza Mortg. & Fin. Corp., 187 B.R. 37, 45 (Bankr. N.D. Ga. 1995) (bankruptcy trustees "should be careful not to plead damages as an amount equal to the funds invested in the debtor's Ponzi scheme, but should measure damages based on funds improperly paid out by the debtor"); McHale v. Silicon Valley Law Grp., 919 F. Supp. 2d 1045, 1052 (N.D. Cal. 2013) (corporation whose principal used it to conduct a Ponzi scheme "suffered a distinct and concrete injury when it was stripped of its assets").[5]  Moreover, Stanford Financial had some real investments and some legitimate operations, as Van Tassel recognized.  (See App. 118-20 [Ex. 5, Van Tassel July 27, 2009 Decl. ¶ 14] (acknowledging that "SIB received some returns on investments").)  To the extent Stanford Financial merely obtained depositors' funds or used them

---

[4] Contrary to plaintiff's suggestion (Resp. 16 n.23), the principles on which Kirschner relied are applicable to both Ponzi schemes and other fraudulent conduct undertaken by principals of a corporation.

[5] Plaintiff ignores In re Plaza and distorts McHale, citing it for the proposition that a "Ponzi scheme's losses [a]re distinct from investors' losses" and that receivers have "standing to sue for [a] Ponzi scheme's losses." (Resp. 19.)  But McHale held that the receiver had standing because he was seeking to recover assets that had been stripped from the corporation—not, as plaintiff implies, because he sought to recover increased liabilities.

to advance the legitimate branches of its business, the increases in its liabilities could not cause harm to the corporate enterprise itself.

Rather, as this Court already found, and as plaintiff concedes, the $5.9 billion judgment on which Van Tassel bases her damages computation represents SIB's "ill-gotten <u>gains</u>"—not its <u>damages</u>. (Resp. 7.) That is why the Court ordered SIB to disgorge this sum. See <u>SEC v. Stanford Int'l Bank Ltd.</u>, No. 3:09-CV-00298-N (N.D. Tex. Apr. 25, 2013), Dkt. No. 1858. But, contrary to plaintiff's suggestion (Resp. 16-18), the Court need not go so far as to conclude that SIB actually benefitted from the increase in CD liabilities to reject Van Tassel's methodology. The Court can and should simply recognize the reality that Van Tassel already acknowledged: an increase in liabilities is, at worst, neutral from the firm's perspective, and the harm in this case was suffered when the CD proceeds were <u>misappropriated</u>—not when they were deposited. (App. 44-46 [Ex. 2, Van Tassel Tr. 133:12-135:12].)

In fact, SIB could have used the proceeds from its CD deposits for any number of legitimate purposes. See <u>In re CitX</u>, 448 F.3d at 678. But because Allen Stanford and James Davis "misused the opportunity" created by the influx of deposits, SIB was injured. See <u>id.</u> In other words, it was the <u>theft of assets</u> perpetrated by Stanford and Davis that caused harm to Stanford Financial—not the fact that it secured new deposits. See <u>In re SI Restructuring</u>, 532 F.3d at 363. Because plaintiff can recover only for damages incurred by Stanford Financial itself, see <u>Janvey v. Democratic Senatorial Campaign Comm., Inc.</u>, 712 F.3d 185, 192 (5th Cir. 2013), a proper measure of damages would assess the amount that Stanford and Davis stole—not the amount of increased CD liabilities.

Yet, Van Tassel ignores this distinction (<u>see</u> App. 109 [Ex. 4, Decl. ¶¶ 103-04]; <u>see</u> Mot. 7), assuming that <u>every penny</u> of increased liabilities during Proskauer's representation of

5

Stanford Financial caused harm to the company—all because, according to plaintiff, Proskauer delayed the SEC from placing Stanford Financial into receivership. (Compl. ¶ 73 (alleging that Proskauer "obstruct[ed] regulatory scrutiny").) As plaintiff's allegation demonstrates, Van Tassel's approach is the very definition of "deepening insolvency": it treats as damages all additional, unpaid liabilities that were taken on to prolong the life of the company. See In re SI Restructuring, 532 F.3d at 363. Moreover, by hitching her damages theory to the SEC's failure to act sooner, Van Tassel's opinions rest on an attenuated connection between Proskauer's conduct and Stanford Financial's injury that, as discussed below, cannot satisfy the proximate causation standard that plaintiff must meet.

To the extent it measures anyone's damages, Van Tassel's methodology calculates harm to investors, who were harmed when SIB incurred liabilities that it subsequently could not repay. See Kirschner, 2009 WL 1286326, at *9 ("[T]he benefit procured by the insiders came at the expense of the securities purchasers, not of [the company] itself."). But not only does plaintiff lack standing to pursue investor claims in this case; controlling decisions from the Fifth Circuit and this Court also hold Proskauer immune from suit on such claims. See Troice v. Proskauer Rose, L.L.P., 816 F.3d 341, 348-49 (5th Cir. 2016); see also Order at 13-14, Dorrell v. Proskauer Rose LLP, No. 3:16-CV-1152-N (N.D. Tex. Nov. 2, 2017), Dkt. No. 52. Allowing Van Tassel to present her damages opinion—with its focus on amounts owed to CD investors—would thus convert this case into an investor lawsuit that contravenes binding precedent.

### B. Plaintiff Cannot Distinguish Van Tassel's "Increased Liabilities" From "Deepening Insolvency" in This Case

Plaintiff tries to distinguish Van Tassel's computation of "increased liabilities" in this case from "deepening insolvency," but its efforts are unsuccessful. Plaintiff contends that "[d]eepening insolvency as a measure of damages entails a comparison of balance sheets before

6

and after the alleged wrongful act" and that Van Tassel did not perform such a calculation. (Resp. 10-11, 13.) But as Van Tassel testified, she did compare SIB's "balance sheets before and after" various alleged events: she looked at SIB's outstanding CD liabilities on three dates as reflected on its balance sheet and subtracted those amounts from its outstanding CD liabilities on SIB's final balance sheet. (Reply App. 8-9 [Ex. 1, Van Tassel Tr. 148:2-149:3]; App. 109-11 [Ex. 4, Decl. ¶¶ 103-06]; see Resp. 7.) Even if Van Tassel did not separately compute SIB's insolvency for each of these dates (Resp. 13-14), that just means that Van Tassel's analysis entirely disregards SIB's assets—including the cash that SIB received when it sold CDs that fully offset its increased liabilities. In all events, Van Tassel opined that SIB was insolvent since 1999, years before Mr. Sjoblom began representing Stanford Financial. (App. 38 [Ex 1, Van Tassel Tr. 94:7-13].) This concession—which plaintiff's Response does not address—belies any assertion that the "increased liabilities" Van Tassel computed did anything more than render SIB even more insolvent.

Nor is plaintiff correct that it is seeking SIB's "increased liabilities as traditional tort damages caused by the wrongful conduct in which Sjoblom participated." (Resp. 13.) Plaintiff is not seeking damages caused by Mr. Sjoblom or Proskauer at all. Contrary to plaintiff's assertion (Resp. 7-8), the three dates for which Van Tassel measured damages were not "keyed to significant events" in Mr. Sjoblom's representation of Stanford Financial—as Van Tassel admitted. (Reply App. 11-13 [Ex. 1, Van Tassel Tr. 158:18-160:2] (acknowledging that dates for which she computed damages merely capture information since the last date for which she computed damages, and that "these are not the only dates" she could have used).) Moreover, Van Tassel repeatedly agreed that she had not calculated the dollar-value loss attributable to any act or omission by Mr. Sjoblom, which belies any suggestion that she tied her analysis to specific

7

conduct by Proskauer. (App. 48 [Ex. 2, Van Tassel Tr. 153:8-22]; Reply App. 10-11, 14-17 [Ex. 1, Van Tassel Tr. 157:23-158:10; 169:13-171:9; 178:11-18].)

For this same reason, the out-of-circuit cases on which plaintiff relies (Resp. 11-12, 15, 18-19) are inapposite. They stand for the noncontroversial proposition that, in some cases, a plaintiff will be able to prove that the defendant's conduct proximately caused an independent injury to a company by increasing its liabilities. See, e.g., Thabault v. Chait, 541 F.3d 512, 521 (3d Cir. 2008) ("deepening insolvency" methodology improper where "ultimate harm was caused by mismanagement, not the [defendant]," but permitting recovery, under New Jersey law, of damages that would not have occurred "but for [defendant]'s negligence"). None of those cases, however, permitted recovery of increased liabilities that—as in this case—were proximately caused by someone other than the defendant. See, e.g., In re Le-Nature's Inc., No. 08-1518, 2009 WL 3571331, at *8 (W.D. Pa. Sept. 16, 2009) (holding that complaint sufficiently alleged defendants' direct participation in management's "embezzlement scheme," which "caused an increase in . . . liabilities"); In re Brooke Corp., 467 B.R. 492, 511 (Bankr. D. Kan. 2012) (permitting recovery where plaintiff could "prove[] that the defendant's negligent conduct was the proximate cause of a corporation's increased liabilities" (internal quotations omitted)).[6]

Plaintiff argues that it does not need to establish proximate causation to prove its causes of action. (Resp. 8-9.) Plaintiff is mistaken. To the extent that civil aiding and abetting tort liability exists at all under Texas law, it requires a showing that the defendant proximately

---

[6] Torch Liquidating Trust v. Stockstill, 561 F.3d 377, 391 n.16 (5th Cir. 2009), also cited by plaintiff, is to the same effect. Torch Liquidating addressed in dicta whether "deepening insolvency" qualified as a cause of action—not a damages methodology—under Delaware law. Id. It noted that "Delaware does not recognize a cause of action for 'deepening insolvency,'" but suggested that, if a party could raise a valid "theory of liability" under a different cause of action, it might be able to "recover[] for damages for a failure to cease operations." Id. The problem for plaintiff is that its own "theory of liability" permits it to recover only the amount of money that Stanford and Davis stole—not the amount of liabilities incurred due to Stanford Financial's "failure to cease operations."

8

caused the harm that resulted from the primary violator's misconduct. (ECF No. 252, at 19; see also Immobiliere Jeuness Establissement v. Amegy Bank Nat'l Ass'n, 525 S.W.3d 875, 883 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (affirming summary judgment where defendant's "conduct was not the proximate cause of the alleged damages for aiding and abetting"); see also First United Pentecostal Church of Beaumont v. Parker, 514 S.W.3d 214, 225 (Tex. 2017) (granting summary judgment on alleged aiding and abetting claim where plaintiff "reference[d] no evidence that [defendant] assisted or encouraged [the primary violator] in stealing the [plaintiff's] money").) Van Tassel makes no such showing.

### C. The Fifth Circuit Has Never Overturned Its Rejection of "Deepening Insolvency" Damages

Plaintiff next claims that the Fifth Circuit and this Court have already approved Van Tassel's approach in other Stanford Financial cases. (Resp. 12.) Those cases, however, do not support plaintiff's position. Janvey v. Alguire says not a word about "deepening insolvency"; that case addressed the entirely unrelated question of whether SIB was bound, under the third-party beneficiary principle of equitable estoppel, by an arbitration clause entered into by another Stanford Financial entity and its employees. 847 F.3d 231, 243 (5th Cir. 2017). The same goes for Janvey v. Hamric, in which this Court granted summary judgment to the Receiver only after the defendant failed to respond to the Receiver's motion—and thus failed to mount any challenge to the Receiver's damages methodology. No. 3:13-CV-0775-N, 2015 WL 11120301, at *4 (N.D. Tex. Nov. 5, 2015). Nor did the other Stanford cases cited by plaintiff actually hold that "deepening insolvency" was a legitimate measure of damages or even address the approach's validity—a point that plaintiff concedes by noting that these cases "impliedly" support Van Tassel's approach. (Resp. 15.) Plaintiff effectively argues that this Court and the Fifth Circuit have crafted a "Stanford Receivership" exception to In re SI Restructuring—something that these

9

courts have never claimed to do and could not have accomplished in any event.

## II. Van Tassel's Opinions Will Not Help the Jury Decide the Facts

Van Tassel's opinions should be excluded for the independent reason that they simply parrot plaintiff's theory of the case. (Mot. 8-13.) Plaintiff admits that Van Tassel's report contains "factual recitations" and recognizes that a cautionary instruction will be necessary to prevent the jury from giving undue credence to these recitations. (Resp. 21-24.) Plaintiff claims that these issues go to weight, not admissibility, but numerous courts have recognized that expert testimony is inadmissible when it consists of reading evidence into the record or telling the jury information that it already knows. Robroy Indus.-Tex., LLC v. Thomas & Betts Corp., Nos. 2:15-CV-512-WCB, 2:16-CV-198-WCB, 2017 WL 1319553, at *9 (E.D. Tex. Apr. 10, 2017); see Factory Mut. Ins. Co. v. Alon USA LP, 705 F.3d 518, 524 (5th Cir. 2013). Nor is expert testimony admissible when it offers "conclusions about a defendant's state of mind," given that the "expert's credentials do not place him in a better position than the jury" to draw such conclusions. Marlin v. Moody Nat'l Bank, 248 F. App'x 534, 541 (5th Cir. 2007); see United States ex rel. Ruscher v. Omnicare, Inc., No. 4:08-cv-3396, 2015 WL 5178074, at *11 (S.D. Tex. Sept. 3, 2015).[7] Van Tassel merely repeats—often verbatim—plaintiff's allegations. (Mot. 11-12.) These opinions will not "bring to the jury more than the lawyers can offer in argument," see Salas v. Carpenter, 980 F.2d 299, 305 (5th Cir. 1992), and should be excluded.

## CONCLUSION

For these reasons, this Court should grant Proskauer's motion to exclude the opinion and testimony of Karyl Van Tassel.

---

[7] Plaintiff conceded the point by stipulating that it will not introduce any expert testimony "about any person's or party's intent or knowledge." (ECF No. 260, at 2.)

Dated: April 4, 2018

| | |
|---|---|
| CARRINGTON, COLEMAN, SLOMAN & BLUMENTHAL, L.L.P.<br><br>By: /s/ Neil R. Burger<br>   Neil R. Burger<br>     Texas Bar No. 24036289<br>     nburger@ccsb.com<br>   Bruce W. Collins<br>     Texas Bar No. 04604700<br>     bcollins@ccsb.com<br>   901 Main Street, Suite 5500<br>   Dallas, Texas  75202<br>   Telephone:  (214) 855-3000<br>   Facsimile:  (214) 855-1333 | DAVIS POLK & WARDWELL LLP<br><br>/s/ James P. Rouhandeh<br>   James P. Rouhandeh*<br>     New York Bar No. 2211837<br>     rouhandeh@davispolk.com<br>   Daniel J. Schwartz*<br>     New York Bar No. 4159430<br>     daniel.schwartz@davispolk.com<br>   Craig M. Reiser*<br>     New York Bar No. 4886735<br>     craig.reiser@davispolk.com<br>   450 Lexington Avenue<br>   New York, New York  10017<br>   Telephone:  (212) 450-4000<br>   Facsimile:  (212) 701-5800<br>   * admitted *pro hac vice*<br><br>*Attorneys for Defendant Proskauer Rose LLP* |

**CERTIFICATE OF SERVICE**

I hereby certify that, on April 4, 2018, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF system for filing. A Notice of Electronic Filing was transmitted to all ECF registrants.

/s/ James P. Rouhandeh
James P. Rouhandeh