IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

RALPH S. JANVEY, IN HIS CAPACITY AS COURT-APPOINTED RECEIVER FOR THE STANFORD RECEIVERSHIP ESTATE, *et al.*,

Plaintiffs,

v.

PROSKAUER ROSE, LLP, *et al.*,

Defendants.

Civil Action No. 3:13-CV-0477-N

**ORDER**

This Order addresses Defendant Proskauer Rose, LLP's ("Proskauer") motion for choice-of-law determination [151]. For the reasons set forth below, the Court holds that Texas substantive law governs all of the claims in this action. Accordingly, the Court denies Proskauer's motion to apply New York substantive law to this dispute.

**I. ORIGINS OF THE DISPUTE**

This action arises out of the Ponzi scheme perpetrated by R. Allen Stanford, his associates, and various entities under his control (collectively, "Stanford"). The facts associated with Stanford's scheme are well-established, *see, e.g., Janvey v. Democratic Senatorial Campaign Comm.*, 712 F.3d 185, 188–89 (5th Cir. 2013), and are not recounted in great detail here. Fundamentally, Stanford's scheme entailed the sale of fraudulent certificates of deposit ("CDs") from an offshore bank located in the country of Antigua. Although Stanford represented that the CD proceeds were invested only in low risk, high

return funds, in reality the proceeds were funneled into speculative private equity investments and used to fund Stanford's extravagant lifestyle.

Plaintiffs in this action are Ralph S. Janvey (the "Receiver")[1] and the Official Stanford Investors Committee ("OSIC").[2] This case is based on legal assistance Thomas V. Sjoblom allegedly provided to Stanford while Sjoblom was an attorney first with Chadbourne & Parke LLP ("Chadbourne") and then with Proskauer. Plaintiffs allege that Stanford retained Chadbourne and Sjoblom in 2005 to assist with a Securities and Exchange Commission ("SEC") investigation into Stanford's potential wrongdoing. According to Plaintiffs, Sjoblom, armed with knowledge of Stanford's scheme, nevertheless corresponded with the SEC and made a number of misrepresentations of fact and law that obstructed the investigation. Plaintiffs also claim that Sjoblom was involved in hiding the SEC investigation from Stanford's auditor. Plaintiffs allege that Sjoblom continued to assist in obstructing regulatory investigations into Stanford's misconduct after his move to Proskauer.

Based on these allegations, Plaintiffs initially brought claims against Sjoblom, Chadbourne, and Proskauer for (1) professional negligence; (2) aiding, abetting, or participation in breaches of fiduciary duties; (3) aiding, abetting, or participation in a

---

[1] The Receiver's rights and obligations are laid out in detail in this Court's Second Amended Order Appointing Receiver [1130], *in SEC v. Stanford Int'l Bank, Ltd.*, Civil Action No. 3:09-CV-0298-N (N.D. Tex. filed Feb. 17, 2009).

[2] OSIC is a body tasked with representing Stanford investors and has similar rights and responsibilities as a bankruptcy creditors' committee appointed under Title 11 of the United States Code. *See generally* Order [1149], *in SEC v. Stanford Int'l Bank, Ltd.*, Civil Action No. 3:09-CV-0298-N (N.D. Tex. filed Feb. 17, 2009).

fraudulent scheme; (4) aiding, abetting, or participation in fraudulent transfers; (5) aiding, abetting, or participation in conversion; (6) civil conspiracy; and (7) negligent retention and supervision. Since then, Plaintiffs have voluntarily dismissed or settled most of their claims, resulting in Sjoblom and Chadbourne's terminations from this case. At present, two claims remain against Proskauer: (1) aiding, abetting, or participation in breaches of fiduciary duties and (2) aiding, abetting, or participation in a fraudulent scheme.

Now before the Court is Proskauer's motion for choice-of-law determination seeking a ruling that New York substantive law governs this case. Proskauer previously put forth the same argument in a prior motion to dismiss. In ruling on that motion, however, the Court declined to decide the choice-of-law issue due to a dispute over the authenticity of a critical engagement letter. Because the authenticity of that document is no longer disputed as a result of further discovery, the Court now considers Proskauer's motion for choice-of-law determination. In so doing, the Court denies the motion and rules that Texas substantive law governs this dispute.

## II. BASIC CHOICE-OF-LAW PRINCIPLES

Under any choice-of-law analysis, the Court must first determine whether apparently conflicting laws actually conflict. If no conflict exists, the Court need not conduct a choice-of-law analysis. *See Covington v. Alban Offshore Ltd.*, 650 F.3d 556, 558–59 (5th Cir. 2011) ("[W]e need not decide in this case whether those principles should be drawn from Texas law or federal law, because both bodies of law lead us to the same conclusion."); *Schneider Nat'l*

*Transp. v. Ford Motor Co.*, 280 F.3d 532, 536 (5th Cir. 2002) ("If the laws of the states do not conflict, then no choice-of-law analysis is necessary.").

If, however, the laws conflict, the Court must decide whether federal or state choice-of-law rules apply. *In re Cyrus II P'ship*, 413 B.R. 609, 613 (Bankr. S.D. Tex. 2008). In the federal receivership context, state choice-of-law rules apply.[3] *See Terry v. June*, 420 F. Supp. 2d 493, 499–502 (W.D. Vir. 2006) (applying state choice-of-law rules in federal receivership action because there was no compelling federal interest); *see also Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) (holding that courts must apply forum choice-of-law rules in diversity cases); *Sys. Operations, Inc. v. Scientific Games Dev. Corp.*, 555 F.2d 1131, 1136 (3d Cir. 1977) (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) and *Mintz v. Allen*, 254 F. Supp. 1012 (S.D.N.Y. 1966)) (noting that *Klaxon* applies to pendent jurisdiction state law claims). Thus, the Court applies Texas choice-of-law rules.

Under Texas choice-of-law rules, the Court next looks to whether an apparent conflict is an actual conflict or a false conflict. A false conflict exists if the state with a potentially conflicting law does not have an actual interest in the dispute. *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 422 (Tex. 1984) (finding "false conflict" because only Texas had interest in applying its law); *see also Sandefer Oil & Gas, Inc. v. AIG Oil Rig of Texas Inc.*, 846 F.2d 319, 322 (5th Cir. 1988) (citing B. Currie, SELECTED ESSAYS ON CONFLICT OF

---

[3] In any event, the Fifth Circuit has indicated that the federal independent judgment choice-of-law test is the same as Texas' most significant relationship test. *In re Mirant Corp.*, 675 F.3d 530, 536 (5th Cir. 2012).

LAWS 189 (1963); R. Leflar, L. McDougal & R. Felix, CASES AND MATERIALS ON AMERICAN CONFLICTS LAW 320–21 (1982)) (applying Louisiana conflicts rule). A state has an actual interest for conflicts purposes if the state's relationship to the dispute is within the scope of the policies of the law sought to be applied. *Sandefer*, 846 F.2d at 322. If the conflict is false, the Court should not apply the law of the uninterested state.

If an actual conflict exists, however, Texas courts finally apply the "most significant relationship test outlined in the Restatement (Second) of Conflict of Laws." *Janvey v. Brown*, 767 F.3d 430, 434 (5th Cir. 2014) (citing *Casa Orlando Apartments, Ltd. v. Fed. Nat'l Mortg. Ass'n*, 624 F.3d 185, 190 (5th Cir. 2010)) (internal quotation marks omitted). Under this test, if the parties have not agreed to a valid choice-of-law provision, the law of the state with the most significant relationship to the particular substantive issue governs the dispute. *Duncan*, 665 S.W.2d at 421. Section 6 of the Restatement contains the general principles involved in the conflicts analysis, which include: (1) the needs of the interstate and international systems; (2) the relevant policies of the forum; (3) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; (4) the protection of justified expectations; (5) the basic policies underlying the particular field of law; (6) certainty, predictability, and uniformity of result; and (7) ease in the determination and application of the law to be applied. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6(2) (1971). Section 145 of the Restatement lists the specific factual matters to be considered in tort cases, which include: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence,

nationality, place of incorporation, and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered. *Id.* § 145(2).

Generally, contractual choice-of-law provisions are enforced in Texas. *Smith v. EMC Corp.*, 393 F.3d 590, 597 (5th Cir. 2004). But it is not uncommon for a party to overcome them. *Cardoni v. Prosperity Bank*, 805 F.3d 573, 581 (5th Cir. 2015) (collecting cases). A party may do so by demonstrating that the law of the chosen state violates a fundamental public policy of Texas or that the chosen state has no substantial relationship to the dispute. *See DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 677 (Tex. 1990).

## III. Texas Substantive Law Governs the Dispute

### *A. Stanford and Proskauer Did Not Agree on a Choice-of-Law Provision*

As a threshold matter, the Court must determine whether a valid, enforceable choice-of-law provision governs this dispute. Here, Proskauer argues that New York substantive law governs the dispute given a choice-of-law agreement allegedly to that effect. Proskauer chiefly rests its argument on a series of engagement letters between Stanford and the law firms that represented it. The first, between Stanford and Chadbourne in August 2005, includes a choice-of-law provision that provides that Stanford's "attorney-client and contractual relationships [with Chadbourne], and any disputes relating to [Chadbourne's] bills or charges, are to be governed by the laws of the State of New York." App. in Supp. of Proskauer's Mot. 37 [152]. The second, between Stanford and Proskauer in September 2006, does not explicitly include any choice-of-law provision. But Proskauer contends that the language of the Proskauer engagement letter – specifically, Sjoblom's stating his

appreciation for being permitted to "continue representing" Stanford after moving from Chadbourne to Proskauer and two references to New York rules that require attorneys to provide written engagement letters and notice of the right to arbitrate fee disputes, *id.* at 40–41 – indicates that the parties intended the Chadbourne engagement letter's choice-of-law provision to remain in effect. As further support, Proskauer produces a January 2018 affidavit in which Pablo Mauricio Alvarado, Stanford's former General Counsel who signed the Proskauer engagement letter on Stanford's behalf, states that he understood Sjoblom's representation of Stanford to continue as set forth in the Chadbourne engagement letter except as otherwise specified in the Proskauer engagement letter.

But one of Proskauer's cited authorities itself belies the relief Proskauer seeks. Proskauer relies on a New York decision for the proposition that "subsequent agreements cannot invalidate provisions of an original agreement when the parties 'expressly and unambiguously manifest[] an intention to continue to remain bound' to those provisions." Proskauer's Mot. 9 [151] (quoting *Doscher v. Metro. Life Ins. Co.*, 781 N.Y.S.2d 762, 763 (N.Y. App. Div. 2004)). Here, by contrast, the parties did not expressly or unambiguously manifest such an intention. Proskauer's chief argument rests on the first sentence of the Proskauer engagement letter in which Sjoblom expresses his appreciation for being able to "continue representing" Stanford after leaving Chadbourne. App. in Supp. of Proskauer's Mot. 40 [152]. Such a casual nicety is not an express and unambiguous manifestation of intent to continue to remain bound to the terms of the Chadbourne engagement letter. Nor

are two passing references to New York rules for attorneys engaging in client representations.

And another central authority Proskauer cites is inapposite. In *Strohm v. ClearOne Communications, Inc.*, the Supreme Court of Utah held that a previous engagement letter was altered only to the extent that it conflicted with a subsequent engagement letter where the later letter was explicitly said to "update" the prior letter. 308 P.3d 424, 441–42 (Utah 2013). Proskauer avers that the Proskauer engagement letter should similarly not supplant the Chadbourne engagement letter unless and only to the extent that the terms in the letters conflict. In the absence of any choice-of-law provision in the Proskauer engagement letter, Proskauer thus asserts that the Chadbourne choice-of-law provision survives. The Court, however, disagrees. First, this Court is not bound by such out-of-state rulings. Second, Proskauer overlooks the precise language used in the letter at issue in *Strohm*. There, the subsequent engagement letter explicitly stated that it was "*intended* to serve as [an] update" to the previous engagement letter. *Id.* at 441 (emphasis added). Here, by contrast, there is simply no express manifestation of the parties' intent to have the Chadbourne choice-of-law provision govern the new relationship with Proskauer. Accordingly, *Strohm* is unavailing.

Moreover, the Court is unpersuaded by Proskauer's post-hoc rationalizations. First, Alvarado's affidavit is inadmissible under the parol evidence rule, which prohibits oral evidence to add to the terms of a valid written contract that on its face is complete and unambiguous. *Time Ins. Agency, Inc. v. Grimes*, 613 S.W.2d 40, 42 (Tex. Civ. App. – Texarkana 1982, no writ). Further, because it is the parties' objective intent that controls,

*see Freeman v. Harleton Oil & Gas Co.*, 528 S.W.3d 708, 741 (Tex. App. – San Antonio 2017), Alvarado's unexpressed subjective intent is immaterial. Finally, parties cannot rely on extrinsic evidence to "add to, alter, or contradict the terms contained within [an] agreement itself" or "make the language say what it unambiguously does not say." *URI, Inc. v. Kleberg Cty.*, No. 16-0336, 2018 WL 1440148, at *10 (Tex. Mar. 23, 2018). Alvarado's affidavit is therefore ineffective in adding an otherwise absent choice-of-law provision to the Proskauer engagement letter.

### *B. The Conflict Between Texas and New York is an Actual Conflict*

In the absence of a valid, enforceable choice-of-law provision, the Court must follow the traditional choice-of-law analysis.[4] First, the Court must determine whether the apparently conflicting laws actually conflict. Here they do, since New York law applies the *in pari delicto* doctrine to prohibit wrongdoers and their successors from recovering from other culpable parties, *see In re Bernard L. Madoff Inv. Sec. LLC*, 721 F.3d 54, 63 (2d Cir. 2013), whereas Texas law does not apply the *in pari delicto* doctrine to bar receivers' claims on behalf of former corporations, *see Democratic Senatorial Campaign Comm.*, 712 F.3d at 191. Second, because the two states' laws conflict, the Court must decide whether federal

---

[4] The Court conducts the traditional choice-of-law analysis in the interest of completeness, notwithstanding the fact that Proskauer – which has previously taken the position that Texas substantive law instead applies to this case – is estopped from now asserting that New York substantive law governs this dispute. *See Hartford Fire Ins. Co. v. City of Mont Belview*, 611 F.3d 289, 298 (5th Cir. 2010) (explaining that "quasi-estoppel 'precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken.'" (quoting *Lopez v. Munoz, Hockema & Reed, LLP*, 22 S.W.3d 857, 864 (Tex. 2000))).

or state choice-of-law rules apply. As previously mentioned, because state choice-of-law rules apply in the federal receivership context, the Court applies Texas choice-of-law rules.

Third, the Court must determine whether the perceived conflict is an actual or a false conflict. Here, (1) the representation at issue centered in Texas, (2) Stanford was essentially a Texas entity, *see* Order 8–9 [909] *in Janvey v. Alguire*, Civil Action No. 3:09-CV-0724-N (N.D. Tex. filed Apr. 20, 2009), and (3) Texas has an interest in preventing a fiduciary from exculpating itself in advance of its own malfeasance, *see Keck v. Nat'l Union Fire Ins. Co.*, 20 S.W.3d 692 (Tex. 2000) ("[O]ur disciplinary rules forbid an attorney from making an agreement that prospectively limits the attorney's malpractice liability to the client . . . .") (citing TEX. DISCIPLINARY R. 108(g)). Texas' relationship to the dispute is thus clearly within the scope of the state's policy.

New York's relationship is also within the scope of its policy. Notably, Proskauer is headquartered in New York. And New York has an important public policy interest in deterring illegality – and thus protecting its residents – by denying judicial relief to wrongdoers. *See Kirschner v. KPMG LLP*, 938 N.E.2d 941, 950 (N.Y. 2010). Although Plaintiffs argue that Proskauer has not produced any evidence of activity between Stanford and Proskauer taking place in New York, Proskauer has and Stanford had offices in the state. For the purposes of this step of the analysis, this information is sufficient for the Court to determine that New York has an actual interest in this dispute. Accordingly, the conflict between Texas and New York is an actual conflict.

***C. Texas Has the Most Significant Relationship With the Dispute***

The fourth and final step of the choice-of-law analysis is applying the most significant relationship test. Here, the balance of factors outlined by Section 145 of the Restatement weigh in favor of Texas' having the most significant relationship with this dispute.[5] The injury caused by Proskauer's alleged conduct predominantly occurred in Texas, where Stanford was headquartered. This is further evidenced by the Stanford Receivership proceeding in this state, not another. Proskauer's alleged conduct that caused the injury also substantially occurred in Texas, where Sjoblom and other Proskauer attorneys traveled in the course of the Stanford representation. And, although Sjoblom resided in the District of Columbia and Proskauer is headquartered in New York, Stanford's headquarters and principal place of business were in Texas. Finally, the relationship between the parties was centered in Texas, where the Proskauer engagement letter was sent and where the bulk of the SEC investigation occurred. The Court accordingly holds that Texas has the most significant relationship here and Texas substantive law thus governs this dispute.

---

[5] Whereas Section 6 of the Restatement contains "the general principles involved in the conflicts analysis," Section 145 lists "the factual matters to be considered when applying the Section 6 principles to a given case." *Gauthier v. Union Pac. R.R. Co.*, 644 F. Supp. 2d 824, 839 (E.D. Tex. 2009) (citing *In re Air Disaster at Ramstein Air Base*, 81 F.3d 570, 577 (5th Cir. 1996)). It is these Section 145 factual matters that are "determinative as to which state has the most significant relationship" with the dispute. *Id.*

## CONCLUSION

For the reasons set forth above, the Court holds that Texas substantive law governs all of the claims asserted in this action by Plaintiffs. As a result, the Court denies Proskauer's motion to apply New York substantive law to this dispute.

Signed April 17, 2018.

David C. Godbey
United States District Judge