# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| RALPH S. JANVEY, IN HIS CAPACITY AS COURT-APPOINTED RECEIVER FOR THE STANFORD RECEIVERSHIP ESTATE, AND THE OFFICIAL STANFORD INVESTORS COMMITTEE, | § § § § § § | |
| Plaintiffs, | § § | Civil Action No. 3:13-CV-0477-N-BG |
| v. | § § | |
| PROSKAUER ROSE, LLP, CHADBOURNE & PARKE, LLP, AND THOMAS V. SJOBLOM, | § § § § | |
| Defendants. | § § | |

## PLAINTIFFS' OBJECTIONS TO DEFENDANT PROSKAUER ROSE LLP'S PROPOSED CHARGE TO THE JURY

**CASTILLO SNYDER**

By: */s/ Edward C. Snyder*
Edward C. Snyder
esnyder@casnlaw.com
Jesse R. Castillo
jcastillo@casnlaw.com
700 N. St. Mary's, Suite 405
San Antonio, Texas 78205
(210) 630-4200
(210) 630-4210 (Facsimile)

**NELIGAN LLP**

By: */s/ Douglas J. Buncher*
Douglas J. Buncher
dbuncher@neliganlaw.com
Republic Center
325 N. St. Paul, Suite 3600
Dallas, Texas 75201
Telephone: (214) 840-5320
Facsimile: (214) 840-5301

**CLARK HILL STRASBURGER**

By: */s/ Judith R. Blakeway*
Judith R. Blakeway
judith.blakeway@clarkhillstrasburger.com
2301 Broadway
San Antonio, Texas 78215
Telephone:   (210) 250-6004
Facsimile:    (210) 258-2706

By: */s/ David N. Kitner*
David N. Kitner
david.kitner@clarkhillstrasburger
901 Main Street, Suite 4400
Dallas, Texas 75202
Telephone:    (214) 651-4300
Facsimile:     (214) 651-4330

**ATTORNEYS FOR PLAINTIFFS**

Plaintiffs make the following objections to Defendant Proskauer Rose LLP's proposed charge to the jury.

1.      Plaintiffs object to the failure to instruct the jury that the acts of Proskauer include the acts of its partner, Thomas B. Sjoblom ("Sjoblom").   Proskauer has admitted that Thomas Sjoblom was acting in the course and scope of his employment.   *See* Response to Request for Admission No. 97.   ("Sjoblom was acting in the course and scope of his employment with Proskauer when he represented SFG and its affiliates, including SIBL and SGC.")

2.      Plaintiffs object to the failure to define "Stanford Financial."  The jury should be instructed that "Stanford Financial" includes Stanford International Bank, Ltd. ("SIBL"), Stanford Group Company ("SGC"), Stanford Capital Management, LLP, Stanford Financial Group Global Management, LLC and Stanford Financial Group Company.  Because there is a company called Stanford Financial Group, the jury may assume that the issues inquire about only that company and not about other Stanford entities such as Stanford International Bank, Ltd. ("SIBL") or Stanford Group Company ("SGC").

3.      Plaintiffs object to all the instructions and issues in the charge limiting or requiring that in order to answer affirmatively to any issue, the jury must find that Stanford Financial's principals "perpetrated a Ponzi scheme and stole money from Stanford Financial" because Plaintiffs' claims for aiding and abetting breach of fiduciary duty and fraud do not require Plaintiffs to prove the existence of a Ponzi scheme or theft or that Sjoblom aided and abetted such Ponzi scheme or theft.  To succeed on their claims, Plaintiffs must demonstrate that Sjoblom knowingly and substantially assisted (i) the breaches of fiduciary duty by Stanford's officers and directors and/or (ii) the fraudulent scheme perpetrated by Allen Stanford and his cohorts.  *See* Plaintiffs' First Amended Complaint at 101-03 [Docket No. 302]; *Janvey v.*

2

*Proskauer Rose, LLP*, 2015 WL 11121540, at *7 (N.D. Tex. Jun. 23, 2015) (listing elements of claim for aiding and abetting breach of fiduciary duty); *Troice v. Proskauer Rose, LLP*, 2015 WL 1219522, at *10 (N.D. Tex. Mar. 4, 2015) (elements of aiding and abetting fraud). Proving the existence of a Ponzi scheme is not an element of either of Plaintiffs' claims; proof of breaches of fiduciary duty or fraud is sufficient. *See* Order at 8, *OSIC v. Greenberg Traurig, LLP*, Case No. 3:12-cv-4641-n (N.D. Tex. Dec. 17, 2014) [Docket No. 114] (holding that "Plaintiffs need not allege Defendants' awareness of the [Ponzi] scheme itself in order to plead scienter" but are only required to show that the defendant has "knowledge of an underlying breach"). The officers and directors Stanford Group Company ("SGC") and Stanford International Bank ("SIB") breached their fiduciary duties by permitting the entities to commit securities fraud. That securities fraud was the foundation of the Stanford Ponzi scheme, and Sjoblom learned of Stanford's ongoing misrepresentations and omissions to, and thus the officers' breaches of fiduciary duty, very early in his representation. The underlying securities fraud was the engine that drove the Stanford Ponzi scheme and the two cannot be separated. For example, the First Amended Complaint (Docket No. 302) alleges violations of the Investment Company Act, misrepresentations in marketing materials, fiduciary duties of SGC as an investment advisor, violation of the Investment Advisors Act by failing to conduct due diligence, violations of the securities law by selling unregistered securities without a valid exemption, misrepresenting an unregistered offering, violations of NASD Rule 2310 (suitability), committing fraud or a Ponzi scheme, committing securities fraud through an unregistered investment company. The securities fraud for which Plaintiffs seek recovery is not limited to the Ponzi scheme but rather is based on the securities violations addressed by this Court in the Judgment entered in favor of the SEC. Thus, Plaintiffs can prevail on their claims without ever proving that Thomas Sjoblom aided or abetted

3

a Ponzi scheme for the same reasons the SEC prevailed on its claims against the officers of SGC including Bernie Young and Danny Bogar, who were found to have cause SGC to commit securities fraud and violations of the Investment Advisor's Act.  See Bernie Young Opinion, Ex. 10.

4.     Plaintiffs object to the instruction for answering Question No. 1 for the additional reason that it requires a jury to find that Proskauer proximately caused the harm that resulted from the fraud.  Aiding and abetting is not itself a tort; it is a method of imposing vicarious liability on someone for the tort of another.  *Thomas v. Barton Lodge II, Ltd.*, 174 F.3d 636, 647 (5th Cir. 1999) ("each party to a fraudulent transaction is responsible for the acts of the others done in furtherance of the scheme").  So it is the conduct of the primary tortfeasor that causes the injury to the plaintiff.  An aider or abettor who assists or encourages the primary tortfeasor in achievement of the tort is liable even though his conduct does not by itself cause the harm.  The driver of the getaway car is liable even though he did not rob the bank.  *Ogle v. Comcast Corp. (In re Houston Reg'l Sports Network L.P.)*; 547 B.R. 717, 758 (S.D. Tex. 2016) (noting that the elements are that "(1) the primary tort-feasor must commit a tort that causes an injury to the plaintiff; (2) the defendant must know that the primary tort-feasors conduct constitutes a breach of duty; and (3) the defendant must substantially assist or encourage the primary tort-feasor in the achievement of the breach").

5.     Plaintiffs object to the instruction that "you are not to consider losses to investors in your deliberations," and "Plaintiff stands in the shoes of Stanford Financial and must prove that Stanford Financial itself as a corporate entity suffered harm."  The basis for the damages to SIBL and SGC are increased liabilities under the $5.5 billion judgment entered by this Court against them jointly and severally.  The Receiver is obligated to pursue claims and collect assets

4

for later distribution to the investor creditors of SIBL and SGC.  Instructing jurors not to consider that will unnecessarily mislead and confuse them.

6.      Plaintiffs object to the instructions in answering Question No. 1 for the further reason that they do not include the willful ignorance instruction that Plaintiffs requested.

7.      Plaintiffs further object to the paragraph concerning "but for" causation in the instructions to Question No. 1.  "But for" causation is the correct standard of causation for the primary tortfeasor's conduct, but it is not the standard for aiding and abetting.  Plaintiffs are entitled to recover loss caused by the fraudulent scheme or breach of fiduciary duties which Sjoblom aided and abetted.  The correct question is what damages were proximately caused by the fraud or breaches of fiduciary duty which Thomas Sjoblom aided and abetted.  In that connection, Plaintiffs object to the failure to give Plaintiffs' requested proximate cause instruction as set forth in TEXAS PATTERN JURY CHARGE 100.12.

8.      For the reasons set forth in Paragraph 3 above, Plaintiffs object to Question No. 1(a) for limiting the fraudulent scheme to "perpetrating a Ponzi scheme and stealing money from Stanford Financial."

9.      For the reasons set forth in Paragraph 3 above, Plaintiffs object to Question No. 1(b) for limiting the fraud to "perpetrating a Ponzi scheme and stealing money from Stanford Financial" and for failure to give Plaintiffs' requested willful ignorance instruction.

10.     For the reasons set forth in Paragraph 3 above, Plaintiffs object to Paragraph 1(c) because it limits the fraudulent scheme to "perpetrating a Ponzi scheme and stealing money from Stanford Financial."

2754473.2/SPSA/40936/0110/041818

11.     For the reasons set forth in Paragraph 3 above, Plaintiffs object to Question 1(d) because it limits the fraudulent scheme to "perpetrating a Ponzi scheme and stealing money from Stanford Financial"

12.     Plaintiffs object to Question 1(e) because it requires a jury to find that Proskauer itself caused the harm.  The relevant inquiry is whether breaches of fiduciary duty and fraud caused damages, not whether the aider and abettor himself caused damages.  *See, e.g., Heat Shrink Innovs., LLC v. Medical Extrusion Technology-Texas, Inc.*, 2014 WL 5307191 at *8 (Tex. App.—Fort Worth Oct. 16, 2014, pet. denied) (defendant who knowingly participates in a breach of fiduciary duty is jointly and severally liable for damages caused by the breach).  For the reasons set forth in Paragraph 3 above, Plaintiffs further object because the fraudulent scheme is limited to "the Ponzi scheme and stealing money."

13.     Plaintiffs object to Question No. 1(f) inquiring about the date Proskauer first had actual knowledge that Stanford Financial principals were "perpetrating a Ponzi scheme and stealing money from Stanford Financial" because it is irrelevant.  For the reasons set forth in Paragraph 3 above, the fraudulent scheme which Plaintiffs contend Sjoblom aided and abetted is not limited to the Ponzi scheme and stealing money from Stanford Financial.  Issues (f), (g) and (h) are improper evidentiary issues akin to an outdated special issues charge.  A cause of action for aiding and abetting fraud, has only two elements: (1) that Sjoblom knew of the fraudulent scheme and (2) he intentionally and substantially aided and abetted it.

14.     For the reasons set forth in Paragraph 3 above, Plaintiffs object to the instruction for answering Question No. 2 because it limits breaching a fiduciary duty to "perpetrating a Ponzi scheme and stealing money from Stanford Financial."  Plaintiffs' breach of fiduciary duty claim is not so limited.  Plaintiffs pleaded that Stanford Financial directors and officers breached

6

their fiduciary duties by causing those companies to "engage in illegal activity, by failing to use reasonable care in operating and managing such companies, by failing to operate such companies in a reasonably prudent manner, and by failing to operate such companies in compliance with all applicable laws and regulations.   For example, SGC's directors and officers breached their fiduciary duties to SGC by allowing SGC's FAs to recommend the purchase of SIBL CDs to SGC's investor clients when SGC and its FAs lacked sufficient information regarding SIBL and SIBL's purported investment portfolio to properly recommend such investments.   Additionally, by ignoring numerous red flags and acting with little or no knowledge of SIBL's purported investments or Stanford Financial's operations generally, the Stanford Financial companies' directors and officers breached their fiduciary duties . . . ."  First Amended Complaint (Docket No. 302).

15.     Plaintiffs object to the instructions for answering Question No. 2 because they require the jury to find Proskauer proximately caused the harm that resulted in the injury.  The relevant inquiry is whether the breaches of fiduciary duty caused damages, not whether the aider and abettor himself caused damages.  *See, e.g., Heat Shrink Innovs. LLC v. Medical Extrusion Technologies-Texas, Inc.*, 2014 WL 5307191, at *8 (Tex. App.—Fort Worth Oct. 16, 2014, pet. denied) (defendant who knowingly participates in breach of fiduciary duties is jointly and severally liable for damages caused by the breach.)

16.     Plaintiffs further object to the instructions for answering Question No. 2 because they fail to include Plaintiffs' requested willful ignorance instruction.

17.     Plaintiffs further object to the instruction for answering Question No. 2, that "performance of legal services for Stanford Financial also cannot qualify as substantial assistance."  Proskauer has no immunity to the claims of its clients SGC and SIBL which the

7

Receiver is asserting.  The services that Sjoblom provided were far from "routine" legal services. Plaintiffs have pleaded and will prove facts demonstrating that Sjoblom aided and abetted a corrupt conspiracy to obstruct justice, destroy evidence, commit securities fraud, and violate the Investment Advisors Act and the Texas Securities Act.

18.     Plaintiffs object to the instruction for Question No. 2 that the jury cannot find Proskauer substantially assisted breaches of fiduciary duty based on any conduct that occurred before September 2006 or after October 2008.  While September 6, 2006 is the date of the Proskauer engagement letter, Sjoblom continued to represent Stanford until he withdrew on February 12, 2009.  Furthermore, the knowledge Sjoblom gained about Stanford while a partner at Chadbourne was not left behind when Sjoblom moved to Proskauer in September 2006 and is relevant in terms of his later conduct while at Proskauer. *See* Order, Docket No. 79 (recognizing that the knowledge of the Stanford fraud gained while at Chadbourne "followed Sjoblom to Proskauer").  Accordingly, evidence regarding Sjoblom's conduct, and the information he learned during his time at Chadbourne, are relevant to Plaintiffs' claims against Proskauer.

19.     For the same reasons set forth in Paragraph 12 above, Plaintiffs object to the instruction for Question No. 2 in the paragraph on "but for" causation because it is an improper statement of the law with respect to the causation standard applicable to Plaintiffs' aiding and abetting claims.  Plaintiffs further object for failure to give the instruction on proximate cause in Texas Pattern Jury Charge 100.12 requested by Plaintiffs.

20.     For the reasons set forth in Paragraph 3 above, Plaintiffs object to Question No. 2 limiting the jury's consideration to breach of fiduciary duties "by perpetrating the Ponzi scheme and stealing money from Stanford Financial."

8

21.     Plaintiffs object to asking the jury to identify the persons who Proskauer knew were breaching their duties as an evidentiary issue that is tantamount to a special issues charge.

22.     Plaintiffs object to Question 2(f), (g) and (h) as evidentiary issues which are tantamount to a special issues charge.

23.     Plaintiffs object to Question No. 3 as improper for reasons set forth in Plaintiffs' opposition to Proskauer Rose's motion to designate responsible third parties, including:

- Chapter 33 does not apply to joint and several liability claims like aiding and abetting;

- using conduct of Stanford directors, officers or employees to bar the Receiver's claims under Chapter 33 inappropriately back-doors the inapplicable *in pari delicto* defense;

- regulatory agencies are not responsible for causing the harm for which Plaintiffs seek recovery; therefore, they should not be designated responsible third parties;

- there is no evidence that the designated persons are responsible for SIBL and SGC's increased liabilities.

If the Court chooses to give a Chapter 33 instruction issue, however, Plaintiffs request that the Court give the requested instructions regarding exceptions to Chapter 33 attached to these objections as Exhibit A.

24.     Plaintiffs object to the instructions to Question No. 4 instructing the jury not to consider the harm to investors in Stanford Financial.  The judgment against Stanford Financial for $5.4 billion resulted in massive harm to investors because Stanford Financial has insufficient assets to repay the claims filed by the investors against the Stanford Financial receivership estate.

9

The jury should be able to consider this when awarding damages to the Plaintiffs, which will ultimately be distributed to the investors to pay their claims against the receivership estate.  An instruction that the jury should not consider the harm to investors will unnecessarily confuse the jurors.

25.     For the same reasons set forth in Paragraph 12 above, Plaintiffs object to the instructions to Question 4 regarding "but for" causation because it is an improper statement of the law with respect to the causation standard applicable to Plaintiffs' aiding and abetting claims. Plaintiffs further object for failure to give the instruction on proximate cause as set forth in Texas Pattern Jury Charge § 100.12.

26.     Plaintiffs further object to the instructions to Question 4 on the ground that they improperly limit the jury to awarding damages caused by Proskauer's conduct instead of conduct caused by the primary tortfeasors in which Proskauer participated.

27.     For the reasons set forth in Paragraph 3 above, Plaintiffs object to Question No. 4 as limiting compensatory damages to those caused by aiding and abetting Stanford Financial's employees' "perpetration of a Ponzi scheme and theft of money from Stanford Financial."

2754473.2/SPSA/40936/0110/041818

Respectfully submitted,

**CASTILLO SNYDER**

By: */s/ Edward C. Snyder*
Edward C. Snyder
esnyder@casnlaw.com
Jesse R. Castillo
jcastillo@casnlaw.com
700 N. St. Mary's, Suite 405
San Antonio, Texas 78205
(210) 630-4200
(210) 630-4210 (Facsimile)

**NELIGAN LLP**

By: */s/ Douglas J. Buncher*
Douglas J. Buncher
dbuncher@neliganlaw.com
Republic Center
325 N. St. Paul, Suite 3600
Dallas, Texas 75201
Telephone: (214) 840-5320
Facsimile: (214) 840-5301

**CLARK HILL STRASBURGER**

By: */s/ Judith R. Blakeway*
Judith R. Blakeway
judith.blakeway@clarkhillstrasburger.com
2301 Broadway
San Antonio, Texas 78215
Telephone:   (210) 250-6004
Facsimile:    (210) 258-2706

By: */s/ David N. Kitner*
David N. Kitner
david.kitner@clarkhillstrasburger
901 Main Street, Suite 4400
Dallas, Texas 75202
Telephone:    (214) 651-4300
Facsimile:     (214) 651-4330

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

On April 18, 2018, I electronically submitted the foregoing document with the clerk of the court of the U.S. District Court, Northern District of Texas, using the electronic case filing system of the Court which served all counsel of record electronically as authorized by the Court pursuant to The Federal Rules of Civil Procedure.

*/s/ Judith R. Blakeway*
Judith R. Blakeway

11